Alan W. Kornberg, Esq.
Andrew M. Parlen, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10910 (___) |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT UNDER 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), AND LOCAL RULE 5075-1 AND GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") respectfully states as follows in support of this application (the "Application"):

**Relief Requested[2]**

1.     The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) appointing Epiq Corporate Restructuring, LLC ("Epiq") as

---

[1]     The last four digits of the Debtor's federal tax identification number are 6792.  The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2]     A description of the Debtor's business, the reasons for commencing this chapter 11 case, the relief sought from the Court to allow for a smooth transition into chapter 11, and the facts and circumstances supporting this Application are set forth in the *Declaration of Jeffrey Dold (I) in Support of First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "First Day Declaration"), filed contemporaneously herewith.

claims and noticing agent (the "Claims and Noticing Agent") for the Debtor and its chapter 11 case, effective *nunc pro tunc* to the date hereof (the "Petition Date"), including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtor's chapter 11 case and (b) granting related relief. In support of this Application, the Debtor submits the *Declaration of Kate Mailloux in Support of the Debtor's Application for Entry of an Order Authorizing Retention and Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent under 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), and Local Rule 5075-1 and Granting Related Relief* (the "Mailloux Declaration"), attached hereto as **Exhibit B**. The Debtor submits that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise. The terms of Epiq's retention are set forth in the Engagement Agreement attached hereto as **Exhibit C** (the "Engagement Agreement"); provided that Epiq is seeking approval solely of the terms and provisions set forth in this Application and the proposed order attached hereto.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 156(c) of title 28 of the United States Code and Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Epiq's Qualifications

5.      Epiq employs leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Epiq's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases in matters of this size, complexity, and nature, including in *In re The Roman Catholic Diocese of Rockville Centre, New York,* Case No. 20-12345 (Bankr. S.D.N.Y. Oct. 5, 2020) [Docket No. 33], which involved claims arising under the New York Child Victims Act.  Epiq's professionals have also acted as debtors' administrative advisor and/or official claims and noticing agent in many large bankruptcy cases in districts nationwide, including: *In re Grupo Aeromexico, S.A.B. de C.V., et al.,* Case No. 20-11563 (Bankr. S.D.N.Y. July 7, 2020) [Docket No. 47]; *In re Jason Indus., et al.,* Case No. 20-22766 (Bankr. S.D.N.Y. June 29, 2020) [Docket No. 34]; *In re Ditech Holding Corp., et al.,* Case No. 19-10412 (Bankr. S.D.N.Y. Feb. 15, 2019) [Docket No. 67]; *In re Trident Holding Co., LLC, et al.,* Case No. 19-10384 (Bankr. S.D.N.Y. Feb. 12, 2019) [Docket No. 38]; *In re Tops Holding II Corp., et al.,* Case No. 18-22279 (Bankr. S.D.N.Y. Feb. 26, 2018) [Docket No. 73]; *In re China Fishery Grp. Ltd.*, Case No. 16-11895 (Bankr. S.D.N.Y. May 24, 2017) [Docket No. 556]; *In re Roust Corp.*, Case No. 16-23786 (Bankr. S.D.N.Y. Jan. 10, 2017) [Docket No. 35]; *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (Bankr. S.D.N.Y. Aug. 2, 2016) [Docket No. 60]; *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (Bankr. S.D.N.Y. June 25, 2014) [Docket No. 31]; *In re LHI Liquidation Co. (f/k/a Loehmann's Holdings Inc.)*, Case No. 13-14050 (Bankr. S.D.N.Y. Dec. 17, 2013) [Docket No. 46]; *In re RDA Holding Co.*, Case No. 13-22233 (Bankr. S.D.N.Y. Mar. 25, 2013)

[Docket No. 182]; *In re HMX Acquisition Corp.*, Case No. 12-14300 (Bankr. S.D.N.Y. Oct. 23, 2012) [Docket No. 32]; *In re K-V Discovery Solutions, Inc.*, Case No. 12-13346 (Bankr. S.D.N.Y. Aug. 7, 2012) [Docket No. 28]; *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (Bankr. S.D.N.Y. May 29, 2012) [Docket No. 24]; *In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (Bankr. S.D.N.Y. May 4, 2012) [Docket No. 45].[3]

6.      Epiq will follow procedures that conform to applicable guidelines promulgated by the Clerk (as defined below) and the Judicial Conference and any procedures the Court might establish by order during this chapter 11 case.

7.      By appointing Epiq as the Claims and Noticing Agent in this chapter 11 case, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "Clerk") will be relieved of the administrative burden of processing proofs of claims, if any.   Additionally, the Debtor submits that appointing Epiq as Claims and Noticing Agent in this chapter 11 case will provide the most cost-effective and efficient administrative service.   The Debtor believes that based on Epiq's experience, reputation and the reasonableness of its fees, Epiq is well qualified to serve as Claims and Noticing Agent and that such retention is in the best interests of the Debtor's estate and its creditors.

## Services to be Provided

8.      This Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and any work to be performed by Epiq outside of this scope is not covered by this Application or by any order granting approval

---

[3]   Because of the voluminous nature of the orders cite herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtor's proposed counsel.

hereof. Specifically, Epiq will perform the following tasks in its role as Claims and Noticing

Agent, as well as all quality control relating thereto:

a.  prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors, if any, under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, if necessary, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement or confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

b.  maintain an official copy of the Debtor's schedules of assets and liabilities, schedules of current income and expenditures, and statements of financial affairs, and (collectively, the "Schedules") listing the Debtor's known creditors and the amounts owed thereto;

c.  maintain (i) a list of all potential creditors, and other parties in interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party in interest or the Clerk;

d.  furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.  maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.  for *all* notices, applications, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.      process all proofs of claim received, if any, including those received by the Clerk, confirm processing for accuracy, and maintain the original proofs of claim in a secure area;

h.      provide an electronic interface for filing proofs of claim;

i.      maintain the official claims register for the Debtor on behalf of the Clerk on a case-specific website (the "Claims Register"); upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed:  (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim,  (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

j.      provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.      implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

l.      record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.      relocate, by messenger or overnight delivery, all of the proofs of claim filed directly with the Court to Epiq's offices, not less than weekly;

n.      upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o.      monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p.      identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.      assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

r.      if this chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk within three (3) days of notice to

Epiq of entry of the order converting this chapter 11 case;

s.   thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing Epiq and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

t.   within seven (7) days of notice to Epiq of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of this chapter 11 case; and

u.   at the close of this chapter 11 case, box and transport all original documents, in proper format, as provided by the Clerk, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064 (the "<u>Federal Archives Record Administration</u>") or (ii) any other location requested by the Clerk.

### **Professional Compensation**

9.   The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the office of the U.S. Trustee for the Southern District of New York, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

10.   As part of the overall compensation payable to Epiq under the terms of the Engagement Agreement, the Debtor has agreed to certain indemnification obligations. The Engagement Agreement provides that the Debtor will indemnify, defend and hold Epiq, its

affiliates, parents, and each such entity's officers, members, directors, agents, representatives, managers, consultants, and employees harmless under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement.  Both the Debtor and Epiq believe that such provisions are customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this chapter 11 case.

11.    Prior to the Petition Date, the Debtor provided Epiq a retainer in the amount of $25,000.  Epiq seeks to hold the retainer under the Engagement Agreement during this chapter 11 case as security for the payment of fees and expenses incurred under the Engagement Agreement.

## **Disinterestedness**

12.    Although the Debtor does not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Application (because such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the Debtor's creditors and parties in interest, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Mailloux Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

13.    Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Mailloux Declaration, among other things, that:

a.    Epiq is not a creditor of the Debtor;

b.    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.    by accepting employment in this chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.     in its capacity as the Claims and Noticing Agent in this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.     Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.     Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.     in its capacity as Claims and Noticing Agent in this chapter 11 case, Epiq will not intentionally misrepresent any fact to any person;

h.     Epiq shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

i.     Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.     none of the services provided by Epiq as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk.

Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

### **Compliance with Claims and Noticing Agent Protocol**

14.     This Application complies with the Claims Agent Protocol and conforms to the standard application in use in this Court. Specifically, the Debtor has solicited and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. The Debtor submits that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise. The terms of Epiq's retention are set forth in the Engagement Agreement; provided, however, that to the extent there is any inconsistency between this Application, the Proposed Order, and the Engagement Agreement, the Proposed Order shall govern.

9

**Basis for Relief**

15.     Section 156(c) of title 28 of the United States Code, which governs the staffing and

expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the

Clerk for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices, dockets,
> calendars, and other administrative information to parties in cases
> filed under the provisions of title 11, United States Code, where the
> costs of such facilities or services are paid for out of the assets of the
> estate and are not charged to the United States.  The utilization of
> such facilities or services shall be subject to such conditions and
> limitations as the pertinent circuit council may prescribe.

16.     The Court may also rely on its general equitable powers to grant the relief requested

in this Application.  Section 105 of the Bankruptcy Code empowers the Court to "issue any order,

process or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105(a).

17.     The Debtor anticipates that there will be more than 250 persons and entities to be

noticed in this chapter 11 case, many of which are expected to file proofs of claim.  Given the

number of creditors and other parties in interest involved in this chapter 11 case, the Debtor seeks

an order appointing Epiq as the Claims and Noticing Agent in this chapter 11 case pursuant to

28 U.S.C. § 156(c) to relieve this Court and the Clerk of such administrative burdens.

**Notice**

5.     The Debtor will provide notice of this Motion to: (a) the Office of the United States

Trustee for the Southern District of New York; (b) the holders of the twenty (20) largest unsecured

claims against the Debtor; (c) counsel to the Ad Hoc Committee; (d) counsel to BGCA; (e) counsel

to Rockefeller; (f) the Debtor's insurers that have accepted coverage related to the CVA Claims;

(g) the office of the Attorney General for the State of New York; (h) the United States Attorney's

Office for the Southern District of New York; and (i) any party that has requested notice pursuant

to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested,

no other or further notice need be given.

**<u>No Prior Request</u>**

18.    No prior request for the relief sought in this Application has been made to this or

any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated:  June 29, 2022

*/s/ Alan W. Kornberg*

Alan W. Kornberg, Esq.
Andrew M. Parlen, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
akornberg@paulweiss.com
aparlen@paulweiss.com
wclareman@paulweiss.com
jweber@paulweiss.com

*Proposed Counsel to the Debtor and Debtor in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10910 (___) |

## ORDER AUTHORIZING RETENTION AND APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT UNDER 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), AND LOCAL RULE 5075-1 AND GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of Madison Square Boys & Girls Club, Inc., debtor and debtor in possession (the "Debtor"), for an order authorizing the retention and appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent ("Claims and Noticing Agent"), under 28 U.S.C. §156(c), section 105(a) of the Bankruptcy Code, and Local Rule 5075-1 to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket and otherwise administer the proofs of claim filed in the Debtor's chapter 11 case, and (c) provide such other administrative services—as required by the Debtor—that would fall within the purview of services to be provided by the Clerk's Office and upon the declaration of Kate Mailloux submitted in support of the Application; and the Debtor having estimated that there are in excess of 250 creditors in this chapter 11 case, many of which are expected to file proofs of claim, and it appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtor's expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs

---

[1]   The last four digits of the Debtor's federal tax identification number are 6792.  The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

of claim; and the Court being satisfied that Claims and Noticing Agent has the capability and experience to provide such services and that Claims and Noticing Agent does not hold an interest adverse to the Debtor or the estate respecting the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given; and no other or further notice being required; and it appearing that the employment of Claims and Noticing Agent is in the best interests of the Debtor, the estate, and creditors; and sufficient cause appearing therefor; it is hereby

**ORDERED**, that, notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order; and it is further

**ORDERED**, that the Debtor is authorized to retain Claims and Noticing Agent effective as of the Petition Date under the terms of the Engagement Agreement, and Claims and Noticing Agent is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case, and all related tasks, all as described in the Application (the "Claims and Noticing Services"); and it is further

**ORDERED,** that Claims and Noticing Agent shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case and is authorized and directed to maintain the official Claims Register for the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk; and it is further

**ORDERED**, that Claims and Noticing Agent is authorized and directed to obtain a post office box or address for the receipt of proofs of claim; and it is further

**ORDERED**, that Claims and Noticing Agent is authorized to take such other action to comply with all duties set forth in the Application; and it is further

**ORDERED**, that the Debtor is authorized to compensate Claims and Noticing Agent in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Claims and Noticing Agent and the rates charged for each, and to reimburse Claims and Noticing Agent for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Claims and

Noticing Agent to file fee applications or otherwise seek Court approval for the compensation of
its services and reimbursement of its expenses; and it is further

**ORDERED,** that Claims and Noticing Agent shall maintain records of all services showing
dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices
on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any
official committee, if any, monitoring the expenses of the Debtor and any party in interest who
specifically requests service of the monthly invoices; and it is further

**ORDERED**, that the parties shall meet and confer in an attempt to resolve any dispute
which may arise relating to the Engagement Agreement or monthly invoices, and that the parties
may seek resolution of the matter from the Court if resolution is not achieved; and it is further

**ORDERED**, that pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and
expenses of Claims and Noticing Agent under this Order shall be an administrative expense of the
Debtor's estate; and it is further

**ORDERED**, that Claims and Noticing Agent may apply its retainer to all pre-petition
invoices, which retainer shall be replenished to the original retainer amount, and thereafter, Claims
and Noticing Agent may hold its retainer under the Engagement Agreement during the chapter 11
case as security for the payment of fees and expenses incurred under the Engagement Agreement;
and it is further

**ORDERED**, that the Debtor shall indemnify Claims and Noticing Agent under the terms
of the Engagement Agreement; and it is further

**ORDERED**, that any limitation of liability contained in the Engagement Agreement shall
have no effect during this chapter 11 case; and it is further

**ORDERED**, that all requests by Claims and Noticing Agent for the payment of
indemnification as set forth in the Engagement Agreement shall be made by means of an
application to the Court and shall be subject to review by the Court to ensure that payment of such
indemnity conforms to the terms of the Engagement Agreement and is reasonable under the

circumstances of the litigation or settlement in respect of which indemnity is sought; <u>provided</u> <u>however</u>, that in no event shall Claims and Noticing Agent be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

**ORDERED**, that in the event that Claims and Noticing Agent seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Claims and Noticing Agent's own applications, both interim and final, but determined by this Court after notice and a hearing; and it is further

**ORDERED,** that in the event Claims and Noticing Agent is unable to provide the services set out in this order, Claims and Noticing Agent will immediately notify the Clerk and Debtor's attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtor's attorney; and it is further

**ORDERED**, that the Claims and Noticing Agent shall not distribute any documents or other communications to any of the Debtor's creditors other than documents that were filed in this chapter 11 case or communications that were previously approved by the Court; and it is further

**ORDERED**, that the Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Claims and Noticing Agent, but is not specifically authorized by this Order; and it is further

**ORDERED**, that the Debtor and Claims and Noticing Agent are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

4

**ORDERED**, that, notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order; and it is further

**ORDERED,** that Claims and Noticing Agent shall not cease providing claims processing services during the chapter 11 case for any reason, including nonpayment, without an order of the Court; and it is further

**ORDERED,** that in the event of any inconsistency between the Engagement Agreement, the Application and the Order, the Order shall govern.

New York, New York
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Mailloux Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]<br><br>          Debtor. | Chapter 11<br><br>Case No. 22-10910 (___) |

**DECLARATION OF KATE MAILLOUX IN SUPPORT OF DEBTOR'S**
**APPLICATION FOR ENTRY AN ORDER AUTHORIZING RETENTION AND**
**APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS**
**AND NOTICING AGENT UNDER 28 U.S.C. § 156(c), 11 U.S.C.**
**§ 105(a), AND LOCAL RULE 5075-1 AND GRANTING RELATED RELIEF**

I, Kate Mailloux, under penalty of perjury, declare as follows:

1.      I am a Senior Director of Epiq Corporate Restructuring, LLC ("Epiq"), a chapter 11 administrative services firm, whose headquarters are located at 777 3rd Avenue, 12th Floor, New York, New York 10022.  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.

*2.*      This Declaration is made in support of the *Debtor's Application for Entry of an Order Authorizing Retention and Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent under 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), and Local Rule 5075-1 and Granting Related Relief*, which was filed contemporaneously herewith (the "Application").[2]

---

[1]   The last four digits of the Debtor's federal tax identification number are 6792.  The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

3.    Epiq employs leading industry professionals with significant experience in both the

legal and administrative aspects of large, complex chapter 11 cases.  Epiq's professionals have

experience in noticing, claims administration, solicitation, balloting, and facilitating other

administrative aspects of chapter 11 cases in matters of this size, complexity, and nature, including

in *In re The Roman Catholic Diocese of Rockville Centre, New York,* Case No. 20-12345 (Bankr.

S.D.N.Y. Oct. 5, 2020) [Docket No. 33], which involved claims arising under the New York Child

Victims Act.  Epiq's professionals have also acted as debtors' administrative advisor and/or

official claims and noticing agent in many large bankruptcy cases in districts nationwide,

including: *In re Grupo Aeromexico, S.A.B. de C.V., et al.,* Case No. 20-11563 (Bankr. S.D.N.Y.

July 7, 2020) [Docket No. 47]; *In re Jason Indus., et al.,* Case No. 20-22766 (Bankr. S.D.N.Y.

June 29, 2020) [Docket No. 34]; *In re Ditech Holding Corp., et al.,* Case No. 19-10412 (Bankr.

S.D.N.Y. Feb. 15, 2019) [Docket No. 67]; *In re Trident Holding Co., LLC, et al.,* Case No. 19-

10384 (Bankr. S.D.N.Y. Feb. 12, 2019) [Docket No. 38]; *In re Tops Holding II Corp., et al.,* Case

No. 18-22279 (Bankr. S.D.N.Y. Feb. 26, 2018) [Docket No. 73]; *In re China Fishery Grp. Ltd.*,

Case No. 16-11895 (Bankr. S.D.N.Y. May 24, 2017) [Docket No. 556]; *In re Roust Corp.*, Case

No. 16-23786 (Bankr. S.D.N.Y. Jan. 10, 2017) [Docket No. 35]; *In re Atlas Resource Partners,

L.P.*, Case No. 16-12149 (Bankr. S.D.N.Y. Aug. 2, 2016) [Docket No. 60]; *In re Nautilus Holdings

Ltd.*, Case No. 14-22885 (Bankr. S.D.N.Y. June 25, 2014) [Docket No. 31]; *In re LHI Liquidation

Co. (f/k/a Loehmann's Holdings Inc.)*, Case No. 13-14050 (Bankr. S.D.N.Y. Dec. 17, 2013)

[Docket No. 46]; *In re RDA Holding Co.*, Case No. 13-22233 (Bankr. S.D.N.Y. Mar. 25, 2013)

[Docket No. 182]; *In re HMX Acquisition Corp.*, Case No. 12-14300 (Bankr. S.D.N.Y. Oct. 23,

2012) [Docket No. 32]; *In re K-V Discovery Solutions, Inc.*, Case No. 12-13346 (Bankr. S.D.N.Y.

Aug. 7, 2012) [Docket No. 28]; *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (Bankr. S.D.N.Y.

2

May 29, 2012) [Docket No. 24]; *In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (Bankr. S.D.N.Y. May 4, 2012) [Docket No. 45].[3]

4.        As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "<u>Clerk</u>"), the services specified in the Application and the Engagement Agreement, and, at the Debtor's request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.  In performing such services, Epiq will charge the Debtor the rates set forth in the Engagement Agreement, which is attached as **<u>Exhibit C</u>** to the Application.

5.        Before the Petition Date, the Debtor provided Epiq a retainer in the amount of $25,000.  Epiq seeks to hold the retainer under the Engagement Agreement during this chapter 11 case as security for the payment of fees and expenses incurred under the Engagement Agreement.

6.        Epiq represents, among other things, the following:

a.        Epiq is not a creditor of the Debtor;

b.        Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.        by accepting employment in this chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.        in its capacity as the Claims and Noticing Agent in this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.        Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

---

[3]        Because of the voluminous nature of the orders cite herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtor's proposed counsel.

f.  Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.  in its capacity as Claims and Noticing Agent in this chapter 11 case, Epiq will not intentionally misrepresent any fact to any person;

h.  Epiq shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

i.  Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.  none of the services provided by Epiq as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk.

7.  To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither Epiq, nor any employee thereof, has any materially adverse connection to the Debtor, its creditors, or other relevant parties.  Epiq may have relationships with certain of the Debtor's creditors as a vendor or in connection with cases in which Epiq serves or has served in a neutral capacity as noticing, claims, and balloting agent for another chapter 11 debtor.

8.  Epiq conducted a review, completed under my supervision, of the identified potential parties in interest (the "Potential Parties in Interest") in this chapter 11 case based on a query of an internal client database containing names of individuals and entities that are present or recent clients of Epiq.  The list of Potential Parties in Interest was provided by the Debtor and is annexed hereto as **Schedule 1**.  To the best of my knowledge, and based solely upon information provided to me by the Debtor, Epiq does not have any materially adverse connection to the Debtor, its creditors or other relevant parties, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were connected to Epiq, these parties have been identified on a list annexed hereto as **Schedule 2** (the "Client Match List").  To the best of

4

my knowledge, any such connections between Epiq and any parties on the Client Match List is completely unrelated to this Debtor.

9.      Epiq is party to an agreement with Xclaim Inc. ("Xclaim").  Pursuant to such agreement, Epiq provides Xclaim with access to publicly available claims registers in a digital format that is compatible with Xclaim's platform.  The access provided to Xclaim does not, in any way, restrict or limit public access to such claims registers, in accordance with 11 U.S.C. § 107. Xclaim operates a service that facilitates the transfer of claims against debtors in accordance with Bankruptcy Rule 3001(e).  In exchange for the services provided by Epiq, Epiq receives from Xclaim a processing fee equal to no more than 0.1% of the face amount of each transferred claim. Such processing fee compensates Epiq for costs related to preparing the claims register in a digital format, and for verifying and recording claim transfers made on Xclaim's platform in accordance with Bankruptcy Rule 3001(e).  Epiq believes that Xclaim serves the best interests of creditors by making the claims transfer process more accessible and efficient.  Moreover, Epiq's relationship with Xclaim does not affect (a) the work to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1, or (b) the public's ability to access the claims register.

10.     Epiq's personnel may have relationships with some of the Debtor's creditors or other parties in interest.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to this chapter 11 case.  Epiq has and will continue to represent clients in matters unrelated to this chapter 11 case.  In addition, Epiq has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtor's case in matters unrelated to this case.  Epiq may also provide professional services to entities or persons

that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.  To the best of my knowledge, neither Epiq, nor any employees thereof, represents any interest materially adverse to the Debtor's estate with respect to any matter upon which Epiq is to be engaged.

11.     Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relations or claim of an Epiq affiliate or its corporate parent.

12.     Although the Debtor does not propose to employ Epiq under section 327 of the Bankruptcy Code (because such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the entities provided by the Debtor.  At this time, we are not aware of any relationship which would present a disqualifying conflict of interest.  Should Epiq discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to promptly file a supplemental declaration.  Epiq will also comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

13.     Should Epiq discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to promptly file a supplemental declaration.

14.     In performing the services of Claims and Noticing Agent, Epiq will charge the Debtor the rates set forth in the Services Agreement.

15.     Epiq will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

16.     Based on the foregoing, I believe that Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct to the best of my information, knowledge, and belief.

Dated:  June 29, 2022
New York, New York                          /s/ Kate Mailloux
                                            Kate Mailloux
                                            Senior Director
                                            Epiq Corporate Restructuring, LLC

**Schedule 1**

**Potential Parties in Interest**

## Potential Parties in Interest

### DEBTOR AND NON-DEBTOR AFFILIATES AND RELATED ENTITIES
MADISON SQUARE BOYS & GIRLS CLUB, INC.
MADISON SQUARE BOYS & GIRLS CLUB FOUNDATION, INC.
MSBGC-NYC SUPPORT CORPORATION

### SOUTHERN DISTRICT OF NEW YORK BANKRUPTCY JUDGES, CLERKS, PERSONNEL, AND OFFICE OF THE U.S. TRUSTEE
CHIEF JUDGE MARTIN GLENN
JUDGE LISA G. BECKERMAN
JUDGE SHELLEY C. CHAPMAN
JUDGE ROBERT D. DRAIN
JUDGE JAMES L. GARRITY, JR.
JUDGE DAVID S. JONES
JUDGE SEAN H. LANE
JUDGE CECELIA G. MORRIS
JUDGE MICHAEL E. WILES

### ATTORNEYS FOR THE UNITED STATES TRUSTEE'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK
ALABA OGUNLEYE
ALICIA LEONHARD
ANDREA B. SCHWARTZ
ANDY VELEZ-RIVERA
BENJAMIN J. HIGGINS
BRIAN S. MASUMOTO
CHEUK M. NG
CHRISTINE BLACK
DANNY A. CHOY
ERCILIA A. MENDOZA
GREG M. ZIPES
GUY A. VAN BAALEN
ILUSION RODRIQUEZ
JOSEPH ALLEN
KATHLEEN SCHMITT
LINDA A. RIFFKIN
LISA PENPRAZE
MADELINE VESCOVACCI
MARIA CATAPANO
MARY V. MORONEY
NADKARNI JOSEPH
PAUL K. SCHWARTZBERG
RICHARD C. MORRISSEY
SERENE NAKANO
SHANNON SCOTT

SUSAN ARBEIT
SYLVESTER SHARP
VICTOR ABRIANO
WILLIAM K. HARRINGTON

**GOVERNMENTAL/REGULATORY AGENCIES**
DORMITORY AUTHORITY OF THE STATE OF NEW YORK
NEW YORK CITY DEPARTMENT OF YOUTH AND COMMUNITY DEVELOPMENT
NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION
NEW YORK STATE ALLIANCE FOR THE PREVENTION OF SEXUAL ABUSE
NEW YORK STATE CHILD AND ADULT CARE FOOD PROGRAM
NEW YORK STATE OFFICE OF ALCOHOLISM AND SUBSTANCE ABUSE SERVICES
NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES
NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
OFFICE OF JUVENILE DELINQUENCY PROGRAM
UNITED STATES DEPARTMENT OF JUSTICE – OFFICE OF JUSTICE PROGRAMS

**BANKRUPTCY AND CERTAIN ORDINARY COURSE PROFESSIONALS**
EPIQ CORPORATE RESTRUCTURING
FINSBURY LLC
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
PILLSBURY WINTHROP SHAW PITTMAN LLP
TENEO CAPITAL LLC

**BANKS, INVESTMENT MANAGERS, AND SECURED LENDERS**
BANK OF AMERICA
BROWN BROTHERS
CARVER BANK
CITI BANK
FIDELITY
JP MORGAN
JPMORGAN - CHILDS TRUST
LAMB FINANCIAL SERVICES
MERRILL LYNCH
NONPROFIT FINANCE FUND
PINNACLE SECURITIES
PNC BANK
RUANE CUNNIFF & GOLDFARB
RUANE CUNNIFF & GOLDFARB - SEQUOIA FUND
TRUFUND
VANGUARD

**CURRENT & FORMER TRUSTEES, DIRECTORS, OFFICERS**
ADAM L. REEDER
ALBERT R. DOWDEN

11

ALLISON  SHURE
BARBARA A. TAYLOR
BARRY BREGMAN
BARRY RODRIGUES
BILL FEEHAN
BRIAN HOESTEREY
BRUCE GELB
DANIEL L. MOSLEY
DANIEL T. DONNELLY
DAVID FIELDS
DAVID J. GOLDRING
DAVID PECKER
DONALD C. DEVINE
ELIZABETH VELEZ
ERIC FRANDSON
FRANK FORTINO
FRED ARGIR
FRED PICCIRILLO
HEATHER BELLINI
HOPE  KNIGHT
JARRETT TURNER
JEFFREY DOLD
JEFFREY VOLLING
JERRY M. SESLOWE
JOHN BINNIE
JOHN GELB
JOHN MCDONOUGH
JOHN STARR
JOSEPH GANTZ
JOSH NOVAK
JUSTIN MARCUS
JUSTIN NUNEZ
KEITH FLEISCHMAN
KENNETH B. MARLIN
KENNETH HALCOM
LEO P. ARNABOLDI III
LEO P. ARNABOLDI, JR
LISA SHALETT
MATTHEW PETERSEN
MICHAEL GELTZEILER
MICHAEL PUGH
MITCHELL SCHERZER
MYLES GILLESPIE
NATHAN SLEEPER
NICHOLAS F. TOMMASINO
NICK RUDD

OBA MCMILLAN
PATRICK GADSON
PATRICK GALLAGHER
PETER SCHEMAN
PETER SERPICO
POPPY HARLOW
RICHARD EADDY
RICHARD PORTER
ROBBIN MELE GAUDIERI
RON PORTER
ROY WEATHERS
SEAN WOODROFFE
STEPHEN GALLUCCI
STEVE ELBAUM
STEVEN MELTON
STEVEN MIYAO
STEVEN S. ELBAUM
STUART LEMPERT
T. KENNETH FARRELL
THOMAS FORTIN
THOMAS MURPHY, SR.
TIM MCCHRISTIAN
TREVOR FENNELL
VANESSA TOUMA
VICTOR F. GANZI
WILLIAM E. FLAHERTY
WILLIAM F. GLAVIN, JR
WILLIAM G. PARRETT

**INSURANCE PROVIDERS**
ARGONAUT INSURANCE CO.
CHUBB GROUP
CHURCH MUTUAL INSURANCE CO.
EMPIRE BLUECROSS BLUESHIELD
FEDERAL INSURANCE COMPANY
HALLMARK SPECIALTY INSURANCE CO.
PHILADELPHIA INSURANCE COMPANY
RSUI LANDMARK AMERICAN INSURANCE CO.
STARSTONE NATIONAL INSURANCE CO.

**LANDLORD**
NATIONAL MULTIPLE SCHLEROSIS SOCIETY

13

**<u>LITIGATION PARTIES AND COUNTERPARTIES AND COUNSEL</u>**[1]

A.B.
A.F.
A.G.
AARON HUMPHREY
ALFRED FALZON
AMONDO SAPIRO
ANDREW CAWLEY
ANTHONY VARUOLA
ANTOWNE FRAZIER
ARNOLD GLIM
ARTHUR TREMERE
AVAN LOGAN
B.D.
BRIAN TATE
C.C.
C.D.
CARL MINUSKIN
C.R.
C.S.
CHRISTOPHER CLARK
CLEVELAND WHITE
COLIN MOSS
D.C.
D.M.
DENNIS FARLEY
DERRICK WELCH
DEXTER BLACKMAN
E.C. [950404/2020]
E.M. [70172/2021E]
E.M. [950681/2020]
E.M.R.
EDDY STWAERD
E.T.
EDWARD HUNTER
EDWARD TOFANI
EDWIN VELEZ
EMILE BLACKMAN
EMMANUEL FALZON
ENZO OMBRAMONTI
ERIC LEBRON
ERIC ROSADO
FRANK BITETTO

---

[1]    The names of individual plaintiffs are consistent with the names or pseudonyms reflected in public filings.

FRANK PESCE
G.F.
G.R.
GEORGE DANIELLO
GERALD CARSON
GUSTAVE CHAPPORY
HARRY WADE
HECTOR BUSH
HENRI BONNER
HENRY KING
I.R.
IKEM LOGAN
ISRAEL DIAZ
JOSEPH FARAGUNA
J.A.M.
J.C.
J.G.
J.L.
J.R.
JAMES PAIGE
JAMES SULLIVAN
JAY SAPIRO
JOHN DOE
JOHN MARKS
JOHNNY GARCIA
JONATHAN DRECHSLER
JOSEPH CIAPPA
JOSEPH FALZON
JOSEPH GALLO
JOSEPH GENTILE
JOSEPH MCBRIDE
JOSEPH O'BRIEN
JOSEPH P. SALAMONE, JR.
JOSEPH VARUOLA
JULIO ROSADO
K.P.
K.R.
KENNETH GRANT
L.B.
L.R.
LAWRENCE DAVIS
LAWRENCE NOLAN
LEON POWELL
LOUIS HEREDIA
M.H.
M.S.

15

MARC TAYLOR
"MARIA HOFFMAN"
MARK THOMPSON
MATTHEW SPENCER
MICHAEL CUSUMANO
MICHAEL DANIELLO
MICHAEL FAYE
MICHAEL JACOBS
MICHAEL PAIGE
N.B.A.
NEFTALI CENTENO
NEFTALI CEMTENO
PERRY POWELL
PETER CAMILLERI
PHILLIP HARRIS
R.A.
R.B.
R.C.
R.F.
R.F. II
R.M.
R.S.
RAMON ACOSTA
RAMOS REYES
RANDALL JAMES
RENZO BUSETTI
RICHARD VESPI
ROBERT LIGUORI
ROBERT O'LEARY
ROBERT RAMIREZ
ROBERT SERRINGER
ROBERTO GONZALEZ
ROGER WELCH
RONALD PROKOPIAK
S.R. [950449/2020]
S.R.
SAMUEL CASTRILLO
PETER STUCZ
STEVEN SORGE
T.F.
DAVID TOFANI
ROBERT TOFANI
TERRENCE BROWNE
TERRENCE LOGAN
THE ESTATE OF EMMANUEL WILLIAM SORGE
THOMAS LOGERFO

THOMAS M. LUKAS
TYRONE LOGAN
VITO PESCE
WILLIAM MCFIELD
WILLIAM SORGE
Z.Y.
ABEND & SILBER, PLLC
ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & AZIZ
ANDREOZZI & ASSOCIATES, P.C.
BLEAKLEY PLATT & SCHMIDT, LLP
CUTI HECKER WANG LLP
DUNDON ADVISERS LLC
GRANT & EISENHOFER, P.A.
HACH ROSE SCHIRIPPA & CHEVERIE, LLP
HARNICK AND HARNICK, P.C.
HERMAN LAW FIRM
JEFF ANDERSON & ASSOCIATES, P.A.
LEVY KONIGSBERG LLP
LOWEY DANNENBERG, P.C.
MARCOWITZ LAW FIRM
MERSON LAW, PLLC
PACHULSKI STANG ZIEHL & JONES LLP
PFAU COCHRAN VERTETIS AMALA PLLC
RAPHAELSON & LEVINE LAW FIRM, P.C.
ROCKEFELLER UNIVERSITY
ROPES & GRAY LLP
SEEGER WEISS LLP
SILVER & KELMACHTER, LLP
SLATER SLATER SCHULMAN LLP
THE MARSH LAW FIRM, PLLC
THE SIMPSON TUEGEL FIRM
WEITZ & LUXENBERG
WILLIAMS CEDER LLC

**SIGNIFICANT VENDORS, UTILITIES, CONTRACT COUNTERPARTIES, AND UCC
LIEN COUNTERPARTIES**
42ND STREET LESSEE LLC
501 AUCTION LLC
ABRAR QAIUM
ADP, INC.
ADT SECURITY SERVICES
ADVANCE CLADDING CONSTRUCTION COMPANY
AFA PROTECTIVE SYSTEMS, INC.
AFLAC NEW YORK
AIA, ALERA GROUP
ALDA BUILDING COMPANY LLC

ALEX DONNER ENTERTAINMENT, CORP.
ALL AMERICAN SCHOOL BUS CORP.
ALLIED ASBESTOS SERVICE LLC
ALLSTATE LIFE INSURANCE COMPANY
ALLSTATE SERVICES GROUP LLC
AMAZON CAPITAL SERVICES
AMERICAN EXPRESS
AMERIFLEX
ANTHEM LIFE & DISABILITY INSURANCE CO.
APPRAISERS AND PLANNERS INC.
ARAMARK
AUTHNET GATEWAY
AV DESIGN INTEGRATION
BABY DUNK
BALLARD SPAHR LLP
BASE TECHNOLOGIES, INC.
BCM ONE
BEL-AQUA POOL SUPPLY INC.
BETHANY HDFC
BKD, LLP
BLACKBAUD
BOYS & GIRLS CLUB OF HARLEM
BOYS & GIRLS CLUBS OF AMERICA
BROADWAY UNLOCKED
BRONX AQUATICS & SAFETY INC.
BSN SPORTS INC
CABLEVISION
CARDWORKS ACQURING
CHARTER COMMUNICATIONS
CHURCH MUTUAL
CITY OF FINANCE COMMISSIONER
CLASSY, INC.
CON EDISON
CONNEY SAFETY
CREATIVE ART WORKS
CROWN AWARDS
CROWN CASTLE FIBER LLC
CROWN JANITORIAL
CROWN TROPHY, INC.
CT CORPORATION
CYA, INC
DAWELL CONSULTING LLC
DE LAGE LANDEN FINANCIAL SERVICES, INC.
DELL BUSINESS CREDIT
DELOITTE CONSULTING LLP
DINOSAUR RESTAURANTS LLC

18

DRAIN KLEEN SEWER SERVICES INC.
EDELMAN SULTAN KNOX WOOD ARCHITECTS LLP
EFFICIENT COMBUSTION & COOLING CORP.
EL RAVEN PRODUCTIONS
EMPIRE FIRE SYSTEMS LLC
ENGIE
EXTRA SPACE STORAGE
FEDERAL EXPRESS CORP.
FIRST ADVANTAGE BACKGROUND SERVICES CORP.
FIRSTMARK SERVICES
FLYER MIKE DESIGNS, LLC
FOUR SEASONS PROMOS, LLC
FRANKIE'S CARNIVAL TIME, INC.
FUZE, INC.
GEM MECHANICAL LLC
GIVESMART US, INC.
GO CHARITY
GOTHAM ARCHITECTURAL GLASS & SIGN
GRACI PAVING ASSOCIATES INC.
GROWTH AND DEVELOPMENT SERVICES, INC.
HANZEL LI
HELIUM PLUS EAST INC.
HILLMANN CONSULTING, LLC
HSO PRODUCTIONS INC.
HYDRO LANE, INC.
IF IT'S WATER, INC.
INDEPENDENT ELEVATOR INSPECTIONS, INC
INLAND PRINTING COMPANY
INSURANCE ARCHAEOLOGY GROUP
INTEGRATED AQUATICS ENGINEERING
J & L SERVICE NYC INC.
JMV CONSULTING ENGINEERING, P.C.
JOHN TODD
JUNK PROS
KAUFMAN IRON WORKS
KIDS IN SEATS INC.
KIPS BAY BOYS & GIRLS CLUB
KNIGHT MARKETING CORP.
KONE INC.
KVL AUDIO VISUAL SERVICES, INC
LAMB INSURANCE SERVICES
LAWLESS & MANGIONE
LAWYERS ALLIANCE FOR NEW YORK
LEADER ELECTRIC COMPANY
LEAF COMMERCIAL CAPITAL
LIBERTY COCA-COLA BEVERAGES LLC

LIBERTY INDUSTRIAL GAS & WELDING
LIBERTY SCIENCE CENTER
LIGHTHOUSE DOCUMENT TECHNOLOGIES, INC.
LOM PROPERTY CONSULTING LLC
MAGIC MECHANICAL
MAMA FOUNDATION FOR THE ARTS, INC.
METROPOLIS GROUP INC.
METROPOLITAN LIFE
METROTECH SYSTEMS
MILLIMAN
MUTUAL SECURITY SERVICES, INC.
NARDELLO & CO LLC
NATIONAL FIRE EXTINGUISHER CO.
NATIONAL GRID
NATIONAL MULTIPLE SCLEROSIS SOCIETY
NEW YORK BUSINESS SYSTEMS
NEW YORK CITY WATER BOARD
NEW YORK DEPARTMENT OF LAW
NEW YORK STATE ALLIANCE
NFOCUS SOLUTIONS
NOBLE ELEVATOR COMPANY INC.
NONPROFIT SOLUTIONS NETWORK CORP.
NOTES FOR NOTES
NOVAK FRANCELLA LLC
NUVISION SOLUTIONS LLC
NY STATE ALLIANCE
NYC FIRE DEPARTMENT
NYC WATER BOARD
NYS DEPT. OF ENVIRONMENTAL CONSERVATION
ORKIN INC.
ORKIN PEST CONTROL
OUTREACH DEVELOPMENT CORP.
PADUANO & WEINTRAUB LLP
PITNEY BOWES GLOBAL FINANCIAL
PITNEY BOWES PURCHASE POWER
PLYWOOD PICTURES LLC
POL. WIRE TECH INC.
POLAR AIR CONDITIONING INC.
QUILL CORPORATION
REGINA CATERERS INC.
ROBINSON'S INDUSTRIAL GAS AND EQUIPMENT CORP.
ROTO ROOTER PLUMBING SERVICES
RT TRANSPORTATION & TOURS, LLC
S&S WORLDWIDE, INC.
S.D.L. APPLIANCE REPAIR SERVICE
SBW, INC.

SEAN KERSHAW
SEND IN THE CLOWNS ENTERTAINMENT
SERVICE MECHANICAL INC.
SHELTERPOINT LIFE INSURANCE CO.
SIGMA
SLEEPY HOLLOW COUNTRY CLUB
SOLVE IT SIMPLE LLC
STAPLES
STAPLES ADVANTAGE
STAR GROUP PRODUCTIONS
SUNESYS ENTERPRISE LLC
SWOOP
SYSCO METRO NEW YORK LLC
THE COTOCON GROUP
THE METRO GROUP, INC.
TIME WARNER CABLE
TOTAL AQUARIUMS INC.
TOWER ELEVATOR CONSULTING & TESTING LLC
TOYOTA FINANCIAL SERVICES
TRANSPERFECT LEGAL SOLUTIONS
TREMONT ELECTRIC SUPPLY COMPANY
TRI WELD INDUSTRIES, INC.
TWI-LAQ INDUSTRIES, INC.
ULINE
UNITED STAFFING SOLUTIONS, INC.
UNITED WAY
VAL WIRING CORP.
VENABLE LLP
VERIZON WIRELESS
WEBSTER LOCK & HARDWARE CO.

## **Schedule 2**

**Client Match List**

## Client Match List

ADP
ALLSTATE LIFE INSURANCE COMPANY
ALLSTATE SERVICES GROUP LLC
AMAZON CAPITAL SERVICES
ARAMARK
BANK OF AMERICA
CABLEVISION
CHARTER COMMUNICATIONS
CITI BANK
DELL BUSINESS CREDIT
EMPIRE BLUECROSS BLUESHIELD
FIDELITY
GRANT & EISENHOFER, P.A.
JPMORGAN
MERRILL LYNCH
METROPOLITAN LIFE
PNC
SEEGER WEISS LLP
SIGMA
STAPLES
STAPLES ADVANTAGE
TIME WARNER CABLE
VERIZON
VERIZON WIRELESS

**<u>Exhibit C</u>**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that approval by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2023.  If such



annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3   Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4   Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5   Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6   In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7   To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4.   Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business (and in any event with at least the same level of care as a commercially prudent actor) and, to the extent applicable, in accordance with any confidentiality obligations pursuant to an order of the Bankruptcy Court in the Client's chapter 11 case; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it prior to disclosure by or on behalf of Client, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party not known to Epiq to be subject to a confidentiality obligation with respect to Client Data, Epiq shall bear no responsibility for public disclosure of such data.



**5.  Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

**6.  Disposition of Data.**

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the Services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the Services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

**7.  Indemnification.**

3



Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence, fraud or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client or Epiq is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EACH PARTY SHALL NOT BE LIABLE TO THE OTHER PARTY FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



**9.  Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing and in a commercially reasonable manner, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**11.  General**

11.1   No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2   This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3   This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4   The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.



11.5   Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6   In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

11.7   Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9   All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.   The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10    Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall
be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or
certified mail, postage prepaid, and addressed as follows:

If to Epiq:

Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn:  Brad Tuttle

If to Client:

Madison Square Boys & Girls Club, Inc.
250 Bradhurst Avenue
New York, New York 10039
Attn: Tim McChristian
Email: tmcchristian@madisonsquare.org

With a copy to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Attn: Alan W. Kornberg
Email: akornberg@paulweiss.com

11.11 Invoices sent to Client should be delivered to the following address:

_____
Madison Square Boys & Girls Club Inc.
250 Bradhurst Avenue
New York, NY 10039
Attn: Tim McChristian
Email: tmcchristian@madisonsquare.org

11.12    The "Effective Date" of this Agreement is June 9 2022.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:    General Manager


**CLIENT**


By: _____
Name:  Tim McChristian
Title:    Executive Director

8



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

9



➤ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➤ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➤ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➤ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➤ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➤ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➤ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➤ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

11



## **MISCELLANEOUS**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES  (a)

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $22.50 – $50.00 |
| IT / Programming | $50.00 – $80.00 |
| Project Managers/Consultants/ Directors | $80.00 – $170.00 |
| Solicitation Consultant | $160.00 |
| Executive Vice President, Solicitation | $175.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

(a) A credit of up to $15,000 will be applied to Epiq's pre-petition invoice upon the company entering a Chapter 11 proceeding.

*Quoted at time of request for high volume blasts to all creditors

On-Line Claim Filing                                   NO CHARGE

## CALL CENTER RATES

Standard Call Center Setup                 NO CHARGE

Call Center Operator                       $55 per hour

Voice Recorded Message                  $0.34 per minute

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources                    Quoted at time of request

Strategic Communication Services      Quoted at time of request

Escrow Services                         Quoted at time of request /competitive rates

Securities Exchange / ATOP Event      Quoted at time of request

eDiscovery                             Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace       Quoted at time of request

Disbursements -- Check and/or Form 1099   Quoted at time of request

Disbursements -- Record to Transfer Agent   Quoted at time of request