Alan W. Kornberg, Esq.
Andrew M. Parlen, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]<br><br>              Debtor. | Chapter 11<br><br>Case No. 22-10910 (___) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION WAGES, SALARIES,**
**OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "<u>Debtor</u>") respectfully states as follows in support of this motion (the "<u>Motion</u>"):

**<u>Relief Requested</u>**[2]

1.      By this Motion, the Debtor seeks entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "<u>Proposed Interim Order</u>") and **Exhibit B**

---

[1]    The last four digits of the Debtor's federal tax identification number are 6792. The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2]    A description of the Debtor's business, the reasons for commencing this chapter 11 case, the relief sought from the Court to allow for a smooth transition into chapter 11, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Jeffrey Dold (I) in Support of First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith. Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the First Day Declaration.

(the "<u>Proposed Final Order</u>"), respectively: (a) authorizing the Debtor to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses; and (ii) continue employee benefits programs on an uninterrupted basis, including payment of accrued and unpaid prepetition obligations related thereto, each subject to the caps and limits set forth herein; and (b) granting related relief.  In addition, the Debtor requests that the Court (as defined below) schedule a final hearing within approximately twenty-one (21) days from the date hereof (the "<u>Petition Date</u>") to consider approval of this Motion on a final basis.

<strong><u>Jurisdiction and Venue</u></strong>

2.　　　The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.　　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.　　　The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>").

## The Debtor's Workforce

5.      As of the Petition Date, the Debtor employed approximately 154 employees, including 44 full-time and 110 part-time employees (each an "Employee" and collectively, the "Employees").  Approximately 135 of the Employees are non-exempt Employees (*i.e.*, entitled to overtime pay under state and federal law) and approximately 19 are exempt Employees.  The Employees perform a variety of critical functions for the Debtor, including administration of programs essential to the Debtor's charitable mission and a variety of services related to finance, corporate governance, and human resources. The Employees' skills, along with their knowledge and understanding of the Debtor's operations and infrastructure, are essential to the effective operation of the Debtor.  Disruption of the Employees' continued services would jeopardize the Debtor's efforts to reorganize and continue its charitable mission.

## Employee Compensation and Benefits Programs

6.      To minimize the personal hardship that Employees could suffer if prepetition employee-related obligations are not paid when due or as expected, and to maintain stability in the Debtor's workforce during the administration of this chapter 11 case, the Debtor seeks the authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, and other taxes), reimbursable expenses, flexible spending account funding, health insurance, workers' compensation benefits, life insurance, short- and long-term disability coverage, and certain other benefits that the Debtor has historically provided in the ordinary course, all as described more fully herein (collectively, the "Employee Compensation and Benefits Programs"), as well as all costs and fees incident to the Employee Compensation and Benefits Programs.

7.      The Debtor seeks authority to pay the aggregate amounts related to prepetition

amounts owed on account of the Employee Compensation and Benefits Programs set forth in the

table below:

| Employee Compensation and Benefit Programs | Interim Amount | Final Amount |
|---|---|---|
| **Compensation, Deductions, and Payroll Taxes** | | |
| Unpaid Compensation | $185,000.00 | $185,000.00 |
| Deductions | $3,265.67 | $3,265.67 |
| Payroll Taxes | $15,000.00 | $15,000.00 |
| Payroll Processing Fees | $3,450.00 | $3,450.00 |
| Business Expenses | $400.00 | $400.00 |
| Credit/Debit Card Accounts | $40,000.00 | $40,000.00 |
| **Employee Benefit Programs** | | |
| Flexible Spending Accounts (Health Care, Dependent Care) | $22,000.00 | $22,000.00 |
| Flexible Spending Accounts (Transportation, Parking) | $8,300.00 | $8,300.00 |
| Short Term Disability, Long Term Disability, Paid Family Leave Benefits | $7,500.00 | $7,500.00 |
| Retirement Benefits – 401(a) Plan | $80,000.00 | $80,000.00 |
| **Total** | $364,915.67 | $364,915.67 |

8.      Subject to the Court's approval, the Debtor intends to continue its applicable

prepetition Employee Compensation and Benefits Programs on an uninterrupted basis and satisfy

any accrued and unpaid prepetition amounts as and when due.  Out of an abundance of caution,

the Debtor requests confirmation of its right to modify, change, and discontinue any of its

Employee Compensation and Benefits Programs and to implement new programs, policies, and

benefits on an uninterrupted basis during this chapter 11 case in the Debtor's sole discretion and

without the need for further Court approval, subject to applicable law.

**I.      Employee Compensation**

**A.      Unpaid Compensation**

9.      The Debtor pays the Employees' wages and salaries biweekly.  Each paycheck

includes earnings accrued through the end of the previous payroll period. The Debtor makes one

net payment to Automatic Data Processing, Inc. ("ADP") each pay period and ADP transfers the

funds to each Employee's bank account via direct deposits.  The Debtor estimates that its historical

4

average monthly Employee Compensation is approximately $417,598.00.  As of the Petition Date,

the Debtor estimates that it owes approximately $185,000.00 on account of accrued wages,

salaries, overtime, and other compensation (excluding reimbursable expenses, time-off benefits,

and other benefits described herein) (the "Unpaid Compensation"), all of which will come due

within the first twenty-one (21) days after the Petition Date.[3]

10.     The Debtor submits that there are no prepetition amounts owed on the Petition Date

to any single Employee related to Unpaid Compensation in excess of the statutory cap of $15,150

set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Cap").

### B.    Bonus Programs

11.     In the ordinary course of its business, the Debtor pays, in its discretion, annual

performance-based bonuses (the "Non-Insider Bonuses") to certain non-insider Employees.  As of

the Petition Date, there are no amounts owing on account of any Non-Insider Bonuses.  The Debtor

does not believe that Court approval is necessary to continue the historical Non-Insider Bonuses,

but nonetheless describes the Non-Insider Bonuses in this Motion in the interest of disclosure to

the Court.  The Debtor also maintains a bonus incentive program for certain insiders (the "Insider

Bonus Incentive Program") but is not seeking authority to pay any amounts in connection with the

Insider Bonus Incentive Program under this Motion, and by this Motion only seeks authority to

pay insiders accrued and unpaid base-salary amounts.  The Debtor will seek authority to make any

future payments under the Insider Bonus Incentive Program, as necessary, pursuant to a separate

motion.

---

[3]     Additional Unpaid Compensation may be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe should have been paid, which, upon resolution, may reveal that the Debtor does in fact owe additional amounts to Employees. Accordingly, the Debtor seeks the authority to pay its Employees any Unpaid Compensation consistent with past practice, and to continue paying the Unpaid Compensation on an uninterrupted basis but in no event in excess of the Priority Cap.

12.    For the avoidance of any doubt, the Debtor is not seeking authority hereunder to make any payments on account of the Non-Insider Bonuses or the Insider Bonus Incentive Program.

**C.    Deductions and Payroll Taxes**

13.    During each applicable pay period, the Debtor deducts certain amounts from Employees' paychecks, including garnishments, child support and similar deductions, health benefits deductions, legally ordered deductions, 403(b) plan deductions, and miscellaneous deductions (collectively, the "Deductions"), and forwards such amounts to various third-party recipients.  On a monthly basis, the Debtor deducts approximately $23,207.00 in the aggregate from Employees' paychecks on account of the Deductions.  As of the Petition Date, the Debtor estimates that it owes approximately $3,265.67 in unpaid Deductions, all of which will come due within the first twenty-one (21) days after the Petition Date.

14.    In addition to the Deductions, certain federal and state laws require that the Debtor withholds certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities.  The Debtor must then match the withheld amounts from its own funds for certain taxes, including Social Security and Medicare taxes and state unemployment insurance (the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes").  The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities by ADP, which deducts the applicable funds from the Debtor's bank account via ACH at the same time that the Debtor disburses Employees' payroll to ADP and then remits the funds to the taxing authorities. As of the Petition Date, the Debtor estimates that it owes approximately $15,000.00 in unpaid

Payroll Taxes, all of which will come due within the first twenty-one (21) days after the Petition
Date.

### D.    Payroll Processing Fees

15.    The Debtor contracts with ADP as third-party payroll service provider that
processes and administers the Debtor's payroll services.  In the aggregate, the Debtor pays ADP
approximately $6,913.00 on a monthly basis on account of these services.  As of the Petition Date,
the Debtor estimates that it owes approximately $3,450.00 on account of prepetition payroll
services, all of which will come due within the first twenty-one (21) days after the Petition Date.

### E.    Business Expenses

16.    In the ordinary course of its business, the Debtor reimburses all Employees for
certain reasonable, documented, and customary expenses necessarily incurred in the scope of their
service to the Debtor (collectively, the "Business Expenses"), which mainly include
reimbursement for (a) supplies (approximately 10%[4] of Business Expenses), (b) programming at
the Debtor's clubhouses (approximately 40% of Business Expenses), (c) business lunches
(approximately 1% of Business Expenses), (d) certain travel expenses for pre-approved business
trips (approximately 17% of Business Expenses), and (e) other business-related expenses that may
arise, including subscriptions and dues, music lessons or contest prizes for members, and first aid
training sessions (approximately 32% of Business Expenses).

17.    The Debtor has (a) four (4) American Express corporate credit cards held by
members of the Debtor's management team for Business Expenses, and (b) fourteen (14) debit
cards held by the Debtor's clubhouse directors (the "Credit/Debit Card Accounts") for Business
Expenses.  Employees are required to submit itemized expense reports and obtain approval for

---

[4]    Based on information from May 2022.

Business Expenses paid with the corporate credit or debit cards. The Debtor pays the balance for each of the Credit Card Accounts in full on a monthly basis. As described in the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Continue to Operate its Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Maintain Investment Practices, and (II) Granting Related Relief*, filed contemporaneously herewith, the Debtor's bank account is prefunded on an as-needed basis to cover debit card charges and such charges are deducted from the Debtor's bank account on the same day as a charge is made. As of the Petition Date, the aggregate balance on the Credit/Debit Card Accounts was $40,000.00, all of which will come due within the first twenty-one (21) days after the Petition Date.[5]

18.     In addition, all Employees can seek to obtain reimbursement of Business Expenses, by submitting receipts in an electronic expense form for approval. Each expense form must be authorized and signed by the Employee's immediate supervisor. In the aggregate, the Debtor's Employees incur, on average, approximately $1,821.00 per month in Business Expenses, excluding the Credit/Debit Card Accounts. Although the Debtor requests that the Employees submit reimbursement requests promptly, there is inevitably some lag time between the incurrence of a Business Expense and processing the Debtor's reimbursement thereof. Based on historical figures, the Debtor estimates that it owes approximately $400.00 on account of prepetition Business Expenses, excluding Credit/Debit Card Accounts.

---

[5]     The Debtor typically incurs approximately $20,000.00-$25,000.00 per month in charges and fees in aggregate under the Credit/Debit Card Accounts. The amount owed in the interim period is higher than the average month due to a purchase of new computers for the clubhouses for use by and training of the Debtor's members.

## II.    **Employee Benefits Programs**

19.    The Debtor offers eligible Employees a comprehensive benefits package for medical, dental, and vision care coverage, and certain other benefits (collectively, and as described in more detail below, the "Employee Benefits Programs"), including:

- Medical Plans
- Dental Plans
- Vision Plans
- Health and Dependent Care Flexible Spending Plan
- Transportation Benefits and Parking Benefits Plans
- Life Insurance
- Workers' Compensation Insurance
- Disability and Paid Family Leave Benefits
- Retirement Plan
- Group Health Benefits Continuation (COBRA)
- Time-Off Benefits

### A.    **Medical Plans**

20.    The Debtor provides full-time Employees and their dependents access to two (2) medical plans administered by Empire Blue Cross Blue Shield ("Empire"): (a) the Exclusive Provider Organization Low Plan (the "EPO Plan") and (b) the Preferred Provider Organization High Plan (the "PPO Plan" and, together with the EPO Plan, the "Medical Plans"). Both Medical Plans cover 100% of preventative care. The Debtor contributes approximately $53,538.00 monthly to the combined cost of the Medical Plans and the Dental Plans (as defined below). As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the Medical Plans.

21.    Employees enrolled in either Medical Plan are automatically enrolled in a health reimbursement account (the "HRP"). Each enrolled Employee's HRP is funded with $40.00 per month up to a $480.00 annual maximum and can be used for office visit copays, prescription copays, and emergency room and hospital expenses. Unused funds accumulate each month

through the end of September 30 and do not roll over to the following year. The Debtor contributes approximately $1,160.00 monthly to the HRP. As of the Petition Date, the Debtor does not believe that it owes any amounts on account of employer-contributions to the HRP.

22.    The HRP is administered by Ameriflex. The Debtor pays Ameriflex a monthly administrative fee of approximately $308.00 on account of the HRP and the FSAs (as defined below). As of the Petition Date, the Debtor does not believe that it owes any amounts to Ameriflex on account of administrative fees.

### B.    Dental Plans

23.    The Debtor offers eligible Employees the opportunity to participate in a PPO dental plan administered by Empire, which is fully funded by the Debtor (the "Debtor-Funded Dental Plan"). The annual maximum coverage is $2,500.00 per Employee. As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the Debtor-Funded Dental Plan.

### C.    Vision Plans

24.    The Debtor also offers Employees enrolled in one of the Medical Plans certain medical-related vision benefits, which are fully funded by the Debtor (the "Debtor-Funded Vision Plan"). Additionally, the Debtor provides such Employees the opportunity to enroll in a vision plan administered by Empire that covers frames, lenses, and contacts and is fully funded by Employees (the "Employee-Funded Vision Plan"). The Debtor deducts employee contributions on account of the Employee-Funded Vision Plan directly from the respective Employee's paychecks. As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the Debtor-Funded Vision Plan and does not hold any Employee-contributed costs on account of the Employee-Funded Vision Plan.

### D.    Health and Dependent Care Flexible Spending Plan

25.    The Debtor provides eligible Employees a flexible spending account program that allows Employees to have pre-tax dollars deducted from their salaries to pay for eligible out-of-pocket non-reimbursed health care expenses and dependent care expenses.  For the health care account (the "Health Care FSA"), Employees can contribute up to $2,750.00 annually and are able to immediately spend up to the full amount of their annual election.  For the dependent care account (the "Dependent Care FSA" and, together with the Health Care FSA, the "FSAs"), Employees can contribute up to $5,000.00 annually and are reimbursed up to the amount in the Employee's account at the time such Employee requests reimbursement.  Any money remaining in a Dependent Care FSA at the end of the calendar year is rolled over to the next benefit year up to the applicable limits prescribed by the Internal Revenue Service (the "IRS") and is otherwise forfeited.

26.    The FSAs are administered by Ameriflex.  Employees enrolled in an HRP can use their debit card from Ameriflex for the FSAs, with funds first drawn from the HRP.  If an Employee is not enrolled in an HRP, it will receive a separate debit card from Ameriflex to use for the FSAs.

27.    Historically, on a monthly basis, the Debtor deducts approximately $1,650.00 from its Employees' paychecks on account of Employee contributions to their Health Care FSA and Dependent Care FSA.  As of the Petition Date, the Debtor estimates that it holds approximately $22,000.00 in Employee contributions to the FSAs.

### E.    Transportation Benefits and Parking Benefits Plans

28.    The Debtor provides a flexible spending account program that allows full-time Employees to have pre-tax compensation to be deducted for payment of transportation (the "Transportation Benefits FSA") and parking related expenses (the "Parking Benefits FSA").  The monthly maximum for each of transit and parking is consistent with IRS limits.  Benefits are based on monthly elections and can be rolled over if unused.  Historically, on a monthly basis, the Debtor

deducts approximately $700.00 and $260.00 from its Employee's paychecks on account of Employee contributions to their Transportation Benefits FSA and Parking Benefits FSA, respectively.  As of the Petition Date, the Debtor estimates that it holds approximately $8,300.00 in Employee contributions to the Transportation Benefits FSA and Parking Benefits FSA.

### F.    Life Insurance

29.    The Debtor offers Employees the opportunity to participate in a group life insurance plan (the "Life Insurance Plan"), which is administered through Anthem Life Insurance Company ("Anthem").  Coverage is calculated at three times a full-time Employee's annual salary rounded up to the nearest thousand to a maximum of $600,000.00, and two times a part-time Employee's salary to a maximum of $320,000.00.  The Life Insurance Plan includes Accidental Death and Dismemberment insurance, which provides coverage equal to one (1) times an Employee's life benefit if a serious injury or death results to such Employee from an accident.  The premiums paid under the Life Insurance Plan also cover an Employee Assistance Program that helps Employees deal with a range of problems, such as alcoholism, drug abuse, family problems, and other issues, and are expected to be approximately $38,800.00 for the 2022 policy year.  As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the Life Insurance Plan.

### G.    Workers' Compensation Program

30.    In the ordinary course of business, the Debtor maintains workers' compensation insurance for its Employees at the statutorily required level (the "Workers' Compensation Program").  Because the Debtor is statutorily obligated to maintain the Workers' Compensation Program, its inability to do so may result in adverse legal consequences that could potentially disrupt the reorganization process.

31.    The Debtor maintains a comprehensive workers' compensation policy administered by Church Mutual Insurance Company ("Church Mutual").  The Debtor pays a premium to Church

Mutual for the workers' compensation policy on a monthly basis, based on the Debtor's estimated gross payroll for the applicable policy year, which is adjusted at the end of the year based on actual payroll paid by the Debtor.  The premium is expected to be approximately $74,480.00 for the 2022 policy year.  As of the Petition Date, the Debtor does not believe that it owes any amounts on account of the Workers' Compensation Program.

### H.    Disability and Paid Family Leave Benefits

32.    The Debtor provides eligible Employees who are unable to work because of a qualifying disability resulting from an injury or illness with Disability Benefits (as defined below) through ShelterPoint and, for any amounts above the statutory requirement, Anthem.  The Debtor covers 100% of the premiums payable to ShelterPoint and Anthem.

33.    The Debtor is required by the state to provide qualifying Employees a benefit of 50% of weekly earnings to a maximum of $170.00 per week, which the Debtor then supplements with a private policy with Anthem that provides a benefit of 70% of weekly earnings to a maximum of $2,000.00 per week (the "Short-Term Disability Benefits").  Short-Term Disability Benefits begin on the eighth (8) consecutive day of a qualifying disability and continue for a maximum of thirteen (13) weeks during any consecutive fifty-two (52) week period.  If the disability is covered by workers' compensation, it is excluded from Short-Term Disability Benefits coverage.

34.    If an Employee is disabled for more than ninety (90) days, the Employee is entitled to continue receiving 60% percent of such Employee's base monthly salary up to $7,500.00 per month (collectively, the "Long-Term Disability Benefits" and, together with Short-Term Disability Benefits, the "Disability Benefits").  Long-Term Disability Benefits are offset by any amounts an Employee receives under Social Security or workers' compensation for the same time period.  In addition, the Debtor provides paid leave through ShelterPoint to eligible Employees

pursuant to New York's Paid Family Leave Benefits Law ("Paid Family Leave Benefits" and,

together with Disability Benefits, the "Disability and Paid Family Leave Benefits").

35.    As of the Petition Date, the Debtor owes approximately $7,500.00 on account of

the Disability and Paid Family Leave Benefits, all of which will come due within the first twenty-

one (21) days after the Petition Date.

## I.    Retirement Plan

36.    The Debtor participates in the Boys & Girls Clubs of America Pension Trust, which

is a defined contribution 401(a) pension plan that covers Employees who completed 1,000 hours

within a twelve (12) month consecutive period (the "Retirement Plan").  The Retirement Plan is

offered to all affiliate, separate 501(c) Boys & Girls Clubs organizations, and they can elect to

participate in the Retirement Plan or use another third-party solution.  The Debtor makes

contributions to the Retirement Plan equal to 10% of an eligible Employee's annual compensation

up to contribution caps under federal tax law.  All contributions are paid into a trust fund set up

solely for the participating Employees and their beneficiaries, and recordkeeping is maintained to

account for the assets of each participant on a per plan basis.  Charles Schwab Bank, which serves

as the trustee, holds and invests the assets of the trust.  The Debtor estimates that, as of the Petition

Date, it owes approximately $80,000.00 on account of contributions to the Retirement Plan.

37.    The Retirement Plan is administered by Milliman, Inc. ("Milliman"), a consulting

and actuarial company.  The Debtor pays Milliman approximately $3,000.00 per quarter for the

continuing administrative operation of the Retirement Plan.  As of the Petition Date, the Debtor

estimates that it owes approximately $1,875.00 on account of administrative fees to Milliman

related to the Retirement Plan.

### J.      Group Health Benefits Continuation (COBRA)

38.      Pursuant to New York's continuation coverage requirements, the Debtor offers eligible former Employees and dependents the opportunity to elect to continue coverage pursuant to the federal Consolidated Omnibus Budget Reconciliation Act (the "COBRA Benefits"). Following eligible employee termination, such former Employees are billed directly and are solely responsible for payment of premiums.  As of the Petition Date, the Debtor does not believe that it owes any accrued and unpaid amounts in respect of the COBRA Benefits.

### K.      Time-Off Benefits

39.      The Debtor provides full-time Employees with various types of paid time off ("Paid Time Off"), including (a) a number of paid vacation days, (b) paid holidays, and (c) paid personal and sick days.  Vacation time is accrued during the fiscal year from October 1 through September 30 and is paid at the Employee's base pay rate at the time of vacation.  The amount of paid vacation time Employees receive each year increases with the length of their employment as follows:  for full-time administrative and maintenance Employees, (i) upon initial eligibility, the Employee will accrue vacation monthly at the rate of 1.25 days, and (ii) after two (2) years of eligible service, the Employee will accrue vacation monthly at the rate of  1.67 days; and for full-time clubhouse Employees, (i) upon initial eligibility, the Employee will accrue vacation monthly at the rate of 0.42 days, and (ii) after two (2) years of eligible service, the Employee will accrue vacation monthly at the rate of 0.83 days.  If available vacation days are not used by the end of the year, a cumulative maximum of five (5) unused vacation days may be carried over to the next calendar year; any additional days are forfeited to the extent permitted by law.  Employees are not permitted to hold more than twenty-five (25) vacation days per year.  The Debtor also gives full-time Employees time off with pay for legal holidays, calculated at each Employee's regular pay rate multiplied by the number of hours that such Employee would normally have worked on that day.

40.    The Debtor provides fifty-six (56) hours of paid "Safe and Sick Leave" benefits to eligible Employees each year for periods of temporary absence due to illnesses or injuries. Safe and Sick Leave will be accrued at the rate of one (1) hour for every thirty (30) hours worked. Paid Safe and Sick Leave can be used in minimum increments of one-half hour. With regard to unused Safe and Sick leave in a calendar year, Employees carry over any unused, earned sick leave into the following calendar year up to fifty-six (56) hours. Moreover, Employees with a continuous extended absence (seven (7) consecutive calendar days) because of sickness or injury who are also eligible for Disability Benefits will be allowed "Extended Sick Leave" during any rolling twelve (12) month period at the rate of five (5) additional days with one (1) additional day for each year of continuous employment with the Debtor after five (5) years of continuous employment, not to exceed ten (10) days. Upon termination, resignation, retirement, or other separation from employment, Employees are not entitled to payment of unused earned Safe and Sick Leave.

41.    In addition to holidays, vacation, and sick time, the Debtor provides part-time and full-time Employees with personal time each year (the equivalent of three (3) working days, based on the individual's standard work schedule, generally not to exceed twenty-one (21) hours per year). Personal time may be used to observe religious or ethnic holidays, personal emergencies, or any other days of personal significance. Personal time must be used in the year that Employees receive it. Personal time does not carry over from one year to the next and Employees may not take a personal day without pay if they have accrued personal or vacation time available.

42.    The Debtor estimates that, as of the Petition Date, the total value of the Paid Time Off accrued by Employees but not yet used is $446,946.93.

## Basis for Relief

### I.   Sufficient Cause Exists to Authorize the Debtor to Honor the Employee Compensation and Benefits Programs

#### A.   Certain of the Employee Compensation and Benefits Are Entitled to Priority Treatment

43.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the obligations under the Employee Compensation and Benefits Programs to priority treatment. As priority claims, the Debtor is required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  To the extent that an Employee receives no more than $15,150 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to Employees and should not affect the recoveries for general unsecured creditors.  Indeed, the Debtor submits that payment of the Employee Compensation and Benefits Programs at this time enhances value for the benefit of all interested parties.

#### B.   Payment of Certain Employee Compensation and Benefits is Required by Law

44.     The Debtor seeks authority to pay the Deductions and Payroll Taxes to the appropriate third-party payees.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks.  Indeed, certain Deductions and Payroll Taxes are not property of the Debtor's estate because the Debtor has withheld such amounts from the Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Further, federal and state laws require the Debtor to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority.  *See* 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v.*

*Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Deductions and Payroll Taxes may not be property of the Debtor's estate, the Debtor requests authorization to transmit the Deductions and Payroll Taxes to the proper parties on an uninterrupted basis.

45.     Similarly, state laws require the Debtor to maintain the Workers' Compensation Program and failure to do so may prohibit the Debtor from operating its clubhouses.  Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtor's continued operations and the success of this chapter 11 case.

## II.     Payment of the Employee Compensation and Benefits is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity

46.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts have found that sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

47.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor

to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

48.     Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization); *Ionosphere Clubs*, 98 B.R. at 176 (holding that a court may authorize payments of prepetition obligations under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity")).

49.     The Debtor submits that the payment of the Employee Compensation and Benefits Programs is sound business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying prepetition wages, employee benefits, employee expense reimbursement, and similar obligations will benefit the Debtor's estate and its stakeholders by allowing the Debtor's operations to continue without interruption.

50.     In addition, the majority of Employees rely exclusively on the Employee Compensation and Benefits Programs to satisfy their daily living expenses. Consequently,

Employees will be exposed to significant financial difficulties if the Debtor is not permitted to honor its obligations related to the Employee Compensation and Benefits Programs. Failure to satisfy such obligations will jeopardize Employee morale and loyalty and is likely to cause Employees to find employment elsewhere, which will harm the Debtor's operations and the services that it provides to underserved youth in New York City. Furthermore, if this Court does not authorize the Debtor to honor its various obligations under the Employee Compensation and Benefit Programs described herein, Employees will not receive health care coverage and, thus, may be obligated to pay certain health care claims that the Debtor has not satisfied. The loss of health care coverage will result in considerable anxiety for Employees (and undoubtedly lead to attrition) during this already challenging time.

51.    The importance of a debtor's employees to its operations has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. *See, e.g.*, *In re Revlon, Inc*, Case No. 22-10760 (Bankr. S.D.N.Y. June 17, 2022) [Docket. No. 69]; *In re Automotores Gildemeister SpA*, Case No. 21-10685 (Bankr. S.D.N.Y. Apr. 15, 2021) [Docket No. 42]; *In re Garrett Motion*, Case No. 20-12212 (Bankr. S.D.N.Y. Sept. 22, 2020) [Docket No. 48]; *In re Century 21*, Case No. 20-12097 (Bankr. S.D.N.Y. Sept. 11, 2020) [Docket No. 41]; *In re Roman Catholic Diocese of Rockville Centre*, Case No. 20-12345 (Bankr. S.D.N.Y. Oct. 6, 2020) [Docket No. 39].[6]

52.    Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to pay any accrued and unpaid prepetition amounts on account of the Employee Compensation

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtor's proposed counsel.

and Benefits Programs and to continue the Employee Compensation and Benefits Programs on an

uninterrupted basis and consistent with past practices.

### III.    The Debtor Seeks a Waiver of the Automatic Stay as it Applies to Workers' Compensation Claims

53.    Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action
> or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title, or
> to recover a claim against the debtor that arose before the
> commencement of the case under this title . . . .

54.    Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in

interest to request a modification or termination of the automatic stay for "cause."  11 U.S.C.

§ 362(d)(1).

55.    The Debtor seeks authorization, under section 362(d) of the Bankruptcy Code, to

permit Employees to proceed with their workers' compensation claims in the appropriate judicial

or administrative forum.  The Debtor believes that cause exists to modify the automatic stay

because staying the workers' compensation claims could have a detrimental effect on the

Employee's financial well-being and Employee morale at this critical juncture.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

56.    The Debtor has sufficient funds to pay any amounts described in this Motion in the

ordinary course of business by virtue of expected cash flows.  In addition, under the Debtor's

existing cash management system, the Debtor can readily identify checks or wire transfer requests

as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the

Debtor believes there is minimal risk that checks or wire transfer requests that the Court has not

authorized will be inadvertently made.  Therefore, the Debtor respectfully requests that the Court

authorize all applicable financial institutions, when requested by the Debtor, to receive, process,

honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion; provided that sufficient funds are on deposit and standing in the Debtor's credit in the applicable bank accounts to cover such payments.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

57.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtor believes an immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's estate and its ability to continue its charitable mission. As described above, the failure to receive the requested relief during the first twenty-one (21) days of this chapter 11 case could subject the Debtor to significant disruption in, or a potential cessation of, its clubhouse operations and imperil the Debtor's restructuring efforts, thereby causing immediate and irreparable harm to the Debtor's estate and parties in interest. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

58.    To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

59.    Nothing contained herein or any actions taken pursuant to such relief requested is intended to or should be construed as (a) an admission as to the validity of any prepetition claim against the Debtor, (b) a waiver of the Debtor's or any other party in interest's right to dispute any prepetition claim on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an

implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## **Motion Practice**

60.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtor submits that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

61.     The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the twenty (20) largest unsecured claims against the Debtor; (c) counsel to the Ad Hoc Committee; (d) counsel to BGCA; (e) counsel to Rockefeller; (f) the Debtor's insurers that have accepted coverage related to the CVA Claims; (g) the office of the Attorney General for the State of New York; (h) the United States Attorney's Office for the Southern District of New York; (i) the service providers in connection with the Employee Compensation and Benefit Programs, and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

62.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Interim

Order and the Proposed Final Order, substantially in the forms attached hereto as **Exhibit A** and

**Exhibit B**, respectively, and grant such other and further relief as may be appropriate.

Dated: June 29, 2022
New York, New York

Respectfully submitted,

/s/ Alan W. Kornberg
Alan W. Kornberg, Esq.
Andrew M. Parlen, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
akornberg@paulweiss.com
aparlen@paulweiss.com
wclareman@paulweiss.com
jweber@paulweiss.com

*Proposed Counsel to the Debtor and Debtor in
Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]

               Debtor.

Chapter 11

Case No. 22-10910 (___)

### INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtor to (i) pay certain prepetition employee wages, salaries, other compensation, and reimbursable employee expenses; and (ii) continue employee benefits programs on an uninterrupted basis, including payment of certain prepetition obligations related thereto; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other

---

[1] The last four digits of the Debtor's federal tax identification number are 6792. The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing on the Motion shall be held on _____, 2022, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion must be filed with the Court on or before _____p.m., prevailing Eastern Time, on _____, 2022.

3.      The Debtor is authorized, but not directed, to continue and/or modify, change, or discontinue the Employee Compensation and Benefits Programs all in accordance with historical practice and to honor and pay, on an uninterrupted basis and in accordance with the Debtor's prepetition policies and prepetition practices, any obligations on account of the Employee Compensation and Benefits Programs, irrespective of whether such obligations arose prepetition or postpetition.

4.      Nothing in this Order shall be deemed to authorize the payment of any prepetition Unpaid Compensation amounts above the Priority Cap.

5.      Nothing in this Order shall authorize the Debtor to make any payments to or on behalf of "insiders" (as defined by section 101(31) of the Bankruptcy Code) that would be subject to section 503(c) of the Bankruptcy Code; provided that nothing herein shall prejudice the Debtor's ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6.     Pursuant to section 362(d) of the Bankruptcy Code, (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtor is authorized to pay all prepetition amounts relating thereto on an uninterrupted basis and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) of this paragraph are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

7.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against the Debtor; (b) a waiver of the Debtor's or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion or a finding that any particular claim is an administrative expense or other priority claim; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the rights of any party in interest under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, or after, the petition date, _provided_ that sufficient funds are on deposit and standing in the Debtor's credit in the applicable bank accounts to cover such payments, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtor's instructions.

9.      The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this chapter 11 case with respect to prepetition amounts owed in connection with the relief granted herein.

10.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding the possible applicability of  Bankruptcy Rules 6004(a) and 6004(h) or otherwise, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

13.     The requirements set forth in Local Rule 9013-1(a) are satisfied.

14.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

4

15.     The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

### **Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1] | Case No. 22-10910 (___) |
| Debtor. | |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION
EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE
EMPLOYEE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS
AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession
(the "Debtor") for entry of a final order (this "Final Order"), (a) authorizing the Debtor to (i) pay
certain prepetition employee wages, salaries, other compensation, and reimbursable employee
expenses; and (ii) continue employee benefits programs on an uninterrupted basis, including
payment of certain prepetition obligations related thereto; and (b) granting related relief, all as
more fully set forth in the Motion; and upon the First Day Declaration; and this Court having
jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing
Order of Reference from the United States District Court for the Southern District of New York*,
dated January 31, 2012; and this Court having the power to enter a final order consistent with
Article III of the United States Constitution; and this Court having found that venue of this
proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and
this Court having found that the relief requested in the Motion is in the best interests of the Debtor's
estate, its creditors, and other parties in interest; and this Court having found that the Debtor's

---

[1]   The last four digits of the Debtor's federal tax identification number are 6792.  The Debtor's mailing address is
250 Bradhurst Avenue, New York, New York 10039.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtor is authorized, but not directed, to continue and/or modify, change, or discontinue the Employee Compensation and Benefits Programs all in accordance with historical practice and to honor and pay, on an uninterrupted basis and in accordance with the Debtor's prepetition policies and prepetition practices, any obligations on account of the Employee Compensation and Benefits Programs, irrespective of whether such obligations arose prepetition or postpetition.

3.      Nothing in this Order shall be deemed to authorize the payment of any prepetition Unpaid Compensation amounts above the Priority Cap.

4.      Nothing in this Order shall authorize the Debtor to make any payments to or on behalf of "insiders" (as defined by section 101(31) of the Bankruptcy Code) that would be subject to section 503(c) of the Bankruptcy Code; provided that nothing herein shall prejudice the Debtor's ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

5.      Pursuant to section 362(d) of the Bankruptcy Code, (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtor is authorized to pay all

prepetition amounts relating thereto on an uninterrupted basis and (b) the notice requirements

pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) of this paragraph are waived.

This modification of the automatic stay pertains solely to claims under the Workers' Compensation

Program and any such claims must be pursued in accordance with the applicable Workers'

Compensation Program.  Payment on account of any recoveries obtained in connection with a

claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable

Workers' Compensation Program, including with regard to any policy limits or caps.

6.     Notwithstanding the relief granted in this Final Order and any actions taken

pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the

validity of any prepetition claim against the Debtor; (b) a waiver of the Debtor's or any other party

in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to

pay any prepetition claim; (d) an implication or admission that any particular claim is of a type

specified or defined in this Final Order or the Motion or a finding that any particular claim is an

administrative expense or other priority claim; (e) a request or authorization to assume any

prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a

waiver or limitation of the rights of any party in interest under the Bankruptcy Code or any other

applicable law; or (g) a concession by the Debtor that any liens (contractual, common law,

statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in

interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all

such liens.

7.     The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, whether such checks or other requests were submitted prior to, or after, the petition date, underlined provided that sufficient funds are on deposit and standing in the Debtor's credit in the applicable bank accounts to cover such payments, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtor's instructions.

8.      The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this chapter 11 case with respect to prepetition amounts owed in connection with the relief granted herein.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding the possible applicability of  Bankruptcy Rules 6004(a) and 6004(h) or otherwise, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

11.     The requirements set forth in Local Rule 9013-1(a) are satisfied.

12.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

4

13.    The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE