**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]

Debtor.

Chapter 11

Case No. 22-10910 (SHL)

## NOTICE OF FILING OF FURTHER REVISED FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF MADISON SQUARE BOYS & GIRLS CLUB, INC.

**PLEASE TAKE NOTICE** that on April 12, 2023, the above-captioned debtor and debtor in possession (the "Debtor") filed the *Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.* [Docket No. 427] with the United States Bankruptcy Court for the Southern District of New York (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on April 28, 2023, the Debtor filed the solicitation version of the *Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.* [Docket No. 465].

**PLEASE TAKE FURTHER NOTICE** that on June 9, 2023, the Debtor filed the *First Amended Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.* [Docket No. 515].

**PLEASE TAKE FURTHER NOTICE** that on June 19, 2023, the Debtor filed the revised *First Amended Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.* [Docket No. 525] (the "Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that the Debtor hereby files a further revised version of the *First Amended Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.*, attached hereto as **Exhibit A** (the "Revised Amended Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that a blackline reflecting a comparison of the Revised Amended Plan to the Amended Plan is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that the Revised Amended Plan remains subject to continuing negotiations and review by the Debtor and other parties in interest. The Debtor reserves all rights to amend, modify, or supplement the Revised Amended Plan. To the extent that

---

[1]    The last four digits of the Debtor's federal tax identification number are 6792. The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Revised Amended Plan.

the Debtor makes further revisions to the Revised Amended Plan prior to the Confirmation Hearing, the Debtor will file or present further blacklined copies of such revised documents to the Court prior to or at the Confirmation Hearing.

New York, New York
Dated:  July 21, 2023

/s/ John T. Weber

Alan W. Kornberg, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
Leslie E. Liberman, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
akornberg@paulweiss.com
wclareman@paulweiss.com
jweber@paulweiss.com
lliberman@paulweiss.com

*Counsel to the Debtor and Debtor in Possession*

## Exhibit A

## Revised Amended Plan

Alan W. Kornberg, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
Leslie E. Liberman, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. 22-10910 (SHL) |

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**OF MADISON SQUARE BOYS & GIRLS CLUB, INC.**

---

[1]    The last four digits of the Debtor's federal tax identification number are 6792.  The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION AND OTHER REFERENCES .........................1
    A.     Defined Terms.................................................................................................................1
    B.     Rules of Interpretation..................................................................................................21
    C.     Computation of Time....................................................................................................22
    D.     Governing Laws............................................................................................................22
    E.     Reference to Monetary Figures.....................................................................................22
    F.     Reference to the Debtor or the Reorganized Debtor......................................................22
    G.     Controlling Document...................................................................................................22

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS...................................................23
    A.     Administrative Claim.....................................................................................................23
    B.     Professional Fee Claims................................................................................................24
    C.     Priority Tax Claims.......................................................................................................25
    D.     DIP Claims...................................................................................................................25
    E.     Payment of Statutory Fees............................................................................................25

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND NOT-FOR-PROFIT
          MEMBERSHIP INTERESTS.........................................................................................26
    A.     Classification and Treatment of Claims and Not-for-Profit Membership Interests.......................26
    B.     Treatment of Claims and Not-for-Profit Membership Interests.....................................27
    C.     Acceptance or Rejection of the Plan.............................................................................30
    D.     Confirmation Pursuant to Section 1129(a)(10) of the Bankruptcy Code........................31
    E.     Special Provision Governing Unimpaired Claims or Reinstated Claims.........................31
    F.     Relative Rights and Priorities; Subordinated Claims.....................................................31

ARTICLE IV. COMPENSATION TRUST........................................................................................32
    A.     Establishment of the Compensation Trust.....................................................................32
    B.     Purposes of the Compensation Trust.............................................................................32
    C.     Compensation Trustee..................................................................................................32
    D.     Transfer of Compensation Trust Assets to the Compensation Trust; Insurance
           Assignment...................................................................................................................33
    E.     Compensation Trust Causes of Action..........................................................................34
    F.     Trust Allocation Protocol.............................................................................................35
    G.     Indirect Abuse Claim Treatment...................................................................................35
    H.     Post-Effective Date Settling Insurance Companies........................................................37
    I.     Compensation Trust Expenses......................................................................................37
    J.     Reimbursement by Compensation Trust........................................................................37
    K.     Assignment of Claims and Defenses.............................................................................38
    L.     Abuse Insurance Companies' Rights..............................................................................38
    M.     Investment Guidelines..................................................................................................39
    N.     Excess Compensation Trust Assets...............................................................................39
    O.     No Liability..................................................................................................................39
    P.     U.S. Federal Income Tax Treatment of the Compensation Trust....................................40
    Q.     Institution and Maintenance of Legal and Other Proceedings........................................41
    R.     Compensation Trust Discovery.....................................................................................41
    S.     Notation on Claims Register Regarding Abuse Claims..................................................41

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN...........................................................41
    A.     Compromise and Settlement of Claims, Not-For-Profit Membership Interests and
           Controversies...............................................................................................................41
    B.     Committee Settlement...................................................................................................42

C.     Restructuring Transactions...................................................................................46
D.     Sources of Consideration for Plan Distributions ...................................................47
E.     GUC Cash Pool......................................................................................................47
F.     Corporate Existence...............................................................................................47
G.     Directors and Officers ...........................................................................................47
H.     Vesting of Assets in the Reorganized Debtor ........................................................48
I.     Due Authorization..................................................................................................48
J.     Reinstatement of Interests......................................................................................49
K.     New Organizational Documents.............................................................................49
L.     Effectuating Documents; Further Transactions......................................................49
M.     Exemption from Certain Taxes and Fees ...............................................................49
N.     Insured Claims .......................................................................................................50
O.     Preservation of Causes of Action...........................................................................50
P.     Insurance Policies ..................................................................................................50
Q.     Director and Officer Liability Insurance................................................................51
R.     Termination of Forbearance Agreement; Waiver of Defaults; Assumption Ratification,
       Reaffirmation and Reinstatement of NMTC Documents and Waiver of Discharge and
       Discharge Injunction with Respect Thereto ...........................................................51
S.     Employee Arrangements of the Reorganized Debtor..............................................52
T.     Notice of Effective Date.........................................................................................53
U.     Rockefeller Cooperation.........................................................................................53

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.............53
A.     Assumption of Executory Contracts and Unexpired Leases....................................53
B.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ............54
C.     Payments Related to Assumption of Executory Contracts and Unexpired Leases....55
D.     Director and Officer Liability Insurance.................................................................55
E.     Indemnification Obligations....................................................................................56
F.     Modifications, Amendments, Supplements, Restatements or Other Agreements.......56
G.     Contracts and Leases Entered into after the Petition Date.......................................56
H.     Reservation of Rights..............................................................................................56
I.     Nonoccurrence of Effective Date ...........................................................................57

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
       DISPUTED CLAIMS...........................................................................................57
A.     Allowance of Claims ..............................................................................................57
B.     Claims Administration Responsibilities..................................................................58
C.     Estimation of Claims ..............................................................................................58
D.     Adjustment to Claims Without Objection................................................................58
E.     Time to File Objections to Claims ..........................................................................58
F.     Disallowance of Claims..........................................................................................58
G.     No Distributions Pending Allowance......................................................................59
H.     Distributions After Allowance................................................................................59
I.     Single Satisfaction Rule .........................................................................................59

ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS.....................................................59
A.     Timing and Calculation of Amounts to Be Distributed...........................................59
B.     Disbursing Agent....................................................................................................60
C.     Rights and Powers of Disbursing Agent.................................................................60
D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions ..............60
E.     Compliance with Tax Requirements........................................................................61
F.     No Postpetition Interest on Claims..........................................................................62
G.     Foreign Currency Exchange Rate............................................................................62
H.     Setoffs and Recoupment.........................................................................................62
I.     Claims Paid or Payable by Third Parties.................................................................62
J.     Distributions after Effective Date...........................................................................63

ARTICLE IX. RELEASE, INJUNCTION AND RELATED PROVISIONS.................................63
    A.     Discharge of Claims.................................................................................63
    B.     Channeling Injunction..............................................................................65
    C.     Provisions Relating to Channeling Injunctions.........................................68
    D.     Release of Liens.......................................................................................69
    E.     Exculpation..............................................................................................69
    F.     Injunctions Related to Exculpation...........................................................69
    G.     Qualified Immunity..................................................................................70
    H.     Reservation of Rights...............................................................................71
    I.     Protection against Discriminatory Treatment.............................................71
    J.     Release of Preference Actions...................................................................71

ARTICLE X. INSURANCE PROVISIONS....................................................................71

ARTICLE XI. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...............73
    A.     Conditions Precedent to Confirmation of the Plan.....................................73
    B.     Conditions Precedent to the Effective Date...............................................75
    C.     Waiver of Conditions................................................................................76
    D.     Effect of Failure of a Condition................................................................76

ARTICLE XII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN................77
    A.     Modification and Amendments..................................................................77
    B.     Effect of Confirmation on Modifications...................................................77
    C.     Revocation or Withdrawal of The Plan......................................................77

ARTICLE XIII. RETENTION OF JURISDICTION...........................................................77

ARTICLE XIV. MISCELLANEOUS PROVISIONS ..........................................................80
    A.     Immediate Binding Effect.........................................................................80
    B.     Additional Documents...............................................................................81
    C.     Reservation of Rights...............................................................................81
    D.     Successors and Assigns.............................................................................81
    E.     Service of Documents...............................................................................82
    F.     Term of Injunctions or Stays.....................................................................83
    G.     Entire Agreement......................................................................................83
    H.     Exhibits....................................................................................................83
    I.     Deemed Acts.............................................................................................83
    J.     Non-Severability of Plan Provisions.........................................................83
    K.     Votes Solicited in Good Faith....................................................................84
    L.     No Waiver or Estoppel..............................................................................84
    M.     Dissolution of the Committee....................................................................84
    N.     Closing of Chapter 11 Case.......................................................................84

**<u>Exhibit A</u>** – Abuse Insurance Policies

**<u>Exhibit B</u>** – Trust Allocation Protocol

**<u>Exhibit C</u>** – Notice of Intent to Pursue Abuse Claims

## INTRODUCTION

Madison Square Boys & Girls Club, Inc., the non-profit corporation that is the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, hereby proposes this plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.A.

The Plan provides for, among other things, the resolution of Abuse Claims against the Debtor. The Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, charitable mission, operations, projections for those operations, risk factors, and certain related matters. The Disclosure Statement also provides a summary and analysis of the Plan.

**YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN WITH CARE IN EVALUATING HOW THE PLAN WILL AFFECT YOUR CLAIM(S) BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
## DEFINED TERMS, RULES OF
## INTERPRETATION AND OTHER REFERENCES

### A. *Defined Terms*

As used in the Plan or the Confirmation Order, capitalized terms have the meanings set forth below. Any term used in the Plan that is not defined herein or in the Confirmation Order, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    "Abuse" means any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological or emotional harm to the child or non-consenting adult.

2.    "Abuse Claim" means any liquidated or unliquidated Claim against the Debtor or other Covered Party based upon, resulting from, or arising from, in whole or in part, any Abuse that occurred prior to the Petition Date, including such Claims that may be covered by the Victims Act, the Adult Survivors Act, the Victims of Gender-Motivated Violence Protection Act, and any other similar statutes. For the avoidance of doubt, an "Abuse Claim" (a) includes Direct Abuse Claims and Indirect Abuse Claims

(including any Rockefeller Contribution Claim), and (b) excludes any other Claim against the BGCA, Rockefeller, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

3.      "Abuse Claim Equal Share Distribution" means the equal distribution to be made to each Holder of a Direct Abuse Claim from the proceeds of the Compensation Trust Assets in accordance with the Trust Allocation Protocol.

4.      "Abuse Insurance Companies" means Insurance Companies that issued Abuse Insurance Policies.

5.      "Abuse Insurance Policies" means any Insurance Policies (whether issued by Settling or Non-Settling Insurance Companies) which provide or may provide Insurance Coverage for any Abuse Claim, including, but not limited to those Abuse Insurance Policies identified on **Exhibit A** hereto.

6.      "Administrative Claim" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) the Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code; *provided*, *however*, that the foregoing clauses (a) through (c) shall not be interpreted as enlarging the scope of sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code.

7.      "Administrative Claims Bar Date" means the deadline for Filing proofs or requests for payment of Administrative Claims, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to Professional Fee Claims, which shall be subject to the provisions of Article II.B hereof.

8.      "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

9.      "Allowed" means, with reference to any Claim, other than an Abuse Claim (except to the extent set forth in Article III.B.4), except as otherwise provided herein: (a) a Claim in a liquidated amount as to which no objection has been Filed prior to the applicable claims objection deadline and that is evidenced by a Proof of Claim Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim that is scheduled by the Debtor on the Schedules as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been Filed in an unliquidated or a different amount; (c) a Claim that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Code, (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the Debtor had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided* that with respect to a Claim described in clauses (a)

through (c) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such objection is so interposed, such Claim shall have been Allowed by a Final Order; *provided*, *further*, that no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been Filed (except to the extent otherwise Allowed pursuant to clause (c) above), is not considered Allowed and shall be deemed expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Code.

10. "<u>Amended Child Safety Policies</u>" has the meaning set forth in <u>Article V.B.7</u>.

11. "<u>Assumption Dispute</u>" means an unresolved objection regarding assumption, Cure Amount, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or other issues relating to the assumption of any Executory Contracts and Unexpired Leases.

12. "<u>Avoidance Actions</u>" means any and all Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related state or federal statutes and common law.

13. "<u>Ballots</u>" means the ballots accompanying the Solicitation Materials upon which Holders of Impaired Claims entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the procedures governing the solicitation.

14. "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as may be amended from time to time.

15. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of New York, or any other court having jurisdiction over the Chapter 11 Case, including to the extent of any withdrawal of the reference under section 157(d) of the Judicial Code, the United States District Court for the Southern District of New York.

16. "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

17. "<u>Bar Date Order</u>" means the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on August 12, 2022, at Docket No. 126.

18.     "BGCA" means the Boys & Girls Clubs of America, a federally chartered national organization and its affiliates, subsidiaries or related Entities and individuals. For the avoidance of doubt, the BGCA shall exclude the Debtor, the Reorganized Debtor, the Non-Debtor Affiliate, Madison Square Boys & Girls Club Foundation and any of the Representatives of the Debtor, the Reorganized Debtor, the Non-Debtor Affiliate, and Madison Square Boys & Girls Club Foundation.

19.     "BGCA Global Settlement" has the meaning set forth in the Trust Allocation Protocol.

20.     "Board" means, as applicable, the board of directors for the Debtor or the Reorganized Debtor.

21.     "Broker" means Cushman & Wakefield, or such other broker as the Debtor or Reorganized Debtor, as applicable, may select in consultation with the Committee or Compensation Trustee, as applicable.

22.     "Business Day" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)), or other day on which commercial banks are authorized to close under the laws of, or are in fact closed in, the state of New York.

23.     "Cash" means the legal tender of the United States of America or the equivalent thereof, including cash, cash equivalents, bank deposits and checks.

24.     "Cash Contribution" means $2,225,000 in Cash, which shall be contributed by the Debtor or the Reorganized Debtor, as applicable, to the Compensation Trust on the Effective Date.

25.     "Cause of Action" means any Claims, causes of action, suits, demands, actions, obligations, liabilities, cross-claims, counterclaims, defenses, offsets, setoffs, third-party claims action for indemnity or action for contribution or otherwise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, reduced to judgment or not reduced to judgment, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any theories of veil piercing, alter ego, or joint or several liability), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal tort, contract, or securities laws), federal or state, For the avoidance of doubt, Causes of Action include (a) any rights of setoff, counterclaim, or recoupment and any Claims for breach of contract or for breach of duties imposed by law or in equity, (b) the rights to object to Claims, (c) any Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any Claims or defenses including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions or state law fraudulent transfer claims.

26.     "Channeling Injunction" means the permanent injunction provided for in Article IX.B of the Plan with respect to Abuse Claims against Covered Parties.

27.     "Chapter 11 Case" means the chapter 11 case pending for the Debtor under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

28.     "Claim" means a claim, as that term is defined in section 101(5) of the Bankruptcy Code.

29.     "Claims Bar Date" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order, (b) a Final Order of the Bankruptcy Court, or (c) the Plan.

30.     "Claims Objection Deadline" means the deadline for objecting to a Claim asserted against the Debtor, which shall be on the date that is the later of: (a)(i) with respect to Administrative Claims (other than Professional Fee Claims), 75 days after the Administrative Claims Bar Date or (ii) with respect to all other Claims (other than Professional Fee Claims), 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtor or the Reorganized Debtor, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims; *provided, however*, that the Claims Objection Deadline shall not apply to Abuse Claims, which shall be administered exclusively in accordance with the Compensation Trust Documents.

31.     "Claims Register" means the official register of Claims against the Debtor maintained by the Notice and Claims Agent.

32.     "Class" means a category of Holders of Claims or Not-for-Profit Membership Interests under sections 1122(a) and 1123(a)(1) of the Bankruptcy Code as set forth in Article III of the Plan.

33.     "Commitment Letter" means that certain Commitment Letter dated November 14, 2022 between the Debtor and the DIP-to-Exit Lender, as amended and in effect from time to time.

34.     "Committee" means the official committee of unsecured creditors appointed in this Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 53], as may be reconstituted from time to time.

35.     "Committee Settlement" means the settlement between the Debtor and the Committee that is implemented pursuant to the terms of the Plan.

36.     "Compensation Trust" means the trust established on the Effective Date that is organized under the laws of the state of New York and established pursuant to Article IV hereof and the Compensation Trust Agreement for the purposes set forth therein, including assuming liability for all Abuse Claims, holding, preserving, maximizing, and administering the Compensation Trust Assets, and directing the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Compensation Trust Documents.

37.     "Compensation Trust Agreement" means the Compensation Trust Agreement dated as of the Effective Date, as the same may be amended or modified from

time to time in accordance with the terms thereof, which shall be included in the Plan Supplement and in form and substance acceptable to the Debtor and the Committee.

38.    "Compensation Trust Assets" means the following property and any income, profits and proceeds realized, received or derived from such property subsequent to the transfer of such property to the Compensation Trust: (a) the Compensation Trust Contribution; (b) any and all funds, proceeds or other consideration contributed to the Compensation Trust under the terms of any Insurance Settlement Agreement; and (c) any and all funds, proceeds or other consideration contributed to the Compensation Trust under the terms of any Third-Party Trust Contribution.

39.    "Compensation Trust Causes of Action" means any Cause of Action held by the Debtor or other Covered Party that is not otherwise expressly released under the Plan or the Restructuring Documents, in each case solely attributable to: (a) all defenses to any Abuse Claim, including all defenses under section 502 of the Bankruptcy Code; (b) with respect to Abuse Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by applicable non-bankruptcy Law) and any other indirect Claim of any kind whatsoever, whenever and wherever arising or asserted; (c) any other Causes of Action with respect to Abuse Claims that the Debtor or other Covered Party would have had under applicable Law if the Chapter 11 Case had not occurred and the Holder of such Abuse Claim had asserted such Cause of Action by initiating civil litigation against the Debtor or other Covered Party (including any Causes of Action against co-defendants); (d) the Insurance Actions; and (e) any Cause of Action of the Debtor or other Covered Party under the Laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to any payments made by the Debtor or other Covered Party on account of Abuse Claims on or before the Effective Date, except for any Claim or Cause of Action against Rockefeller, as set forth in Article I.A.39(z) herein.  For the avoidance of doubt, Compensation Trust Causes of Action shall not include (x) the Retained Causes of Action, (y) any Claim or Cause of Action by any Abuse Insurance Company against its reinsurers or retrocessionaires, in their capacities as such, and (z) any Claim or Cause of Action against Rockefeller or any other Person or Entity that is released pursuant to the Madison/RU 9019 Order.

40.    "Compensation Trust Contribution" means, collectively, (a) the Cash Contribution; (b) the Compensation Trust Note; (c) the Navy Yard Net Proceeds; (d) the Excess Exit Cash; (e) the Madison Damages Claims Proceeds; (f) the Compensation Trust Causes of Action; and (g) the Insurance Assignment.

41.    "Compensation Trust Documents" means, collectively, (a) the Compensation Trust Agreement, (b) the Trust Allocation Protocol, (c) the Confirmation Order, and (d) any other agreements, instruments and documents governing the establishment, administration and operation of the Compensation Trust, which shall be substantially in the forms included in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof, and which shall be in form and substance acceptable to the Debtor and the Committee.

6

42.    "Compensation Trust Expenses" means any liabilities, costs, or expenses of, or imposed upon, or in respect of, the Compensation Trust once established (except for payments to Holders of Abuse Claims on account of such Claims). Compensation Trust Expenses shall also expressly include: (a) any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Compensation Trust Assets (including, without limitation, the prosecution of any Compensation Trust Causes of Action), in each case whether or not any such action results in a recovery for the Compensation Trust; and (b) the reasonable documented costs and expenses incurred by the Reorganized Debtor in taking any action on behalf of or at the direction of the Compensation Trust, if any, including, without limitation, any costs and expenses incurred by the Reorganized Debtor, in being named as a defendant in any Compensation Trust Cause of Action.

43.    "Compensation Trust Note" means the unsecured, interest-bearing promissory note in form and substance acceptable to the Committee, which shall be substantially in the form included in the Plan Supplement, in the principal amount of $5,400,000, to be issued by the Reorganized Debtor to the Compensation Trust on the Effective Date, which shall accrue interest at a rate of 8.0% per annum, payable semi-annually, and mature on the fifth anniversary of the Effective Date, with principal payable in annual installments due on each anniversary of the Effective Date commencing on the first anniversary as follows: (a) 10% due on the first anniversary, (b) 15% due on the second anniversary, (c) 20% due on the third anniversary, (d) 25% due on the fourth anniversary, and (e) the remaining principal balance due on the fifth anniversary.

44.    "Compensation Trustee" means Alan D. Halperin in his capacity as the trustee of the Compensation Trust.

45.    "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

46.    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

47.    "Confirmation Hearing" means the hearing(s) to be held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

48.    "Confirmation Order" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement and Solicitation Materials, which order shall be in form and substance acceptable to the Debtor and reasonably acceptable to the Committee.

49.    "Consummation" means the occurrence of the Effective Date.

50.    "Contribution Claims" has the meaning set forth in Article IX.C.5 of the Plan.

51.    "Covered Parties" means the following Persons, as may be supplemented by a further order of the Bankruptcy Court: (a) the Debtor; (b) the Reorganized Debtor; and (c) all of such Persons' Representatives; *provided*, *however*, that no Perpetrator is or shall be a Covered Party; *provided*, *further*, that neither the BGCA nor Rockefeller is or shall be a Covered Party.  Notwithstanding the foregoing, a Settling Insurance Company (if any) and the BGCA may each seek to be deemed a Covered Party pursuant to a further order of the Bankruptcy Court solely to the extent the applicable conditions set forth in Article IV.H or Article IX.B of the Plan, as applicable, and the Trust Allocation Protocol are satisfied with respect to a Settling Insurance Company (if any) or the BGCA, respectively.

52.    "Cure" means the payment or satisfaction of a Claim (unless waived or modified by the applicable counterparty) based on the Debtor's defaults under any Executory Contracts or Unexpired Leases assumed or assumed and assigned by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

53.    "Cure Amount" means the monetary amount of any Cure Claim.

54.    "Cure Claim" means any Claim based upon the Debtor's obligation to Cure defaults under any Executory Contracts or Unexpired Leases if such contract or lease is assumed or assumed and assigned by the Debtor pursuant to section 365 of the Bankruptcy Code.

55.    "Cure Notice" means the notice of the proposed Cure Amount provided to counterparties to assumed or assumed and assigned Executory Contracts or Unexpired Leases pursuant to Article VI.B of the Plan.

56.    "D&O Liability Insurance Policy" means any Insurance Policy issued at any time to, or providing coverage to or for the benefit of, any of the Debtor or any of the Debtor's current or former directors, members, trustees or officers for liability in such current or former directors', members', trustees', or officers' capacity as such, and all agreements, documents or instruments relating thereto in effect immediately prior to the Effective Date.

57.    "Debtor" has the meaning set forth in the preamble of the Plan.

58.    "Deceased and/or Missing Abuse Claimants" means the Holders of the Direct Abuse Claims asserted in the following Proofs of Claim: (a) Proof of Claim No. 0000060025; (b) Proof of Claim No. 0000060030; (c) Proof of Claim No. 0000060079; (d) Proof of Claim No. 0000060080; (e) Proof of Claim No. 0000060104; (f) Proof of Claim No. 0000060120, and (g) Proof of Claim No. 0000010003, including each such Holder's respective heir, executor or estate representative with proper legal authority to act on behalf of the applicable Deceased and/or Missing Abuse Claimant, in each case solely in its capacity as such.

59.    "DIP Claim" means any Claim against the Debtor arising under, derived from, secured by, based on, or related to the DIP Facility Documents solely to the extent such Claim arises prior to the Effective Date.

60. "<u>DIP Credit Agreement</u>" means the super-priority senior secured debtor-in-possession credit agreement between the Debtor and the DIP-to-Exit Lender.

61. "<u>DIP Facility</u>" means the super-priority senior secured debtor-in-possession term loan credit facility, with a principal amount of up to $11,000,000, made available to the Debtor pursuant to the DIP Credit Agreement and the DIP Order.

62. "<u>DIP Facility Documents</u>" means the DIP Credit Agreement and all other loan documentation related thereto.

63. "<u>DIP Order</u>" means the *Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* entered November 10, 2022 [Docket No. 283], as such order may be amended from time to time.

64. "<u>DIP-to-Exit Lender</u>" means Carver Federal Savings Bank and any other lender under the DIP Facility Documents and/or the Exit Facility Documents, as applicable.

65. "<u>Direct Abuse Claim</u>" means an Abuse Claim that is not an Indirect Abuse Claim.

66. "<u>Direct Abuse Claim Discovery</u>" means all documents that are reasonably necessary to defend against Abuse Claims, comply with the Debtor's obligations under the Abuse Insurance Policies, and respond to discovery from plaintiffs asserting Abuse Claims, which documents shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate. For the avoidance of doubt, nothing in this provision operates as a waiver or modification of any of the Debtor's obligations under any Abuse Insurance Policy or a waiver of any privileges or doctrines, or objections to relevancy or admissibility of any discovery sought by plaintiffs asserting Abuse Claims.

67. "<u>Disallowed</u>" means any Claim, or any portion thereof, that (a) has been disallowed by a Final Order or a settlement, (b) is scheduled on the Schedules at zero or as contingent, Disputed, or unliquidated and as to which a Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable Law, (c) is not scheduled on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable Law, or (d) that is not Allowed. The term "Disallowed" shall not apply to Abuse Claims, except as specifically identified in <u>Article VII</u> of the Plan.

68. "<u>Disbursing Agent</u>" means the Debtor, the Reorganized Debtor or any Entity selected by the Debtor or the Reorganized Debtor as a disbursing agent under <u>Article VIII</u> of the Plan that acts in such capacity to make distributions pursuant to the Plan.

69.    "Discharge Injunction" has the meaning set forth in Article IX.A.2 of the Plan.

70.    "Disclosure Statement" means the *Disclosure Statement for the Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.*, dated as of April 12, 2023, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

71.    "Disclosure Statement Order" means any Order entered by the Bankruptcy Court conditionally approving the Disclosure Statement and Solicitation Materials and authorizing Debtor to solicit the Plan and/or the Confirmation Order, which Order shall be in form and substance acceptable to the Debtor and reasonably acceptable to the Committee.

72.    "Disputed" means any Claim or any portion thereof (a) that is not Allowed or Disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; (b) that is otherwise disputed by any of the Debtor or the Reorganized Debtor or for which any of the Debtor or the Reorganized Debtor has made a request for estimation in accordance with applicable Law or contract, which dispute has not been withdrawn, resolved, or overruled by a Final Order; or (c) to which the Debtor or any party-in-interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  The term "Disputed" shall not apply to Abuse Claims.

73.    Distribution Record Date" means the date for determining which Holders of Allowed Claims and Allowed Not-for-Profit Membership Interests are eligible to receive distributions under the Plan, which shall be (a) the date the Bankruptcy Court enters the Confirmation Order or (b) such other date as designated by an Order of the Bankruptcy Court or as determined by the Debtor or the Reorganized Debtor.

74.    "Effective Date" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article XI.B of the Plan have been (a) satisfied or (b) waived in accordance with Article XI.C of the Plan.

75.    "Encumbrance" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation (for the avoidance of doubt, an Insurance Coverage Defense is not an Encumbrance).

76.     "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

77.     "Estate" means the estate created for the Debtor pursuant to section 541 of the Bankruptcy Code upon the commencement of its Chapter 11 Case.

78.     "Excess Exit Cash" means Cash paid from the proceeds of the Exit Facility in an amount equal to 100% of the unused cash proceeds from the DIP Facility after taking into account all payments the Debtor is required to make in connection with the Effective Date pursuant to the Plan or as may be required by law.

79.     "Exculpated Parties" means, collectively, and in each case in its capacity as such:  (a) the Debtor; (b) the Committee; (c) the members of the Committee in their capacities as such; and (d) with respect to each of the foregoing Persons in clauses (a) through (c), only such Entity or Person's Representatives, in each case in their capacity as such who served as estate fiduciaries in the Chapter 11 Case.

80.     "Executory Contract" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

81.     "Exit Facility" means the converted DIP Facility in accordance with the terms and conditions set forth in the DIP Facility Documents, the Exit Facility Documents, and the Commitment Letter. In accordance with Article II.D of the Plan, all DIP Claims shall be deemed Allowed as of the Effective Date, and each Holder of an Allowed DIP Claim shall receive its pro rata share of the Exit Facility in accordance with the DIP Facility Documents and the Exit Facility Documents and as set forth in more detail in Article II.D of the Plan.

82.     "Exit Facility Documents" means the credit agreement and other loan documentation governing the Exit Facility, which, in each case, shall be in form and substance acceptable to the Debtor or the Reorganized Debtor, as applicable, in consultation with the Committee, and the DIP-to-Exit Lender.

83.     "Federal Judgment Rate" means the post-judgment interest rate in effect as of the Petition Date established by Section 1961(a) of title 28 of the United States Code.

84.     "File," "Filed," or "Filing" means file, filed or filing in the Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

85.     "Final Order" means an order entered by the Bankruptcy Court or other court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has expired and no appeal, motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing is

pending or (b) as to which an appeal has been taken, a motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing has been filed and (i) such appeal, motion for leave to appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which leave to appeal, certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal (in the event leave is granted) further or seek leave to appeal, certiorari, further review, reargument, stay, or rehearing has expired and no such appeal, motion for leave to appeal, or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, that may be Filed relating to such Order, shall not cause an Order not to be a Final Order.

86.   "Forbearance Agreement" means that certain Forbearance Agreement, dated as of June 29, 2022, as amended and modified from time to time, including, without limitation, by agreements and/or electronic mail dated September 29, 2022, October 12, 2022, October 21, 2022, November 4, 2022, November 11, 2022, January 12, 2023, and February 22, 2023, by and among the Debtor, the Non-Debtor Affiliate and the NMTC Transaction Lender/Equity Parties, as the same may be further extended with the consent of the NMTC Transaction Lender/Equity Parties.

87.   "General Unsecured Claim" means any unsecured Claim against the Debtor that is not (a) paid in full prior to the Effective Date pursuant to an Order of the Bankruptcy Court, (b) an Administrative Claim, (c) a DIP Claim, (d) a Priority Tax Claim, (e) an Other Priority Claim, (f) an Other Secured Claim, or (g) an Abuse Claim. For the avoidance of doubt, a "General Unsecured Claim" includes (y) any Rockefeller GUC Claim and (z) any Claim arising under any Abuse Insurance Policy for deductibles, self-insured retentions, retrospective premium adjustments, or other charges (if any) with respect to the Abuse Insurance Policies, as obligated under applicable Law.

88.   "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

89.   "GUC Cash Pool" means Cash in the aggregate amount of $300,000 for the purposes of making distributions to Holders of Allowed General Unsecured Claims.

90.   "GUC Disbursement Date" means the earliest date upon which all Disputed General Unsecured Claims are either Allowed or Disallowed.

91.   "Holder" means any Entity holding a Claim against or Not-For-Profit Membership Interest in the Debtor.

92.   "Impaired" means, with respect to a Claim or a Class of Claims, a Claim or a Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

93.   "Indirect Abuse Claim" means a liquidated or unliquidated Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant

jurisdiction) arising from an Abuse Claim, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, or contract. Indirect Abuse Claims shall include the Rockefeller Contribution Claim but shall not include the Rockefeller GUC Claim.

94.    "Insurance Action" means any Claim, Cause of Action, or right of the Debtor or another Covered Party, excluding a Settling Insurance Company, under the laws of any jurisdiction, whether sounding in contract, tort, or otherwise (including equity and bad faith) against any Non-Settling Insurance Company, arising from or related to: (a) any such Non-Settling Insurance Company's failure to provide coverage or otherwise pay under Abuse Insurance Coverage; (b) any conduct by any Non-Settling Insurance Company constituting "bad faith" conduct that could give rise to extra-contractual damages, or other wrongful conduct under applicable Law; (c) the refusal of any Non-Settling Insurance Company to compromise and settle any Abuse Claim under or pursuant to any Abuse Insurance Policy; (d) indemnity and payment of any Abuse Claim; (e) the interpretation or enforcement of the terms of any Abuse Insurance Policy with respect to any Abuse Claim; or (f) any other Claims under, arising out of or relating to an Abuse Insurance Policy or Abuse Insurance Coverage, including the Insurance Coverage Actions. The term "Insurance Action" includes any Claims against a Non-Settling Insurance Company for reimbursement of all unpaid defense costs or related expenses under any Non-Settling Insurance Company's Abuse Insurance Policy incurred by the Debtor; *provided* that the Debtor shall not be required to pay over to the Compensation Trust any reimbursement of defense costs or related expenses received by the Debtor from an Abuse Insurance Company prior to the filing of the *Mediator's Report* [Docket No. 329] on December 28, 2022. For the avoidance of doubt, no Claim, Cause of Action, or right of the Debtor or another Covered Party, excluding a Settling Insurance Company, against any Settling Insurance Company shall be deemed an Insurance Action.

95.    "Insurance Assignment" means the assignment and transfer to the Compensation Trust of (a) the Insurance Actions, (b) the Insurance Recoveries, (c) the Insurance Settlement Agreements (if any), and (d) all rights, Claims, interests, benefits, responsibilities and obligations of the Debtor subject to applicable Law under or with respect to the Abuse Insurance Policies (but not the policies themselves) and the proceeds thereof.

96.    "Insurance Company" means any insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.

97.    "Insurance Coverage" means insurance available under any Abuse Insurance Policy, whether known or unknown to the Debtor or the Committee, to indemnify and/or defend all or any part of an Abuse Claim asserted against (a) the Debtor and/or (b) a Covered Party.

98.    "Insurance Coverage Defense" means, subject to Article XII, all rights and defenses that any Insurance Company may have under any Abuse Insurance Policy and applicable Law with respect to a Claim seeking insurance coverage or to an Insurance Action, but Insurance Coverage Defenses do not include any defense that the Plan or any of the other Restructuring Documents do not comply with the Bankruptcy Code. Upon entry of the Confirmation Order in the Chapter 11 Case determining that the Insurance Assignment is authorized to the extent provided in Article X, an Insurance Coverage Defense shall not include any defense that the Insurance Assignment is prohibited by the Abuse Insurance Policies or applicable non-bankruptcy law (except to the extent provided in Article X).

99.    "Insurance Policy" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Petition Date naming Debtor, or any predecessor, subsidiary, or past or present Affiliate of the Debtor, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtor, any insurance coverage, including, without limitation, the Abuse Insurance Policies. For the avoidance of doubt, the term "Insurance Policy" as used herein has no legal effect as to whether or not secondary evidence of coverage constitutes the existence of an insurance policy.

100.    "Insurance Recoveries" means the rights to any proceeds, including any interest or income earned thereon, and other relief, from (a) any award, judgment, relief, or other determination entered or made as to any Insurance Action, including regarding any Causes of Action related to or arising in connection with any Insurance Actions; (b) any amounts payable by an Insurance Company under any settlement agreement with the Debtor, a Covered Party or a Settling Insurance Company regarding Insurance Actions; and (c) any proceeds of any Abuse Insurance Policy payable to the Debtor, a Covered Party or a Settling Insurance Company regarding Insurance Actions; *provided* that Insurance Recoveries shall not include (y) defense costs and related expenses paid to the Debtor by any Insurance Company pursuant to an Abuse Insurance Policy prior to the Effective Date and (z) recoveries of an Abuse Insurance Company under any agreement or contract providing reinsurance to the Abuse Insurance Company.

101.    "Insurance Settlement Agreement" means (a) any settlement agreement entered into after the Petition Date and before the Effective Date by and between (i) any Insurance Company, on the one hand, and (ii) the Debtor, on the other hand, under which an Abuse Insurance Policy and/or the Debtor's rights thereunder with respect to Abuse Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Compensation Trustee, on the other hand, under which an Abuse Insurance Policy that is subject to the Insurance Assignment and/or the Compensation Trustee's rights thereunder with respect to Abuse Claims are released. Prior to the Effective Date, any Insurance Settlement Agreement shall be in form and substance acceptable to the Debtor and the Committee, and after the Effective Date any Insurance Settlement Agreement shall be acceptable to the Compensation Trustee.

102.    "Insurance Settlement Period" has the meaning set forth in Article IV.H of the Plan.

103.    "IRS" means the Internal Revenue Service.

104.    "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

105.    "Law" means any U.S. or non-U.S. law (statutory or common), statute, regulation, rule, code or ordinance enacted, adopted, issued, or promulgated by any Governmental Unit.

106.    "Leverage Loan" means that certain loan made by the Debtor to Harlem Clubhouse Investment Fund, LLC in connection with the NMTC Transaction.

107.    "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

108.    "Madison Damages Claims" means any and all Claims and Causes of Action owned, held, or capable of being asserted by, through, or on behalf of the Debtor or its Estate against Rockefeller arising out of or related to any injuries to, or damages sustained by, the Debtor in connection with the Abuse Claims.

109.    "Madison Damages Claims Proceeds" means cash proceeds in the amount of $150,000 on account of and in full and final settlement of the Madison Damages Claims and all other Claims and Causes of Action released pursuant to the Madison/RU 9019 Order, which proceeds shall be received by the Compensation Trust on the Effective Date in accordance with this Plan and the Madison/RU 9019 Order.

110.    "Madison/RU 9019 Motion" means the *Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order (A) Approving the Settlement Agreement Between the Debtor and The Rockefeller University and (B) Granting Related Relief* [Docket No. 565].

111.    "Madison/RU 9019 Order" means the order entered by the Bankruptcy Court approving the Madison/RU 9019 Motion and authorizing the settlement and releases contemplated thereunder.

112.    "Navy Yard Clubhouse" means the Debtor's clubhouse located at 240 Nassau Street, Brooklyn, New York 11201.

113.    "Navy Yard Insurance Beneficiary" has the meaning set forth in Article V.B.3 of the Plan.

114.    "Navy Yard Net Proceeds" means 100% of proceeds generated from the Navy Yard Transaction, less all closing costs and brokers' fees associated with the Navy Yard Transaction.

115.    "Navy Yard Transaction" means a sale, sale-leaseback, transfer or other monetization transaction of the Navy Yard Clubhouse in accordance with the Committee Settlement.

116.    "New Organizational Documents" means (i) the Debtor's current corporate governance documents to the extent such documents remain unmodified in connection with Consummation, or (ii) to the extent modified in connection with Consummation, the documents providing for corporate governance of the Reorganized Debtor.

117.    "NMTC Documents" means all agreements, guaranties, indemnities, leases, certificates, statements, loans, security documents, promissory notes or any other documents, instruments or agreements of any kind or nature related to the NMTC Transaction as in effect on the Effective Date, excluding the Forbearance Agreement.

118.    "NMTC Transaction" means the transaction under the New Markets Tax Credit Program used to finance the construction of Pinkerton Clubhouse.

119.    "NMTC Transaction Lender/Equity Parties" means NYCNCC SUB-CDE 2, LLC, PNC CDE 74, LP, NFF New Markets Fund XXIX, LLC, Empowerment Reinvestment Fund XXV, LLC, Harlem Clubhouse Investment Fund, LLC and PNC New Markets Investment Partners, LLC, who are parties to certain of the NMTC Documents.

120.    "Non-Debtor Affiliate" means MSBGC-NYC Support Corporation.

121.    "Non-Settling Insurance Company" means any Abuse Insurance Company to the extent it is not a Settling Insurance Company.

122.    "Not-for-Profit Membership Interests" means the not-for-profit interests in the Debtor held by any member of the Debtor in accordance with applicable not-for-profit Law.

123.    "Notice and Claims Agent" means Epiq Corporate Restructuring, LLC, in its capacity as "claims and noticing agent" for the Debtor, and any successor thereto.

124.    "Notice of Intent to Pursue Abuse Claims" means a notice substantially in the form attached hereto as **Exhibit C**, which shall be transmitted to the Debtor, the Compensation Trustee, and Abuse Insurance Companies set forth therein by any Holder of an Abuse Claim seeking to pursue such Abuse Claim after the Effective Date against the Debtor and any other defendant in a court of competent jurisdiction in accordance with the terms of Plan.

125.    "Order" means any judgment, order, award, injunction, writ, permit, license, or decree of any Governmental Unit or arbitrator of applicable jurisdiction, including the Bankruptcy Court.

126.    "Other Priority Claim" means any Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

127.   "<u>Other Secured Claim</u>" means any Secured Claim against the Debtor other than the DIP Claims.

128.   "<u>Perpetrator</u>" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim. The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee, officer, or volunteer of the Debtor.

129.   "<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

130.   "<u>Petition Date</u>" means June 29, 2022.

131.   "<u>Pinkerton Clubhouse</u>" means the improved real property located at 250 Bradhurst Avenue, New York, NY 10039 and owned by the Non-Debtor Affiliate.

132.   "<u>Pinkerton Clubhouse Lease</u>" means that certain lease agreement whereby the Debtor leases the Pinkerton Clubhouse from the Non-Debtor Affiliate.

133.   "<u>Plan</u>" means this first amended chapter 11 plan, the Plan Supplement and all exhibits, supplements, appendices, and schedules attached or related thereto, as each may be altered, amended, modified, or supplemented from time to time in accordance with its terms.

134.   "<u>Plan Supplement</u>" means one or more compilations of documents and forms of documents, schedules, and exhibits to the Plan that will be Filed by the Debtor, as each may be amended, supplemented, altered, or modified from time to time, including: (a) the New Organizational Documents; (b) the Schedule of Retained Causes of Action; (c) the number and slate of members of the Board of the Reorganized Debtor and any information to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the Exit Facility Documents; (f) the Compensation Trust Agreement; (g) the Compensation Trust Note; (h) the Amended Child Safety Procedures (if any); (i) the Proposed Mortgage; and (j) any other necessary documentation related to the Restructuring Transactions as contemplated under the Plan.  The Debtor shall File the Plan Supplement, to the extent reasonably practical, no later than 14 days before the deadline to object to confirmation of the Plan or such later date as may be approved by the Bankruptcy Court on notice to parties in interest.  The Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

135.   "<u>Post-Effective Date Insurance Settlement</u>" shall have meaning set forth in <u>Article IV.H</u> of the Plan.

136.   "<u>Priority Claims</u>" means Priority Tax Claims and Other Priority Claims.

137. "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

138. "Privilege" shall have the meaning set forth in Article V.B.6 of the Plan.

139. "Privileged Information" shall have the meaning set forth in Article V.B.6 of the Plan.

140. "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class entitled to share in the same recovery as such Allowed Claim under the Plan.

141. "Professional" means an Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

142. "Professional Fee Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an Order of the Bankruptcy Court. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, or the Professional otherwise agrees to reduce its fees and expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

143. "Professional Fee Escrow" means an account (which may be interest-bearing) funded by the Debtor with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

144. "Professional Fee Escrow Amount" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals estimate they have incurred or will incur in rendering services to the Debtor prior to and as of the Confirmation Date, which will be estimated pursuant to Article II of the Plan.

145. "Proof of Claim" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

146. "Proposed Mortgage" has the meaning set forth in Article V.B.3 of the Plan.

147. "Reinstate," "Reinstated," or "Reinstatement" means with respect to Claims and Not-for-Profit Membership Interests, that the Claim or Not-for-Profit Membership

18

Interests shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

148.   "Release Conditions" shall have the meaning set forth in Article V.B.3 of the Plan, which shall incorporate and modify in all respects the "Release Provisions" set forth in the term sheet attached as an exhibit to the Commitment Letter.

149.   "Reorganized Debtor" means, on or after the Effective Date, the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto.

150.   "Representative" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, subsidiaries, and Affiliates, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and (c) respective heirs, executors, Estate, and nominees, in each case solely in its capacity as such.

151.   "Restructuring Documents" means the (a) Plan and its exhibits and schedules, Ballots, and the Solicitation Materials, (b) Confirmation Order, (c) Disclosure Statement Order, (d) Plan Supplement and the documents included therein, (e) Exit Facility Documents, and (f) all other agreements, instruments, certificates and similar agreements necessary to implement and execute the Restructuring Transactions.

152.   "Restructuring Transactions" means the transactions contemplated in connection with the restructuring under and pursuant to the Plan.

153.   "Retained Causes of Action" means any retained Causes of Action set forth in the Plan Supplement; *provided* that, for the avoidance of doubt, the Retained Causes of Action shall not include any Claim or Cause of Action against Rockefeller or any other Person or Entity that is released pursuant to the Madison/RU 9019 Order.

154.   "Rockefeller" means The Rockefeller University and its affiliates, subsidiaries or related Entities and individuals.

155.   "Rockefeller Contribution Claims" means any Claim asserted by Rockefeller in its Proof of Claim (No. 0000020021) Filed on November 10, 2022 (including any amendment, supplement or modification thereto) for contribution or reimbursement, which shall include any rights Rockefeller may have under section 502(j) of the Bankruptcy Code.

156.   "Rockefeller GUC Claims" means any Claim asserted by Rockefeller in its Proof of Claim (No. 0000020021) Filed on November 10, 2022 (including any amendment, supplement or modification thereto) that is not a Rockefeller Contribution Claim.

157.   "Rockefeller Reimbursement" has the meaning set forth in Article V.U of the Plan.

158. "Rule 502(d) Finding" means a finding by the Bankruptcy Court in the Confirmation Order that (a) Rule 502(d) of the Federal Rules of Evidence governs the transfer of the Direct Abuse Claim Discovery to the Compensation Trust in accordance with the Plan, including Article V.B.6 hereof, and (b) nothing in the Rule 502(d) Finding affects the Debtor's, its assignee's, or any Abuse Insurance Company's rights or obligations under applicable Law.

159. "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule of Executory Contracts and Unexpired Leases to be assumed under the Plan, and associated Cure Amounts, if any, which shall be included in the Plan Supplement.

160. "Secured Claim" means a Claim to the extent (a) secured by a Lien on property of the Debtor's Estate, the amount of which is equal to or less than the value of such property (i) as set forth in the Plan, (ii) as agreed to by the Holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (b) subject to any setoff right of the Holder of such Claim under section 553 of the Bankruptcy Code.

161. "Settling Insurance Company" means, solely with respect to Abuse Insurance Policies that are the subject of an Insurance Settlement Agreement, any Abuse Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Compensation Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order, including, for the avoidance of doubt, in accordance with Article IV.H of the Plan.

162. "Schedules" means the statement of financial affairs and the schedules of assets and liabilities Filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such statement and schedules may be amended, supplemented, or modified from time to time.

163. "Statutory Fees" means all fees for which the Debtor is obligated pursuant to section 1930(a)(6) of title 28 of the United State Code.

164. "Subordinated Claim" means any Claim against the Debtor that is subject to subordination under section 509(c), section 510(b) or section 510(c) of the Bankruptcy Code, including any Claim for reimbursement, indemnification, or contribution.

165. "Third-Party Trust Contribution" means a contribution by a Person or Entity other than the Debtor or an Insurance Company to the Compensation Trust.

166. "Trust Allocation Protocol" means the allocation protocol for the Compensation Trust Assets to Holders of Abuse Claims set forth on **Exhibit B** hereto.

167. "Trust Reimbursement" shall have the meaning set forth in Article V.B.6 of the Plan.

168. "U.S. Trustee" means the United States Trustee for Region 2.

169.   "<u>Unexpired Lease</u>" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

170.   "<u>Unimpaired</u>" means, with respect to a Class of Claims or Not-for-Profit Membership Interests, a Claim or a Not-for-Profit Membership Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through Reinstatement or payment in full in Cash.

171.   "<u>Voting Deadline</u>" means the deadline to submit votes to accept or reject the Plan, as the same may be extended from time to time.

## B.   *Rules of Interpretation*

For purposes of the Plan:  (a) each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (b) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (c) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; *provided* that any capitalized terms herein that are defined with reference to another agreement, are defined with reference to such other agreement as of the date of the applicable agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the Effective Date; (e) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (f) unless otherwise specified, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (h) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (k) all references to statutes, regulations, Orders, rules of courts, and the like shall mean such statutes, regulations, Orders, rules of courts, and the like as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (l) any reference to an Entity as a Holder of a Claim or Not-For-Profit Membership Interest includes that Entity's successors and assigns; (m) except as otherwise provided, any references to the Effective Date shall mean on the Effective Date or as soon as reasonably practicable thereafter; (n) any docket number references in the Plan or the Confirmation Order shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Case; (o) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers,"

as applicable, as such terms are defined under the applicable state limited liability company laws; (p) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interests," "Holders of Not-for-Profit Membership Interests," "Disputed Not-for-Profit Membership Interests," and the like, as applicable; and (q) unless otherwise specified, all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

## C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan or the Confirmation Order shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

## D.    *Governing Laws*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflicts of law, shall govern the rights, obligations, construction, and implementation of the Plan and the Confirmation Order, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan or the Confirmation Order (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and not-for-profit corporate governance matters.

## E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## F.    *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan or the Confirmation Order to the contrary, references in the Plan or the Confirmation Order to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

## G.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless otherwise provided in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

All Claims and Not-for-Profit Membership Interests, except Administrative Claims, DIP Claims, and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Not-for-Profit Membership Interests set forth in <u>Article III</u> of the Plan.

**A.**    *Administrative Claim*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtor or the Reorganized Debtor, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this <u>Article II.A</u> and except with respect to Administrative Claims that are Professional Fee Claims or Statutory Fees, requests for payment of Administrative Claims must be Filed and served on the Debtor, or the Reorganized Debtor, as applicable, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or the Reorganized Debtor or its respective property or Estate and such Administrative Claims shall be deemed discharged as of the Effective Date.  If for any reason any such Administrative Claim is incapable of being forever barred and discharged, then the Holder of such Claim shall not have recourse to any property of the Reorganized Debtor to be distributed pursuant to the Plan.**  Objections to such requests for payment of an Administrative Claim, if any, must be Filed and served on the Reorganized Debtor and the requesting party no later than the Claims Objection Deadline.

**B.**    *Professional Fee Claims*

1.    Professional Fee Escrow

On the Effective Date, the Debtor shall establish the Professional Fee Escrow and transfer an amount equal to the Professional Fee Escrow Amount from the Debtor's general funds available as of the Effective Date. The Professional Fee Escrow shall be maintained in trust for the Professionals and for no other Entities until all Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or interests shall encumber the Professional Fee Escrow or Cash held on account of the Professional Fee Escrow in any way. Such funds shall not be considered property of the Estate, the Debtor, or the Reorganized Debtor; *provided*, *however*, that the Reorganized Debtor shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Escrow over the aggregate amount of Professional Fee Claims of the Professionals to be actually paid from the Professional Fee Escrow. When such Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow shall promptly be paid to the Reorganized Debtor without any further action or Order of the Bankruptcy Court.

2.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than forty-five (45) calendar days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court Orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash from the Professional Fee Escrow to such Professionals as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an Order of the Bankruptcy Court.

To the extent that funds in the Professional Fee Escrow are insufficient to satisfy the Allowed Professional Fee Claims owing to the Professionals, each Professional shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied by the Reorganized Debtor in the ordinary course of business in accordance with Article II.A of the Plan and notwithstanding any obligation to File Proofs of Claim or requests for payment on or before the Administrative Claims Bar Date. After all Allowed Professional Fee Claims have been paid in full, the escrow agent for the Professional Fee Escrow shall return any excess amounts held in the Professional Fee Escrow, if any, to the Reorganized Debtor, without any further action or Order of the Bankruptcy Court.

3.    Estimation of Fees and Expenses

Professionals shall provide a reasonable and good-faith estimate of Professional Fee Claims through and including the Effective Date, and shall deliver such estimate to the Debtor no later than five (5) calendar days prior to the Effective Date; *provided*, *however*, that such estimate shall not be considered a representation with respect to the fees and expenses of such Professional, and Professionals are not bound to any extent by the estimates. If any of the Professionals fail to provide an estimate or does not provide a timely estimate, the Debtor may estimate the unbilled

fees and expenses of such Professional.  The total amount so estimated shall be utilized by the Debtor to determine the Professional Fee Escrow Amount.

4.    Post-Effective Date Fees and Expenses

From and after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, Order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtor.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, or any Order of the Bankruptcy Court governing the retention or compensation of Professionals in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professionals in the ordinary course of business without any further notice to or action, Order, or approval of the Bankruptcy Court.

**C.    *Priority Tax Claims***

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business by the Reorganized Debtor.

**D.    *DIP Claims***

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to (a) the principal amount outstanding under the DIP Credit Agreement on such date, (b) all accrued and unpaid interest thereon to the date of payment, and (c) all accrued and unpaid fees and expenses payable under the DIP Credit Agreement and DIP Order.

Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, on the Effective Date, each such Holder of an Allowed DIP Claim in the amount of the outstanding aggregate principal amount of the DIP Facility shall receive its pro rata share of the Exit Facility in accordance with the DIP Facility Documents and the Exit Facility Documents.  All accrued and unpaid interest and accrued and unpaid fees and expenses payable under the DIP Credit Agreement and DIP Order shall be paid in Cash on the Effective Date.

**E.    *Payment of Statutory Fees***

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Debtor or the Reorganized Debtor, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first; *provided* that on and after the Effective Date, the Reorganized Debtor shall (1) pay in full in Cash

when due and payable, and shall be responsible for paying, any and all such fees and interest with respect to any and all disbursements (and any other actions giving rise to such fees and interest) of the Reorganized Debtor, and (2) File in the Chapter 11 Case (to the extent it has not yet been closed, dismissed, or converted) quarterly reports as required by the Bankruptcy Code, Bankruptcy Rules, and Local Rules, as applicable, in connection therewith.  The U.S. Trustee shall not be required to file any proof of claim or request for payment for quarterly fees.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND NOT-FOR-PROFIT MEMBERSHIP INTERESTS

**A.**    *Classification and Treatment of Claims and Not-for-Profit Membership Interests*

All Claims or Not-for-Profit Membership Interests, other than Administrative Claims, Priority Tax Claims, and DIP Claims, are classified in the Classes set forth in this <u>Article III</u> for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Not-for-Profit Membership Interest, or any portion thereof, is classified in a particular Class only to the extent that such Claim or Not-for-Profit Membership Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Not-for-Profit Membership Interest qualifies within the description of such other Classes.  A Claim or Not-for-Profit Membership Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan, but only to the extent that such Claim or Not-for-Profit Membership Interests is an Allowed Claim or Allowed Not-for-Profit Membership Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The following table designates the Classes of Claims against and Not-for-Profit Membership Interests in the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Not-for-Profit Membership Interests set forth in this <u>Article III</u>.  All of the potential Classes for the Debtor are set forth herein.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Abuse Claims | Impaired | Entitled to Vote |
| 5 | Not-for-Profit Membership Interests | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

**B.**     *Treatment of Claims and Not-for-Profit Membership Interests*

1.     Class 1 – Other Secured Claims

    (a)     *Classification*:  Class 1 consists of all Other Secured Claims.

    (b)     *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the Debtor or the Reorganized Debtor, as applicable:

        i.     payment in full in Cash of its Allowed Other Secured Claim;

        ii.     the collateral securing its Allowed Other Secured Claim;

        iii.     Reinstatement of its Allowed Other Secured Claim; or

        iv.     such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)     *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims

    (a)     *Classification*:  Class 2 consists of all Other Priority Claims against the Debtor.

    (b)     *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

    (c)     *Voting*:  Class 2 is Unimpaired under the Plan. Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

3.      Class 3 – General Unsecured Claims

(a)     *Classification*:  Class 3 consists of all General Unsecured Claims.

(b)     *Treatment*:  On the GUC Disbursement Date, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive its Pro Rata share of the GUC Cash Pool.

(c)     *Voting*:  Class 3 is Impaired under the Plan and each Holder of a General Unsecured Claims is entitled to vote to accept or reject the Plan.

4.      Class 4 – Abuse Claims

(a)     *Classification*: Class 4 consists of all Abuse Claims.

(b)     *Treatment*:  The Compensation Trust shall receive, for the benefit of Holders of Abuse Claims, the Compensation Trust Assets, which shall be distributed to the Holders of Abuse Claims in Class 4 pursuant to the Compensation Trust Documents.  As of the Effective Date, the Covered Parties' liability for all Abuse Claims shall be assumed in full by the Compensation Trust without further act, deed, or court order and shall be satisfied solely from the Compensation Trust Assets as set forth in the Plan and the Compensation Trust Documents.  Pursuant to the Channeling Injunction set forth in Article IX.B, and except as provided therein, each Holder of an Abuse Claim shall have such Holder's Abuse Claim against the Covered Parties (and each of them) permanently channeled to the Compensation Trust and, to the extent not otherwise disallowed prior to the Effective Date, such Abuse Claim shall thereafter be asserted exclusively against the Compensation Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Compensation Trust Documents.  Holders of Abuse Claims shall be forever enjoined and estopped from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Abuse Claims against any of the Covered Parties and may not proceed in any manner against any of the Covered Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Abuse Claims solely against the Compensation Trust as provided in the Compensation Trust Documents; *provided*, *however*, that, pursuant to Article IX.B hereof, forty-five (45) calendar days after transmitting the Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed on **Exhibit C** in accordance with the instructions set forth therein, Holders of Abuse Claims whose Claims potentially implicate an Abuse Insurance Policy issued by a Non-Settling Insurance Company (including but not limited to occurring

during the coverage period of an Abuse Insurance Policy issued by a Non-Settling Insurance Company) may pursue their Abuse Claims in a court of competent jurisdiction against the Debtor and any other defendant in accordance with the terms hereof (which action to pursue an Abuse Claims by the Holder of an Abuse Claim may include the continuation of an action commenced by such Holder of an Abuse Claim against the Debtor and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to the extent no such action to pursue an Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date), and the Non-Settling Insurance Company with respect to any applicable Abuse Insurance Policy shall be able to assert each and every available defense (including any Insurance Coverage Defenses) under applicable Law or the applicable Abuse Insurance Policy relating to any Abuse Claim; *provided*, *further* that nothing in this Article III.B.4 shall impair the rights of any Non-Settling Insurance Company set forth in Article X of the Plan; *provided*, *further*, that any such Claims are subject to the terms of the Plan and that Claims against the Debtor or a Covered Party may be paid solely from the Compensation Trust Assets and the proceeds of an Abuse Insurance Policy issued by a Non-Settling Insurance Company and the Holders of such Claims shall have no recovery whatsoever at any time against any Covered Party or any property or interest in property of any Covered Party beyond Insurance Recoveries. Without limiting the foregoing, in accordance with the Trust Allocation Protocol, Holders of Allowed Direct Abuse Claims shall receive the Abuse Claim Equal Share Distribution, and Holders of Allowed Indirect Abuse Claims will be entitled to the treatment set forth in Article IV. G of the Plan.

Notwithstanding the above, to preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, Class 4 Claimants specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries. The Class 4 Claims will not be released or enjoined as against the Debtor, the Reorganized Debtor, or any other Covered Party for any Abuse Claim that may be covered under any Non-Settling Insurance Company's Abuse Insurance Policies until such Claims are settled with the Debtor,

the Reorganized Debtor, any other Covered Party and such Non-Settling Insurance Company or are fully adjudicated, resolved, and subject to Final Order, but recovery is limited as described above.

(c)   *Voting*: Class 4 is Impaired, and each Holder of an Abuse Claim is entitled to vote to accept or reject the Plan. Solely for the purposes of voting on the Plan, each Abuse Claim in Class 4 is deemed to be Allowed in the amount of $1.00.

5.   Class 5 – Not-for-Profit Membership Interests

(a)   *Classification*: Class 5 consists of all Not-for-Profit Membership Interests.

(b)   *Treatment*: On the Effective Date, Not-for-Profit Membership Interests shall be Reinstated.

(c)   *Voting*: Class 5 is Unimpaired under the Plan. Each Holder of a Not-for-Profit Membership Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Not-for-Profit Membership Interest is not entitled to vote to accept or reject the Plan.

## C.   *Acceptance or Rejection of the Plan*

1.   Presumed Acceptance of the Plan

Claims in Classes 1, 2, and 5 are Unimpaired under the Plan and their Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Classes 1, 2, and 5 are therefore not entitled to vote on the Plan and the votes of such Holders shall not be solicited.

2.   Voting Classes

Claims in Classes 3 and 4 are Impaired under the Plan and the Holders of Allowed Claims in such Class are eligible to vote to accept or reject the Plan consistent in all respects with the Disclosure Statement Order. An Impaired Class of Claims shall have accepted the Plan if, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code or any insider under section 101(31) of the Bankruptcy Code, (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept the Plan. Holders of Claims in Classes 3 and 4 shall receive Ballots containing detailed voting instructions.

3.   Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

    4.    <u>Controversy Concerning Impairment</u>

If a controversy arises as to whether any Claims, or any Class of Claims or Not-For-Profit Membership Interest, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such matter on or before the Confirmation Date.

    5.    <u>Elimination of Vacant and Abstaining Classes</u>

Any Class of Claims or Not-for-Profit Membership Interests that does not have a Holder of an Allowed Claim or Allowed Not-for-Profit Membership Interest as of the date of the commencement of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. Any Class of Claims that is occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 but as to which no vote is case shall be deemed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

**D.**    ***Confirmation Pursuant to Section 1129(a)(10) of the Bankruptcy Code***

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to <u>Article III.B</u> of the Plan.

**E.**    ***Special Provision Governing Unimpaired Claims or Reinstated Claims***

Except as otherwise specifically provided herein, nothing herein shall be deemed to affect, diminish, or impair, as applicable, the Debtor's or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoff or recoup against Reinstated Claims or Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff or recoupment, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left Unimpaired or Reinstated by the Plan. Except as otherwise specifically provided herein, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights with respect to any Reinstated Claim or Unimpaired Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

**F.**    ***Relative Rights and Priorities; Subordinated Claims***

Unless otherwise expressly provided in the Plan or the Confirmation Order, the allowance, classification, and treatment of all Allowed Claims or Not-for-Profit Membership Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of such Claims or Not-for-Profit Membership Interests in each Class in

connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, reserve the right to re-classify any Allowed Claim or Not-for-Profit Membership Interests in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**COMPENSATION TRUST**

**A.**     ***Establishment of the Compensation Trust***

The Compensation Trust shall be established on the Effective Date in accordance with the Compensation Trust Documents.  The Compensation Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.  The Covered Parties are the "transferors" within the meaning of Treasury Regulation Section 1.468B-(d)(1).

**B.**     ***Purposes of the Compensation Trust***

The purposes of the Compensation Trust shall be to assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Compensation Trust Assets, and to direct the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Compensation Trust Documents.  The Compensation Trust shall resolve Abuse Claims in accordance with the Compensation Trust Documents in a fair, consistent, equitable manner, and on a pro rata basis, in compliance with the terms of the Compensation Trust Documents and to the extent of available Compensation Trust Assets.

In the event of any ambiguity or conflict between the terms of the Compensation Trust Agreement or any related document required or provided for under the Compensation Trust Documents (other than the Confirmation Order), on the one hand, and the terms of the Plan and the Confirmation Order, on the other hand, the terms of the Plan and the Confirmation Order shall control, notwithstanding that the Compensation Trust Agreement and related documents required or provided for under the Compensation Trust Documents may be incorporated in or annexed to the Plan or the Confirmation Order.

**C.**     ***Compensation Trustee***

There shall be one Compensation Trustee, who shall be appointed in accordance with the terms of the Compensation Trust Agreement.  For purposes of performing his, her, or their duties and fulfilling his, her, or their obligations under the Compensation Trust and the Plan, the Compensation Trustee shall be deemed to be, and the Confirmation Order shall provide that he she, or they are, a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code.  The Compensation Trustee shall be the "administrator" of the Compensation Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

Under section 1123(b)(3)(B) of the Bankruptcy Code, the Compensation Trustee is appointed as the representative of the Debtor and Covered Parties to retain and enforce

the Debtor's and Covered Parties' Insurance Coverage and for the Compensation Trust Causes of Action.  On the Effective Date, the Compensation Trustee shall assume responsibility for, and be bound by, all of the obligations of the Debtor and Covered Parties under the Abuse Insurance Policies; *provided*, *however*, that the Compensation Trustee's appointment shall not relieve the Debtor or the Covered Parties from their respective obligations under the Abuse Insurance Policies subject to applicable Law; *provided, further* that actions taken by the Debtor in respect of such obligations shall be subject to the Trust Reimbursement to the extent such actions taken by the Debtor are requested by the Compensation Trust or Compensation Trustee.

D.    ***Transfer of Compensation Trust Assets to the Compensation Trust; Insurance Assignment***

On the Effective Date or as otherwise provided herein, and without further action of any Person, but subject to the Plan:

1.    The Debtor and each of the Covered Parties will be deemed to have assigned to the Compensation Trust the Debtor's and the Covered Parties' rights, title, and interest in and to the Compensation Trust Assets and any proceeds thereof, including the Debtor's and the Covered Parties' rights to all Insurance Actions and Insurance Recoveries against the Non-Settling Insurance Companies;

2.    The Compensation Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Compensation Trust free and clear of all Encumbrances or Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan; and

3.    The Compensation Trust shall assume and be bound by any and all liabilities, obligations, and responsibilities, of the Covered Parties for all Abuse Claims, financial or otherwise, including the obligations of the Covered Parties under the Abuse Insurance Policies, subject to applicable law; *provided*, *however*, that the Compensation Trust's assumption of such responsibility shall not relieve the Debtor or the Covered Parties from their respective obligations under the Abuse Insurance Policies as provided under applicable Law; *provided, further* that actions taken by the Debtor in respect of such obligations shall be subject to the Trust Reimbursement.

The Insurance Assignment shall be effective to the maximum extent permissible under applicable law and the terms of the Abuse Insurance Policies.  Notwithstanding the foregoing, the Debtor shall satisfy, pursuant to the Claims arising under Class 3 of the Plan, to the extent required under the relevant Abuse Insurance Policies and applicable Law, any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies and all other obligations and responsibilities of the Debtor and the Covered Parties under the Abuse Insurance Policies subject to applicable Law and shall not be construed: (a) as an assignment of the Abuse Insurance Policies, (b) to entitle any Person or Entity to Insurance Coverage other than those Persons or Entities entitled to such coverage under the terms of the

Abuse Insurance Policies, or (c) to affect any Non-Settling Insurance Company's obligations or rights under any Abuse Insurance Policy or applicable Law.

To the extent any of the Compensation Trust Assets are not transferred to the Compensation Trust by operation of Law on the Effective Date pursuant to the Plan, then when such assets accrue or become transferable subsequent to the Effective Date, they shall automatically and immediately transfer to the Compensation Trust free and clear of all Encumbrances and Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan. To the extent that any action of a Covered Party is required to effectuate such transfer, such Covered Party shall promptly transfer, assign, and contribute, such remaining Compensation Trust Assets to the Compensation Trust. In the event a Covered Party breaches any obligation contained in this section, the Compensation Trust will have no adequate remedy at law and shall be entitled to preliminary and permanent declaratory and injunctive relief.

**E.**     ***Compensation Trust Causes of Action***

Except as otherwise expressly provided in the Plan or the Compensation Trust Documents, the Compensation Trust shall have control over the Compensation Trust Causes of Action, and the Compensation Trust shall have the exclusive right to enforce each of the Compensation Trust Causes of Action, and the proceeds of the recoveries on any of the Compensation Trust Causes of Action shall be deposited in and become the property of the Compensation Trust, and the Compensation Trust shall have the right to enforce the Plan according to its respective terms, including the right to receive the Compensation Trust Assets as provided in the Plan; *provided*, *however*, that (a) the Compensation Trust shall have no other rights against the Covered Parties except to enforce the Plan and any of the other Restructuring Documents; and (b) the Insurance Actions shall not include any Claims or Causes of Action fully and finally released, compromised, or settled pursuant to the Plan.

The transfer of the Compensation Trust Causes of Action to the Compensation Trust, insofar as they relate to the ability to defend against or reduce the amount of Abuse Claims, shall be considered the transfer of a non-exclusive right enabling the Compensation Trust to defend itself against asserted Abuse Claims, which transfer shall not impair, affect, alter, or modify the right of any Person, including the Covered Parties, an insurer or alleged insurer (including any Non-Settling Insurance Company), or co-obligor or alleged co-obligor, sued on account of an Abuse Claim or on account of any asserted right relating to any Abuse Insurance Policy, to assert each and every defense (including any Insurance Coverage Defenses) available under applicable Law or basis for claim reduction such Person could have asserted had the Compensation Trust Causes of Action not been assigned to the Compensation Trust (including any Insurance Coverage Defense available under applicable Law, any defense or basis for claim reduction that any Insurance Company or other insurer or alleged insurer could have asserted under section 502 of the Bankruptcy Code, applicable law, or any Abuse Insurance Policy or other agreement with respect to (a) any alleged liability of the Debtor for any Abuse Claim or (b) any alleged liability of any Insurance Company or other insurer or alleged insurer (including any Non-Settling Insurance Company) to provide indemnity or defense relating to any Abuse Claim or any alleged extracontractual liability of any Insurance Company or other insurer or alleged insurer (including any Non-Settling Insurance Company) relating to any Abuse Claim).

34

F.    *Trust Allocation Protocol*

On the Effective Date, the Compensation Trust shall implement the Trust Allocation Protocol in accordance with the terms of the Compensation Trust Agreement.  From and after the Effective Date, the Compensation Trustee shall have the authority to administer, amend, supplement, or modify the Trust Allocation Protocol solely in accordance with the terms thereof and the Compensation Trust Agreement; *provided* that no amendment, supplement or modification thereto may be inconsistent with the terms of the Plan, Confirmation Order or the obligations and responsibilities under any Abuse Insurance Policy subject to applicable Law.

G.    *Indirect Abuse Claim Treatment*

As set forth in the Trust Allocation Protocol and notwithstanding anything to the contrary contained in the Plan, *if*:

(i)     a Holder of a Direct Abuse Claim in Class 4 is asserting its Direct Abuse Claim against both the Debtor and a third-party co-defendant, including, without limitation, Rockefeller;

(ii)    such Holder of a Direct Abuse Claim (a) elects not to provide a general release of all Claims in favor of the Compensation Trust, the Debtor, and the Reorganized Debtor as required by section 4.3(d) of the Compensation Trust Agreement, and (b) obtains a judgment assessing liability against both the Debtor and such co-defendant from a court of competent jurisdiction where such co-defendant is determined to be more than fifty percent (50%) and less than one hundred percent (100%) responsible for the injury sustained by the Holder of a Direct Abuse Claim (and under applicable Law such co-defendant is jointly and severally liable for the entire judgment or the portion of liability attributable to the Debtor);

(iii)   such co-defendant has actually paid the Holder of the Direct Abuse Claim the amount of such judgment related to liability attributable to the Debtor; and

(iv)    such co-defendant is determined to have an Allowed Indirect Abuse Claim against the Compensation Trust by application of section 502(j) of the Bankruptcy Court or otherwise that satisfies the requirements of the Bar Date Order;

*then* the Holder of such Allowed Indirect Abuse Claim shall be entitled to the Abuse Claim Equal Share Distribution from the Compensation Trust, which would have otherwise been distributed to the Holder of the underlying Direct Abuse Claim, in full and final satisfaction of such Holder's Allowed Indirect Abuse Claim, including any Rockefeller Contribution Claim related to such underlying Direct Abuse Claim; *provided*, that the Holder of such Allowed Indirect Abuse Claim must comply with the requirements of the Compensation Trust Agreement to receive the Abuse Claim Equal Share Distribution, including for the avoidance of doubt, the execution and delivery of a general release of all Claims in favor of the Compensation Trust, the Debtor, and the Reorganized Debtor by such Holder of the Allowed Indirect Abuse Claim as required by section 4.3(d) of the Compensation Trust Agreement.  In no event shall any Holder of an Allowed Indirect Abuse Claim have any rights against the Compensation Trust or the Compensation Trust

Assets superior to the rights that the Holder of the Direct Abuse Claim to whose claim such Holder's Allowed Indirect Abuse Claim relates would have against the Compensation Trust or the Compensation Trust Assets, including any rights with respect to timing, amount, or priority of payment. **For the avoidance of doubt: (a) if any Holder of a Direct Abuse Claim actually receives payment from a third-party co-defendant as set forth in this Article IV.G related to liability attributable to the Debtor as prescribed by an applicable judgment from a court of competent jurisdiction, such Holder of a Direct Abuse Claim shall have no right to receive any distribution from the Compensation Trust or the Compensation Trust Assets**; and (b) if any Holder of an Indirect Abuse Claim satisfies the conditions set forth above ((i) through (iv) in this Article IV.G) with respect to more than one underlying Direct Abuse Claim, and has Allowed Indirect Abuse Claims related to multiple underlying Direct Abuse Claims, such Holder of the Allowed Indirect Abuse Claims shall be entitled to the Abuse Claim Equal Share Distributions that each Holder of the subject underlying Direct Abuse Claims would have been entitled to receive under the Plan if the conditions set forth above ((i) through (iv) in this Article IV.G) were not satisfied.

If a Holder of a Direct Abuse Claim in Class 4 (i) provides the necessary general release of all Claims in favor of the Compensation Trust, the Debtor, and the Reorganized Debtor as required by section 4.3(d) of the Compensation Trust Agreement, and (ii) receives the Abuse Claim Equal Share Distribution, such release constitutes a release of the Compensation Trust, Debtor and Reorganized Debtor within the meaning of New York General Obligations Law § 15-108(d) and New York General Obligations Law §§ 15-108(a)-(c) shall apply, including with respect to any applicable co-defendant or co-tortfeasor as to the Abuse Claim asserted by such Holder of a Direct Abuse Claim. Notwithstanding anything to the contrary in the Plan or the Compensation Trust Documents, all rights, defenses and remedies of Rockefeller, the BGCA, or any non-Debtor co-defendant as against any Holder of a Direct Abuse Claim under applicable law, including for the avoidance of doubt, any rights and defenses under New York General Obligations Law § 15-108 and New York Civil Practice Law and Rules 1601, are fully preserved, and are not impaired, altered, waived, or otherwise modified by this Article IV.G, or any other provision of the Plan or Compensation Trust Documents.

Notwithstanding anything to the contrary in the Plan, as of the Effective Date, in any action in which Rockefeller and the Debtor are liable or claimed to be liable for the same injury, the provisions of the Plan applicable to Abuse Claims against the Debtor set forth in Article IX hereof shall be deemed a covenant not to enforce a judgment against the Debtor within the meaning of New York General Obligations Law § 15-108; *provided*, that any Deceased and/or Missing Abuse Claimant may within 120 days of the Effective Date, which deadline may be extended by the Bankruptcy Court for good cause shown on motion of any Deceased and/or Missing Abuse Claimant, file an objection in the Bankruptcy Court contesting that the provisions of the Plan applicable to Abuse Claims against the Debtor set forth in Article IX hereof constitute a covenant not to enforce a judgment within the meaning of New York General Obligations Law § 15-108 with respect to such Deceased and/or Missing Abuse Claimant's Direct Abuse Claim, and all parties' rights (including the rights of Rockefeller) are expressly reserved with respect to any such objection by a Deceased and/or Missing Abuse Claimant.

**H.**    *Post-Effective Date Settling Insurance Companies*

Notwithstanding any present exclusionary language in the Plan, after the Effective Date, any Insurance Company that is a Non-Settling Insurance Company may, within twelve (12) months of the Effective Date (the "Insurance Settlement Period") enter into an Insurance Settlement Agreement with the Compensation Trustee (a "Post-Effective Date Insurance Settlement"); *provided*, *however*, that the Compensation Trustee shall File a notice with the Bankruptcy Court within thirty (30) days of entering into any such Post-Effective Date Insurance Settlement and such Insurance Company (and any related Persons or Representatives, as applicable) shall be deemed to be a Settling Insurance Company for all purposes hereunder. Any Post-Effective Date Insurance Settlement and amendments thereto shall be binding and effective without approval of or any other action by the Bankruptcy Court. The Compensation Trustee shall have the sole discretion, upon notice to the Bankruptcy Court, to extend the Insurance Settlement Period.

Any Insurance Company that becomes a Settling Insurance Company in accordance with this Article IV.H and the Trust Allocation Protocol may become a Covered Party solely pursuant to a further order of the Bankruptcy Court sought by either the Compensation Trust or the subject Settling Insurance Company; *provided* that to the extent the Chapter 11 Case has been closed, the Compensation Trustee, the appliable Settling Insurance Company, or another interested party may seek to reopen the Chapter 11 Case or take other action as may be necessary to apply for an order of the Bankruptcy Court determining that such Settling Insurance Company shall be deemed a Covered Party. Upon the Bankruptcy Court's designation of a Settling Insurance Company as a Covered Party, such Settling Insurance Company shall have all of the rights, remedies and obligations of a Covered Party under the Plan, including under the Channeling Injunction, notwithstanding that such Settling Insurance Company was not a Covered Party under the Plan as of the Effective Date.

**I.**    *Compensation Trust Expenses*

The Compensation Trust shall bear sole responsibility with respect to the payment of the Compensation Trust Expenses and shall pay all Compensation Trust Expenses from the Compensation Trust Assets. To the maximum extent permitted by applicable Law, the Compensation Trustee shall not have or incur any liability for actions taken or omitted in his, her or their capacity as Compensation Trustee, or on behalf of the Compensation Trust, except those acts found by Final Order to be arising out of his, her, or their willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his, her, or their actions or omissions in his, her, or their capacity as Compensation Trustee, or on behalf of the Compensation Trust, except for any actions or omissions found by Final Order to be arising out of his, her, or their willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification Claim of the Compensation Trustee shall be satisfied only from the Compensation Trust Assets.

**J.**    *Reimbursement by Compensation Trust*

From and after the Effective Date, the Compensation Trust shall reimburse, to the fullest extent permitted by applicable Law, the Reorganized Debtor for any reasonable documented out-

of-pocket losses, costs, and expenses (including judgments, attorneys' fees, and expenses) incurred by the Reorganized Debtor on or after the Effective Date attributable to the defense of an Abuse Claim that is channeled to the Compensation Trust if the Holder of such Abuse Claim seeks to hold the Reorganized Debtor liable for such Abuse Claim in violation of the terms of the Confirmation Order; *provided* that the Compensation Trust's reimbursement obligations to the Reorganized Debtor shall be capped at and shall not exceed the amount actually payable by the Compensation Trust to the Holder of such Direct Abuse Claim under the Trust Allocation Protocol (*i.e.*, the amount paid based on the Compensation Trust payment percentage) and shall be deducted on a dollar-for-dollar basis against such Holder's distribution from the Compensation Trust on account of such Direct Abuse Claim.

The Reorganized Debtor shall provide notice to the Compensation Trust within thirty (30) days of the service of any Claim or lawsuit filed by a Holder of an Abuse Claim that could result in any reimbursement obligations by the Compensation Trust under this provision. In the event that any litigation asserting an Abuse Claim is filed naming the Reorganized Debtor as a defendant in violation of the terms of the Confirmation Order, the Compensation Trust shall, at the request of the Reorganized Debtor, promptly appear (a) before the Bankruptcy Court to obtain entry of an Order enforcing the Channeling Injunction and (b) in such litigation seek the dismissal of the case.

## K.    *Assignment of Claims and Defenses*

Notwithstanding anything herein to the contrary, but subject to the Insurance Settlement Agreements, on the Effective Date, the Debtor and any other party that is or becomes a Covered Party shall be deemed to assign any and all Claims and defenses to the Compensation Trust that arise from or relate to Abuse Claims, including any Claims and defenses against co-defendants.

Notwithstanding the foregoing, (a) nothing within the Plan or Confirmation Order shall be deemed to provide an assignment of any Claims or defenses to the Compensation Trust with respect to any Claims that have not been assumed by the Compensation Trust and subject to the Channeling Injunction of Article IX.B herein and (b) the Abuse Insurance Companies shall not assign or be deemed to assign to the Compensation Trust any Claim, Cause of Action, or right of recovery against their reinsurers or retrocessionaires, in their capacities as such, and such Claim, Cause of Action, or right of recovery against their reinsurers or retrocessionaires shall not be released, waived, or discharged by the Plan.

## L.    *Abuse Insurance Companies' Rights*

Any Non-Settling Insurance Company's legal, equitable, or contractual rights and obligations relating to the Abuse Insurance Policies issued by a Non-Settling Insurance Company shall be determined under applicable Law. Nothing in the Plan shall be construed to impair or diminish the Debtor's or any Non-Settling Insurance Company's legal, equitable, or contractual rights or obligations under any Abuse Insurance Policy including, to the extent permitted under the applicable Insurance Abuse Policy and subject to applicable Law, the ability of a Non-Settling Insurance Company to: negotiate resolution of any Abuse Claim; pay any settlement entered into by the Non-Settling Insurance Company, in its discretion, with the Holder of an Abuse Claim; pay, in whole or in part, any judgment entered in favor of the Holder of an Abuse Claim; or appeal from any judgment entered in favor of the Holder of an Abuse Claim.

**M.**     *Investment Guidelines*

All monies held in the Compensation Trust shall be invested, subject to the investment limitations and provisions enumerated in the Compensation Trust Agreement.

**N.**     *Excess Compensation Trust Assets*

To the extent any Compensation Trust Assets remain at such time as the Compensation Trust is dissolved under the terms of the Compensation Trust Documents, any remaining Compensation Trust Assets shall be distributed to the Reorganized Debtor.

**O.**     *No Liability*

The Debtor, the Reorganized Debtor, and the other Covered Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance in connection with or related to the Compensation Trust, the Compensation Trustee, or the Compensation Trust Documents, including the administration of Abuse Claims and the distribution of Compensation Trust Assets by the Compensation Trust, or any related agreement, *provided*, *however*, the Holder of an Abuse Claim, may commence an action against the Debtor (as a defendant) and, if applicable, one or more Covered Parties (as defendants), solely for liquidating an Abuse Claim to pursue Insurance Recoveries regarding such Abuse Claim from a Non-Settling Insurance Company. To the extent a Non-Settling Insurance Company has refused to defend an Abuse Claim, the Reorganized Debtor and/or Covered Party (or the Compensation Trust or Trustee as assignee of the Insurance Actions and Insurance Recoveries) may enter into stipulated judgments with the Holder of an Abuse Claim or the Compensation Trust against such non-defending Non-Settling Insurance Company; *provided* that nothing herein affects such Non-Settling Insurance Company's rights or obligations under applicable Law.

Except as set forth below, the discharge provided for in Article IX hereof and the rights of the Debtor, the Reorganized Debtor, and other Covered Parties, any judgment obtained in such action may not be enforced against the Debtor, the Reorganized Debtor, a Covered Party, and/or their respective property or interest in such property, including, but not limited to, the property that vests with the Reorganized Debtor pursuant to Article V.H hereof and any property acquired by the Reorganized Debtor after the Effective Date, and such judgment shall be paid under the Plan and the Compensation Trust Documents and shall be paid by any Non-Settling Insurance Company under the terms of that Non-Settling Insurance Company's Abuse Insurance Policy.

To preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, the Holders of Abuse Claims specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the Compensation Trust, proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such

judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries.

Nothing herein affects a Non-Settling Insurance Company's rights or obligations under applicable Law, including any Insurance Coverage Defenses or such Non-Settling Insurance Company's right to pursue Claims for contribution from other Non-Settling Insurance Companies.

If any Insurance Recoveries from Insurance Actions that are assigned to the Compensation Trust hereunder are received by the Reorganized Debtor or Covered Parties, such Insurance Recoveries shall be held in trust for the benefit of the Compensation Trust and shall be immediately remitted by the Reorganized Debtor or Covered Parties to the Compensation Trust, net any amounts owing to the Reorganized Debtor or another Covered Party on account of the Trust Reimbursement.

Neither the Debtor's or the Covered Parties' obligations to a Holder of an Abuse Claim shall be deemed to have been paid in full, nor their liability to a Holder of an Abuse Claim satisfied, because of reserves for, distributions because of, or payments received by a Holder of an Abuse Claim from the Compensation Trust, subject to the Channeling Injunction set forth herein. The Compensation Trust or the Debtor, the Reorganized Debtor, and the Covered Parties may continue efforts to obtain recoveries from Non-Settling Insurance Company related to the Abuse Claims. In addition, the Non-Settling Insurance Companies remain fully liable for their obligations related to the Abuse Claims, and their obligations are not reduced by the Debtor's commencement of this Chapter 11 Case or (subject to the next paragraph) by the amount of the distributions Holders of Abuse Claims receive, or are entitled to receive, based on the Plan. For the avoidance of doubt, determinations by the terms of the Compensation Trust Documents and/or any distributions entitled to be received from the Compensation Trust shall not constitute a determination of the Debtor's or any Covered Party's liability or damages for Abuse Claims.

Notwithstanding anything to the contrary herein, in no case shall the aggregate value of all property received or retained under the Plan on account of any Abuse Claim exceed 100 percent of an underlying judgment entered in favor such Holder of an Abuse Claim.

## P.     *U.S. Federal Income Tax Treatment of the Compensation Trust*

The Compensation Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code. The Compensation Trust shall file (or cause to be filed) statements, returns, or disclosures relating to the Compensation Trust that are required by any Governmental Unit. The Compensation Trustee shall be responsible for the payment of any taxes imposed on the Compensation Trust or the Compensation Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Compensation Trust Agreement.

**Q.**    *Institution and Maintenance of Legal and Other Proceedings*

As of the Effective Date, the Compensation Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Compensation Trust, including the Insurance Actions, Abuse Claims, and the Compensation Trust Causes of Action. Without limiting the foregoing, on and after the Effective Date, the Compensation Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtor, if deemed necessary or appropriate. The Compensation Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred on or after the Effective Date arising from, relating to, or associated with any legal action or other proceeding which is the subject of this Article IV.Q. Furthermore, without limiting the foregoing, the Compensation Trust shall be empowered to maintain, administer, preserve, or pursue the Insurance Actions and the Insurance Recoveries.

**R.**    *Compensation Trust Discovery*

Subject to the limitations in the Plan, including Article V.B.6, or any other Restructuring Document, nothing herein prevents the Compensation Trust, Holders of Direct Abuse Claims, or any other Person or Entity from seeking authorization from the Bankruptcy Court to obtain information from any Person or Entity pursuant to Bankruptcy Rule 2004 and/or other applicable rules, in each case, in accordance with applicable Law. Nothing herein shall be construed to deprive the recipient of such discovery request of any applicable privilege or immunity from discovery.

**S.**    *Notation on Claims Register Regarding Abuse Claims*

On the Effective Date, all Abuse Claims filed against the Debtor in this Chapter 11 Case shall be marked on the Claims Register as "Channeled to the Compensation Trust" and resolved exclusively in accordance with the Trust Allocation Protocol.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.**    *Compromise and Settlement of Claims, Not-For-Profit Membership Interests and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, and other benefits provided under the Plan and the Confirmation Order, upon the Effective Date, the provisions of the Plan and the Confirmation Order shall constitute a set of integrated, good-faith compromises and settlements regarding the treatment of all Claims pursuant to the Plan and the Confirmation Order; *provided*, *however*, nothing contained in the Plan shall constitute a release, compromise, settlement or other resolution of any Claim against the BGCA or any co-defendant (who is not a Covered Party and except as to Rockefeller and or any other Person or Entity that is released under a compromise, settlement and resolution

with the Debtor pursuant to the Madison/RU 9019 Order) in litigation in which the Debtor is a defendant.

**B.     *Committee Settlement***

In consideration for the mutual compromises described in this Article V.B, the Plan hereby incorporates and effectuates the Committee Settlement, which includes the following:

1.     Resolution of Abuse Claims

All Abuse Claims shall be channeled to and resolved by the Compensation Trust in accordance with the Trust Allocation Protocol; *provided* that any Non-Settling Insurance Company may, subject to Article X, raise any Insurance Coverage Defense permitted under applicable Law in response to a demand by the Compensation Trust, including any right of such Non-Settling Insurance Company to assert any defense that could, but for the Compensation Trust's assumption of the liabilities, obligations, and responsibilities of the Covered Parties for Abuse Claims, have been raised by the Debtor or other applicable Covered Party with respect to such Claim.

2.     Compensation Trust Note

On the Effective Date, the Reorganized Debtor shall be authorized to execute, issue and deliver the Compensation Trust Note to the Compensation Trust and execute and deliver any related documentation governing the Compensation Trust Note without the need for any further corporate action or any further notice to or order of the Bankruptcy Court. The Compensation Trust Note may be prepaid at any time without premium or penalty. Subject to the terms of the Compensation Trust Note, neither the Debtor nor the Reorganized Debtor shall pledge or encumber any property of the Debtor or the Reorganized Debtor, as applicable, until the Compensation Trust Note is fully repaid (the "Negative Pledge Covenant") and on and after the Effective Date, the Compensation Trustee shall have the right to take all actions consistent with the Plan and applicable Law to enforce the Negative Pledge Covenant. For the avoidance of doubt, the Negative Pledge Covenant excludes (a) any obligations owed to, or restrictions enforceable by, governmental units in connection with governmental grants or similar funding received by the Reorganized Debtor and the governing documentation, and (b) Liens granted to the DIP-to-Exit Lender under the DIP Facility and the Exit Facility, including the delivery into escrow of a mortgage on the Pinkerton Clubhouse and any subsequent recording, only as such are allowed by the provisions of Article V.B.3 hereof.
.

3.     Navy Yard Transaction

Pursuant to sections 1123(a)(5)(D), 1141(c), and 1146 of the Bankruptcy Code, and as soon as reasonably practicable following the Confirmation Date or such earlier date agreed to by the Debtor and the Committee, the Debtor and the Reorganized Debtor, together with the Broker, shall conduct a marketing process (the "Marketing Process") and thereafter consummate the Navy Yard Transaction as soon as reasonably practicable, in each case, in consultation with the Committee and the Compensation Trustee, as applicable. Subject to the satisfaction of the following conditions (the "Release Conditions"), the Navy Yard Transaction shall be

consummated free and clear of any Liens or Encumbrances, including those securing the DIP Facility and the Exit Facility, as applicable, which Liens and Encumbrances shall thereupon be released by the DIP-to-Exit Lender (the "Release"):

      i.    the Plan is confirmed on or before June 30, 2023, or such later time as may be agreed by the Debtor and the DIP-to-Exit Lender;

      ii.    the Exit Facility is in satisfactory standing and no Event of Default (as defined in the Exit Facility Documents) shall have occurred and be continuing;

      iii.    the proceeds of the Navy Yard Transaction or the Navy Yard Casualty Event proceeds, net of fees and costs, shall be contributed to the Compensation Trust pursuant to and on the terms set forth in the Plan;

      iv.    the Debtor executes and delivers all reasonable documents requested by the DIP-to-Exit Lender in connection with the Release; and

      v.    the DIP-to-Exit Lender shall have received payment of all reasonable out-of-pocket costs and expenses, including appraisal fees (if applicable) and reasonable counsel fees and disbursements incurred, in connection with the Release.

The Debtor and the Reorganized Debtor shall provide the Committee and the Compensation Trustee, as applicable: (a) a weekly status report during the Marketing Process that tracks interested parties, property tours and placed bids, and (b) reasonable access to all non-privileged documents and information concerning the status of the Navy Yard Transaction. The Debtor or the Reorganized Debtor, as applicable, shall consult with the Committee or the Compensation Trustee, as applicable, with respect to all offers or proposals for the Navy Yard Transaction and shall consider the recommendations of the Committee or Compensation Trustee, as applicable, in good faith. The Board's determination to accept an offer shall be subject to the consent of the Committee or the Compensation Trustee, as applicable (such consent not to be unreasonably withheld, conditioned or delayed).

On the Effective Date of the Plan, the Debtor or the Reorganized Debtor, as applicable, shall cause the Compensation Trust to become the secondary beneficiary (only subordinate to the DIP-to-Exit Lender) of any insurance policy or policies that insures the Navy Yard (the "Navy Yard Insurance Beneficiary"); *provided*, *however*, that if the Navy Yard Clubhouse is damaged in any material respect prior to the closing of the Navy Yard Transaction (the "Navy Yard Casualty Event"), the net proceeds payable from any such insurance policy or policies shall be paid to the Compensation Trust free and clear of the Liens and Encumbrances securing the Exit Facility, subject to satisfaction of the Release Conditions. In connection with the Reorganized Debtor entering into a contract or agreement with respect to the Navy Yard Transaction or if the Navy Yard Casualty Event occurs, the DIP-to-Exit Lender shall have the right to commission an appraisal by an appraiser selected by the DIP-to-Exit Lender at the sole cost and expense of the Reorganized Debtor, as applicable, of the remainder of the Real Estate Collateral (as defined in the Commitment Letter). If the Loan to Value Ratio of the remainder of the Real Estate Collateral is greater than 50% based on such appraisals, then, upon the DIP-to-Exit Lender's

demand, the Reorganized Debtor shall execute and deliver to DIP-to-Exit Lender's counsel, in escrow, a mortgage (the "Proposed Mortgage") in favor of the DIP-to-Exit Lender on the Pinkerton Clubhouse, which shall become effective and which shall be recorded at Reorganized Debtor's sole cost and expense, upon the earlier of the date that (x) the Leverage Loan secured by the Pinkerton Clubhouse has been paid in full and (y) the NMTC Transaction has been unwound such that the Pinkerton Clubhouse is subject to being pledged in accordance with the NMTC Documents (such date is expected to occur no later than the first half of 2026); *provided* that the Reorganized Debtor may, at its option, elect instead to repay the Exit Loan to the extent necessary to bring the Loan to Value Ratio into compliance, all of the foregoing to be more fully set forth in the Exit Facility Documents which shall control and be consistent with the provisions of this paragraph. A form of the Proposed Mortgage shall be filed with the Plan Supplement.

4.      Cash Contribution; Excess Exit Cash

On the Effective Date, the Debtor shall pay the Cash Contribution and the Excess Exit Cash, if any, to the Compensation Trust.   The following Professionals of the Debtor and the Committee have agreed to apply a discount to their fees incurred in the Chapter 11 Case in an amount equal to the greater of (y) 15% and (z) the current applicable discount in place pursuant to such Professional's retention application approved by the Bankruptcy Court (collectively, the "Professional Fee Discount"): (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP; (b) Friedman Kaplan Seiler & Adelman LLP; (c) Pillsbury Winthrop Shaw Pittman LLP; (d) Teneo Capital LLC; (e) Pachulski Stang Ziehl & Jones LLP; (f) Dundon Advisors LLC; and (g) Island Capital Advisor LLC.

5.      Insurance Assignment and Settlements

On the Effective Date, the Debtor shall effectuate the Insurance Assignment to the Compensation Trust pursuant to sections 541 and 1123(a)(5) of the Bankruptcy Code.  Prior to the Effective Date, the Debtor shall take reasonable efforts to enter into Insurance Settlement Agreements with Abuse Insurance Companies and seek an Order of the Bankruptcy Court approving such Insurance Settlement Agreements.   For the avoidance of doubt, the Insurance Assignment shall not be construed as an assignment and transfer of the Non-Settling Abuse Insurance Policies but rather constitute an assignment of the right to receive insurance proceeds available under the Non-Settling Abuse Insurance Policies.

6.      Debtor's Discovery Obligations

(a)      *Transfer of Direct Abuse Claim Discovery*.

On or before the Effective Date of the Plan, the Debtor shall contribute the Direct Abuse Claim Discovery to the Compensation Trust pursuant to the Confirmation Order, including the Rule 502(d) Finding.  All documents provided shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate.

On or before the Effective Date of the Plan, the Debtor shall provide the Direct Abuse Claim Discovery to the Abuse Insurance Companies pursuant to the Confirmation Order, including

the Rule 502(d) Finding.  All documents provided shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate.

For the avoidance of doubt, the Debtor's production of the Direct Abuse Claim Discovery shall not be subject to the Trust Reimbursement.  Any documents in the Direct Abuse Claim Discovery that may be subject to the attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection or privilege granted by joint defense, common interest, and/or confidentiality agreement or other privilege or immunity ("Privileges" and Direct Abuse Claim Discovery subject to such privileges, "Privileged Information") shall be subject to the following terms:

    i.    All Privileges shall be irrevocably transferred to and vested in the Compensation Trustee as of the Effective Date.

    ii.    The transfer or assignment of any Privileged Information shall not constitute a waiver of any Privilege and Privileged Information is vested solely in the Compensation Trustee and not in the Compensation Trust.

    iii.    The Compensation Trustee shall only be permitted to share Privileged Information with professionals, advisors, or counsel retained by the Compensation Trust.  The Compensation Trustee shall not share Privileged Information with (i) any third party (including, but not limited to, any public disclosure or dissemination) to the extent that sharing the Privileged Information would result in a waiver of such privilege, and (ii) any Holder of a Direct Abuse Claim, or counsel for a Holder of a Direct Abuse Claim, except as required by court order, subpoena, or other valid legal process, or for tax, financial reporting, or government compliance purposes.

    iv.    The Compensation Trustee's receipt of Privileged Materials shall be without waiver and in recognition of the joint and/or successorship interest of the Compensation Trust and the Compensation Trustee's performance of his or her duties in administering the Compensation Trust.  Nothing in the Plan or any Restructuring Document shall preclude the Compensation Trustee from providing Privileged Material or other information provided pursuant to this this Article V.B.6 to any Insurance Company as necessary to preserve, secure, or obtain the benefit of any insurance rights transferred to the Compensation Trust at the Compensation Trust's sole discretion and without further authorization from the Debtor or the Reorganized Debtor, as applicable, subject to the Insurance Company agreeing to take all necessary and appropriate steps to protect from public disclosure or waiver the Privileged Material or other information.

    (b)    *Post-Effective Date Discovery*.

Subject to the Trust Reimbursement, (i) nothing herein prevents the Compensation Trustee, Holders of Abuse Claims, or any other Person or Entity from seeking authorization to pursue discovery pursuant to Bankruptcy Rule 2004 and/or other applicable rules, in each case, in

accordance with applicable Law; *provided*, *however*, that to the extent any deposition is sought from the Reorganized Debtor or the employees, officers, agents or representatives of the Debtor or the Reorganized Debtor, as applicable, the Debtor or the Reorganized Debtor, as applicable, expressly reserves all its rights consistent with applicable Law, and (ii) if an unidentified Abuse Insurance Policy is discovered after the Effective Date or was otherwise not included in the Insurance Assignment, the Reorganized Debtor shall cooperate with the Committee or Compensation Trust, as applicable, to realize the value of such Abuse Insurance Policy and/or to assign the Insurance Actions, the Insurance Recoveries, and all other rights, Claims, benefits, and Causes of Action of the Debtor under or with respect to such Abuse Insurance Policy (but not the policies themselves) to the Compensation Trust. To the extent any Post-Effective Date Discovery includes information that constitutes Direct Abuse Claim Discovery that should have been transferred to the Compensation Trust prior to or on the Effective Date pursuant to the Section 502(d) Finding, including any unidentified Abuse Insurance Policies, such discovery shall not be subject to the Trust Reimbursement.

(c)    *Trust Reimbursement.*

The Compensation Trust shall reimburse the reasonable cost, fees and expenses (including attorneys' fees, costs and expenses) of the Reorganized Debtor or its Representatives incurred in connection with the Debtor's obligations under <u>Article V.B.6(b)</u> hereof (the "<u>Trust Reimbursement</u>"). If the Compensation Trust fails to reimburse the Reorganized Debtor or its Representatives within thirty (30) days of when an invoice for reimbursement is delivered by the Reorganized Debtor to the Compensation Trust, the Reorganized Debtor shall have no obligation to cooperate pursuant to this <u>Article V.B.6(b)</u> until such outstanding amounts are paid in full.

7.    <u>Non-Monetary Debtor Commitments</u>

The Committee shall be entitled to review the Debtor's existing child safety policies and procedures to prevent Abuse from occurring in the future and consult with the Debtor regarding potential changes to such policies and procedures, subject to the approval of the Board and, to the extent applicable, the BGCA. To the extent that there are anticipated changes in existing child safety policies and procedures (the "<u>Amended Child Safety Policies</u>"), the Debtor will identify any such changes in the Plan Supplement.

8.    <u>Committee Commitments</u>

The Committee and each member thereof agrees to support the Plan and to vote each of its Claims against the Debtor to accept and support the Plan by delivering a duly executed and completed accepting Ballot on a timely basis. Additionally, the Committee shall (a) prepare and include in the solicitation materials a letter to Holders of Abuse Claims recommending that Holders of Abuse Claims vote to accept the Plan, and (b) file statements with the Court in support of entry of the Disclosure Statement Order and the Confirmation Order.

C.    *Restructuring Transactions*

On or before the Effective Date, as applicable, the Debtor or the Reorganized Debtor may take all actions consistent with the Plan and the Confirmation Order as may be necessary or

appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan, including with respect to the Committee Settlement and the Exit Facility. The Confirmation Order shall and shall be deemed, pursuant to section 1123 and section 1141 of the Bankruptcy Code, to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions (including any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan).

**D.**     *Sources of Consideration for Plan Distributions*

Distributions under the Plan shall be funded from the following sources:

1.     The DIP Claims against the Debtor shall be converted on the Effective Date to loans under the Exit Facility governed by the Exit Facility Documents;

2.     The Debtor shall fund distributions on account of and satisfy Allowed General Unsecured Claims exclusively from the GUC Cash Pool;

3.     The Debtor shall transfer the Compensation Trust Assets to the Compensation Trust on the Effective Date, or as soon as reasonably practicably thereafter, and the Compensation Trust shall make distributions on account of compensable Abuse Claims in accordance with the Compensation Trust Documents; and

4.     The Debtor shall fund distributions on account of and satisfy all other Allowed Claims with Cash on hand on or after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

**E.**     *GUC Cash Pool*

On the Effective Date, the Reorganized Debtor shall deposit the GUC Cash Pool into a segregated account held by the Reorganized Debtor. If any Cash remains in the GUC Cash Pool after all Allowed General Unsecured Claims have been satisfied in full, such remaining Cash shall irrevocably re-vest in the Reorganized Debtor.

**F.**     *Corporate Existence*

The Debtor shall continue to exist on and after the Effective Date with all of its powers under applicable Law and pursuant to the formation documents in effect before the Effective Date, except to the extent such formation document are amended by the Plan, the Confirmation Order, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan or the Confirmation Order, and require no further action or approval (other than any requisite filings required under applicable Law).

**G.**     *Directors and Officers*

The Reorganized Debtor's directors and officers holding such positions as of the Petition Date shall continue in such roles on and after the Effective Date for the Reorganized Debtor. Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated

changes in the Reorganized Debtor's directors and officers, the Debtor will identify any such changes in the Plan Supplement.

**H.**    *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or the Confirmation Order, any agreement, instrument, or other document incorporated in the Plan, the Confirmation Order or the Plan Supplement, or pursuant to any other Final Order of the Bankruptcy Court, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan or the Confirmation Order, excluding the Compensation Trust Assets, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, rights, or other Encumbrances. On and after the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**I.**    *Due Authorization*

On the Effective Date, all actions contemplated by the Plan or the Confirmation Order shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:

1.    The execution and delivery of the Restructuring Documents and any related instruments, agreements, guarantees, filings, or other related documents;

2.    The creation of the Compensation Trust and transfer of the Compensation Trust Assets to the Compensation Trust;

3.    The implementation of the Restructuring Transactions; and

4.    All other actions contemplated by the Plan or the Confirmation Order (whether to occur before, on or after the Effective Date).  On the Effective Date, any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan or the Confirmation Order, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor or the Reorganized Debtor.

On or before the Effective Date, as applicable, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized to issue, execute, and deliver the agreements, documents, not-for-profit membership interests, and instruments, as applicable, contemplated by the Plan or the Confirmation Order (or necessary or desirable to effect the transactions contemplated by the Plan or the Confirmation Order) in the name of and on behalf of the Reorganized Debtor, including, without limitation, the Restructuring Documents and any and all other agreements, documents, not-for-profit membership interests, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations

and approvals contemplated by this <u>Article V.I</u> shall be effective notwithstanding any requirements under non-bankruptcy law.

Each officer, director, or member of the Debtor is (and each officer, director, or member of the Reorganized Debtor shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, not-for-profit membership interests, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtor, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorizations, consents, or any further actions required under applicable Law, regulation, Order, or rule (including, without limitation, any action by the officers, directors, or members of the Debtor or the Reorganized Debtor) except for those expressly required pursuant to the Plan.

**J.    *Reinstatement of Interests***

As of the Effective Date, in accordance with <u>Article III.B.5</u>, the Not-Profit Membership Interests shall be Reinstated without further action by or order of the Bankruptcy Court.

**K.    *New Organizational Documents***

To the extent required under the Plan, the Confirmation Order, or applicable non-bankruptcy law, the Reorganized Debtor shall file the New Organizational Documents (if any) with the applicable authorities in accordance with applicable Law.

**L.    *Effectuating Documents; Further Transactions***

On and after the Effective Date, the Reorganized Debtor, and the officers thereof, shall be authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan with respect to the Confirmation Order (or the other Restructuring Documents), including the Restructuring Documents, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents, except those expressly required pursuant to the Plan or the Confirmation Order.

**M.    *Exemption from Certain Taxes and Fees***

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property pursuant hereto, including, without limitation, the Navy Yard Transaction and any mortgage or deed of trust executed by the Reorganized Debtor for the benefit or in favor of the DIP-to-Exit Lender and any transaction that is deemed or treated as equivalent to a transfer of property under applicable nonbankruptcy Law as a result of a change of ownership or control, shall not be subject to any tax under a law imposing a stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without

the payment of any such tax, recordation fee, or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

**N.**     *Insured Claims*

Notwithstanding anything to the contrary contained herein, to the extent that the Debtor has insurance with respect to any Allowed General Unsecured Claim, the Holder of such Allowed General Unsecured Claim shall (a) be paid any amount from the proceeds of insurance to the extent that such Claim is insured, and (b) solely for the portion of such Claim that is not paid by the applicable Insurance Policy, receive the treatment provided for Allowed General Unsecured Claims in the Plan; *provided* that in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed General Unsecured Claim exceed 100 percent of the underlying Allowed amount of such Claim.

**O.**     *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to  Article IV hereof, the Reorganized Debtor shall retain and may (but is not required to) enforce all rights to commence and pursue, as appropriate, any and all Causes of Action not released pursuant to Article IX hereof and the Madison/RU 9019 Order, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Reorganized Debtor to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, including in Article IX hereof and the Madison/RU 9019 Order.

The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including  Article IX of the Plan, and the Madison/RU 9019 Order.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order (including the Madison/RU 9019 Order), the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

**P.**     *Insurance Policies*

Each of the Debtor's Insurance Policies (other than the Abuse Insurance Policies, which shall be subject to the Insurance Assignment) and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.   On the Effective Date, (a) the Debtor shall be deemed to have assumed all Insurance Policies (other than the Abuse

Insurance Policies, which shall be subject to the Insurance Assignment) and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtor.

**Q.**     *Director and Officer Liability Insurance*

The Debtor's D&O Liability Insurance Policy shall be Reinstated under the Plan to the fullest extent possible under applicable Law.   Notwithstanding anything in the Plan or the Confirmation Order to the contrary, effective as of the Effective Date, the Reorganized Debtor shall be deemed to have assumed the D&O Liability Insurance Policy pursuant to section 365(a) of the Bankruptcy Code.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of the D&O Liability Insurance Policy. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policy, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan or the Confirmation Order, and no Proof of Claim, Administrative Claim, or objection to Cure Claim need be Filed with respect thereto.  For the avoidance of doubt, the D&O Liability Insurance Policy will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policy.

**R.**     *Termination of Forbearance Agreement; Waiver of Defaults; Assumption Ratification, Reaffirmation and Reinstatement of NMTC Documents and Waiver of Discharge and Discharge Injunction with Respect Thereto*

On the Effective Date, the Forbearance Agreement and the forbearance provisions set forth therein shall be of no further force; *provided* that the specified defaults (and interest accruing at the default rate) under the NMTC Documents as set forth in the Forbearance Agreement shall be deemed to have been permanently waived.

 Effective as of the Effective Date, the NMTC Documents constituting Executory Contracts capable of assumption under section 365(a) of the Bankruptcy Code, shall be deemed to be assumed by the Reorganized Debtor pursuant to section 365(a) of the Bankruptcy Code and the entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of such documents. For the avoidance of doubt, the Pinkerton Clubhouse Lease is included among the NMTC Documents that are being assumed by the Debtor as of the Effective Date.

In addition to the assumption of those NMTC Documents as provided for herein, and notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, other than the waiver provided for in the first paragraph of this Article V.R,  all of the NMTC Documents, together with the terms and conditions thereof and each and every of the Encumbrances and Liens granted pursuant thereto, shall be deemed ratified, confirmed, reaffirmed, reinstated and enforceable, along with all obligations thereunder, and in full force and effect, as if no bankruptcy had been filed by the Debtor, and any and all such Encumbrances and Liens shall

continue to secure the payment and performance of the obligations due thereunder in accordance with their respective terms.

Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order:

1.      The discharge and the Discharge Injunction granted in the Plan do not apply to the NMTC Documents or any rights, Claims, interests or entitlements of the NMTC Transaction Lender/Equity Parties related thereto or arising thereunder, and Confirmation of the Plan shall not discharge, impair, or otherwise modify or amend any terms, conditions, agreements or obligations arising out of or in any way related to the NMTC Documents (other than the waiver provided for in the first paragraph of this Article V.R); and

2.      Neither the Debtor nor the Non-Debtor Affiliate maintain any Claim, Cause of Action, right of setoff, recoupment or subordination, or other legal or equitable defense with respect to the NMTC Documents, the NMTC Transaction or the NMTC Transaction Lender/Equity Parties and to the extent any such Claim, Cause of Action, right of setoff, recoupment or subordination, or other legal or equitable defense exists, they are hereby waived, released and discharged.

Neither the Pinkerton Clubhouse, the Pinkerton Clubhouse Lease, nor the Leverage Loan shall be made subject to any Lien or any Encumbrance of any kind or nature, including, without limitation, any Lien or Encumbrance related to or granted in connection with the Exit Financing, except as otherwise expressly permitted by the NMTC Documents.

On the Effective Date (or as soon as reasonably practicable thereafter), the Debtor shall pay all accrued and unpaid reasonable and documented fees and expenses of the NMTC Transaction Lender/Equity Parties required to be paid pursuant to the terms of the Forbearance Agreement and/or the DIP Order, and the NMTC Transaction Lender/Equity Parties shall use reasonable efforts to provide the Debtor with copies of said summary invoices at least two business days prior to the anticipated Effective Date.

## S.      *Employee Arrangements of the Reorganized Debtor*

Except as otherwise provided in the Plan, the Confirmation Order or the Plan Supplement, all written employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtor, retirement income plans and welfare benefit plans, or discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees, shall be assumed (as may be amended prior to or on the Effective Date) by the Reorganized Debtor and shall remain in place after the Effective Date, as may be amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Debtor, on the other hand, as applicable, or, after the Effective Date, by agreement with the Reorganized Debtor.  Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law.

**T.**      *Notice of Effective Date*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtor shall File a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**U.**      *Rockefeller Cooperation*

On or before the Effective Date of the Plan, the Debtor shall provide the Direct Abuse Claim Discovery to Rockefeller pursuant to the Confirmation Order, including the Rule 502(d) Finding. All documents provided shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate.

At Rockefeller's sole expense, the Reorganized Debtor shall cooperate in good faith with Rockefeller, including by (a) providing the Direct Abuse Claim Discovery to Rockefeller in accordance with the preceding paragraph; (b) other than with respect to existing cooperation obligations under Abuse Insurance Policies, the Reorganized Debtor's compliance with existing contractual obligations and/or charter obligations owing with the BGCA, or as otherwise set forth herein, not assisting other third-parties (including the BGCA) or take any position or act in any manner adverse to Rockefeller in connection with any Abuse Claims against Rockefeller or litigation related to Abuse Claims against or involving Rockefeller; and (c) executing stipulations of discontinuance and consenting to requests for extensions as reasonably requested by Rockefeller for submission to the applicable court in actions involving Abuse Claims in which Rockefeller has a settlement agreement with the applicable Holder of such Abuse Claim or the applicable Holder of such Abuse Claim has otherwise agreed to a discontinuance of, or extension of time in, such action. For the avoidance of doubt, nothing in this Article V.U shall require the Reorganized Debtor to provide or disclose anything subject to attorney-client privilege or any other privilege to Rockefeller. After the Effective Date, (x) any reasonable costs, fees, and expenses (including attorneys' fees, costs, and expenses) of the Reorganized Debtor or its Representatives incurred in connection with the Debtor's obligations under this Article V.U shall be reimbursed by Rockefeller (such out-of-pocket expenses shall not include general overhead expenses of the Reorganized Debtor), and (y) if Rockefeller seeks additional discovery or document production from any Reorganized Debtor beyond the Direct Abuse Claim Discovery, Rockefeller shall reimburse the Reorganized Debtor for its reasonable and documented out-of-pocket expenses in connection therewith ((x) and (y) together, the "Rockefeller Reimbursement"). If Rockefeller fails to reimburse the Reorganized Debtor or its Representatives on account of the Rockefeller Reimbursement within thirty (30) days of when an invoice for reimbursement is delivered by the Reorganized Debtor to Rockefeller, the Reorganized Debtor shall have no obligation to cooperate pursuant to this Article V.U until such outstanding Rockefeller Reimbursement amounts are paid in full.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**      *Assumption of Executory Contracts and Unexpired Leases*

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Claims, all Executory Contracts and Unexpired Leases to which the Debtor is a party, and

which have not expired by their own terms on or prior to the Effective Date, shall be deemed assumed.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption of Executory Contracts and Unexpired Leases provided for in the Plan and/or the Confirmation Order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumption of Executory Contracts and Unexpired Leases pursuant to the Plan and the Confirmation Order is effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan, the Confirmation Order or by any other Order of the Bankruptcy Court, but not assigned to a third party before the Effective Date, shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan or the Confirmation Order restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" or cross-default provision, solely to the extent applicable to a default or alleged default that occurred on or prior to the Effective Date), then such provision shall be deemed modified and of no further effect, such that the transactions contemplated by the Plan or the Confirmation Order shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

**B.**    ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases***

The Debtor shall serve a Cure Notice on parties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan, detailing the applicable Cure Amounts for such parties in accordance with the Disclosure Statement Order. For the avoidance of doubt, and notwithstanding anything to the contrary herein, any Executory Contract and Unexpired Lease to which the Debtor is party shall be deemed assumed pursuant to the Plan and the Confirmation Order. If any Executory Contract or Unexpired Lease to be assumed pursuant to the Plan is not listed in the Cure Notice, the Cure Amount for such Executory Contract and Unexpired Lease shall be deemed to be zero dollars ($0).

Any counterparty to any Executory Contract or Unexpired Lease shall have the time prescribed by the Disclosure Statement Order to object to the proposed assumption or related Cure Amount listed on the Cure Notice. If no objection is timely received, the counterparties to such Executory Contracts and Unexpired Leases to be assumed shall be deemed to have consented to the assumption or Cure Amount of such Executory Contracts and Unexpired Leases and such counterparties to such Executory Contracts and Unexpired Leases shall be deemed to release and waive, subject to such counterparties' receipt of the relevant Cure Amounts, any and all rights arising under such Executory Contracts and Unexpired Leases related to any default, cross-default, termination, put right, or other similar provision related to any event, default, or potential default occurring on or prior to the Effective Date.

The Bankruptcy Court will determine any proper and timely Assumption Dispute Filed in writing with the Bankruptcy Court by entry of an Order; *provided* that the Debtor or the Reorganized Debtor, as applicable, may settle any Assumption Dispute without any further action, Order, or approval of the Bankruptcy Court; *provided, further*, that where an Assumption Dispute relates solely to the applicable Cure Amount, the Debtor may assume and/or assume and assign the applicable Executory Contracts and Unexpired Leases prior to the resolution of such Assumption Dispute, subject to establishing an escrow with funds in an amount as agreed by the parties thereto or as determined by the Bankruptcy Court at the Confirmation Hearing. Any objections to any proposed Cure Amounts or to the assumption of any Executory Contracts and Unexpired Leases will not be treated as objections to Confirmation of the Plan.

**C.**     *Payments Related to Assumption of Executory Contracts and Unexpired Leases*

Any Cure Amounts shall be deemed fully satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of the Cure Amount, as reflected in the applicable Cure Notice, in Cash on the later of (i) the Effective Date and (ii) the date of resolution of an Assumption Dispute, or in each case as soon as reasonably practicable thereafter, subject to the limitations described in this Article VI.C of the Plan, or on such other terms as the parties to such Executory Contracts and Unexpired Leases and the Debtor may otherwise agree. If no Cure Amount is reflected in the applicable Cure Notice, no Cure Amount shall be deemed to be owing, unless otherwise ordered by the Bankruptcy Court.

Assumption of any Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against the Debtor or defaults by the Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control, cross-default, ownership interest composition, the transfer or assignment of such contract or lease or other bankruptcy-related defaults, arising under any assumed Executory Contracts and Unexpired Leases at any time before the date that the Debtor assumes such Executory Contracts and Unexpired Leases, or on account of a transaction contemplated by the Plan. Any Proofs of Claim Filed with respect to any Executory Contracts and Unexpired Leases that have been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, Order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such Executory Contracts and Unexpired Leases.

**D.**     *Director and Officer Liability Insurance*

The Debtor's D&O Liability Insurance Policy shall be Reinstated under the Plan to the fullest extent possible under applicable law. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, effective as of the Effective Date, the Reorganized Debtor shall be deemed to have assumed the D&O Liability Insurance Policy pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of the D&O Liability Insurance Policy by the Reorganized Debtor. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policy, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan or the Confirmation Order, and no Proof of

Claim, Administrative Claim, or Cure Claim need be Filed with respect thereto. For the avoidance of doubt, the D&O Liability Insurance Policy will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policy.

**E.      *Indemnification Obligations***

Except to the extent inconsistent with the Plan or the Confirmation Order, the obligation of the Debtor to indemnify any individual who is serving or has served as one of the Debtor's directors, officers, or employees on or after the Petition Date will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor pursuant to the Plan or the Confirmation Order as of the Effective Date on the terms provided in the applicable certificates of incorporation, bylaws or similar constituent documents, by statutory law, or by written agreement, policies, or procedures of or with the Debtor. Accordingly, such indemnification obligations will survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date; *provided*, *however*, that no cure payments shall be required in connection with the aforementioned assumption. Furthermore, the any rights or defenses the Debtor's board members may have under New York Not-for-Profit Corporation Law § 720-a, the Volunteer Protection Act of 1997, or any other similar state or federal Laws are fully preserved.

**F.      *Modifications, Amendments, Supplements, Restatements or Other Agreements***

Unless otherwise provided in the Plan, the Confirmation Order, or by separate order of the Bankruptcy Court, all Executory Contracts and Unexpired Leases that are assumed shall include all exhibits, schedules, modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts and Unexpired Leases, and affect Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of such Executory Contracts and Unexpired Leases or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Bankruptcy Court order to the contrary.

**G.      *Contracts and Leases Entered into after the Petition Date***

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or the Reorganized Debtor in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**H.      *Reservation of Rights***

Neither the exclusion nor the inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to the Plan, the Confirmation Order or in the Plan Supplement,

nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is not an Executory Contract or Unexpired Lease or that the Debtor or the Reorganized Debtor or its respective Affiliates has any liability thereunder.

Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtor or the Reorganized Debtor under any executory or non-executory contract or unexpired or expired lease.

Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Reorganized Debtor, as applicable, under any executory or non-executory contract or unexpired or expired lease.

## I.   *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

None of the terms or provision of this Article VII shall apply to Abuse Claims, which shall be exclusively processed, liquidated, and paid by the Compensation Trust in accordance with the Compensation Trust Documents; *provided* that the provisions of this Article VII may apply at the election of the Compensation Trustee to (1) any Proof of Claim asserting a Direct Abuse Claim that is duplicative of a separately Filed Proof of Claim asserting the same Direct Abuse Claim, and/or (2) a Proof of Claim asserting a Direct Abuse Claims that has been amended and superseded by a subsequently Filed Proof of Claim.   At the Compensation Trustee's election, the Compensation Trust may pursue objections to Abuse Claims in the Bankruptcy Court that are subject to the proviso in the immediately preceding sentence.  For the avoidance of doubt, nothing in this paragraph alters or modified the Channeling Injunction or discharge provisions of the Plan.

## A.   *Allowance of Claims*

Prior to the Effective Date, the Debtor shall be entitled to object to Claims.   After the Effective Date, solely the Reorganized Debtor shall have the right to object to Claims and shall retain any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date, including the Causes of Action retained pursuant to Article V.O of the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

**B.**    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the authority: (1) to File, withdraw, or litigate to judgment objections to Claims; (2) to settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (3) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**C.**    *Estimation of Claims*

Before or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

**D.**    *Adjustment to Claims Without Objection*

Upon and following the Effective Date, any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan or the Confirmation Order), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtor without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**E.**    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

**F.**    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor. All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee of the Debtor as of the Effective Date shall be deemed

satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed by the Reorganized Debtor, or honored or reaffirmed, as the case may be pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**G.    *No Distributions Pending Allowance***

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**H.    *Distributions After Allowance***

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim  unless required under applicable bankruptcy law; *provided* that with respect to General Unsecured Claims the distribution on account of Allowed General Unsecured Claims shall be made on the GUC Distribution Date.

**I.    *Single Satisfaction Rule***

In no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed amount of such Claim.

**ARTICLE VIII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

None of the terms or provision of this <u>Article VIII</u> shall apply to Abuse Claims, which shall be exclusively processed, liquidated and paid by the Compensation Trust in accordance with the Compensation Trust Documents.

**A.    *Timing and Calculation of Amounts to Be Distributed***

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class; *provided* that distribution on account of Allowed General Unsecured Claims shall be made on the GUC Distribution Date from the GUC Cash Pool to Holders of Allowed General Unsecured Claims.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required

date.  If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.**      *Disbursing Agent*

The Reorganized Debtor shall be the Disbursing Agent; *provided* that the Reorganized Debtor may hire professionals or consultants to assist with making disbursements or to act as the Disbursing Agent.   After the Effective Date, distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**C.**      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred on or After the Effective Date

Except as otherwise provided herein or ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

**D.**      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.      Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims on the Effective Date or the GUC Distribution Date, as applicable, at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at

the discretion of the Disbursing Agent; *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

### 3.  Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of less than $200 in value (whether Cash or otherwise), and each such Claim to which this limitation applies shall be discharged pursuant to <u>Article IX</u> of the Plan and its Holder is forever barred pursuant to <u>Article IX</u> of the Plan from asserting that Claims against the Debtor or the Reorganized Debtor, as applicable, or their respective property.

### 4.  No Fractional Distributions

No payment of fractional cents shall be made pursuant to the Plan, including to Holders of Allowed General Unsecured Claims by the Disbursing Agent.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the distribution shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

### 5.  Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be  discharged and forever barred.

## E.  *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtor or the Reorganized Debtor, as applicable, reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

**F.      *No Postpetition Interest on Claims***

Unless otherwise specifically required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtor, and no Holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

**G.      *Foreign Currency Exchange Rate***

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

**H.      *Setoffs and Recoupment***

The Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtor or the Reorganized Debtor, as applicable, may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor, as applicable, of any such Claim it may have against the Holder of such Claim.  In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**I.      *Claims Paid or Payable by Third Parties***

1.      <u>Claims Paid by Third Parties</u>

A Claim shall be reduced in full, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor, the Reorganized Debtor, or the Disbursing Agent, as applicable.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor, the Reorganized Debtor, or the Disbursing Agent, as applicable on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to the Debtor, Reorganized Debtor, or the Disbursing Agent, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      Claims Payable by Third Parties

The availability, if any, of Insurance Policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the Insurance Policies of the Debtor or the Reorganized Debtor, as applicable.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy subject to applicable Law. Except as otherwise provided in the Plan or Confirmation Order, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers subject to applicable Law.

**J.      *Distributions after Effective Date***

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

**ARTICLE IX.
RELEASE, INJUNCTION AND RELATED PROVISIONS**

**A.      *Discharge of Claims***

1.      Discharge

Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims of any nature whatsoever against the Debtor or any of the Debtor's assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, the Debtor shall be deemed discharged and released, and each Holder of a Claim and any successor, assign, and affiliate of such Holder shall be deemed to have forever waived, discharged and released the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the Holder of a Claim based upon such debt is deemed to have

accepted the Plan; *provided*, *however*, for the avoidance of doubt, except as provided in <u>Article IV.G</u> of the Plan, such discharge shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

Notwithstanding the above, to preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, Class 4 Claimants specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the Compensation Trust Assets and the proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries; *provided*, that any Holder of an Abuse Claim seeking to pursue its Abuse Claim in a court of competent jurisdiction against the Debtor, the Reorganized Debtor, any other Covered Party and/or any other defendant in accordance with the terms of the Plan (which action to pursue such Abuse Claim may include the continuation of an action commenced by such Holder of such Abuse Claim against the Debtor and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to the extent no such action to pursue such Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date) that implicates coverage under any Non-Settling Insurance Company's Abuse Insurance Policies must transmit the Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed therein and such Holder of such Abuse Claim is enjoined by this Plan from pursuing such Abuse Claim until the expiration of a forty-five (45) day period after the transmittal of the Notice of Intent to Pursue Abuse Claims to the Abuse Insurance Companies. The Class 4 Claims will not be released or enjoined as against the Debtor, the Reorganized Debtor, or any other Covered Party for any Abuse Claim that may be covered under any Non-Settling Insurance Company's Abuse Insurance Policies until such Claims are settled with the Debtor, the Reorganized Debtor, any other Covered Party and such Non-Settling Insurance Company or are fully adjudicated, resolved, and subject to Final Order, but recovery shall be limited as described above.

2.    <u>Discharge Injunction</u>

From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all Holders of Claims of any nature whatsoever against or in the Debtor or any of the Debtor's assets or property based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged as to the Debtor pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims: (a) commencing or continuing any action or other proceeding of any kind against the Debtor, the Reorganized Debtor, the Compensation Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other

order against the Debtor, the Reorganized Debtor, the Compensation Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtor, the Reorganized Debtor, the Compensation Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtor (including the Reorganized Debtor) and its and their respective property and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims and other debts and liabilities against or in the Debtor pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time to the extent such judgment relates to a discharged Claim; *provided*, *however*, for the avoidance of doubt, such injunction shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

## B. *Channeling Injunction*

Notwithstanding Article IX.A of the Plan, and subject to the Madison/RU 9019 Order, to preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, Class 4 Claimants specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the Compensation Trust Assets and the proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages, and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries; *provided*, that any Holder of an Abuse Claim seeking to pursue its Abuse Claim in a court of competent jurisdiction against the Debtor, the Reorganized Debtor, any other Covered Party and/or any other defendant in accordance with the terms of the Plan (which action to pursue such Abuse Claim may include the continuation of an action commenced by such Holder of such Abuse Claim against the Debtor and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to the extent no such action to pursue such Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date) that implicates coverage under any Non-Settling Insurance Company's Abuse Insurance Policies must transmit the Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed therein and such Holder of such Abuse Claim is enjoined from pursuing such Abuse Claim until the expiration of a forty-five (45) day period after the transmittal of the Notice of Intent to Pursue Abuse Claims to the Abuse Insurance Companies. The Class 4 Claims will not be released or enjoined as against the Debtor, the Reorganized Debtor, or any other Covered Party for any Abuse Claim that may be covered under any Non-Settling Insurance Company's Abuse Insurance Policies until such Claims are

settled with the Debtor, the Reorganized Debtor, any other Covered Party and such Non-Settling Insurance Company or are fully adjudicated, resolved, and subject to Final Order, but recovery is limited as described above.

Subject to any limitations in Article V.B.6, including the Trust Reimbursement, Holders of Abuse Claims, and, if necessary, the Compensation Trust, shall be permitted to name the Debtor or any other Covered Party (as parties) in any proceeding to resolve whether the Debtor or any other Covered Party has liability for Abuse Claims and the amount of any such liability, solely for the purpose of obtaining Insurance Coverage from Non-Settling Insurance Company. The discharge hereunder does not apply to, and shall not limit in any way the obligations of Non-Settling Insurance Company to defend and pay, the Debtor's or any other Covered Party's liability for Abuse Claims under Non-Settling Insurance Company's Abuse Insurance Policy, subject in all respects to any available Insurance Coverage Defenses.

On and after the Effective Date, all Persons that hold and have timely asserted by the Claims Bar Date any Abuse Claim (including, for the avoidance of doubt, Abuse Claims arising under the Child Victims Act, the Adult Survivors Act, and the Victims of Gender-Motivated Violence Protection Act) against any of the Covered Parties shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Covered Party with respect to any such Abuse Claim other than from the Compensation Trust pursuant to the Compensation Trust Documents, including:

1.      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Covered Party or any property or interest in property of any Covered Party;

2.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Covered Party or any property or interest in property of any Covered Party;

3.      creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Lien or Encumbrance of any kind against any Covered Party or any property or interest in property of any Covered Party;

4.      asserting, implementing, accomplishing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Covered Party or any property or interest in property of any Covered Party; or

5.      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Restructuring Documents or the Compensation Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Compensation Trust, except in conformity and compliance with the Compensation Trust Documents with respect to any such Abuse Claim.

Solely to the extent a BGCA Global Settlement is approved and consummated in accordance with the Trust Allocation Protocol, the BGCA may seek, solely pursuant to a further order of the Bankruptcy Court, be deemed a Covered Party for purposes of this Article IX.B on and after the date on which such BGCA Global Settlement is fully consummated; *provided* that to the extent the Chapter 11 Case has been closed, the Compensation Trustee, the BGCA, or another interested party may seek to reopen the Chapter 11 Case or take other action as may be necessary to apply for an order of the Bankruptcy Court determining that the BGCA shall be deemed a Covered Party.

Notwithstanding anything to the contrary in this Article IX.B, the Channeling Injunction shall not enjoin:

1.       the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of Abuse Claims to assert such Abuse Claims in accordance with the Compensation Trust Documents;

2.       except as provided in Article IV.G of the Plan, the rights of Holders of Abuse Claims to assert such Abuse Claims against anyone other than a Covered Party, including, without limitation, against Rockefeller or the BGCA to the extent such party does not become a Covered Party in accordance with this Article IX.B and the Trust Allocation Protocol, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant, all rights and Claims of such Holders against Rockefeller or the BGCA (as applicable), or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant being expressly retained and reserved by such Holders and unaffected by this or any other provision of the Plan;

3.       the rights of any Person to assert any Claim, Cause of Action, debt, obligation, or liability for payment of Compensation Trust Expenses solely against the Compensation Trust in accordance with the Compensation Trust Documents;

4.       the Compensation Trust from enforcing its rights under the Plan and the Compensation Trust Documents;

5.       the rights of the Compensation Trust and the Reorganized Debtor (to the extent permitted or required under the Plan) to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies, subject to any Insurance Coverage Defenses;

6.       the rights of any survivor of Abuse to assert any Claim against a Non-Settling Insurance Company based on or arising from the Abuse Insurance Policies or the rights of any Non-Settling Insurance Company to assert each and every available defense (including any Insurance Coverage Defenses) under applicable Law or the applicable Abuse Insurance Policy relating to any Abuse Claim; *provided*, *further* that nothing in this Article IX.B.6 shall impair the rights of any Non-Settling Insurance Company set forth in Article X of the Plan;

7.       the rights of any Abuse Insurance Company (including Non-Settling Insurance Companies) to assert any Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts against the Settling Insurance Companies and other Insurance Companies;

8.     the rights of any Settling Insurance Companies to enforce the terms of the Channeling Injunction as set forth herein and in the Insurance Settlement Agreements to the extent such Settling Insurance Company becomes a Covered Party in accordance with Article IV.H of the Plan and the Trust Allocation Protocol; or

9.     the rights of any Insurance Company to assert any Claims for contribution, subrogation, indemnification or other similar Cause of Action against the Compensation Trust for the Settling Insurance Companies' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim, or for any Cause of Action released in any Insurance Settlement Agreements.

**C.     *Provisions Relating to Channeling Injunctions***

1.     <u>Modifications</u>. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

2.     <u>Non-Limitation</u>. Nothing in the Plan or the Compensation Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the Compensation Trust's assumption of all liability with respect to Abuse Claims.

3.     <u>Bankruptcy Rule 3016 Compliance</u>. The Debtor's compliance with the requirements of Bankruptcy Rule 3016 shall not constitute or be deemed to constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

4.     <u>Enforcement</u>. Any Covered Party may enforce the Channeling Injunction as a defense to any Claim brought against such Covered Party that is enjoined under the Plan as to such Covered Party and may seek to enforce such injunction in a court of competent jurisdiction.

5.     <u>Contribution Claims</u>.  If a Non-Settling Insurance Company asserts that it has rights, whether legal, equitable, contractual, or otherwise, of contribution, indemnity, reimbursement, subrogation or other similar Claims directly or indirectly arising out of or in any way relating to such Non-Settling Insurance Company's (a) payment of loss on behalf of the Debtor or (b) payment of defense expenses incurred in any action that should have been paid by or are otherwise attributable to a Settling Insurance Company, in the case of both (a) and (b) related to any Direct Abuse Claim against the Debtor or other Covered Parties (collectively, "<u>Contribution Claims</u>"), (i) such Contribution Claims may be asserted as a defense or counterclaim against the Compensation Trust in any Insurance Action involving such Non-Settling Insurance Company, and the Compensation Trust may assert the legal or equitable rights (if any) of the Settling Insurance Company, and (ii) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such Non-Settling Insurance Company to the Compensation Trust shall be reduced by the amount of such Contribution Claims.

6.     <u>No Duplicative Recovery</u>. In no event shall any Holder of an Abuse Claim be entitled to receive any duplicative payment, reimbursement, or restitution from any Covered Party under any theory of liability for the same loss, damage, or other Claim that is reimbursed by

the Compensation Trust or is otherwise based on the same events, facts, matters, or circumstances that gave rise to the applicable Abuse Claim.

### D.    *Release of Liens*

Except (a) with respect to the Liens, if any, securing (i) the Exit Facility and (ii) to the extent elected by the Debtor with respect to an Allowed Other Secured Claim in accordance with Article III.B.1, or (b) as otherwise provided in the Plan or the Confirmation Order or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Reorganized Debtor to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtor or the Reorganized Debtor.

### E.    *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Claims or Causes of Action for any Claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to, or arising out of, directly or indirectly resulting from, in consequence of, or in any way attributable to, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Exit Facility Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement and other Restructuring Documents), the Compensation Trust, the Compensation Trust Documents, or any aspect of the Restructuring, including the Committee Settlement, the Insurance Settlement Agreement (if any), any related contract, instrument, release, or other agreement or document created or entered into during the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place from the Petition Date through and including the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted fraud, willful misconduct, gross negligence, or claims for legal malpractice, release of which is prohibited by Rule 1.8(h) of the New York Rules of Professional Conduct (22 N.Y.C.R.R. § 1200); *provided*, *however*, that, for the avoidance of doubt, such exculpation shall not act or be construed to channel, release, enjoin, or otherwise affect criminal enforcement actions or any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

### F.    *Injunctions Related to Exculpation*

Except as otherwise expressly provided in the Plan, the Compensation Trust Documents, or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant

to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims that are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, and the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any Lien or Encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released or settled pursuant to the Plan; *provided*, *however*, that, for the avoidance of doubt, except as provided in <u>Article IV.G</u> of the Plan, such injunction shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor was named as a defendant.

Upon entry of the Confirmation Order, all Holders of Claims and their respective Representatives shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan; *provided*, *however*, that, for the avoidance of doubt, such injunction shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan; *provided*, *however*, that, for the avoidance of doubt, except as provided in <u>Article IV.G</u> of the Plan, such acceptance or eligibility for acceptance of distributions, shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

## G.    *Qualified Immunity*

Nothing in this <u>Article IX</u> is meant to limit, impair, or otherwise affect the qualified immunity granted to a director, officer, or trustee of the Debtor pursuant to New York Not-for-Profit Corporation Law § 720-a, the Volunteer Protection Act of 1997, and other similar applicable non-bankruptcy Law.

## H.     *Reservation of Rights*

Notwithstanding any other provision of the Plan to the contrary, no provision of this Article IX shall be deemed or construed to satisfy, discharge, release or enjoin Claims or Causes of Action (1) by the Compensation Trust, the Reorganized Debtor, or any other Person, as the case may be, against (a) the Compensation Trust for payment of Abuse Claims in accordance with the Compensation Trust Documents, (b) the Compensation Trust for the payment of Compensation Trust Expenses, or (c) any Insurance Company that has not performed under an Abuse Insurance Policy (to the extent such Abuse Insurance Policy is not the subject of an Insurance Settlement Agreement) or an Insurance Settlement Agreement and (2) except as provided in Article IV.G of the Plan, by any Holder of a Direct Abuse Claim against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

## I.     *Protection against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because Debtor has been the Debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case, but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

## J.     *Release of Preference Actions*

As of the Effective Date, the Debtor, on behalf of itself and its Estate, shall be deemed to waive and release all Avoidance Actions arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law; *provided* that, the Reorganized Debtor shall retain the right to assert any Claims assertible in any Avoidance Action (except an Avoidance Action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable nonbankruptcy law that are deemed waived and released in the Plan or the Confirmation Order) as defenses or counterclaims in any Cause of Action brought against the Debtor or the Reorganized Debtor, as applicable, by any Entity.

## ARTICLE X.
## INSURANCE PROVISIONS

Except for the Insurance Assignment, or as otherwise provided in the Bankruptcy Code or other applicable Law, nothing in the Plan, the Restructuring Documents, or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, modifying, amending, supplementing, changing, expanding, decreasing, or modifying, or be interpreted as impairing, modifying, amending, supplementing, changing, expanding, decreasing, or modifying, the terms of any Abuse Insurance

Policy issued by a Non-Settling Insurance Company or rights or obligations under such Abuse Insurance Policy to the extent such rights and obligations are otherwise available under applicable Law, and the rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of the Restructuring Documents, including the Plan, the Confirmation Order, or any provision thereof, shall solely be determined pursuant to the terms and provisions of the Abuse Insurance Policies and applicable Law.

Notwithstanding any provision in the Plan, the Restructuring Documents, or the Confirmation Order, nothing contained in any such documents or in this paragraph shall impose, or shall be deemed or construed to impose, any obligation on any Non-Settling Insurance Company to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim. Rather, a Non-Settling Insurance Company's obligations, if any, with respect to an Abuse Claim shall be determined solely by and in accordance with the applicable Abuse Insurance Policy(ies) issued by that Non-Settling Insurance Company subject to applicable Law. Nothing in the Plan, the Restructuring Documents, or the Confirmation Order shall diminish or impair, or be deemed to diminish or impair, the rights of any Non-Settling Insurance Company to assert any Claim, defense, right, or counterclaim in connection with any Abuse Claim or Abuse Insurance Policy in accordance with applicable Law.

Without limiting the generality of the foregoing provisions of this Article X, nothing in the Plan, the Restructuring Documents, or the Confirmation Order, shall, under any theory, (a) constitute a trial, a judgment, an adjudication on the merits, or evidence establishing the liability of any Non-Settling Insurance Company in subsequent litigation for any Claim, including, without limitation, any Abuse Claim, or under any Abuse Insurance Policy, (b) constitute, or be deemed to constitute, a determination of the reasonableness of the amount of any Claim, including any Abuse Claim, either individually or in the aggregate with other Claims, (c) be deemed to grant to any Person or Entity any right to sue any Non-Settling Insurance Company directly, in connection with a Claim, including any Abuse Claim, or any Insurance Policy, that such Person or Entity did not otherwise have under applicable Law, (d) constitute a finding or determination that the Debtor is a named insured, additional insured, or insured in any other way under any Abuse Insurance Policy, (e) constitute a finding or determination that any Non-Settling Insurance Company in fact issued any alleged Abuse Insurance Policy or that any alleged Abuse Insurance Policy has any particular terms or conditions, or (f) constitute a finding or determination that any Non-Settling Insurance Company has any defense or indemnity obligation with respect to any Claim or Abuse Claim. In addition, no payment made in accordance with the Plan shall be, or be deemed to be, a waiver of any rights of any Non-Settling Insurance Company under any Abuse Insurance Policy.

Other than with respect to the effectiveness of the Insurance Assignment contemplated by the Plan and the findings necessary to confirm the Plan under section 1129 of the Bankruptcy Code, no Non-Settling Insurance Company shall be bound in any current or future litigation concerning an Abuse Claim or an Abuse Insurance Policy by any factual findings or conclusions of law issued in connection with Confirmation of the Plan, and no such findings of fact or conclusions of law shall have any res judicata or collateral estoppel effect on any Claim, defense, right, offset, or counterclaim that has been asserted or that may be asserted in any current or subsequent litigation concerning an Abuse Claim or an Abuse Insurance Policy. Non-Settling

Insurance Companies shall retain, and be permitted to assert, (i) all of their Insurance Coverage Defenses subject to applicable Law in connection with Abuse Claims notwithstanding any provision of the Plan, the Restructuring Documents, or the Confirmation Order, other than with respect to the Insurance Assignment, and (ii) all of the Debtor's defenses to liability, both legal and equitable, in connection with any asserted Abuse Claim, and the Non-Settling Insurance Companies' rights to assert all such underlying defenses and Insurance Coverage Defense in connection with Abuse Claims will not be impaired in any way by the Plan, the Restructuring Documents, or the Confirmation Order but subject to applicable Law.

No provision of the Plan, other than those provisions contained in the applicable injunctions set forth in <u>Article IX</u> of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company that becomes a Covered Party in accordance with <u>Article IV.H</u> of the Plan and the Trust Allocation Protocol by the Channeling Injunction.

Except as provided in <u>Article IV.G</u> of the Plan, no provision of the Plan shall be interpreted to affect or limit any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

No provision of the Plan or Compensation Trust Documents shall be interpreted to affect, limit, or impair any rights, defenses or remedies that Rockefeller, the BGCA, or any non-Debtor co-defendant may have with respect to any Claims held by a survivor of Abuse in litigation, including with respect to any provision of applicable law as to judgment reduction, contribution protection, limitation of liability, or any other limitations, rights, defenses, or remedies. For the avoidance of doubt, the foregoing shall include, without limitation, any rights, defenses and remedies that Rockefeller, the BGCA, or any non-Debtor co-defendant may assert under New York General Obligations Law § 15-108 and New York Civil Practice Law and Rules 1601.

**ARTICLE XI.
CONDITIONS PRECEDENT TO
CONSUMMATION OF THE PLAN**

**A.**    ***Conditions Precedent to Confirmation of the Plan***

It shall be a condition to Confirmation of the Plan that the following conditions shall be satisfied (or waived pursuant to the provisions of <u>Article XI.C</u> of the Plan):

1.    The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to the Debtor.  These findings and determinations shall be effective, binding and enforceable, and shall, among other things, provide that:

      i.    the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan be proposed in good faith and that the Confirmation Order not be procured by fraud;

ii.     the Channeling Injunction is to be implemented in connection with the Compensation Trust and shall be in full force and effect on the Effective Date;

iii.    upon the Effective Date, the Compensation Trust shall assume the liabilities of the Covered Parties with respect to Abuse Claims and have authority as of the Effective Date to satisfy or defend such Abuse Claims, subject to the rights of Non-Settling Insurance Companies as set forth in this Plan, including Article IV.E hereof;

iv.     the Compensation Trust will be funded with the Compensation Trust Assets;

v.      the Compensation Trust will use the Compensation Trust Assets to resolve Abuse Claims;

vi.     the terms of the Channeling Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement;

vii.    the Plan complies with section 105(a) of the Bankruptcy Code to the extent applicable;

viii.   the Channeling Injunction is essential to the Plan and the Debtor's reorganization efforts;

ix.     (1) the Insurance Assignment is authorized and permissible pursuant to sections 541 and 1123(a)(5) of the Bankruptcy Code notwithstanding any terms of any policies or provisions of applicable Law that are argued to prohibit the assignment or transfer of such rights and obligations; (2) the Compensation Trust is a proper defendant for Abuse Claims to assert the liability of the Covered Parties; and (3) the Compensation Trust's rights under any Abuse Insurance Policies issued by Non-Settling Insurance Companies, including the effect of any failure to satisfy conditions precedent or obligations under such policies (other than the terms of any policies or provisions of applicable Law that are argued to prohibit the assignment or transfer of such rights), shall be determined under the Law applicable to each such policy in subsequent litigation;

x.      If applicable, the Insurance Settlement Agreements are approved and the Abuse Insurance Policies shall be sold to the respective Settling Insurance Companies free and clear of all Liens, Claims, Encumbrances, interests and rights of any nature, whether at law or in equity, of any Person or Entity, and each Insurance Company that has contributed funds, proceeds or other consideration to or for the benefit of the Compensation Trust pursuant to an Insurance Settlement Agreement is designated as a Settling Insurance Company, and such Insurance Settlement Agreements represent a sound exercise of the Debtor's business judgment, are in the best interest

of the Debtor's Estate, comply with section 1123 of the Bankruptcy Code, and are approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019;

xi.     The Allowed amount of any Direct Abuse Claim shall be the amount therefor as determined under the Trust Allocation Protocol.  Such allowed amount shall be legally enforceable against the Compensation Trust.  For the avoidance of doubt, the amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Allocation Protocol or the Compensation Trust Agreement, as determined or as actually paid by the Compensation Trust, are not the equivalent of any Holder of a Direct Abuse Claim's Allowed amount of its channeled Direct Abuse Claim.  For the further avoidance of doubt, nothing herein determines whether or not any insurer is obligated to pay the amount determined under the Trust Allocation Protocol for an Allowed Direct Abuse Claim; and

xii.     Except as provided in Article IV.G of the Plan, no provision of the Plan shall be interpreted to affect or limit any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant or any defenses Rockefeller, the BGCA, or any co-defendant may have with respect to any such Claim.

2.      The proceeds of any sale of any Abuse Insurance Policies, including the full settlement amount, shall be contributed to the Compensation Trust "free and clear" of all Liens, Claims, Encumbrances, any other rights of any nature, whether at law or in equity, and other "interest," under sections 363 and 1141 of the Bankruptcy Code, of any additional insured or any other Person or Entity in such Abuse Insurance Policies.  Notwithstanding anything to the contrary and for the avoidance of doubt, the Abuse Insurance Policies shall be sold by the Debtor to the applicable Settling Insurance Companies free and clear of all Liens, Claims, Encumbrances, interests or other rights on the Effective Date on the terms and as provided in the applicable Insurance Settlement Agreement.

**B.     *Conditions Precedent to the Effective Date***

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XI.C of the Plan):

1.      the Debtor shall have obtained all authorizations, consents, certifications, regulatory approvals, rulings, or other documents or actions that are necessary to implement and effectuate the Restructuring Transactions, including the Plan;

2.      all conditions precedent to the incurrence of the Exit Facility shall have been satisfied or waived pursuant to the terms of the Exit Facility Documents (which may occur substantially contemporaneously with the occurrence of the Effective Date);

3.      all documents and agreements necessary to implement the Plan shall have been (i) tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

4.      the Plan Supplement, including any amendments, modifications, or supplements to the documents, schedules, or exhibits included therein, shall have been Filed with the Bankruptcy Court;

5.      the Bankruptcy Court shall have entered the Disclosure Statement Order, and such Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered;

6.      the Compensation Trust Assets shall, simultaneously with the occurrence of the Effective Date or as otherwise provided herein, be transferred to, vested in, and assumed by the Compensation Trust in accordance with Article IV and Article V;

7.      the Bankruptcy Court shall have made the Rule 502(d) Finding;

8.      the Debtor shall have provided the Direct Abuse Claim Discovery to the Compensation Trust, the Abuse Insurance Companies, and Rockefeller pursuant to the Confirmation Order, including the Rule 502(d) Finding;

9.      the Professional Fee Escrow shall have been established and funded with Cash in accordance with Article II.B.1 of the Plan;

10.     the Restructuring Documents shall be effective pursuant to their terms;

11.     the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall approve and authorize the Insurance Assignment and the assignment of Insurance Actions, and determine that the Insurance Assignment and the assignment of Insurance Actions is valid and does not defeat or impair the Insurance Coverage; and

12.     the Bankruptcy Court shall have entered the Madison/RU 9019 Order, and the Madison/RU 9019 Order shall be a Final Order.

## C.      *Waiver of Conditions*

Any condition precedent set forth in this Article XI hereof may be waived, in whole or in part, only if waived in writing by the Debtor, and as to Article XI.B.5 through 9, with the consent of the Committee, without notice, leave or Order of the Bankruptcy Court, or any formal action other than proceedings to confirm or consummate the Plan.

## D.      *Effect of Failure of a Condition*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, any Holders, or any other Entity; (2) prejudice in any manner the rights of

the Debtor, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders, or any other Entity in any respect.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.**     *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtor reserves the right, in consultation with the Committee, to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtor expressly reserves its rights to revoke or withdraw, to alter, amend or modify the Plan with respect to the Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.**     *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**C.**     *Revocation or Withdrawal of The Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if Confirmation and Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain Claims or Classes of Claims), assumption of Executory Contracts and Unexpired Leases effected by the Plan, and execution of any document or agreement pursuant to the Plan shall be deemed null and void; (c) any votes in respect of the Plan shall be null, void and deemed withdrawn; and (d) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims, (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the Holders of Claims or Not-For-Profit Membership Interests and the Non-Debtor Affiliate, or (iii) constitute a representation, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity, including the Non-Debtor Affiliate.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of, or related to, the Chapter 11 Case,

the Confirmation Order and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code, the Confirmation Order or the Plan;

3.      resolve any matters related to: (i) the assumption and assignment of any Executory Contracts and Unexpired Leases to which the Debtor is a party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including Cure Claims; (ii) any dispute regarding whether a contract or lease is or was executory, expired, or terminated; or (iii) any other issue related to any Executory Contracts and Unexpired Leases;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan or the Confirmation Order;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan or the Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents in connection with the Plan, the Confirmation Order or the Disclosure Statement;

8.      enter and enforce any Order for the sale of property pursuant to sections 1123, 1141, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan or the Confirmation Order or any Entity's obligations incurred in connection with the Plan or the Confirmation Order and the administration of the Estate;

10.      issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate in aid of execution, implementation, or Consummation of the Plan or to restrain interference by any Entity with Consummation or enforcement of the Plan or the Confirmation Order;

11.     resolve any matters related to the Exit Facility;

12.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the payment or non-payment of General Unsecured Claims by the Debtor or the Reorganized Debtor;

13.     enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or the Plan Supplement, including in connection with the interpretation, implementation, or enforcement thereof and any agreements, documents, or instruments executed in connection therewith;

15.     adjudicate any and all disputes arising from or relating to distributions under the Plan or the Confirmation Order, or any transactions contemplated herein or therein;

16.     consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court Order, including the Confirmation Order;

17.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     enter an Order concluding or closing any or all of the Chapter 11 Case;

19.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article IX of the Plan, and enter such Orders as may be necessary or appropriate to implement such discharges, releases, injunctions, exculpations, and other provisions;

20.     hear and determine all questions and disputes regarding, and to enforce, the Committee Settlement, including in connection with the Negative Pledge Covenant and the Navy Yard Insurance Beneficiary;

21.     hear and determine all questions and disputes regarding, and to enforce, the Trust Reimbursement;

22.     hear and determine any Insurance Action, any Compensation Trust Cause of Action and any similar Claims, Causes of Action; *provided*, that (i) this Court's jurisdiction over any such Insurance Action, Compensation Trust Cause of Action, or similar Claims, Causes of Action shall be solely to the extent such actions involve bankruptcy issues or issues that are directly related to or arise out of the Plan or Confirmation Order, (ii) such retention of jurisdiction shall not constitute a waiver of any rights of a Non-Settling Insurance Company to seek to remove, seek abstention of, or seek to withdraw the reference of any Insurance Action filed after the Effective Date, and (iii) any matter involving a Settling Insurance Company shall be governed by the applicable Insurance Settlement Agreement;

23.     to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Compensation Trust, or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, to violate, or insufficient to satisfy any of the terms, conditions, or other duties associated with any Abuse Insurance Policies; *provided*, *however*, that (a) such orders shall not impair the Insurance Coverage Defenses or the rights, Claims, or defenses, if any, of any Insurance Company that are set forth or provided for in the Plan, the Confirmation Order, or any other Final Orders entered in the Chapter 11 Case, (b) this Article XIII does not, in and of itself, grant this Court jurisdiction to hear and decide disputes arising out of or relating to the Abuse Insurance Policies, and (c) all interested parties, including any Insurance Company, reserve the right to oppose or object to any such action before the Bankruptcy Court seeking such relief;

24.     hear and determine any request for a Settling Insurance Company or the BGCA to become a Covered Party in accordance with the Plan and the Trust Allocation Protocol, including entry of an order approving any such request;

25.     enforce all orders previously entered by the Bankruptcy Court;

26.     adjudicate Post-Effective Date Abuse Claim Objections (as defined in the Confirmation Order); and

27.     hear any other matter not inconsistent with the Bankruptcy Code.

Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (a) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (b) any such jurisdiction is exclusive with respect to any Insurance Action, or (c) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s). Any court other than the Bankruptcy Court that has jurisdiction over an Insurance Action shall have the right to exercise such jurisdiction.

Unless otherwise specifically provided herein or in a prior Order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against the Debtor that arose prior to the Effective Date.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, any and all Holders of Claims or Not-For-Profit Membership Interests (regardless of whether such Claims or Not-For-Profit Membership Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in

the Plan or the Confirmation Order, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and Not-For-Profit Membership Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan and the Confirmation Order, regardless of whether any such Holder of a Claim or Not-For-Profit Membership Interest has voted on the Plan.

**B.    Additional Documents**

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Confirmation Order. The Debtor and all Holders of Allowed Claims or Not-for-Profit Membership Interests receiving distributions pursuant to the Plan and the Confirmation Order and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan and the Confirmation Order.

**C.    Reservation of Rights**

Except as expressly set forth in the Plan or the Confirmation Order, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.

With respect to any Cause of Action that the Reorganized Debtor expressly abandons, if any, the Reorganized Debtor reserves all rights to use defensively such abandoned Cause of Action as a basis to object to all or any part of a Claim against any of the Estate asserted by a creditor who obtains the benefit of such abandoned Cause of Action.

Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor or any other Entity with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims unless and until the Effective Date has occurred.

**D.    Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

E.    *Service of Documents*

To be effective, any pleading, notice, or other document required by the Plan or the Confirmation Order to be served on or delivered shall be served by first class or overnight mail:

If to the Debtor or the Reorganized Debtor:

Madison Square Boys & Girls Club, Inc.
250 Bradhurst Avenue
New York, New York 10039
Attention: Jeffrey Dold
Email: jdold@madisonsquare.org

With copies to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attention:     Alan W. Kornberg
               John T. Weber
               Leslie E. Liberman


Email:         akornberg@paulweiss.com
               jweber@paulweiss.com
               lliberman@paulweiss.com

If to the Committee:

Pachulski Stang Ziehl & Jones LLP
780 3rd Avenue
New York, New York 10017

Attention:     James I. Stang
               John W. Lucas
               Malhar S. Pagay
               Gillian N. Brown

Email:         jstang@pszjlaw.com
               jlucas@pszjlaw.com
               mpagay@pszjlaw.com
               gbrown@pszjlaw.com

After the Effective Date, the Reorganized Debtor may notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized

Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**F.      Term of Injunctions or Stays**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any Order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**G.      Entire Agreement**

Except as otherwise indicated, the Plan, the Confirmation Order, the Restructuring Documents, the Plan Supplement and documents related thereto supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan, the Confirmation Order, the Restructuring Documents, the Plan Supplement, and documents related thereto.

**H.      Exhibits**

All exhibits and documents included in the Plan, the Confirmation Order, and the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website at https://dm.epiq11.com/madisonsquare or the Bankruptcy Court's website at https://www.nysb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the terms of such exhibit or document shall control as to the transactions contemplated thereby and the terms of the Plan shall control as to any provision of the Plan that may be required under such exhibit or document.

**I.      Deemed Acts**

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of the Plan and the Confirmation Order.

**J.      Non-Severability of Plan Provisions**

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of

the Debtor, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

**K.** *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, its Affiliates, and its and each of its Affiliates' Representatives will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, none of such parties or individuals or the Reorganized Debtor will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

**L.** *No Waiver or Estoppel*

Upon the Effective Date, each Holder of a Claim shall be deemed to have waived any right to assert that its Claim should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtor and/or its counsel, the Committee and/or its counsel, or any other party, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

**M.** *Dissolution of the Committee*

On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case, *provided* that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation by Professionals retained in the Chapter 11 Case pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (b) any appeals of the Confirmation Order or other appeals to which the Committee is a party; and (c) any adversary proceeding in which the Committee is a party (including by intervention), including any appeals thereof, in the case of clauses (b) and (c) if consistent with the Committee's duties under the Bankruptcy Code, including section 1103. The Reorganized Debtor shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date, except for the fees and expenses incurred by the Committee's Professionals in connection with the matters identified in clauses (a), (b), and (c) of the foregoing sentence.

**N.** *Closing of Chapter 11 Case*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable Order of the Bankruptcy Court to close the Chapter 11 Case.

*[Signature page follows]*

84

Respectfully submitted, as of July 21, 2023

Madison Square Boys & Girls Club, Inc.

*/s/ Jeffrey Dold*
Name: Jeffrey Dold
Title:   Chief Financial Officer

## Exhibit A

**Abuse Insurance Policies**

**EXHIBIT A**

| Insurer | Policy Number | Start Date | End Date | Limits |
|---|---|---|---|---|
| *General and Umbrella Liability* | | | | |
| Security Mutual | GLA923374 | 11/1/1967 | 11/1/1970 | $1,000,000 per occurrence first year<br><br>Limits change 11/1/1968 to $300,000 per occurrence |
| Insurance Company of North America | XBC41715 | 3/13/1968 | 3/13/1971 | $3,000,000 excess $1,000,000 per occurrence<br><br>Limits change 11/1/1968 to $3,000,000 excess $300,000 per occurrence |
| Insurance Company of North America | XBC43903 | 3/13/1971 | 3/13/1974 | $3,000,000 excess $300,000 per occurrence |
| Insurance Company of North America | XBC46830 | 3/13/1974 | 3/13/1977 | $3,000,000 excess $300,000 per occurrence |
| Federal Insurance Company | 77555487 | 11/1/1970 | 11/1/1971 | $300,000 per occurrence |
| Federal Insurance Company | Unknown | 11/1/1971 | 11/1/1972 | $300,000 per occurrence |
| Federal Insurance Company | Unknown | 11/1/1972 | 11/1/1973 | $300,000 per occurrence |
| Federal Insurance Company | (74) 77726350 | 11/1/1973 | 11/1/1974 | $300,000 per occurrence |
| Federal Insurance Company | (75) 77726350 | 11/1/1974 | 11/1/1975 | $300,000 per occurrence |
| Federal Insurance Company | (76) 77726350 | 11/1/1975 | 11/1/1976 | $300,000 per occurrence |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---|---|---|---|---|
| Federal Insurance Company | (77) 77726350 | 11/1/1976 | 11/1/1977 | $300,000 per occurrence |
| Federal Insurance Company | (78) 77726350 | 11/1/1977 | 11/1/1978 | $300,000 per occurrence |
| Federal Insurance Company | GLP (79) 77726350 | 11/1/1978 | 11/1/1979 | $300,000 per occurrence<br><br>$1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | Unknown | 3/13/1977 | 11/1/1977 | $200,000 excess $300,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1219431 | 3/13/1977 | 11/1/1977 | $3,000,000 excess $500,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1324440 | 11/1/1977 | 11/1/1978 | $3,000,000 excess $500,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1327011 | 11/1/1978 | 11/1/1979 | $3,000,000 excess $500,000 per occurrence<br><br>$4,000,000 excess $1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1328549 | 11/1/1979 | 11/1/1980 | $4,000,000 excess $1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1334315 | 11/1/1980 | 11/1/1981 | $4,000,000 excess $1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1318066 | 11/1/1983 | 11/1/1984 | $4,000,000 excess $1,000,000 per occurrence |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---------|---------------|------------|----------|--------|
| National Union Fire Insurance Company of Pittsburgh, Pa. | S9941479 | 3/5/1986 | 3/5/1987 | $1,000,000 aggregate |
| National Union Fire Insurance Company of Pittsburgh, Pa. | S1545015 | 3/5/87 | 3/5/88 | $1,000,000 aggregate |
| National Union Fire Insurance Company of Pittsburgh, Pa. | MLP5224874 | 3/5/88 | 8/1/88 | $1,000,000 per occurrence, $3,000,000 aggregate |
| Mount Vernon | Unknown | 11/1/1977 | 11/1/1978 | $200,000 excess $300,000 |
| Mount Vernon | Unknown | 11/1/1978 | 3/1/1979 | $200,000 excess $300,000 |
| Puritan Insurance Company | Unknown | 11/1/1979 | 11/1/1980 | $1,000,000 per occurrence |
| Puritan Insurance Company | Unknown | 11/1/1980 | 11/1/1981 | $1,000,000 per occurrence |
| Great Atlantic Insurance Company | GLA 07611 | 1/3/1984 | 3/24/1984 | $1,000,000 per occurrence |
| American Home Assurance Company | S1896065 | 3/24/1984 | 3/24/1985 | $1,000,000 per occurrence |
| Jefferson Insurance Company of New York | L530915 | 3/5/1985 | 3/5/1986 | $500,000 aggregate |
| North Star Reinsurance Corporation | NSU-46634 | 11/1/1984 | 3/24/1986 | $4,000,000 excess $1,000,000 per occurrence |
| The Monarch Insurance Company of Ohio | NSU-46634-A | 3/24/1986 | 3/5/1987 | $4,000,000 excess $1,000,000 aggregate |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---|---|---|---|---|
| General Star National Insurance Company | NSU-46634-B | 3/5/1987 | 3/5/1988 | $5,000,000 excess $1,000,000 per occurrence |
| General Star National Insurance Company | NMU-146634C | 3/5/1988 | 3/5/1989 | $5,000,000 excess $3,000,000 aggregate |
| General Star National Insurance Company | NMU-146634D | 3/5/1989 | 8/1/1989 | $5,000,000 excess $3,000,000 aggregate |
| General Star National Insurance Company | NMU-146634E | 8/1/1989 | 8/1/1990 | $5,000,000 excess $3,000,000 aggregate<br><br>Limits change 11/28/1989 to $10,000,000 excess $3,000,000 aggregate |
| MIC Property and Casualty Insurance Corporation | MPS 001726 | 8/1/1988 | 8/1/1989 | $1,000,000 per occurrence, $3,000,000 aggregate |
| MIC Property and Casualty Insurance Corporation | MPS 003125 | 8/1/1989 | 8/1/1990 | $1,000,000 per occurrence, $3,000,000 aggregate |
| *Management Liability (D&O, EPL, Fiduciary)* | | | | |
| Federal Insurance Company (D&O) | Unknown | 4/15/1986 | 4/15/1987 | $1,000,000 |
| Seaboard Surety Company (D&O) | Unknown | 6/1/1986 | 6/1/1987 | $1,000,000 |
| Certain Underwriters at Lloyd's, London (D&O) | NP08930A | 7/1/1989 | 7/1/1990 | $5,000,000 per loss and aggregate |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---|---|---|---|---|
| Royal Indemnity Company (D&O) | R EQ 100040 | 7/18/1989 | 7/1/1990 | $5,000,000 excess $5,000,000 aggregate |
| Certain Underwriters at Lloyd's, London and British Companies (D&O) | NP08930B<br><br>NP58930B | 7/1/1990 | 8/1/1991 | $5,000,000 per loss and aggregate |
| Royal Indemnity Company (D&O) | R HS 600118 | 7/1/1990 | 8/1/1991 | $5,000,000 excess $5,000,000 aggregate |
| Certain Underwriters at Lloyd's, London (D&O) | NP013458 | 8/1/1991 | 8/1/1992 | $5,000,000 per loss and aggregate |
| Royal Indemnity Company (D&O) | R HS 600810 | 8/1/1991 | 8/1/1992 | $5,000,000 excess $5,000,000 aggregate |
| Chubb (D&O) | 8132-5536A | 8/1/1994 | 8/1/1995 | $10,000,000 aggregate |
| Chubb (D&O) | 8132-5536B | 8/1/1995 | 8/1/1996 | $10,000,000 aggregate |
| United States Liability Insurance Company (D&O and EPL) | NDO1551081 | 9/30/2011 | 9/30/2012 | $5,000,000 per claim and aggregate each coverage part |
| United States Liability Insurance Company (D&O and EPL) | NDO1551081A | 9/30/2012 | 9/30/2013 | $5,000,000 per claim and aggregate each coverage part |
| Mount Vernon Fire Insurance Company (D&O and EPL) | NDO2551892 | 9/30/2013 | 9/30/2014 | $5,000,000 per claim and aggregate each coverage part |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---------|---------------|------------|----------|--------|
| Mount Vernon Fire Insurance Company (D&O and EPL) | NDO2551892A | 9/30/2014 | 9/30/2015 | $5,000,000 per claim and aggregate each coverage part |
| Mount Vernon Fire Insurance Company (D&O and EPL) | NDO2551892B | 9/30/2015 | 9/30/2016 | $5,000,000 per claim and aggregate each coverage part |
| Atlantic Specialty Insurance Company (D&O and EPL) | MML-11278-18 | 10/30/2018 | 10/30/2019 | $5,000,000 aggregate all coverage parts |
| Great American Insurance Company (D&O and EPL) | APX4031785 | 10/30/2018 | 10/30/2019 | $5,000,000 excess $5,000,000 aggregate |
| Executive Risk Indemnity Inc. (Fiduciary) | 8221-5985 | 10/1/2018 | 10/1/2019 | $1,000,000 aggregate |
| Argonaut Insurance Company (D&O and EPL) | ML424429-0 | 11/30/2019 | 11/30/2020 | $2,500,000 aggregate all coverage parts |
| Hallmark Specialty Insurance Company (D&O and EPL) | 74NP000743-0 | 11/30/2019 | 11/30/2020 | $5,000,000 excess $15,000,000 aggregate |
| Argonaut Insurance Company (D&O and EPL) | ML424429-1 | 11/30/2020 | 11/30/2021 | $2,500,000 aggregate all coverage parts |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---|---|---|---|---|
| Starstone Specialty Insurance Company (D&O and EPL) | B85841200ASP | 11/30/2020 | 11/30/2021 | $2,500,000 excess $2,500,000 aggregate |
| Landmark American Insurance Company (D&O and EPL) | LHS690819 | 11/30/2020 | 11/30/2021 | $5,000,000 excess $5,000,000 aggregate |
| Philadelphia Indemnity Insurance Company (D&O and EPL) | PHSD1593700 | 11/30/2020 | 11/30/2021 | $5,000,000 excess $10,000,000 aggregate |
| Hallmark Specialty Insurance Company (D&O and EPL) | 74NP000743-1 | 11/30/2020 | 11/30/2021 | $5,000,000 excess $15,000,000 aggregate |

## **Exhibit B**

**Trust Allocation Protocol**

## **EXHIBIT B**

### **Trust Allocation Protocol**

**Compensation Trust Assets:**[1]  The Plan provides the Debtor will contribute the Compensation Trust Assets to the Compensation Trust on the Effective Date, or as soon as reasonably practicable thereafter, including, among other things, the:

- Cash Contribution

- Compensation Trust Note

- Exit Excess Cash

- Navy Yard Net Proceeds

- Madison Damages Claims Proceeds (which shall be paid in accordance with the Madison/RU 9019 Order)

The proceeds of the above listed Compensation Trust Assets are defined herein as the "**General Settlement Fund**".

Subject to a reserve or reserves established by the Compensation Trustee, the proceeds of the General Settlement Fund shall be distributed equally to all holders of Allowed Abuse Claims in Class 4 of the Plan (each, a "**Beneficiary**") (*i.e.*, total cash/proceeds net of Compensation Trust expenses divided by the number of Beneficiaries as of the Effective Date) (the "**Abuse Claim Equal Share Distribution**").  Except as provided herein, Holders of Indirect Abuse Claims will be entitled to the treatment set forth in Article IV.G of the Plan.  As cash is contributed to the General Settlement Fund from the Cash Contribution, Exit Excess Cash, or Madison Damages Claims Proceeds, paid on account of interest or principal due under the Compensation Trust Note, or realized from the Navy Yard Net Proceeds, the Compensation Trustee will make interim distributions in equal amounts to the Beneficiaries pursuant to the Plan and the Compensation Trust Documents, including, for the avoidance of doubt, any interim distributions to Beneficiaries that are Holders of Allowed Indirect Abuse Claims entitled to recovery pursuant to Article IV.G of the Plan, subject to the establishment of any further reserves.

For the avoidance of doubt and pursuant to Article IV.G of the Plan, if a Holder of a Direct Abuse Claim, pursuant to a judgment rendered by a court of competent jurisdiction, (a) actually receives payment from any third party co-defendant that is determined to co-liable on a joint and several basis under applicable law to the Holder of a Direct Abuse Claim with the Debtor, and (b) the judgment proceeds actually received by such Holder of a Direct Abuse Claim from such co-defendant are attributable to the Debtor's allocation of liability as determined by such judgment, then such Direct Abuse Claim, shall not be considered an "Allowed Direct Abuse Claim" for purposes of this Trust Allocation Protocol.

---

[1]   All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the *First Amended Chapter 11 Plan of Reorganization of the Madison Square Boys & Girls Club, Inc.*, dated as of July 21, 2023 (as it may be amended, modified, or supplemented, the "**Plan**").

A. **Insurance Allocation Proposal**:

1. Pursuant to Article IX.B of the Plan, each holder of an Abuse Claim may elect to commence or continue to prosecute such Abuse Claim against the Debtor in an appropriate court of competent jurisdiction for the sole purpose of recovering from an Abuse Insurance Company (and from other third parties that are not Covered Parties).

2. If in the pursuit of a holder's Abuse Claim such claimant obtains an individual settlement/recovery from an Abuse Insurance Company, the Compensation Trust shall have no right to any portion of that recovery and such claimant retains 100% of such claimant's recovery from the Abuse Insurance Company (each an "**Independent Insurance Recovery**").

3. If an Abuse Insurance Company proposes a global settlement with the Compensation Trust, 75% of holders of Abuse Claims allegedly covered by such Abuse Insurance Company's Abuse Insurance Policies must vote in favor of the proposed settlement in order for the Compensation Trustee to be authorized to enter into such settlement and, accordingly, for such Abuse Insurance Company to become a Settling Insurance Company. In connection with establishing whether the 75% threshold referenced in the preceding sentence is satisfied, the Compensation Trustee and the applicable Abuse Insurance Company shall mutually agree upon the number of Direct Abuse Claims allegedly covered by the Abuse Insurance Policy(ies) issued by such Abuse Insurance Company in the subject settlement agreement between the Compensation Trust and the Abuse Insurance Company.

4. If a global settlement with an Abuse Insurance Company is approved, the reasonable out-of-pocket litigation costs (not legal fees), if any, incurred by holders of the covered Abuse Claims may be reimbursed to the extent the Compensation Trustee reasonably concludes the incurring of such costs helped contribute to the global settlement with such Settling Insurance Company.

5. Two-thirds (2/3) of such Settling Insurance Company's settlement contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) shall be deposited into a settlement fund allocable to claims insured by such Settling Insurance Company (the "**Insurer X Settlement Fund**", where "X" is the name or other identifier of the relevant Settling Insurance Company) and one-third (1/3) of such Settling Insurance Company's contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) shall be deposited into a general settlement fund (the "**Insurer X General Settlement Fund**", where "X" is the name or other identifier of the relevant Settling Insurance Company).

6. An Abuse Claim covered by each Settling Insurance Company's Abuse Insurance Policies will be evaluated by the Compensation Trustee, or a neutral third party retained by the Compensation Trustee, and share Pro Rata in the Insurer X Settlement Fund of the relevant Settling Insurance Company.

7. The proceeds of the Insurer X General Settlement Fund are allocated evenly among the holders of Abuse Claims that are not covered by the relevant Settling Insurance Company's

Abuse Insurance Policies, or any other Abuse Insurance Company's Abuse Insurance Policies (*i.e.*, Abuse Claims against the Debtor that have no known insurance coverage). For the avoidance of doubt, holders of Abuse Claims that share in the Insurer X Settlement Fund (or any other settlement with a Settling Insurance Company) do not share in the Insurer X General Settlement Fund.

8. A holder of an Abuse Claim that receives an Independent Insurance Recovery shall not share in the Insurer X Settlement Fund or Insurer X General Settlement Fund.

9. The Compensation Trust shall establish settlement funds from any other Settling Insurance Companies in the same fashion as set forth above.

## B. **BGCA Proposal**:

1. The Plan preserves the ability of the holders of Abuse Claims to pursue claims against the BGCA in a court of competent jurisdiction (the "**BGCA Claimants**").

2. If a BGCA Claimant obtains an individual settlement/recovery from the BGCA, such BGCA Claimant retains 100% of such BGCA Claimant's recovery from the BGCA (each, an "**Independent BGCA Recovery**").

3. If the BGCA proposes a global settlement, 75% of the BGCA Claimants that have pending actions against the BGCA must vote in favor of the proposed settlement in order for the Compensation Trustee to be authorized to enter into such settlement.

4. If such global settlement is approved (such settlement, the "**BGCA Global Settlement**"), the reasonable out-of-pocket litigation costs (not legal fees) of the BGCA Claimants shall be reimbursed to the extent the Compensation Trustee reasonably concludes that the incurring of such costs helped contribute to the BGCA Global Settlement.

5. 75% of the BGCA's contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) to the Compensation Trust in connection with the BGCA Global Settlement shall be deposited into a settlement fund (the "**BGCA Settlement Fund**") and 25% of the BGCA's contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) in connection with the BGCA Global Settlement to the Compensation Trust shall be deposited into a general settlement fund (the "**General BGCA Settlement Fund**").

6. A BGCA Claimant's Abuse Claim will be evaluated by the Compensation Trustee, or a neutral third party retained by the Compensation Trustee, and share Pro Rata in the BGCA Settlement Fund.

7. The proceeds of the BGCA General Settlement Fund shall be allocated Pro Rata among the holders of Abuse Claims that do not have actions pending against BGCA. For the avoidance of doubt, BGCA Claimants that have actions against BGCA and share in the BGCA Settlement Fund shall not share in the General BGCA Settlement Fund.

8.  A BGCA Claimant that receives an Independent BGCA Recovery shall not share in the BGCA Settlement Fund or General BGCA Settlement Fund.

9.  The Compensation Trustee, or same neutral third party retained by the Compensation Trustee, will evaluate all claims against BGCA that are eligible to participate in the separate settlement funds so a claimant would only have to be evaluated once, even if such claimant is eligible to participate in multiple funds.

## C. **Rockefeller Proposal**:

1.  The Plan preserves, subject in all respects to Article IV.G thereof, the ability of the holders of Abuse Claims to pursue their claims against Rockefeller in a court of competent jurisdiction (the "**Rockefeller Claimants**").

2.  If a Rockefeller Claimant obtains an individual settlement/recovery from Rockefeller, such Rockefeller Claimant retains 100% of such Rockefeller Claimant's recovery from Rockefeller.

**Exhibit C**

**Notice of Intent to Pursue Abuse Claims**

Alan W. Kornberg, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
Leslie E. Liberman, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]

          Debtor.

Chapter 11

Case No. 22-10910 (SHL)

## NOTICE OF INTENT TO PURSUE ABUSE CLAIMS

      **PLEASE TAKE NOTICE THAT** on April 12, 2023, the above captioned debtor and debtor in possession (the "<u>Debtor</u>") filed the *Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.* [Docket No. 427] (as may be amended, modified, or supplemented from time to time, the "<u>Plan</u>").[2] On [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") entered the [*Findings of Fact, Conclusions of Law, and Order Confirming Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.*] [Docket No. [●]] confirming the Plan.  As set forth in that certain [*Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates*], the Plan became effective on [●], 2023.

      **PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article III.B.4 and Article IX of the Plan, any Holder of an Abuse Claim in Class 4 seeking to pursue its Claim in a court of competent jurisdiction against the Debtor, the Reorganized Debtor, any other Covered Party, or any other defendant (which action to pursue such Abuse Claim may include the continuation of an action commenced by such Holder of such Abuse Claim against the Debtor and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to

---

[1]    The last four digits of the Debtor's federal tax identification number are 6792.  The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

the extent no such action to pursue such Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date) that implicates coverage under any Non-Settling Insurance Company's Abuse Insurance Policies <u>must</u> transmit this notice (the "<u>Notice of Intent to Pursue Abuse Claims</u>") to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed on **Schedule 1** in order to pursue such Claim in accordance with the Plan.

**PLEASE TAKE FURTHER NOTICE** that any Holder of an Abuse Claim in Class 4 that transmits this Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed on **Schedule 1** is enjoined pursuant to Article IX.B of the Plan from pursuing such Abuse Claim in a court of competent jurisdiction until the expiration of a forty-five (45) day period after the transmittal of this Notice of Intent to Pursue Abuse Claims.

**PLEASE TAKE FURTHER NOTICE** that by completing, executing, and returning this Notice of Intent to Pursue Abuse Claims, the undersigned individual (the "<u>Claimant</u>") hereby provides notice to the Debtor, the Compensation Trustee, and the requisite Abuse Insurance Companies of its intent to pursue, after the Effective Date, one or more Abuse Claim(s) pending in the following action (the "<u>Action</u>") in accordance with Article III.B.4 and Article IX of the Plan:

Name of Claimant: _____

Name of Action & Case No.: _____

Court in which Action is pending: _____

**PLEASE TAKE FURTHER NOTICE THAT** by completing, executing, and returning this Notice of Intent to Pursue Abuse Claims, the undersigned Claimant hereby certifies that it is a Holder of an Abuse Claim, as such term is defined in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the undersigned Claimant hereby acknowledges that all Abuse Claims are subject to the terms of the Plan, and that Claims against the Debtor or a Covered Party may be paid solely from the Compensation Trust Assets and the proceeds of an Abuse Insurance Policy issued by a Non-Settling Insurance Company. The Holders of Abuse Claims shall have no recovery whatsoever at any time against any Covered Party or any property or interest in property of any Covered Party beyond Insurance Recoveries.

**PLEASE TAKE FURTHER NOTICE THAT** in order for this Notice of Intent to Pursue Abuse Claims to be effective, it must be delivered by standard or overnight mail or personal delivery to the Debtor, the Compensation Trustee, and each of the Abuse Insurance Companies listed on **Schedule 1** hereto.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions concerning this Notice of Intent to Pursue Abuse Claims, you may contact the Debtor's claims and noticing agent at (866) 977-1161 (for U.S. and Canada-based parties) or +1 (503) 597-7709 (for international parties) or via electronic mail to madisonsquareinfo@epiqglobal.com. Additional copies of the Plan and Disclosure Statement are available upon request made to the Debtor's claims and noticing agent at the telephone numbers or email address set forth above.

*[Signature page follows]*

2

Respectfully submitted,

_____

Name of Claimant

Dated: _____, 2023

### Schedule 1

**Notice Parties**

In order for the Notice of Intent to Pursue Abuse Claims to be effective, it must be delivered by standard or overnight mail or personal delivery to each of the following parties:

**The Debtor:**

Madison Square Boys & Girls Club, Inc.
250 Bradhurst Avenue
New York, New York 10039

Attention:   Jeffrey Dold

**Counsel to the Debtor:**

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attention:   Alan W. Kornberg
             John T. Weber
             Leslie E. Liberman

**The Compensation Trustee:**

Alan D. Halperin, Compensation Trustee
Halperin Battaglia Benzija, LLP
40 Wall Street, 37th Floor
New York, New York 10005
Tel: (212) 765-9100
Fax: (212) 765-0964
E-mail: ahalperin@halperinlaw.net

With a copy to

Halperin Battaglia Benzija, LLP
40 Wall Street, 37th Floor
New York, New York 10005
Attn: Donna H. Lieberman, Esq.
      Julie Dyas Goldberg, Esq.
Tel: (212) 765-9100
Fax: (212) 765-0964
E-mail: dlieberman@halperinlaw.net
        jgoldberg@halperinlaw.net

**The Abuse Insurance Companies:**

1. American International Group, Inc.
   28 Liberty Street, Floor 22
   New York, NY 10005

   Attention:          Kevin Larner
                       Kevin.larner@aig.com


2. Carlton Fields, P.A.
   405 Lexington Avenue, 36th Fl.
   New York, NY 10174

   Attention:          Robert DiUbaldo
                       rdiubaldo@carltonfields.com
                       Nora Valenza-Frost
                       Nvalenza-frost@carltonfields.com


3. Maxwell Branson
   Claims Executive, Vice President
   Gen Re
   120 Long Ridge Road
   Stamford, CT 06902
   (203) 328-6713
   Max.Branson@genre.com


4. Gary P. Seligman
   Wiley Rein LLP
   2050 M Street, NW
   Washington, DC  20036
   (202) 719-3587
   gseligman@wiley.law


5. James Biondolillo
   Casualty Technician, Coverage & Complex Claims
   Chubb Ltd.
   P.O. Box 4700
   Chesapeake, VA  23327
   (860) 830-9125
   biondolj@chubb.com

6.  Lawrence Klein
    Robinson & Cole LLP
    Chrysler East Building
    666 Third Avenue, 20th floor
    New York, NY  10017
    (212) 451-2950
    lklein@rc.com

**<u>Exhibit B</u>**

**Blackline of Revised Amended Plan**

Alan W. Kornberg, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
Leslie E. Liberman, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]<br><br>              Debtor. | Chapter 11<br><br>Case No. 22-10910 (SHL) |

## FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## OF MADISON SQUARE BOYS & GIRLS CLUB, INC.

---

[1] The last four digits of the Debtor's federal tax identification number are 6792. The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION AND OTHER REFERENCES .... 1
- A.   Defined Terms .... 1
- B.   Rules of Interpretation .... ~~20~~21
- C.   Computation of Time .... ~~21~~22
- D.   Governing Laws .... ~~21~~22
- E.   Reference to Monetary Figures .... 22
- F.   Reference to the Debtor or the Reorganized Debtor .... 22
- G.   Controlling Document .... 22

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS .... ~~22~~23
- A.   Administrative Claim .... ~~22~~23
- B.   Professional Fee Claims .... ~~23~~24
- C.   Priority Tax Claims .... ~~24~~25
- D.   DIP Claims .... 25
- E.   Payment of Statutory Fees .... 25

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND NOT-FOR-PROFIT MEMBERSHIP INTERESTS .... ~~25~~26
- A.   Classification and Treatment of Claims and Not-for-Profit Membership Interests .... ~~25~~26
- B.   Treatment of Claims and Not-for-Profit Membership Interests .... ~~26~~27
- C.   Acceptance or Rejection of the Plan .... ~~29~~30
- D.   Confirmation Pursuant to Section 1129(a)(10) of the Bankruptcy Code .... ~~30~~31
- E.   Special Provision Governing Unimpaired Claims or Reinstated Claims .... ~~30~~31
- F.   Relative Rights and Priorities; Subordinated Claims .... 31

ARTICLE IV. COMPENSATION TRUST .... ~~31~~32
- A.   Establishment of the Compensation Trust .... ~~31~~32
- B.   Purposes of the Compensation Trust .... ~~31~~32
- C.   Compensation Trustee .... 32
- D.   Transfer of Compensation Trust Assets to the Compensation Trust; Insurance Assignment .... ~~32~~33
- E.   Compensation Trust Causes of Action .... ~~33~~34
- F.   Trust Allocation Protocol .... ~~34~~35
- G.   Indirect Abuse Claim Treatment .... ~~34~~35
- H.   Post-Effective Date Settling Insurance Companies .... ~~36~~37
- I.   Compensation Trust Expenses .... ~~36~~37
- J.   Reimbursement by Compensation Trust .... ~~36~~37
- K.   Assignment of Claims and Defenses .... ~~37~~38
- L.   Abuse Insurance Companies' Rights .... ~~37~~38
- M.   Investment Guidelines .... ~~38~~39
- N.   Excess Compensation Trust Assets .... ~~38~~39
- O.   No Liability .... ~~38~~39
- P.   U.S. Federal Income Tax Treatment of the Compensation Trust .... ~~39~~40
- Q.   Institution and Maintenance of Legal and Other Proceedings .... ~~40~~41
- R.   Compensation Trust Discovery .... ~~40~~41
- S.   Notation on Claims Register Regarding Abuse Claims .... ~~40~~41

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .... ~~40~~41
- A.   Compromise and Settlement of Claims, Not-For-Profit Membership Interests and Controversies .... ~~40~~41
- B.   Committee Settlement .... ~~41~~42

| C. | Restructuring Transactions | 46 |
| D. | Sources of Consideration for Plan Distributions | 4647 |
| E. | GUC Cash Pool | 4647 |
| F. | Corporate Existence | 4647 |
| G. | Directors and Officers | 47 |
| H. | Vesting of Assets in the Reorganized Debtor | 4748 |
| I. | Due Authorization | 4748 |
| J. | Reinstatement of Interests | 4849 |
| K. | New Organizational Documents | 4849 |
| L. | Effectuating Documents; Further Transactions | 4849 |
| M. | Exemption from Certain Taxes and Fees | 4849 |
| N. | Insured Claims | 4950 |
| O. | Preservation of Causes of Action | 4950 |
| P. | Insurance Policies | 4950 |
| Q. | Director and Officer Liability Insurance | 5051 |
| R. | Termination of Forbearance Agreement; Waiver of Defaults; Assumption Ratification, Reaffirmation and Reinstatement of NMTC Documents and Waiver of Discharge and Discharge Injunction with Respect Thereto | 5051 |
| S. | Employee Arrangements of the Reorganized Debtor | 5152 |
| T. | Notice of Effective Date | 5253 |
| **U.** | **Rockefeller Cooperation** | **53** |

| ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 5253 |
| A. | Assumption of Executory Contracts and Unexpired Leases | 5253 |
| B. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 5254 |
| C. | Payments Related to Assumption of Executory Contracts and Unexpired Leases | 5355 |
| D. | Director and Officer Liability Insurance | 5455 |
| E. | Indemnification Obligations | 5456 |
| F. | Modifications, Amendments, Supplements, Restatements or Other Agreements | 5456 |
| G. | Contracts and Leases Entered into after the Petition Date | 5556 |
| H. | Reservation of Rights | 5556 |
| I. | Nonoccurrence of Effective Date | 5557 |

| ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS | | 5557 |
| A. | Allowance of Claims | 5657 |
| B. | Claims Administration Responsibilities | 5658 |
| C. | Estimation of Claims | 5658 |
| D. | Adjustment to Claims Without Objection | 5658 |
| E. | Time to File Objections to Claims | 5758 |
| F. | Disallowance of Claims | 5758 |
| G. | No Distributions Pending Allowance | 5759 |
| H. | Distributions After Allowance | 5759 |
| I. | Single Satisfaction Rule | 5759 |

| ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS | | 5859 |
| A. | Timing and Calculation of Amounts to Be Distributed | 5859 |
| B. | Disbursing Agent | 5860 |
| C. | Rights and Powers of Disbursing Agent | 5860 |
| D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 5960 |
| E. | Compliance with Tax Requirements | 6061 |
| F. | No Postpetition Interest on Claims | 6062 |
| G. | Foreign Currency Exchange Rate | 6062 |
| H. | Setoffs and Recoupment | 6062 |
| I. | Claims Paid or Payable by Third Parties | 6162 |
| J. | Distributions after Effective Date | 6163 |

ARTICLE IX. RELEASE, INJUNCTION AND RELATED PROVISIONS .................................... 6263
    A.     Discharge of Claims ............................................................................................ 6263
    B.     Channeling Injunction ........................................................................................ 6365
    C.     Provisions Relating to Channeling Injunctions ................................................. 6668
    D.     Release of Liens .................................................................................................. 6769
    E.     Exculpation ......................................................................................................... 6769
    F.     Injunctions Related to Exculpation .................................................................... 6869
    G.     Qualified Immunity ............................................................................................ 6970
    H.     Reservation of Rights ......................................................................................... 6971
    I.     Protection against Discriminatory Treatment .................................................... 6971
    J.     Release of Preference Actions ........................................................................... 6971

ARTICLE X. INSURANCE PROVISIONS .............................................................................. 7071

ARTICLE XI. CONDITIONS PRECEDENT TO  CONSUMMATION OF THE PLAN ........... 7273
    A.     Conditions Precedent to Confirmation of the Plan ........................................... 7273
    B.     Conditions Precedent to the Effective Date ...................................................... 7475
    C.     Waiver of Conditions ......................................................................................... 7576
    D.     Effect of Failure of a Condition ........................................................................ 7576

ARTICLE XII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...... 7577
    A.     Modification and Amendments ........................................................................... 7577
    B.     Effect of Confirmation on Modifications .......................................................... 7577
    C.     Revocation or Withdrawal of The Plan ............................................................. 7577

ARTICLE XIII. RETENTION OF JURISDICTION ................................................................ 7677

ARTICLE XIV. MISCELLANEOUS PROVISIONS .............................................................. 7880
    A.     Immediate Binding Effect ................................................................................... 7880
    B.     Additional Documents ........................................................................................ 7981
    C.     Reservation of Rights ......................................................................................... 7981
    D.     Successors and Assigns ...................................................................................... 7981
    E.     Service of Documents ......................................................................................... 8082
    F.     Term of Injunctions or Stays ............................................................................. 8183
    G.     Entire Agreement ............................................................................................... 8183
    H.     Exhibits .............................................................................................................. 8183
    I.     Deemed Acts ...................................................................................................... 8183
    J.     Non-Severability of Plan Provisions ................................................................. 8183
    K.     Votes Solicited in Good Faith ........................................................................... 8284
    L.     No Waiver or Estoppel ....................................................................................... 8284
    M.     Dissolution of the Committee ............................................................................ 8284
    N.     Closing of Chapter 11 Case ............................................................................... 8284

**<u>Exhibit A</u>** – Abuse Insurance Policies

**<u>Exhibit B</u>** – Trust Allocation Protocol

**<u>Exhibit C</u>** – Notice of Intent to Pursue Abuse Claims

### INTRODUCTION

Madison Square Boys & Girls Club, Inc., the non-profit corporation that is the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, hereby proposes this plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.A.

The Plan provides for, among other things, the resolution of Abuse Claims against the Debtor. The Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, charitable mission, operations, projections for those operations, risk factors, and certain related matters. The Disclosure Statement also provides a summary and analysis of the Plan.

**YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN WITH CARE IN EVALUATING HOW THE PLAN WILL AFFECT YOUR CLAIM(S) BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

### ARTICLE I.
### DEFINED TERMS, RULES OF
### INTERPRETATION AND OTHER REFERENCES

**A.    *Defined Terms***

As used in the Plan or the Confirmation Order, capitalized terms have the meanings set forth below. Any term used in the Plan that is not defined herein or in the Confirmation Order, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    "Abuse" means any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological or emotional harm to the child or non-consenting adult.

2.    "Abuse Claim" means any liquidated or unliquidated Claim against the Debtor or other Covered Party based upon, resulting from, or arising from, in whole or in part, any Abuse that occurred prior to the Petition Date, including such Claims that may be covered by the Child Victims Act, the Adult Survivors Act, the Victims of Gender-Motivated Violence Protection Act, and any other similar statutes. For the avoidance of doubt, an "Abuse Claim" (a) includes Direct Abuse Claims and Indirect

Abuse Claims (including any Rockefeller Contribution Claim), and (b) excludes any other Claim against the BGCA, Rockefeller, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

3.      "<u>Abuse Claim Equal Share Distribution</u>" means the equal distribution to be made to each Holder of a Direct Abuse Claim from the proceeds of the Compensation Trust Assets in accordance with the Trust Allocation Protocol.

4.      "<u>Abuse Insurance Companies</u>" means Insurance Companies that issued Abuse Insurance Policies.

5.      "<u>Abuse Insurance Policies</u>" means any Insurance Policies (whether issued by Settling or Non-Settling Insurance Companies) which provide or may provide Insurance Coverage for any Abuse Claim, including, but not limited to those Abuse Insurance Policies identified on **Exhibit A** hereto.

6.      "<u>Administrative Claim</u>" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) the Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code; *provided*, *however*, that the foregoing clauses (a) through (c) shall not be interpreted as enlarging the scope of sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code.

7.      "<u>Administrative Claims Bar Date</u>" means the deadline for Filing proofs or requests for payment of Administrative Claims, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to Professional Fee Claims, which shall be subject to the provisions of <u>Article II.B</u> hereof.

8.      "<u>Affiliate</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code.

9.      "<u>Allowed</u>" means, with reference to any Claim, other than an Abuse Claim (except to the extent set forth in <u>Article III.B.4</u>)), except as otherwise provided herein: (a) a Claim in a liquidated amount as to which no objection has been Filed prior to the applicable claims objection deadline and that is evidenced by a Proof of Claim Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim that is scheduled by the Debtor on the Schedules as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been Filed in an unliquidated or a different amount; (c) a Claim that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Code, (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the Debtor had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided* that with respect to

a Claim described in clauses (a) through (c) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such objection is so interposed, such Claim shall have been Allowed by a Final Order; *provided, further*, that no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been Filed (except to the extent otherwise Allowed pursuant to clause (c) above), is not considered Allowed and shall be deemed expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Code.

10.    "Amended Child Safety Policies" has the meaning set forth in Article V.B.87.

11.    "Assumption Dispute" means an unresolved objection regarding assumption, Cure Amount, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or other issues relating to the assumption of any Executory Contracts and Unexpired Leases.

12.    "Avoidance Actions" means any and all Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related state or federal statutes and common law.

13.    "Ballots" means the ballots accompanying the Solicitation Materials upon which Holders of Impaired Claims entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the procedures governing the solicitation.

14.    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as may be amended from time to time.

15.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, or any other court having jurisdiction over the Chapter 11 Case, including to the extent of any withdrawal of the reference under section 157(d) of the Judicial Code, the United States District Court for the Southern District of New York.

16.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

17. "<u>Bar Date Order</u>" means the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on August 12, 2022, at Docket No. 126.

18. "<u>BGCA</u>" means the Boys & Girls Clubs of America, a federally chartered national organization and its affiliates, subsidiaries or related Entities and individuals. For the avoidance of doubt, the BGCA shall exclude the Debtor, the Reorganized Debtor, the Non-Debtor Affiliate, Madison Square Boys & Girls Club Foundation and any of the Representatives of the Debtor, the Reorganized Debtor, the Non-Debtor Affiliate, and Madison Square Boys & Girls Club Foundation.

19. "<u>BGCA Global Settlement</u>" has the meaning set forth in the Trust Allocation Protocol.

20. "<u>Board</u>" means, as applicable, the board of directors for the Debtor or the Reorganized Debtor.

21. "<u>Broker</u>" means Cushman & Wakefield, or such other broker as the Debtor or Reorganized Debtor, as applicable, may select in consultation with the Committee or Compensation Trustee, as applicable.

22. "<u>Business Day</u>" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)), or other day on which commercial banks are authorized to close under the laws of, or are in fact closed in, the state of New York.

23. "<u>Cash</u>" means the legal tender of the United States of America or the equivalent thereof, including cash, cash equivalents, bank deposits and checks.

24. "<u>Cash Contribution</u>" means $2,225,000 in Cash, which shall be contributed by the Debtor or the Reorganized Debtor, as applicable, to the Compensation Trust on the Effective Date.

25. "<u>Cause of Action</u>" means any Claims, causes of action, suits, demands, actions, obligations, liabilities, cross-claims, counterclaims, defenses, offsets, setoffs, third-party claims action for indemnity or action for contribution or otherwise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, reduced to judgment or not reduced to judgment, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any theories of veil piercing, alter ego, or joint or several liability), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal tort, contract, or securities laws), federal or state, For the avoidance of doubt, Causes of Action include (a) any rights of setoff, counterclaim, or recoupment and any Claims for breach of contract or for breach of duties imposed by law or in equity, (b) the rights to object to Claims, (c) any Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any Claims or defenses including fraud, mistake, duress, and usury and any other defenses set forth in section 558

of the Bankruptcy Code, and (e) any Avoidance Actions or state law fraudulent transfer claims.

26.     "Channeling Injunction" means the permanent injunction provided for in Article IX.B of the Plan with respect to Abuse Claims against Covered Parties.

27.     "Chapter 11 Case" means the chapter 11 case pending for the Debtor under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

28.     "Claim" means a claim, as that term is defined in section 101(5) of the Bankruptcy Code.

29.     "Claims Bar Date" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order, (b) a Final Order of the Bankruptcy Court, or (c) the Plan.

30.     "Claims Objection Deadline" means the deadline for objecting to a Claim asserted against the Debtor, which shall be on the date that is the later of:  (a)(i) with respect to Administrative Claims (other than Professional Fee Claims), 75 days after the Administrative Claims Bar Date or (ii) with respect to all other Claims (other than Professional Fee Claims), 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtor or the Reorganized Debtor, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims; *provided*, *however*, that the Claims Objection Deadline shall not apply to Abuse Claims, which shall be administered exclusively in accordance with the Compensation Trust Documents.

31.     "Claims Register" means the official register of Claims against the Debtor maintained by the Notice and Claims Agent.

32.     "Class" means a category of Holders of Claims or Not-for-Profit Membership Interests under sections 1122(a) and 1123(a)(1) of the Bankruptcy Code as set forth in Article III of the Plan.

33.     "Commitment Letter" means that certain Commitment Letter dated November 14, 2022 between the Debtor and the DIP-to-Exit Lender, as amended and in effect from time to time.

34.     "Committee" means the official committee of unsecured creditors appointed in this Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 53], as may be reconstituted from time to time.

35.     "Committee Settlement" means the settlement between the Debtor and the Committee that is implemented pursuant to the terms of the Plan.

36.     "Compensation Trust" means the trust established on the Effective Date that is organized under the laws of the state of New York and established pursuant to Article IV hereof and the Compensation Trust Agreement for the purposes set forth therein, including assuming liability for all Abuse Claims, holding, preserving,

maximizing, and administering the Compensation Trust Assets, and directing the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Compensation Trust Documents.

37.    "Compensation Trust Agreement" means the Compensation Trust Agreement dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof, which shall be included in the Plan Supplement and in form and substance acceptable to the Debtor and the Committee.

38.    "Compensation Trust Assets" means the following property and any income, profits and proceeds realized, received or derived from such property subsequent to the transfer of such property to the Compensation Trust: (a) the Compensation Trust Contribution; (b) any and all funds, proceeds or other consideration contributed to the Compensation Trust under the terms of any Insurance Settlement Agreement; and (c) any and all funds, proceeds or other consideration contributed to the Compensation Trust under the terms of any Third-Party Trust Contribution.

39.    "Compensation Trust Causes of Action" means any Cause of Action held by the Debtor or other Covered Party that is not otherwise expressly released under the Plan or the Restructuring Documents, in each case solely attributable to: (a) all defenses to any Abuse Claim, including all defenses under section 502 of the Bankruptcy Code; (b) with respect to Abuse Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by applicable non-bankruptcy Law) and any other indirect Claim of any kind whatsoever, whenever and wherever arising or asserted; (c) any other Causes of Action with respect to Abuse Claims that the Debtor or other Covered Party would have had under applicable Law if the Chapter 11 Case had not occurred and the Holder of such Abuse Claim had asserted such Cause of Action by initiating civil litigation against the Debtor or other Covered Party (including any Causes of Action against co-defendants); (d) the Insurance Actions; **and** (e) the Madison Damages Claims; and (f) any Cause of Action of the Debtor or other Covered Party under the Laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to any payments made by the Debtor or other Covered Party on account of Abuse Claims on or before the Effective Date**, except for any Claim or Cause of Action against Rockefeller, as set forth in Article I.A.39(z) herein**.  For the avoidance of doubt, Compensation Trust Causes of Action shall not include (y**x**) the Retained Causes of Action, and (z**y**) any Claim or Cause of Action by any Abuse Insurance Company against its reinsurers or retrocessionaires, in their capacities as such**, and (z) any Claim or Cause of Action against Rockefeller or any other Person or Entity that is released pursuant to the Madison/RU 9019 Order**.

40.    "Compensation Trust Contribution" means, collectively, (a) the Cash Contribution; (b) the Compensation Trust Note; (c) the Navy Yard Net Proceeds; (d) the Excess Exit Cash; (e) the Madison Damages Claims Assignment**Proceeds**; (f) the Compensation Trust Causes of Action; and (g) the Insurance Assignment.

41.    "Compensation Trust Documents" means, collectively, (a) the Compensation Trust Agreement, (b) the Trust Allocation Protocol,

(c) the Confirmation Order, and (d) any other agreements, instruments and documents governing the establishment, administration and operation of the Compensation Trust, which shall be substantially in the forms included in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof, and which shall be in form and substance acceptable to the Debtor and the Committee.

42.     "Compensation Trust Expenses" means any liabilities, costs, or expenses of, or imposed upon, or in respect of, the Compensation Trust once established (except for payments to Holders of Abuse Claims on account of such Claims). Compensation Trust Expenses shall also expressly include: (a) any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Compensation Trust Assets (including, without limitation, the prosecution of any Compensation Trust Causes of Action), in each case whether or not any such action results in a recovery for the Compensation Trust; and (b) the reasonable documented costs and expenses incurred by the Reorganized Debtor in taking any action on behalf of or at the direction of the Compensation Trust, if any, including, without limitation, any costs and expenses incurred by the Reorganized Debtor, in being named as a defendant in any Compensation Trust Cause of Action.

43.     "Compensation Trust Note" means the unsecured, interest-bearing promissory note in form and substance acceptable to the Committee, which shall be substantially in the form included in the Plan Supplement, in the principal amount of $5,400,000, to be issued by the Reorganized Debtor to the Compensation Trust on the Effective Date, which shall accrue interest at a rate of 8.0% per annum, payable semi-annually, and mature on the fifth anniversary of the Effective Date, with principal payable in annual installments due on each anniversary of the Effective Date commencing on the first anniversary as follows: (a) 10% due on the first anniversary, (b) 15% due on the second anniversary, (c) 20% due on the third anniversary, (d) 25% due on the fourth anniversary, and (e) the remaining principal balance due on the fifth anniversary.

44.     "Compensation Trustee" means Alan D. Halperin in his capacity as the trustee of the Compensation Trust.

45.     "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

46.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

47.     "Confirmation Hearing" means the hearing(s) to be held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

48.     "Confirmation Order" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure

Statement and Solicitation Materials, which order shall be in form and substance acceptable to the Debtor and reasonably acceptable to the Committee.

49.     "Consummation" means the occurrence of the Effective Date.

50.     "Contribution Claims" has the meaning set forth in Article IX.C.5 of the Plan.

51.     "Covered Parties" means the following Persons, **as may be supplemented by a further order of the Bankruptcy Court**: (a) the Debtor; (b) the Reorganized Debtor; **and** (c) ~~the Settling Insurance Companies (if any); and (d)~~ all of such Persons' Representatives; *provided*, *however*, that no Perpetrator is or shall be a Covered Party; *provided*, *further*, that neither the BGCA nor Rockefeller is or shall be a Covered Party. Notwithstanding the foregoing, ~~Rockefeller and~~**a Settling Insurance Company (if any) and the** BGCA ~~shall~~**may** each **seek to** be deemed a Covered Party **pursuant to a further order of the Bankruptcy Court** solely to the extent the applicable conditions set forth in Article **IV.H or Article** IX.B of the Plan ~~are met~~**, as applicable, and the Trust Allocation Protocol are satisfied** with respect to ~~Rockefeller and~~**a Settling Insurance Company (if any) or the** BGCA, respectively.

52.     "Cure" means the payment or satisfaction of a Claim (unless waived or modified by the applicable counterparty) based on the Debtor's defaults under any Executory Contracts or Unexpired Leases assumed or assumed and assigned by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

53.     "Cure Amount" means the monetary amount of any Cure Claim.

54.     "Cure Claim" means any Claim based upon the Debtor's obligation to Cure defaults under any Executory Contracts or Unexpired Leases if such contract or lease is assumed or assumed and assigned by the Debtor pursuant to section 365 of the Bankruptcy Code.

55.     "Cure Notice" means the notice of the proposed Cure Amount provided to counterparties to assumed or assumed and assigned Executory Contracts or Unexpired Leases pursuant to Article VI.B of the Plan.

56.     "D&O Liability Insurance Policy" means any Insurance Policy issued at any time to, or providing coverage to or for the benefit of, any of the Debtor or any of the Debtor's current or former directors, members, trustees or officers for liability in such current or former directors', members', trustees', or officers' capacity as such, and all agreements, documents or instruments relating thereto in effect immediately prior to the Effective Date.

57.     "Debtor" has the meaning set forth in the preamble of the Plan.

**58.     "Deceased and/or Missing Abuse Claimants" means the Holders of the Direct Abuse Claims asserted in the following Proofs of Claim: (a) Proof of Claim**

**No. 0000060025; (b) Proof of Claim No. 0000060030; (c) Proof of Claim No. 0000060079; (d) Proof of Claim No. 0000060080; (e) Proof of Claim No. 0000060104; (f) Proof of Claim No. 0000060120, and (g) Proof of Claim No. 0000010003, including each such Holder's respective heir, executor or estate representative with proper legal authority to act on behalf of the applicable Deceased and/or Missing Abuse Claimant, in each case solely in its capacity as such.**

5859. "DIP Claim" means any Claim against the Debtor arising under, derived from, secured by, based on, or related to the DIP Facility Documents solely to the extent such Claim arises prior to the Effective Date.

5960. "DIP Credit Agreement" means the super-priority senior secured debtor-in-possession credit agreement between the Debtor and the DIP-to-Exit Lender.

6061. "DIP Facility" means the super-priority senior secured debtor-in-possession term loan credit facility, with a principal amount of up to $11,000,000, made available to the Debtor pursuant to the DIP Credit Agreement and the DIP Order.

6162. "DIP Facility Documents" means the DIP Credit Agreement and all other loan documentation related thereto.

6263. "DIP Order" means the *Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* entered November 10, 2022 [Docket No. 283], as such order may be amended from time to time.

6364. "DIP-to-Exit Lender" means Carver Federal Savings Bank and any other lender under the DIP Facility Documents and/or the Exit Facility Documents, as applicable.

6465. "Direct Abuse Claim" means an Abuse Claim that is not an Indirect Abuse Claim.

6566. "Direct Abuse Claim Discovery" means all documents that are reasonably necessary to defend against Abuse Claims, comply with the Debtor's obligations under the Abuse Insurance Policies, and respond to discovery from plaintiffs asserting Abuse Claims, which documents shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate. For the avoidance of doubt, nothing in this provision operates as a waiver or modification of any of the Debtor's obligations under any Abuse Insurance Policy or a waiver of any privileges or doctrines, or objections to relevancy or admissibility of any discovery sought by plaintiffs asserting Abuse Claims.

6667. "Disallowed" means any Claim, or any portion thereof, that (a) has been disallowed by a Final Order or a settlement, (b) is scheduled on the Schedules at zero or as contingent, Disputed, or unliquidated and as to which a Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the

Bankruptcy Court or otherwise deemed timely filed under applicable Law, (c) is not scheduled on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable Law, or (d) that is not Allowed.  The term "Disallowed" shall not apply to Abuse Claims, except as specifically identified in Article VII of the Plan.

~~67~~**68**.  "Disbursing Agent" means the Debtor, the Reorganized Debtor or any Entity selected by the Debtor or the Reorganized Debtor as a disbursing agent under Article VIII of the Plan that acts in such a capacity to make distributions pursuant to the Plan.

~~68~~**69**.  "Discharge Injunction" has the meaning set forth in Article IX.A.2 of the Plan.

~~69~~**70**.  "Disclosure Statement" means the *Disclosure Statement for the Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.*, dated as of April 12, 2023, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

~~70~~**71**.  "Disclosure Statement Order" means any Order entered by the Bankruptcy Court conditionally approving the Disclosure Statement and Solicitation Materials and authorizing Debtor to solicit the Plan and/or the Confirmation Order, which Order shall be in form and substance acceptable to the Debtor and reasonably acceptable to the Committee.

~~71~~**72**.  "Disputed" means any Claim or any portion thereof (a) that is not Allowed or Disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; (b) that is otherwise disputed by any of the Debtor or the Reorganized Debtor or for which any of the Debtor or the Reorganized Debtor has made a request for estimation in accordance with applicable Law or contract, which dispute has not been withdrawn, resolved, or overruled by a Final Order; or (c) to which the Debtor or any party-in-interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  The term "Disputed" shall not apply to Abuse Claims.

~~72~~**73**.  Distribution Record Date" means the date for determining which Holders of Allowed Claims and Allowed Not-for-Profit Membership Interests are eligible to receive distributions under the Plan, which shall be (a) the date the Bankruptcy Court enters the Confirmation Order or (b) such other date as designated by an Order of the Bankruptcy Court or as determined by the Debtor or the Reorganized Debtor.

73**74**.  "Effective Date" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article XI.B of the Plan have been (a) satisfied or (b) waived in accordance with Article XI.C of the Plan.

74**75**.  "Encumbrance" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation (for the avoidance of doubt, an Insurance Coverage Defense is not an Encumbrance).

75**76**.  "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

76**77**.  "Estate" means the estate created for the Debtor pursuant to section 541 of the Bankruptcy Code upon the commencement of its Chapter 11 Case.

77**78**.  "Excess Exit Cash" means Cash paid from the proceeds of the Exit Facility in an amount equal to 100% of the unused cash proceeds from the DIP Facility after taking into account all payments the Debtor is required to make in connection with the Effective Date pursuant to the Plan or as may be required by law.

78**79**.  "Exculpated Parties" means, collectively, and in each case in its capacity as such:  (a) the Debtor; (b) the Committee; (c) the members of the Committee in their capacities as such; and (d) with respect to each of the foregoing Persons in clauses (a) through (c), **only** such Entity or Person's Representatives, in each case in their capacity as such; *provided* that fiduciaries of the Debtor's Estate and members of the Committee shall only be included in the term "Exculpated Parties" in their capacity as such **who served as estate fiduciaries in the Chapter 11 Case**.

79**80**.  "Executory Contract" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

80**81**.  "Exit Facility" means the converted DIP Facility in accordance with the terms and conditions set forth in the DIP Facility Documents, the Exit Facility Documents, and the Commitment Letter.  In accordance with Article II.D of the Plan, all DIP Claims shall be deemed Allowed as of the Effective Date, and each Holder of an Allowed DIP Claim shall receive its pro rata share of the Exit Facility in accordance with the DIP Facility Documents and the Exit Facility Documents and as set forth in more detail in Article II.D of the Plan.

81**82**.  "Exit Facility Documents" means the credit agreement and other loan documentation governing the Exit Facility, which, in each case, shall be in form and

substance acceptable to the Debtor or the Reorganized Debtor, as applicable, in consultation with the Committee, and the DIP-to-Exit Lender.

~~82~~**83**.   "Federal Judgment Rate" means the post-judgment interest rate in effect as of the Petition Date established by Section 1961(a) of title 28 of the United States Code.

~~83~~**84**.   "File," "Filed," or "Filing" means file, filed or filing in the Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

~~84~~**85**.   "Final Order" means an order entered by the Bankruptcy Court or other court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has expired and no appeal, motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing is pending or (b) as to which an appeal has been taken, a motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing has been filed and (i) such appeal, motion for leave to appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which leave to appeal, certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal (in the event leave is granted) further or seek leave to appeal, certiorari, further review, reargument, stay, or rehearing has expired and no such appeal, motion for leave to appeal, or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, that may be Filed relating to such Order, shall not cause an Order not to be a Final Order.

~~85~~**86**.   "Forbearance Agreement" means that certain Forbearance Agreement, dated as of June 29, 2022, as amended and modified from time to time, including, without limitation, by agreements and/or electronic mail dated September 29, 2022, October 12, 2022, October 21, 2022, November 4, 2022, November 11, 2022, January 12, 2023, and February 22, 2023, by and among the Debtor, the Non-Debtor Affiliate and the NMTC Transaction Lender/Equity Parties, as the same may be further extended with the consent of the NMTC Transaction Lender/Equity Parties.

~~86~~**87**.   "General Unsecured Claim" means any unsecured Claim against the Debtor that is not (a) paid in full prior to the Effective Date pursuant to an Order of the Bankruptcy Court, (b) an Administrative Claim, (c) a DIP Claim, (d) a Priority Tax Claim, (e) an Other Priority Claim, (f) an Other Secured Claim, or (g) an Abuse Claim. For the avoidance of doubt, a "General Unsecured Claim" includes (y) any Rockefeller GUC Claim and (z) any Claim arising under any Abuse Insurance Policy for deductibles, self-insured retentions, retrospective premium adjustments, or other charges (if any) with respect to the Abuse Insurance Policies, as obligated under applicable Law.

8788.  "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

8889.  "GUC Cash Pool" means Cash in the aggregate amount of $300,000 for the purposes of making distributions to Holders of Allowed General Unsecured Claims.

8990.  "GUC Disbursement Date" means the earliest date upon which all Disputed General Unsecured Claims are either Allowed or Disallowed.

9091.  "Holder" means any Entity holding a Claim against or Not-For-Profit Membership Interest in the Debtor.

9192.  "Impaired" means, with respect to a Claim or a Class of Claims, a Claim or a Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

9293.  "Indirect Abuse Claim" means a liquidated or unliquidated Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction) arising from an Abuse Claim, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, or contract.  Indirect Abuse Claims shall include the Rockefeller Contribution Claim but shall not include the Rockefeller GUC Claim.

9394.  "Insurance Action" means any Claim, Cause of Action, or right of the Debtor or another Covered Party, excluding a Settling Insurance Company, under the laws of any jurisdiction, whether sounding in contract, tort, or otherwise (including equity and bad faith) against any Non-Settling Insurance Company, arising from or related to: (a) any such Non-Settling Insurance Company's failure to provide coverage or otherwise pay under Abuse Insurance Coverage; (b) any conduct by any Non-Settling Insurance Company constituting "bad faith" conduct that could give rise to extra-contractual damages, or other wrongful conduct under applicable Law; (c) the refusal of any Non-Settling Insurance Company to compromise and settle any Abuse Claim under or pursuant to any Abuse Insurance Policy; (d) indemnity and payment of any Abuse Claim; (e) the interpretation or enforcement of the terms of any Abuse Insurance Policy with respect to any Abuse Claim; or (f) any other Claims under, arising out of or relating to an Abuse Insurance Policy or Abuse Insurance Coverage, including the Insurance Coverage Actions.  The term "Insurance Action" includes any Claims against a Non-Settling Insurance Company for reimbursement of all unpaid defense costs or related expenses under any Non-Settling Insurance Company's Abuse Insurance Policy incurred by the Debtor; *provided* that the Debtor shall not be required to pay over to the Compensation Trust any reimbursement of defense costs or related expenses received by the Debtor from an Abuse Insurance Company prior to the filing of the *Mediator's Report* [Docket No. 329] on December 28, 2022.  For the avoidance of doubt, no Claim, Cause of Action, or

13

right of the Debtor or another Covered Party, excluding a Settling Insurance Company, against any Settling Insurance Company shall be deemed an Insurance Action.

94**95**. "Insurance Assignment" means the assignment and transfer to the Compensation Trust of (a) the Insurance Actions, (b) the Insurance Recoveries, (c) the Insurance Settlement Agreements (if any), and (d) all rights, Claims, interests, benefits, responsibilities and obligations of the Debtor subject to applicable Law under or with respect to the Abuse Insurance Policies (but not the policies themselves) and the proceeds thereof.

95**96**. "Insurance Company" means any insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.

96**97**. "Insurance Coverage" means insurance available under any Abuse Insurance Policy, whether known or unknown to the Debtor or the Committee, to indemnify and/or defend all or any part of an Abuse Claim asserted against (a) the Debtor and/or (b) a Covered Party.

97**98**. "Insurance Coverage Defense" means, subject to Article XII, all rights and defenses that any Insurance Company may have under any Abuse Insurance Policy and applicable Law with respect to a Claim seeking insurance coverage or to an Insurance Action, but Insurance Coverage Defenses do not include any defense that the Plan or any of the other Restructuring Documents do not comply with the Bankruptcy Code. Upon entry of the Confirmation Order in the Chapter 11 Case determining that the Insurance Assignment is authorized to the extent provided in Article X, an Insurance Coverage Defense shall not include any defense that the Insurance Assignment is prohibited by the Abuse Insurance Policies or applicable non-bankruptcy law (except to the extent provided in Article X).

98**99**. "Insurance Policy" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Petition Date naming Debtor, or any predecessor, subsidiary, or past or present Affiliate of the Debtor, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtor, any insurance coverage, including, without limitation, the Abuse Insurance Policies. For the avoidance of doubt, the term "Insurance Policy" as used herein has no legal effect as to whether or not secondary evidence of coverage constitutes the existence of an insurance policy.

99**100**. "Insurance Recoveries" means the rights to any proceeds, including any interest or income earned thereon, and other relief, from (a) any award, judgment, relief, or other determination entered or made as to any Insurance Action, including regarding any Causes of Action related to or arising in connection with any Insurance Actions; (b) any amounts payable by an Insurance Company under any settlement agreement with the Debtor, a Covered Party or a Settling Insurance Company regarding Insurance Actions; and (c) any proceeds of any Abuse Insurance Policy payable to the Debtor, a

Covered Party or a Settling Insurance Company regarding Insurance Actions; *provided* that Insurance Recoveries shall not include (y) defense costs and related expenses paid to the Debtor by any Insurance Company pursuant to an Abuse Insurance Policy prior to the Effective Date and (z) recoveries of an Abuse Insurance Company under any agreement or contract providing reinsurance to the Abuse Insurance Company.

~~100~~**101**. "Insurance Settlement Agreement" means (a) any settlement agreement entered into after the Petition Date and before the Effective Date by and between (i) any Insurance Company, on the one hand, and (ii) the Debtor, on the other hand, under which an Abuse Insurance Policy and/or the Debtor's rights thereunder with respect to Abuse Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Compensation Trustee, on the other hand, under which an Abuse Insurance Policy that is subject to the Insurance Assignment and/or the Compensation Trustee's rights thereunder with respect to Abuse Claims are released. Prior to the Effective Date, any Insurance Settlement Agreement shall be in form and substance acceptable to the Debtor and the Committee, and after the Effective Date any Insurance Settlement Agreement shall be acceptable to the Compensation Trustee.

~~101~~**102**. "Insurance Settlement Period" has the meaning set forth in Article IV.H of the Plan.

~~102~~**103**. "IRS" means the Internal Revenue Service.

~~103~~**104**. "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

~~104~~**105**. "Law" means any U.S. or non-U.S. law (statutory or common), statute, regulation, rule, code or ordinance enacted, adopted, issued, or promulgated by any Governmental Unit.

~~105~~**106**. "Leverage Loan" means that certain loan made by the Debtor to Harlem Clubhouse Investment Fund, LLC in connection with the NMTC Transaction.

~~106~~**107**. "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

~~107~~**108**. "Madison Damages Claims" means any and all Claims and Causes of Action owned, held, or capable of being asserted by**, through,** or on behalf of the Debtor or its Estate against Rockefeller arising out of or related to any injuries to, or damages sustained by, the Debtor in connection with the Abuse Claims~~, and any proceeds thereof~~.

**109. "Madison Damages Claims Proceeds" means cash proceeds in the amount of $150,000 on account of and in full and final settlement of the Madison**

**Damages Claims and all other Claims and Causes of Action released pursuant to the Madison/RU 9019 Order, which proceeds shall be received by the Compensation Trust on the Effective Date in accordance with this Plan and the Madison/RU 9019 Order.**

**110.** **"Madison/RU 9019 Motion" means the** *Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order (A) Approving the Settlement Agreement Between the Debtor and The Rockefeller University and (B) Granting Related Relief* **[Docket No. 565].**

~~108~~**111**. "Madison ~~Damages Claims Assignment" has the meaning set forth in Article V.B.6 of the Plan.~~ **/RU 9019 Order" means the order entered by the Bankruptcy Court approving the Madison/RU 9019 Motion and authorizing the settlement and releases contemplated thereunder.**

~~109~~**112**. "Navy Yard Clubhouse" means the Debtor's clubhouse located at 240 Nassau Street, Brooklyn, New York 11201.

~~110~~**113**. "Navy Yard Insurance Beneficiary" has the meaning set forth in Article V.B.3 of the Plan.

~~111~~**114**. "Navy Yard Net Proceeds" means 100% of proceeds generated from the Navy Yard Transaction, less all closing costs and brokers' fees associated with the Navy Yard Transaction.

~~112~~**115**. "Navy Yard Transaction" means a sale, sale-leaseback, transfer or other monetization transaction of the Navy Yard Clubhouse in accordance with the Committee Settlement.

~~113.    "New Complaint" has the meaning set forth in Article IV.D of the Plan.~~

~~114~~**116**. "New Organizational Documents" means (i) the Debtor's current corporate governance documents to the extent such documents remain unmodified in connection with Consummation, or (ii) to the extent modified in connection with Consummation, the documents providing for corporate governance of the Reorganized Debtor.

~~115~~**117**. "NMTC Documents" means all agreements, guaranties, indemnities, leases, certificates, statements, loans, security documents, promissory notes or any other documents, instruments or agreements of any kind or nature related to the NMTC Transaction as in effect on the Effective Date, excluding the Forbearance Agreement.

~~116~~**118**. "NMTC Transaction" means the transaction under the New Markets Tax Credit Program used to finance the construction of Pinkerton Clubhouse.

~~117~~**119**. "NMTC Transaction Lender/Equity Parties" means NYCNCC SUB-CDE 2, LLC, PNC CDE 74, LP, NFF New Markets Fund XXIX, LLC, Empowerment

Reinvestment Fund XXV, LLC, Harlem Clubhouse Investment Fund, LLC and PNC New Markets Investment Partners, LLC, who are parties to certain of the NMTC Documents.

~~118~~**120**. "Non-Debtor Affiliate" means MSBGC-NYC Support Corporation.

~~119~~**121**. "Non-Settling Insurance Company" means any Abuse Insurance Company to the extent it is not a Settling Insurance Company.

~~120~~**122**. "Not-for-Profit Membership Interests" means the not-for-profit interests in the Debtor held by any member of the Debtor in accordance with applicable not-for-profit Law.

~~121~~**123**. "Notice and Claims Agent" means Epiq Corporate Restructuring, LLC, in its capacity as "claims and noticing agent" for the Debtor, and any successor thereto.

~~122~~**124**. "Notice of Intent to Pursue Abuse Claims" means a notice substantially in the form attached hereto as **Exhibit C**, which shall be transmitted to the Debtor, the Compensation Trustee, and Abuse Insurance Companies set forth therein by any Holder of an Abuse Claim seeking to pursue such Abuse Claim after the Effective Date against the Debtor and any other defendant in a court of competent jurisdiction in accordance with the terms of Plan.

~~123~~**125**. "Order" means any judgment, order, award, injunction, writ, permit, license, or decree of any Governmental Unit or arbitrator of applicable jurisdiction, including the Bankruptcy Court.

~~124~~**126**. "Other Priority Claim" means any Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

~~125~~**127**. "Other Secured Claim" means any Secured Claim against the Debtor other than the DIP Claims.

~~126~~**128**. "Perpetrator" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim. The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee, officer, or volunteer of the Debtor.

~~127~~**129**. "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

~~128~~**130**. "Petition Date" means June 29, 2022.

129**131**. "Pinkerton Clubhouse" means the improved real property located at 250 Bradhurst Avenue, New York, NY 10039 and owned by the Non-Debtor Affiliate.

130**132**. "Pinkerton Clubhouse Lease" means that certain lease agreement whereby the Debtor leases the Pinkerton Clubhouse from the Non-Debtor Affiliate.

131**133**. "Plan" means this first amended chapter 11 plan, the Plan Supplement and all exhibits, supplements, appendices, and schedules attached or related thereto, as each may be altered, amended, modified, or supplemented from time to time in accordance with its terms.

132**134**. "Plan Supplement" means one or more compilations of documents and forms of documents, schedules, and exhibits to the Plan that will be Filed by the Debtor, as each may be amended, supplemented, altered, or modified from time to time, including: (a) the New Organizational Documents; (b) the Schedule of Retained Causes of Action; (c) the number and slate of members of the Board of the Reorganized Debtor and any information to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the Exit Facility Documents; (f) the Compensation Trust Agreement; (g) the Compensation Trust Note; (h) the Amended Child Safety Procedures (if any); (i) the Proposed Mortgage; and (j) any other necessary documentation related to the Restructuring Transactions as contemplated under the Plan. The Debtor shall File the Plan Supplement, to the extent reasonably practical, no later than 14 days before the deadline to object to confirmation of the Plan or such later date as may be approved by the Bankruptcy Court on notice to parties in interest. The Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

133**135**. "Post-Effective Date Insurance Settlement" shall have meaning set forth in Article IV.H of the Plan.

134**136**. "Priority Claims" means Priority Tax Claims and Other Priority Claims.

135**137**. "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

136**138**. "Privilege" shall have the meaning set forth in Article V.B.7**6** of the Plan.

137**139**. "Privileged Information" shall have the meaning set forth in Article V.B.7**6** of the Plan.

138**140**. "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class entitled to share in the same recovery as such Allowed Claim under the Plan.

139**141**. "Professional" means an Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and/or 1103 of the Bankruptcy

Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

140142. "Professional Fee Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an Order of the Bankruptcy Court. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, or the Professional otherwise agrees to reduce its fees and expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

141143. "Professional Fee Escrow" means an account (which may be interest-bearing) funded by the Debtor with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

142144. "Professional Fee Escrow Amount" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals estimate they have incurred or will incur in rendering services to the Debtor prior to and as of the Confirmation Date, which will be estimated pursuant to Article II of the Plan.

143145. "Proof of Claim" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

144146. "Proposed Mortgage" has the meaning set forth in Article V.B.3 of the Plan.

145147. "Reinstate," "Reinstated," or "Reinstatement" means with respect to Claims and Not-for-Profit Membership Interests, that the Claim or Not-for-Profit Membership Interests shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

146148. "Release Conditions" shall have the meaning set forth in Article V.B.3 of the Plan, which shall incorporate and modify in all respects the "Release Provisions" set forth in the term sheet attached as an exhibit to the Commitment Letter.

147149. "Reorganized Debtor" means, on or after the Effective Date, the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto.

148150. "Representative" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, subsidiaries, and Affiliates, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants,

representatives, and other professionals, and (c) respective heirs, executors, Estate, and nominees, in each case solely in its capacity as such.

149**151**. "Restructuring Documents" means the (a) Plan and its exhibits and schedules, Ballots, and the Solicitation Materials, (b) Confirmation Order, (c) Disclosure Statement Order, (d) Plan Supplement and the documents included therein, (e) Exit Facility Documents, and (f) all other agreements, instruments, certificates and similar agreements necessary to implement and execute the Restructuring Transactions.

150**152**. "Restructuring Transactions" means the transactions contemplated in connection with the restructuring under and pursuant to the Plan.

151**153**. "Retained Causes of Action" means any retained Causes of Action set forth in the Plan Supplement**; *provided* that, for the avoidance of doubt, the Retained Causes of Action shall not include any Claim or Cause of Action against Rockefeller or any other Person or Entity that is released pursuant to the Madison/RU 9019 Order**.

152**154**. "Rockefeller" means The Rockefeller University and its affiliates, subsidiaries or related Entities and individuals.

153**155**. "Rockefeller Contribution Claims" means any Claim asserted by Rockefeller in its Proof of Claim (No. 0000020021) Filed on November 10, 2022 (including any amendment, supplement or modification thereto) for contribution or reimbursement, which shall include any rights Rockefeller may have under section 502(j) of the Bankruptcy Code.

154. "Rockefeller Global Settlement" has the meaning set forth in the Trust Allocation Protocol.

155**156**. "Rockefeller GUC Claims" means any Claim asserted by Rockefeller in its Proof of Claim (No. 0000020021) Filed on November 10, 2022 (including any amendment, supplement or modification thereto) that is not a Rockefeller Contribution Claim.

**157.** **"Rockefeller Reimbursement" has the meaning set forth in Article V.U of the Plan.**

156**158**. "Rule 502(d) Finding" means a finding by the Bankruptcy Court in the Confirmation Order that (a) Rule 502(d) of the Federal Rules of Evidence governs the transfer of the Direct Abuse Claim Discovery to the Compensation Trust in accordance with the Plan, including Article V.B.7**6** hereof, and (b) nothing in the Rule 502(d) Finding affects the Debtor's, its assignee's, or any Abuse Insurance Company's rights or obligations under applicable Law.

157**159**. "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule of Executory Contracts and Unexpired Leases to be assumed under the Plan, and associated Cure Amounts, if any, which shall be included in the Plan Supplement.

158**160**. "Secured Claim" means a Claim to the extent (a) secured by a Lien on property of the Debtor's Estate, the amount of which is equal to or less than the value of such property (i) as set forth in the Plan, (ii) as agreed to by the Holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (b) subject to any setoff right of the Holder of such Claim under section 553 of the Bankruptcy Code.

159**161**. "Settling Insurance Company" means, solely with respect to Abuse Insurance Policies that are the subject of an Insurance Settlement Agreement, any Abuse Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Compensation Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order, including, for the avoidance of doubt, in accordance with Article IV.H of the Plan.

160**162**. "Schedules" means the statement of financial affairs and the schedules of assets and liabilities Filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such statement and schedules may be amended, supplemented, or modified from time to time.

161**163**. "Statutory Fees" means all fees for which the Debtor is obligated pursuant to section 1930(a)(6) of title 28 of the United State Code.

162**164**. "Subordinated Claim" means any Claim against the Debtor that is subject to subordination under section 509(c), section 510(b) or section 510(c) of the Bankruptcy Code, including any Claim for reimbursement, indemnification, or contribution.

163**165**. "Third-Party Trust Contribution" means a contribution by a Person or Entity other than the Debtor or an Insurance Company to the Compensation Trust.

164**166**. "Trust Allocation Protocol" means the allocation protocol for the Compensation Trust Assets to Holders of Abuse Claims set forth on **Exhibit B** hereto.

165**167**. "Trust Reimbursement" shall have the meaning set forth in Article V.B.7**6** of the Plan.

166**168**. "U.S. Trustee" means the United States Trustee for Region 2.

167**169**. "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

168**170**. "Unimpaired" means, with respect to a Class of Claims or Not-for-Profit Membership Interests, a Claim or a Not-for-Profit Membership Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through Reinstatement or payment in full in Cash.

169**171**. "Voting Deadline" means the deadline to submit votes to accept or reject the Plan, as the same may be extended from time to time.

## B.    *Rules of Interpretation*

For purposes of the Plan:  (a) each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (b) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (c) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; *provided* that any capitalized terms herein that are defined with reference to another agreement, are defined with reference to such other agreement as of the date of the applicable agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the Effective Date; (e) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (f) unless otherwise specified, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (h) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (k) all references to statutes, regulations, Orders, rules of courts, and the like shall mean such statutes, regulations, Orders, rules of courts, and the like as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (l) any reference to an Entity as a Holder of a Claim or Not-For-Profit Membership Interest includes that Entity's successors and assigns; (m) except as otherwise provided, any references to the Effective Date shall mean on the Effective Date or as soon as reasonably practicable thereafter; (n) any docket number references in the Plan or the Confirmation Order shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Case; (o) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (p) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interests," "Holders of Not-for-Profit Membership Interests," "Disputed Not-for-Profit Membership Interests," and the like, as applicable; and (q) unless otherwise specified, all references herein to consent,

acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

## C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan or the Confirmation Order shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

## D.    *Governing Laws*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflicts of law, shall govern the rights, obligations, construction, and implementation of the Plan and the Confirmation Order, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan or the Confirmation Order (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and not-for-profit corporate governance matters.

## E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## F.    *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan or the Confirmation Order to the contrary, references in the Plan or the Confirmation Order to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

## G.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless otherwise provided in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

All Claims and Not-for-Profit Membership Interests, except Administrative Claims, DIP Claims, and Priority Tax Claims are classified in the Classes set forth below.  In accordance with

section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Not-for-Profit Membership Interests set forth in <u>Article III</u> of the Plan.

## A.    *Administrative Claim*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtor or the Reorganized Debtor, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this <u>Article II.A</u> and except with respect to Administrative Claims that are Professional Fee Claims or Statutory Fees, requests for payment of Administrative Claims must be Filed and served on the Debtor, or the Reorganized Debtor, as applicable, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or the Reorganized Debtor or its respective property or Estate and such Administrative Claims shall be deemed discharged as of the Effective Date. If for any reason any such Administrative Claim is incapable of being forever barred and discharged, then the Holder of such Claim shall not have recourse to any property of the Reorganized Debtor to be distributed pursuant to the Plan.** Objections to such requests for payment of an Administrative Claim, if any, must be Filed and served on the Reorganized Debtor and the requesting party no later than the Claims Objection Deadline.

## B.    *Professional Fee Claims*

### 1.    Professional Fee Escrow

On the Effective Date, the Debtor shall establish the Professional Fee Escrow and transfer an amount equal to the Professional Fee Escrow Amount from the Debtor's general funds available as of the Effective Date. The Professional Fee Escrow shall be maintained in

trust for the Professionals and for no other Entities until all Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or interests shall encumber the Professional Fee Escrow or Cash held on account of the Professional Fee Escrow in any way. Such funds shall not be considered property of the Estate, the Debtor, or the Reorganized Debtor; *provided*, *however*, that the Reorganized Debtor shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Escrow over the aggregate amount of Professional Fee Claims of the Professionals to be actually paid from the Professional Fee Escrow. When such Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow shall promptly be paid to the Reorganized Debtor without any further action or Order of the Bankruptcy Court.

2.      Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than forty-five (45) calendar days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court Orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash from the Professional Fee Escrow to such Professionals as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an Order of the Bankruptcy Court.

To the extent that funds in the Professional Fee Escrow are insufficient to satisfy the Allowed Professional Fee Claims owing to the Professionals, each Professional shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied by the Reorganized Debtor in the ordinary course of business in accordance with Article II.A of the Plan and notwithstanding any obligation to File Proofs of Claim or requests for payment on or before the Administrative Claims Bar Date. After all Allowed Professional Fee Claims have been paid in full, the escrow agent for the Professional Fee Escrow shall return any excess amounts held in the Professional Fee Escrow, if any, to the Reorganized Debtor, without any further action or Order of the Bankruptcy Court.

3.      Estimation of Fees and Expenses

Professionals shall provide a reasonable and good-faith estimate of Professional Fee Claims through and including the Effective Date, and shall deliver such estimate to the Debtor no later than five (5) calendar days prior to the Effective Date; *provided*, *however*, that such estimate shall not be considered a representation with respect to the fees and expenses of such Professional, and Professionals are not bound to any extent by the estimates. If any of the Professionals fail to provide an estimate or does not provide a timely estimate, the Debtor may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtor to determine the Professional Fee Escrow Amount.

    4.     Post-Effective Date Fees and Expenses

From and after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, Order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtor. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, or any Order of the Bankruptcy Court governing the retention or compensation of Professionals in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professionals in the ordinary course of business without any further notice to or action, Order, or approval of the Bankruptcy Court.

**C.**    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business by the Reorganized Debtor.

**D.**    *DIP Claims*

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to (a) the principal amount outstanding under the DIP Credit Agreement on such date, (b) all accrued and unpaid interest thereon to the date of payment, and (c) all accrued and unpaid fees and expenses payable under the DIP Credit Agreement and DIP Order.

Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, on the Effective Date, each such Holder of an Allowed DIP Claim in the amount of the outstanding aggregate principal amount of the DIP Facility shall receive its pro rata share of the Exit Facility in accordance with the DIP Facility Documents and the Exit Facility Documents. All accrued and unpaid interest and accrued and unpaid fees and expenses payable under the DIP Credit Agreement and DIP Order shall be paid in Cash on the Effective Date.

**E.**    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Debtor or the Reorganized Debtor, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first; *provided* that on and after the Effective Date, the Reorganized Debtor shall (1) pay in full in Cash when due and payable, and shall be responsible for paying, any and all such fees and interest with respect to any and all disbursements (and any other actions giving rise to such fees

and interest) of the Reorganized Debtor, and (2) File in the Chapter 11 Case (to the extent it has not yet been closed, dismissed, or converted) quarterly reports as required by the Bankruptcy Code, Bankruptcy Rules, and Local Rules, as applicable, in connection therewith.  The U.S. Trustee shall not be required to file any proof of claim or request for payment for quarterly fees.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND NOT-FOR-PROFIT MEMBERSHIP INTERESTS

**A.**    ***Classification and Treatment of Claims and Not-for-Profit Membership Interests***

All Claims or Not-for-Profit Membership Interests, other than Administrative Claims, Priority Tax Claims, and DIP Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Not-for-Profit Membership Interest, or any portion thereof, is classified in a particular Class only to the extent that such Claim or Not-for-Profit Membership Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Not-for-Profit Membership Interest qualifies within the description of such other Classes.  A Claim or Not-for-Profit Membership Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan, but only to the extent that such Claim or Not-for-Profit Membership Interests is an Allowed Claim or Allowed Not-for-Profit Membership Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The following table designates the Classes of Claims against and Not-for-Profit Membership Interests in the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Not-for-Profit Membership Interests set forth in this Article III.  All of the potential Classes for the Debtor are set forth herein.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Abuse Claims | Impaired | Entitled to Vote |
| 5 | Not-for-Profit Membership Interests | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

**B.**     ***Treatment of Claims and Not-for-Profit Membership Interests***

1.      Class 1 – Other Secured Claims

(a)     *Classification*:  Class 1 consists of all Other Secured Claims.

(b)     *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the Debtor or the Reorganized Debtor, as applicable:

i.      payment in full in Cash of its Allowed Other Secured Claim;

ii.     the collateral securing its Allowed Other Secured Claim;

iii.    Reinstatement of its Allowed Other Secured Claim; or

iv.     such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Priority Claims

(a)     *Classification*:  Class 2 consists of all Other Priority Claims against the Debtor.

(b)     *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

3.      Class 3 – General Unsecured Claims

    (a)     *Classification*:  Class 3 consists of all General Unsecured Claims.

    (b)     *Treatment*:  On the GUC Disbursement Date, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive its Pro Rata share of the GUC Cash Pool.

    (c)     *Voting*:  Class 3 is Impaired under the Plan and each Holder of a General Unsecured Claims is entitled to vote to accept or reject the Plan.

4.      Class 4 – Abuse Claims

    (a)     *Classification*: Class 4 consists of all Abuse Claims.

    (b)     *Treatment*:  The Compensation Trust shall receive, for the benefit of Holders of Abuse Claims, the Compensation Trust Assets, which shall be distributed to the Holders of Abuse Claims in Class 4 pursuant to the Compensation Trust Documents.  As of the Effective Date, the Covered Parties' liability for all Abuse Claims shall be assumed in full by the Compensation Trust without further act, deed, or court order and shall be satisfied solely from the Compensation Trust Assets as set forth in the Plan and the Compensation Trust Documents.  Pursuant to the Channeling Injunction set forth in Article IX.B, and except as provided therein, each Holder of an Abuse Claim shall have such Holder's Abuse Claim against the Covered Parties (and each of them) permanently channeled to the Compensation Trust and, to the extent not otherwise disallowed prior to the Effective Date, such Abuse Claim shall thereafter be asserted exclusively against the Compensation Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Compensation Trust Documents.  Holders of Abuse Claims shall be forever enjoined and estopped from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Abuse Claims against any of the Covered Parties and may not proceed in any manner against any of the Covered Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Abuse Claims solely against the Compensation Trust as provided in the Compensation Trust Documents; *provided*, *however*, that, pursuant to Article IX.B hereof, forty-five (45) calendar days after transmitting the Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed on **Exhibit C** in accordance with the instructions set forth therein, Holders of Abuse Claims whose Claims potentially implicate an Abuse Insurance Policy

issued by a Non-Settling Insurance Company (including but not limited to occurring during the coverage period of an Abuse Insurance Policy issued by a Non-Settling Insurance Company) may pursue their Abuse Claims in a court of competent jurisdiction against the Debtor and any other defendant in accordance with the terms hereof (which action to pursue an Abuse Claims by the Holder of an Abuse Claim may include the continuation of an action commenced by such Holder of an Abuse Claim against the Debtor and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to the extent no such action to pursue an Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date), and the Non-Settling Insurance Company with respect to any applicable Abuse Insurance Policy shall be able to assert each and every available defense (including any Insurance Coverage Defenses) under applicable Law or the applicable Abuse Insurance Policy relating to any Abuse Claim; *provided*, *further* that nothing in this Article III.B.4 shall impair the rights of any Non-Settling Insurance Company set forth in Article X of the Plan; *provided*, *further*, that any such Claims are subject to the terms of the Plan and that Claims against the Debtor or a Covered Party may be paid solely from the Compensation Trust Assets and the proceeds of an Abuse Insurance Policy issued by a Non-Settling Insurance Company and the Holders of such Claims shall have no recovery whatsoever at any time against any Covered Party or any property or interest in property of any Covered Party beyond Insurance Recoveries.  Without limiting the foregoing, in accordance with the Trust Allocation Protocol, Holders of Allowed Direct Abuse Claims shall receive the Abuse Claim Equal Share Distribution, and Holders of Allowed Indirect Abuse Claims will be entitled to the treatment set forth in Article IV. G of the Plan.

Notwithstanding the above, to preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, Class 4 Abuse Claimants specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust  in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries.  The Class 4 Claims will not be released or enjoined as against the Debtor, the Reorganized Debtor, or any other Covered Party

for any Abuse Claim that may be covered under any Non-Settling Insurance Company's Abuse Insurance Policies until such Claims are settled with the Debtor, the Reorganized Debtor, any other Covered Party and such Non-Settling Insurance Company or are fully adjudicated, resolved, and subject to Final Order, but recovery is limited as described above.

(c)    *Voting*: Class 4 is Impaired, and each Holder of an Abuse Claim is entitled to vote to accept or reject the Plan. Solely for the purposes of voting on the Plan, each Abuse Claim in Class 4 is deemed to be Allowed in the amount of $1.00.

5.    Class 5 – Not-for-Profit Membership Interests

(a)    *Classification*:    Class 5 consists of all Not-for-Profit Membership Interests.

(b)    *Treatment*: On the Effective Date, Not-for-Profit Membership Interests shall be Reinstated.

(c)    *Voting*:    Class 5 is Unimpaired under the Plan. Each Holder of a Not-for-Profit Membership Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Not-for-Profit Membership Interest is not entitled to vote to accept or reject the Plan.

**C.    *Acceptance or Rejection of the Plan***

1.    Presumed Acceptance of the Plan

Claims in Classes 1, 2, and 5 are Unimpaired under the Plan and their Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Classes 1, 2, and 5 are therefore not entitled to vote on the Plan and the votes of such Holders shall not be solicited.

2.    Voting Classes

Claims in Classes 3 and 4 are Impaired under the Plan and the Holders of Allowed Claims in such Class are eligible to vote to accept or reject the Plan consistent in all respects with the Disclosure Statement Order. An Impaired Class of Claims shall have accepted the Plan if, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code or any insider under section 101(31) of the Bankruptcy Code, (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept the Plan. Holders of Claims in Classes 3 and 4 shall receive Ballots containing detailed voting instructions.

3.      Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

4.      Controversy Concerning Impairment

If a controversy arises as to whether any Claims, or any Class of Claims or Not-For-Profit Membership Interest, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such matter on or before the Confirmation Date.

5.      Elimination of Vacant and Abstaining Classes

Any Class of Claims or Not-for-Profit Membership Interests that does not have a Holder of an Allowed Claim or Allowed Not-for-Profit Membership Interest as of the date of the commencement of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. Any Class of Claims that is occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 but as to which no vote is case shall be deemed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

**D.    *Confirmation Pursuant to Section 1129(a)(10) of the Bankruptcy Code***

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.

**E.    *Special Provision Governing Unimpaired Claims or Reinstated Claims***

Except as otherwise specifically provided herein, nothing herein shall be deemed to affect, diminish, or impair, as applicable, the Debtor's or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoff or recoup against Reinstated Claims or Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff or recoupment, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left Unimpaired or Reinstated by the Plan. Except as otherwise specifically provided herein, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights with respect to any Reinstated Claim or Unimpaired Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

**F.**      ***Relative Rights and Priorities; Subordinated Claims***

Unless otherwise expressly provided in the Plan or the Confirmation Order, the allowance, classification, and treatment of all Allowed Claims or Not-for-Profit Membership Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of such Claims or Not-for-Profit Membership Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, reserve the right to re-classify any Allowed Claim or Not-for-Profit Membership Interests in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**COMPENSATION TRUST**

**A.**      ***Establishment of the Compensation Trust***

The Compensation Trust shall be established on the Effective Date in accordance with the Compensation Trust Documents.  The Compensation Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.  The Covered Parties are the "transferors" within the meaning of Treasury Regulation Section 1.468B-(d)(1).

**B.**      ***Purposes of the Compensation Trust***

The purposes of the Compensation Trust shall be to assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Compensation Trust Assets, and to direct the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Compensation Trust Documents.  The Compensation Trust shall resolve Abuse Claims in accordance with the Compensation Trust Documents in a fair, consistent, equitable manner, and on a pro rata basis, in compliance with the terms of the Compensation Trust Documents and to the extent of available Compensation Trust Assets.

In the event of any ambiguity or conflict between the terms of the Compensation Trust Agreement or any related document required or provided for under the Compensation Trust Documents (other than the Confirmation Order), on the one hand, and the terms of the Plan and the Confirmation Order, on the other hand, the terms of the Plan and the Confirmation Order shall control, notwithstanding that the Compensation Trust Agreement and related documents required or provided for under the Compensation Trust Documents may be incorporated in or annexed to the Plan or the Confirmation Order.

**C.**      ***Compensation Trustee***

There shall be one Compensation Trustee, who shall be appointed in accordance with the terms of the Compensation Trust Agreement.  For purposes of performing his, her, or their duties and fulfilling his, her, or their obligations under the Compensation Trust and the Plan, the Compensation Trustee shall be deemed to be, and the Confirmation Order shall provide that

he she, or they are, a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code. The Compensation Trustee shall be the "administrator" of the Compensation Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

Under section 1123(b)(3)(B) of the Bankruptcy Code, the Compensation Trustee is appointed as the representative of the Debtor and Covered Parties to retain and enforce the Debtor's and Covered Parties' Insurance Coverage and for the Compensation Trust Causes of Action. On the Effective Date, the Compensation Trustee shall assume responsibility for, and be bound by, all of the obligations of the Debtor and Covered Parties under the Abuse Insurance Policies; *provided*, *however*, that the Compensation Trustee's appointment shall not relieve the Debtor or the Covered Parties from their respective obligations under the Abuse Insurance Policies subject to applicable Law; *provided*, *further* that actions taken by the Debtor in respect of such obligations shall be subject to the Trust Reimbursement to the extent such actions taken by the Debtor are requested by the Compensation Trust or Compensation Trustee.

### D.   *Transfer of Compensation Trust Assets to the Compensation Trust; Insurance Assignment*

On the Effective Date or as otherwise provided herein, and without further action of any Person, but subject to the Plan:

1.\_\_\_\_\_The Debtor and each of the Covered Parties will be deemed to have assigned to the Compensation Trust the Debtor's and the Covered Parties' rights, title, and interest in and to the Compensation Trust Assets and any proceeds thereof, including the Debtor's and the Covered Parties' rights to all Insurance Actions and Insurance Recoveries against the Non-Settling Insurance Companies;

2.\_\_\_\_\_The Compensation Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Compensation Trust free and clear of all Encumbrances or Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan; and

3.\_\_\_\_\_The Compensation Trust shall assume and be bound by any and all liabilities, obligations, and responsibilities, of the Covered Parties for all Abuse Claims, financial or otherwise, including the obligations of the Covered Parties under the Abuse Insurance Policies, subject to applicable law; *provided*, *however*, that the Compensation Trust's assumption of such responsibility shall not relieve the Debtor or the Covered Parties from their respective obligations under the Abuse Insurance Policies as provided under applicable Law; *provided*, *further* that actions taken by the Debtor in respect of such obligations shall be subject to the Trust Reimbursement.

The Insurance Assignment shall be effective to the maximum extent permissible under applicable law and the terms of the Abuse Insurance Policies. Notwithstanding the foregoing, the Debtor shall satisfy, pursuant to the Claims arising under Class 3 of the Plan, to the extent required under the relevant Abuse Insurance Policies and applicable Law, any retrospective

premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies and all other obligations and responsibilities of the Debtor and the Covered Parties under the Abuse Insurance Policies subject to applicable Law and shall not be construed: (a) as an assignment of the Abuse Insurance Policies, (b) to entitle any Person or Entity to Insurance Coverage other than those Persons or Entities entitled to such coverage under the terms of the Abuse Insurance Policies, or (c) to affect any Non-Settling Insurance Company's obligations or rights under any Abuse Insurance Policy or applicable Law.

To the extent any of the Compensation Trust Assets are not transferred to the Compensation Trust by operation of Law on the Effective Date pursuant to the Plan, then when such assets accrue or become transferable subsequent to the Effective Date, they shall automatically and immediately transfer to the Compensation Trust free and clear of all Encumbrances and Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan.  To the extent that any action of a Covered Party is required to effectuate such transfer, such Covered Party shall promptly transfer, assign, and contribute, such remaining Compensation Trust Assets to the Compensation Trust.  In the event a Covered Party breaches any obligation contained in this section, the Compensation Trust will have no adequate remedy at law and shall be entitled to preliminary and permanent declaratory and injunctive relief.

## E.   *Compensation Trust Causes of Action*

Except as otherwise expressly provided in the Plan or the Compensation Trust Documents,  the Compensation Trust shall have control over the Compensation Trust Causes of Action, and the Compensation Trust shall have the exclusive right to enforce each of the Compensation Trust Causes of Action, and the proceeds of the recoveries on any of the Compensation Trust Causes of Action shall be deposited in and become the property of the Compensation Trust, and the Compensation Trust shall have the right to enforce the Plan according to its respective terms, including the right to receive the Compensation Trust Assets as provided in the Plan; *provided*, *however*, that (a) the Compensation Trust shall have no other rights against the Covered Parties except to enforce the Plan and any of the other Restructuring Documents; and (b) the Insurance Actions shall not include any Claims or Causes of Action fully and finally released, compromised, or settled pursuant to the Plan.

The transfer of the Compensation Trust Causes of Action to the Compensation Trust, insofar as they relate to the ability to defend against or reduce the amount of Abuse Claims, shall be considered the transfer of a non-exclusive right enabling the Compensation Trust to defend itself against asserted Abuse Claims, which transfer shall not impair, affect, alter, or modify the right of any Person, including the Covered Parties, an insurer or alleged insurer (including any Non-Settling Insurance Company), or co-obligor or alleged co-obligor, sued on account of an Abuse Claim or on account of any asserted right relating to any Abuse Insurance Policy, to assert each and every defense (including any Insurance Coverage Defenses) available under applicable Law or basis for claim reduction such Person could have asserted had the Compensation Trust Causes of Action not been assigned to the Compensation Trust (including any Insurance Coverage Defense available under applicable Law, any defense or basis for claim reduction that any Insurance Company or other insurer or alleged insurer could have asserted under section 502 of the Bankruptcy Code, applicable law, or any Abuse Insurance Policy or

other agreement with respect to (a) any alleged liability of the Debtor for any Abuse Claim or (b) any alleged liability of any Insurance Company or other insurer or alleged insurer (including any Non-Settling Insurance Company) to provide indemnity or defense relating to any Abuse Claim or any alleged extracontractual liability of any Insurance Company or other insurer or alleged insurer (including any Non-Settling Insurance Company) relating to any Abuse Claim).

**F.**     *Trust Allocation Protocol*

On the Effective Date, the Compensation Trust shall implement the Trust Allocation Protocol in accordance with the terms of the Compensation Trust Agreement. From and after the Effective Date, the Compensation Trustee shall have the authority to administer, amend, supplement, or modify the Trust Allocation Protocol solely in accordance with the terms thereof and the Compensation Trust Agreement; *provided* that no amendment, supplement or modification thereto may be inconsistent with the terms of the Plan, Confirmation Order or the obligations and responsibilities under any Abuse Insurance Policy subject to applicable Law.

**G.**     *Indirect Abuse Claim Treatment*

As set forth in the Trust Allocation Protocol and notwithstanding anything to the contrary contained in the Plan, *if*:

(i)     a Holder of a Direct Abuse Claim in Class 4 is asserting its Direct Abuse Claim against both the Debtor and a third-party co-defendant, including, without limitation, Rockefeller;

(ii)     such Holder of a Direct Abuse Claim (a) elects not to provide a general release of all Claims in favor of the Compensation Trust, the Debtor, and the Reorganized Debtor as required by section 4.3(d) of the Compensation Trust Agreement, and (b) obtains a judgment assessing liability against both the Debtor and such co-defendant from a court of competent jurisdiction where such co-defendant is determined to be more than fifty percent (50%) and less than one hundred percent (100%) responsible for the injury sustained by the Holder of a Direct Abuse Claim (and under applicable Law such co-defendant is jointly and severally liable for the entire judgment or the portion of liability attributable to the Debtor);

(iii)     such co-defendant has actually paid the Holder of the Direct Abuse Claim the amount of such judgment related to liability attributable to the Debtor; and

(iv)     such co-defendant is determined to have an Allowed Indirect Abuse Claim against the Compensation Trust by application of section 502(j) of the Bankruptcy Court or otherwise that satisfies the requirements of the Bar Date Order;

*then* the Holder of such Allowed Indirect Abuse Claim shall be entitled to the Abuse Claim Equal Share Distribution from the Compensation Trust, which would have otherwise been distributed to the Holder of the underlying Direct Abuse Claim, in full and final satisfaction of such Holder's Allowed Indirect Abuse Claim, including any Rockefeller Contribution Claim related to such underlying Direct Abuse Claim; *provided*, that the Holder of such Allowed

Indirect Abuse Claim must comply with the requirements of the Compensation Trust Agreement to receive the Abuse Claim Equal Share Distribution, including for the avoidance of doubt, the execution and delivery of a general release of all Claims in favor of the Compensation Trust, the Debtor, and the Reorganized Debtor by such Holder of the Allowed Indirect Abuse Claim as required by section 4.3(d) of the Compensation Trust Agreement. In no event shall any Holder of an Allowed Indirect Abuse Claim have any rights against the Compensation Trust or the Compensation Trust Assets superior to the rights that the Holder of the Direct Abuse Claim to whose claim such Holder's Allowed Indirect Abuse Claim relates would have against the Compensation Trust or the Compensation Trust Assets, including any rights with respect to timing, amount, or priority of payment. **For the avoidance of doubt: (a) if any Holder of a Direct Abuse Claim actually receives payment from a third-party co-defendant as set forth in this** Article IV.G **related to liability attributable to the Debtor as prescribed by an applicable judgment from a court of competent jurisdiction, such Holder of a Direct Abuse Claim shall have no right to receive any distribution from the Compensation Trust or the Compensation Trust Assets**; and (b) if any Holder of an Indirect Abuse Claim satisfies the conditions set forth above ((i) through (iv) in this Article IV.G) with respect to more than one underlying Direct Abuse Claim, and has Allowed Indirect Abuse Claims related to multiple underlying Direct Abuse Claims, such Holder of the Allowed Indirect Abuse Claims shall be entitled to the Abuse Claim Equal Share Distributions that each Holder of the subject underlying Direct Abuse Claims would have been entitled to receive under the Plan if the conditions set forth above ((i) through (iv) in this Article IV.G) were not satisfied.

If a Holder of a Direct Abuse Claim in Class 4 (i) provides the necessary general release of all Claims in favor of the Compensation Trust, the Debtor, and the Reorganized Debtor as required by section 4.3(d) of the Compensation Trust Agreement, and (ii) receives the Abuse Claim Equal Share Distribution, such release constitutes a release of the Compensation Trust, Debtor and Reorganized Debtor within the meaning of New York General Obligations Law § 15-108(d) and New York General Obligations Law §§ 15-108(a)-(c) shall apply, including with respect to any applicable co-defendant or co-tortfeasor as to the Abuse Claim asserted by such Holder of a Direct Abuse Claim. Notwithstanding anything to the contrary in the Plan or the Compensation Trust Documents, all rights, defenses and remedies of Rockefeller, the BGCA, or any non-Debtor co-defendant as against any Holder of a Direct Abuse Claim under applicable law, including for the avoidance of doubt, any rights and defenses under New York General Obligations Law § 15-108 and New York Civil Practice Law and Rules 1601, are fully preserved, and are not impaired, altered, waived, or otherwise modified by this Article IV.G, or any other provision of the Plan or Compensation Trust Documents.

**Notwithstanding anything to the contrary in the Plan, as of the Effective Date, in any action in which Rockefeller and the Debtor are liable or claimed to be liable for the same injury, the provisions of the Plan applicable to Abuse Claims against the Debtor set forth in Article IX hereof shall be deemed a covenant not to enforce a judgment against the Debtor within the meaning of New York General Obligations Law § 15-108; _provided_, that any Deceased and/or Missing Abuse Claimant may within 120 days of the Effective Date, which deadline may be extended by the Bankruptcy Court for good cause shown on motion of any Deceased and/or Missing Abuse Claimant, file an objection in the Bankruptcy Court contesting that the provisions of the Plan applicable to Abuse Claims against the Debtor set forth in Article IX hereof constitute a covenant not to enforce a judgment within the**

**meaning of New York General Obligations Law § 15-108 with respect to such Deceased and/or Missing Abuse Claimant's Direct Abuse Claim, and all parties' rights (including the rights of Rockefeller) are expressly reserved with respect to any such objection by a Deceased and/or Missing Abuse Claimant.**

**H.**   *Post-Effective Date Settling Insurance Companies*

Notwithstanding any present exclusionary language in the Plan, after the Effective Date, any Insurance Company that is a Non-Settling Insurance Company may, within twelve (12) months of the Effective Date (the "Insurance Settlement Period") enter into an Insurance Settlement Agreement with the Compensation Trustee (a "Post-Effective Date Insurance Settlement"); *provided*, *however*, that the Compensation Trustee shall File a notice with the Bankruptcy Court within thirty (30) days of entering into any such Post-Effective Date Insurance Settlement and such Insurance Company (and any related Persons or Representatives, as applicable) shall be deemed to be a Settling Insurance Company ~~and a Covered Party~~ for all purposes hereunder.  Any Post-Effective Date Insurance Settlement and amendments thereto shall be binding and effective without approval of or any other action by the Bankruptcy Court. The Compensation Trustee shall have the sole discretion, upon notice to the Bankruptcy Court, to extend the Insurance Settlement Period.

Any Insurance Company that becomes a ~~Covered Party~~**Settling Insurance Company** in accordance with this Article IV.H **and the Trust Allocation Protocol may become a Covered Party solely pursuant to a further order of the Bankruptcy Court sought by either the Compensation Trust or the subject Settling Insurance Company;** *provided* **that to the extent the Chapter 11 Case has been closed, the Compensation Trustee, the appliable Settling Insurance Company, or another interested party may seek to reopen the Chapter 11 Case or take other action as may be necessary to apply for an order of the Bankruptcy Court determining that such Settling Insurance Company shall be deemed a Covered Party.  Upon the Bankruptcy Court's designation of a Settling Insurance Company as a Covered Party, such Settling Insurance Company** shall have all of the rights, remedies and obligations of a Covered Party under the Plan, including under the Channeling Injunction, notwithstanding that such **Settling** Insurance Company was not a Covered Party under the Plan as of the Effective Date.

**I.**   *Compensation Trust Expenses*

The Compensation Trust shall bear sole responsibility with respect to the payment of the Compensation Trust Expenses and shall pay all Compensation Trust Expenses from the Compensation Trust Assets.   To the maximum extent permitted by applicable Law, the Compensation Trustee shall not have or incur any liability for actions taken or omitted in his, her or their capacity as Compensation Trustee, or on behalf of the Compensation Trust, except those acts found by Final Order to be arising out of his, her, or their willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his, her, or their actions or omissions in his, her, or their capacity as Compensation Trustee, or on behalf of the Compensation Trust, except for any actions or omissions found by Final Order to be arising out of his, her, or their

willful misconduct, bad faith, gross negligence or fraud.  Any valid indemnification Claim of the Compensation Trustee shall be satisfied only from the Compensation Trust Assets.

**J.**    *Reimbursement by Compensation Trust*

From and after the Effective Date, the Compensation Trust shall reimburse, to the fullest extent permitted by applicable Law, the Reorganized Debtor for any reasonable documented out-of-pocket losses, costs, and expenses (including judgments, attorneys' fees, and expenses) incurred by the Reorganized Debtor on or after the Effective Date attributable to the defense of an Abuse Claim that is channeled to the Compensation Trust if the Holder of such Abuse Claim seeks to hold the Reorganized Debtor liable for such Abuse Claim in violation of the terms of the Confirmation Order; *provided* that the Compensation Trust's reimbursement obligations to the Reorganized Debtor shall be capped at and shall not exceed the amount actually payable by the Compensation Trust to the Holder of such Direct Abuse Claim under the Trust Allocation Protocol (*i.e.*, the amount paid based on the Compensation Trust payment percentage) and shall be deducted on a dollar-for-dollar basis against such Holder's distribution from the Compensation Trust on account of such Direct Abuse Claim.

The Reorganized Debtor shall provide notice to the Compensation Trust within thirty (30) days of the service of any Claim or lawsuit filed by a Holder of an Abuse Claim that could result in any reimbursement obligations by the Compensation Trust under this provision.  In the event that any litigation asserting an Abuse Claim is filed naming the Reorganized Debtor as a defendant in violation of the terms of the Confirmation Order, the Compensation Trust shall, at the request of the Reorganized Debtor, promptly appear (a) before the Bankruptcy Court to obtain entry of an Order enforcing the Channeling Injunction and (b) in such litigation seek the dismissal of the case.

**K.**    *Assignment of Claims and Defenses*

Notwithstanding anything herein to the contrary, but subject to the Insurance Settlement Agreements, on the Effective Date, the Debtor and any other party that is or becomes a Covered Party shall be deemed to assign any and all Claims and defenses to the Compensation Trust that arise from or relate to Abuse Claims, including any Claims and defenses against co-defendants.

Notwithstanding the foregoing, (a) nothing within the Plan or Confirmation Order shall be deemed to provide an assignment of any Claims or defenses to the Compensation Trust with respect to any Claims that have not been assumed by the Compensation Trust and subject to the Channeling Injunction of <u>Article IX.B</u> herein and (b) the Abuse Insurance Companies shall not assign or be deemed to assign to the Compensation Trust any Claim, Cause of Action, or right of recovery against their reinsurers or retrocessionaires, in their capacities as such, and such Claim, Cause of Action, or right of recovery against their reinsurers or retrocessionaires shall not be released, waived, or discharged by the Plan.

**L.**    *Abuse Insurance Companies' Rights*

Any Non-Settling Insurance Company's legal, equitable, or contractual rights and obligations relating to the Abuse Insurance Policies issued by a Non-Settling Insurance Company

shall be determined under applicable Law.  Nothing in the Plan shall be construed to impair or diminish the Debtor's or any Non-Settling Insurance Company's legal, equitable, or contractual rights or obligations under any Abuse Insurance Policy including, to the extent permitted under the applicable Insurance Abuse Policy and subject to applicable Law, the ability of a Non-Settling Insurance Company to:   negotiate resolution of any Abuse Claim; pay any settlement entered into by the Non-Settling Insurance Company, in its discretion, with the Holder of an Abuse Claim; pay, in whole or in part, any judgment entered in favor of the Holder of an Abuse Claim; or appeal from any judgment entered in favor of the Holder of an Abuse Claim.

## M.   *Investment Guidelines*

All monies held in the Compensation Trust shall be invested, subject to the investment limitations and provisions enumerated in the Compensation Trust Agreement.

## N.   *Excess Compensation Trust Assets*

To the extent any Compensation Trust Assets remain at such time as the Compensation Trust is dissolved under the terms of the Compensation Trust Documents, any remaining Compensation Trust Assets shall be distributed to the Reorganized Debtor.

## O.   *No Liability*

The Debtor, the Reorganized Debtor, and the other Covered Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance in connection with or related to the Compensation Trust, the Compensation Trustee, or the Compensation Trust Documents, including the administration of Abuse Claims and the distribution of Compensation Trust Assets by the Compensation Trust, or any related agreement, *provided*, *however*, the Holder of an Abuse Claim, may commence an action against the Debtor (as a defendant) and, if applicable, one or more Covered Parties (as defendants), solely for liquidating an Abuse Claim to pursue Insurance Recoveries regarding such Abuse Claim from a Non-Settling Insurance Company.  To the extent a Non-Settling Insurance Company has refused to defend an Abuse Claim, the Reorganized Debtor and/or Covered Party (or the Compensation Trust or Trustee as assignee of the Insurance Actions and Insurance Recoveries) may enter into stipulated judgments with the Holder of an Abuse Claim or the Compensation Trust against such non-defending Non-Settling Insurance Company; *provided* that nothing herein affects such Non-Settling Insurance Company's rights or obligations under applicable Law.

Except as set forth below, the discharge provided for in Article IX hereof and the rights of the Debtor, the Reorganized Debtor, and other Covered Parties, any judgment obtained in such action may not be enforced against the Debtor, the Reorganized Debtor, a Covered Party, and/or their respective property or interest in such property, including, but not limited to, the property that vests with the Reorganized Debtor pursuant to Article V.H hereof and any property acquired by the Reorganized Debtor after the Effective Date, and such judgment shall be paid under the Plan and the Compensation Trust Documents and shall be paid by any Non-Settling Insurance Company under the terms of that Non-Settling Insurance Company's Abuse Insurance Policy.

To preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, the Holders of Abuse Claims specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the Compensation Trust, proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries.

Nothing herein affects a Non-Settling Insurance Company's rights or obligations under applicable Law, including any Insurance Coverage Defenses or such Non-Settling Insurance Company's right to pursue Claims for contribution from other Non-Settling Insurance Companies.

If any Insurance Recoveries from Insurance Actions that are assigned to the Compensation Trust hereunder are received by the Reorganized Debtor or Covered Parties, such Insurance Recoveries shall be held in trust for the benefit of the Compensation Trust and shall be immediately remitted by the Reorganized Debtor or Covered Parties to the Compensation Trust, net any amounts owing to the Reorganized Debtor or another Covered Party on account of the Trust Reimbursement.

Neither the Debtor's or the Covered Parties' obligations to a Holder of an Abuse Claim shall be deemed to have been paid in full, nor their liability to a Holder of an Abuse Claim satisfied, because of reserves for, distributions because of, or payments received by a Holder of an Abuse Claim from the Compensation Trust, subject to the Channeling Injunction set forth herein. The Compensation Trust or the Debtor, the Reorganized Debtor, and the Covered Parties may continue efforts to obtain recoveries from Non-Settling Insurance Company related to the Abuse Claims. In addition, the Non-Settling Insurance Companies remain fully liable for their obligations related to the Abuse Claims, and their obligations are not reduced by the Debtor's commencement of this Chapter 11 Case or (subject to the next paragraph) by the amount of the distributions Holders of Abuse Claims receive, or are entitled to receive, based on the Plan. For the avoidance of doubt, determinations by the terms of the Compensation Trust Documents and/or any distributions entitled to be received from the Compensation Trust shall not constitute a determination of the Debtor's or any Covered Party's liability or damages for Abuse Claims.

Notwithstanding anything to the contrary herein, in no case shall the aggregate value of all property received or retained under the Plan on account of any Abuse Claim exceed 100 percent of an underlying judgment entered in favor such Holder of an Abuse Claim.

**P.**      *U.S. Federal Income Tax Treatment of the Compensation Trust*

The Compensation Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code. The Compensation Trust shall file (or cause to be filed) statements, returns, or disclosures relating to the Compensation Trust that are required by any Governmental Unit. The Compensation Trustee shall be responsible for the payment of any taxes imposed on the Compensation Trust or the Compensation Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Compensation Trust Agreement.

**Q.**      *Institution and Maintenance of Legal and Other Proceedings*

As of the Effective Date, the Compensation Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Compensation Trust, including the Insurance Actions, Abuse Claims, and the Compensation Trust Causes of Action. Without limiting the foregoing, on and after the Effective Date, the Compensation Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtor, if deemed necessary or appropriate. The Compensation Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred on or after the Effective Date arising from, relating to, or associated with any legal action or other proceeding which is the subject of this Article IV.Q. Furthermore, without limiting the foregoing, the Compensation Trust shall be empowered to maintain, administer, preserve, or pursue the Insurance Actions and the Insurance Recoveries.

**R.**      *Compensation Trust Discovery*

Subject to the limitations in the Plan, including Article V.B.~~7~~6, or any other Restructuring Document, nothing herein prevents the Compensation Trust, Holders of Direct Abuse Claims, or any other Person or Entity from seeking authorization from the Bankruptcy Court to obtain information from any Person or Entity pursuant to Bankruptcy Rule 2004 and/or other applicable rules, in each case, in accordance with applicable Law. Nothing herein shall be construed to deprive the recipient of such discovery request of any applicable privilege or immunity from discovery.

**S.**      *Notation on Claims Register Regarding Abuse Claims*

On the Effective Date, all Abuse Claims filed against the Debtor in this Chapter 11 Case shall be marked on the Claims Register as "Channeled to the Compensation Trust" and resolved exclusively in accordance with the Trust Allocation Protocol.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**    ***Compromise and Settlement of Claims, Not-For-Profit Membership Interests and Controversies***

Pursuant to sections 363 and 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, and other benefits provided under the Plan and the Confirmation Order, upon the Effective Date, the provisions of the Plan and the Confirmation Order shall constitute a set of integrated, good-faith compromises and settlements regarding the treatment of all Claims pursuant to the Plan and the Confirmation Order; *provided*, *however*, ~~that~~ nothing contained in the Plan shall constitute a release, compromise, settlement or other resolution of any Claim against **the** BGCA~~, Rockefeller,~~ or any co-defendant (who is not a Covered Party **and except as to Rockefeller and or any other Person or Entity that is released under a compromise, settlement and resolution with the Debtor pursuant to the Madison/RU 9019 Order**) in litigation in which the Debtor is a defendant.

**B.**    ***Committee Settlement***

In consideration for the mutual compromises described in this <u>Article V.B</u>, the Plan hereby incorporates and effectuates the Committee Settlement, which includes the following:

    1.    <u>Resolution of Abuse Claims</u>

All Abuse Claims shall be channeled to and resolved by the Compensation Trust in accordance with the Trust Allocation Protocol; *provided* that any Non-Settling Insurance Company may, subject to <u>Article X</u>, raise any Insurance Coverage Defense permitted under applicable Law in response to a demand by the Compensation Trust, including any right of such Non-Settling Insurance Company to assert any defense that could, but for the Compensation Trust's assumption of the liabilities, obligations, and responsibilities of the Covered Parties for Abuse Claims, have been raised by the Debtor or other applicable Covered Party with respect to such Claim.

    2.    <u>Compensation Trust Note</u>

On the Effective Date, the Reorganized Debtor shall be authorized to execute, issue and deliver the Compensation Trust Note to the Compensation Trust and execute and deliver any related documentation governing the Compensation Trust Note without the need for any further corporate action or any further notice to or order of the Bankruptcy Court. The Compensation Trust Note may be prepaid at any time without premium or penalty. Subject to the terms of the Compensation Trust Note, neither the Debtor nor the Reorganized Debtor shall pledge or encumber any property of the Debtor or the Reorganized Debtor, as applicable, until the Compensation Trust Note is fully repaid (the "<u>Negative Pledge Covenant</u>") and on and after the Effective Date, the Compensation Trustee shall have the right to take all actions consistent with the Plan and applicable Law to enforce the Negative Pledge Covenant. For the avoidance of doubt, the Negative Pledge Covenant excludes (a) any obligations owed to, or restrictions enforceable by, governmental units in connection with governmental grants or similar funding

received by the Reorganized Debtor and the governing documentation, and (b) Liens granted to the DIP-to-Exit Lender under the DIP Facility and the Exit Facility, including the delivery into escrow of a mortgage on the Pinkerton Clubhouse and any subsequent recording, only as such are allowed by the provisions of Article V.B.3 hereof.
.

3.    Navy Yard Transaction

Pursuant to sections 1123(a)(5)(D), 1141(c), and 1146 of the Bankruptcy Code, and as soon as reasonably practicable following the Confirmation Date or such earlier date agreed to by the Debtor and the Committee, the Debtor and the Reorganized Debtor, together with the Broker, shall conduct a marketing process (the "Marketing Process") and thereafter consummate the Navy Yard Transaction as soon as reasonably practicable, in each case, in consultation with the Committee and the Compensation Trustee, as applicable. Subject to the satisfaction of the following conditions (the "Release Conditions"), the Navy Yard Transaction shall be consummated free and clear of any Liens or Encumbrances, including those securing the DIP Facility and the Exit Facility, as applicable, which Liens and Encumbrances shall thereupon be released by the DIP-to-Exit Lender (the "Release"):

    i.    the Plan is confirmed on or before June 30, 2023, or such later time as may be agreed by the Debtor and the DIP-to-Exit Lender;

    ii.    the Exit Facility is in satisfactory standing and no Event of Default (as defined in the Exit Facility Documents) shall have occurred and be continuing;

    iii.    the proceeds of the Navy Yard Transaction or the Navy Yard Casualty Event proceeds, net of fees and costs, shall be contributed to the Compensation Trust pursuant to and on the terms set forth in the Plan;

    iv.    the Debtor executes and delivers all reasonable documents requested by the DIP-to-Exit Lender in connection with the Release; and

    v.    the DIP-to-Exit Lender shall have received payment of all reasonable out-of-pocket costs and expenses, including appraisal fees (if applicable) and reasonable counsel fees and disbursements incurred, in connection with the Release.

The Debtor and the Reorganized Debtor shall provide the Committee and the Compensation Trustee, as applicable: (a) a weekly status report during the Marketing Process that tracks interested parties, property tours and placed bids, and (b) reasonable access to all non-privileged documents and information concerning the status of the Navy Yard Transaction. The Debtor or the Reorganized Debtor, as applicable, shall consult with the Committee or the Compensation Trustee, as applicable, with respect to all offers or proposals for the Navy Yard Transaction and shall consider the recommendations of the Committee or Compensation Trustee, as applicable, in good faith. The Board's determination to accept an offer shall be subject to the consent of the Committee or the Compensation Trustee, as applicable (such consent not to be unreasonably withheld, conditioned or delayed).

On the Effective Date of the Plan, the Debtor or the Reorganized Debtor, as applicable, shall cause the Compensation Trust to become the secondary beneficiary (only subordinate to the DIP-to-Exit Lender) of any insurance policy or policies that insures the Navy Yard (the "Navy Yard Insurance Beneficiary"); *provided*, *however*, that if the Navy Yard Clubhouse is damaged in any material respect prior to the closing of the Navy Yard Transaction (the "Navy Yard Casualty Event"), the net proceeds payable from any such insurance policy or policies shall be paid to the Compensation Trust free and clear of the Liens and Encumbrances securing the Exit Facility, subject to satisfaction of the Release Conditions. In connection with the Reorganized Debtor entering into a contract or agreement with respect to the Navy Yard Transaction or if the Navy Yard Casualty Event occurs, the DIP-to-Exit Lender shall have the right to commission an appraisal by an appraiser selected by the DIP-to-Exit Lender at the sole cost and expense of the Reorganized Debtor, as applicable, of the remainder of the Real Estate Collateral (as defined in the Commitment Letter). If the Loan to Value Ratio of the remainder of the Real Estate Collateral is greater than 50% based on such appraisals, then, upon the DIP-to-Exit Lender's demand, the Reorganized Debtor shall execute and deliver to DIP-to-Exit Lender's counsel, in escrow, a mortgage (the "Proposed Mortgage") in favor of the DIP-to-Exit Lender on the Pinkerton Clubhouse, which shall become effective and which shall be recorded at Reorganized Debtor's sole cost and expense, upon the earlier of the date that (x) the Leverage Loan secured by the Pinkerton Clubhouse has been paid in full and (y) the NMTC Transaction has been unwound such that the Pinkerton Clubhouse is subject to being pledged in accordance with the NMTC Documents (such date is expected to occur no later than the first half of 2026); *provided* that the Reorganized Debtor may, at its option, elect instead to repay the Exit Loan to the extent necessary to bring the Loan to Value Ratio into compliance, all of the foregoing to be more fully set forth in the Exit Facility Documents which shall control and be consistent with the provisions of this paragraph. A form of the Proposed Mortgage shall be filed with the Plan Supplement.

4.      Cash Contribution; Excess Exit Cash

On the Effective Date, the Debtor shall pay the Cash Contribution and the Excess Exit Cash, if any, to the Compensation Trust. The following Professionals of the Debtor and the Committee have agreed to apply a discount to their fees incurred in the Chapter 11 Case in an amount equal to the greater of (y) 15% and (z) the current applicable discount in place pursuant to such Professional's retention application approved by the Bankruptcy Court (collectively, the "Professional Fee Discount"): (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP; (b) Friedman Kaplan Seiler & Adelman LLP; (c) Pillsbury Winthrop Shaw Pittman LLP; (d) Teneo Capital LLC; (e) Pachulski Stang Ziehl & Jones LLP; (f) Dundon Advisors LLC; and (g) Island Capital Advisor LLC.

5.      Insurance Assignment and Settlements

On the Effective Date, the Debtor shall effectuate the Insurance Assignment to the Compensation Trust pursuant to sections 541 and 1123(a)(5) of the Bankruptcy Code. Prior to the Effective Date, the Debtor shall take reasonable efforts to enter into Insurance Settlement Agreements with Abuse Insurance Companies and seek an Order of the Bankruptcy Court approving such Insurance Settlement Agreements. For the avoidance of doubt, the Insurance Assignment shall not be construed as an assignment and transfer of the Non-Settling Abuse

Insurance Policies but rather constitute an assignment of the right to receive insurance proceeds available under the Non-Settling Abuse Insurance Policies.

6.    ~~Assignment of Madison Damages Claims~~

~~On the Effective Date, the Debtor shall assign the Madison Damages Claims and any proceeds thereof to the Compensation Trust (the "Madison Damages Claims Assignment"); *provided* that the Reorganized Debtor shall be reimbursed by the Compensation Trust for the reasonable and documented fees and expenses incurred by the Reorganized Debtor as a result any action taken by the Reorganized Debtor at the request of Compensation Trust in connection with the Compensation Trust's pursuit or adjudication of the Madison Damages Claims.~~

~~7~~6.    Debtor's Discovery Obligations

(a)    *Transfer of Direct Abuse Claim Discovery*.

On or before the Effective Date of the Plan, the Debtor shall contribute the Direct Abuse Claim Discovery to the Compensation Trust pursuant to the Confirmation Order, including the Rule 502(d) Finding.  All documents provided shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate.

On or before the Effective Date of the Plan, the Debtor shall provide the Direct Abuse Claim Discovery to the Abuse Insurance Companies pursuant to the Confirmation Order, including the Rule 502(d) Finding.  All documents provided shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate.

For the avoidance of doubt, the Debtor's production of the Direct Abuse Claim Discovery shall not be subject to the Trust Reimbursement.  Any documents in the Direct Abuse Claim Discovery that may be subject to the attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection or privilege granted by joint defense, common interest, and/or confidentiality agreement or other privilege or immunity ("Privileges" and Direct Abuse Claim Discovery subject to such privileges, "Privileged Information") shall be subject to the following terms:

i.    All Privileges shall be irrevocably transferred to and vested in the Compensation Trustee as of the Effective Date.

ii.    The transfer or assignment of any Privileged Information shall not constitute a waiver of any Privilege and Privileged Information is vested solely in the Compensation Trustee and not in the Compensation Trust.

iii.    The Compensation Trustee shall only be permitted to share Privileged Information with professionals, advisors, or counsel retained by the Compensation Trust.  The Compensation Trustee shall not share Privileged Information with (i) any third party (including, but not limited to, any public disclosure or dissemination) to the extent that sharing the Privileged Information would result in a waiver of such privilege, and (ii) any

46

Holder of a Direct Abuse Claim, or counsel for a Holder of a Direct Abuse Claim, except as required by court order, subpoena, or other valid legal process, or for tax, financial reporting, or government compliance purposes.

iv. The Compensation Trustee's receipt of Privileged Materials shall be without waiver and in recognition of the joint and/or successorship interest of the Compensation Trust and the Compensation Trustee's performance of his or her duties in administering the Compensation Trust. Nothing in the Plan or any Restructuring Document shall preclude the Compensation Trustee from providing Privileged Material or other information provided pursuant to this this Article V.B.76 to any Insurance Company as necessary to preserve, secure, or obtain the benefit of any insurance rights transferred to the Compensation Trust at the Compensation Trust's sole discretion and without further authorization from the Debtor or the Reorganized Debtor, as applicable, subject to the Insurance Company agreeing to take all necessary and appropriate steps to protect from public disclosure or waiver the Privileged Material or other information.

(b)   *Post-Effective Date Discovery*.

Subject to the Trust Reimbursement, (i) nothing herein prevents the Compensation Trustee, Holders of Abuse Claims, or any other Person or Entity from seeking authorization to pursue discovery pursuant to Bankruptcy Rule 2004 and/or other applicable rules, in each case, in accordance with applicable Law; *provided, however*, that to the extent any deposition is sought from the Reorganized Debtor or the employees, officers, agents or representatives of the Debtor or the Reorganized Debtor, as applicable, the Debtor or the Reorganized Debtor, as applicable, expressly reserves all its rights consistent with applicable Law, and (ii) if an unidentified Abuse Insurance Policy is discovered after the Effective Date or was otherwise not included in the Insurance Assignment, the Reorganized Debtor shall cooperate with the Committee or Compensation Trust, as applicable, to realize the value of such Abuse Insurance Policy and/or to assign the Insurance Actions, the Insurance Recoveries, and all other rights, Claims, benefits, and Causes of Action of the Debtor under or with respect to such Abuse Insurance Policy (but not the policies themselves) to the Compensation Trust. To the extent any Post-Effective Date Discovery includes information that constitutes Direct Abuse Claim Discovery that should have been transferred to the Compensation Trust prior to or on the Effective Date pursuant to the Section 502(d) Finding, including any unidentified Abuse Insurance Policies, such discovery shall not be subject to the Trust Reimbursement.

(c)   *Trust Reimbursement*.

The Compensation Trust shall reimburse the reasonable cost, fees and expenses (including attorneys' fees, costs and expenses) of the Reorganized Debtor or its Representatives incurred in connection with the Debtor's obligations under ArticlesArticle V.B.6 and 7(b) hereof (the "Trust Reimbursement"). If the Compensation Trust fails to reimburse the Reorganized Debtor or its Representatives within thirty (30) days of when an invoice for reimbursement is delivered by the Reorganized Debtor to the Compensation Trust, the Reorganized Debtor shall

have no obligation to cooperate pursuant to this Article V.B.6 and 7(b) until such outstanding amounts are paid in full.

### 87.    Non-Monetary Debtor Commitments

The Committee shall be entitled to review the Debtor's existing child safety policies and procedures to prevent Abuse from occurring in the future and consult with the Debtor regarding potential changes to such policies and procedures, subject to the approval of the Board and, to the extent applicable, the BGCA.  To the extent that there are anticipated changes in existing child safety policies and procedures (the "Amended Child Safety Policies"), the Debtor will identify any such changes in the Plan Supplement.

### 98.    Committee Commitments

The Committee and each member thereof agrees to support the Plan and to vote each of its Claims against the Debtor to accept and support the Plan by delivering a duly executed and completed accepting Ballot on a timely basis.  Additionally, the Committee shall (a) prepare and include in the solicitation materials a letter to Holders of Abuse Claims recommending that Holders of Abuse Claims vote to accept the Plan, and (b) file statements with the Court in support of entry of the Disclosure Statement Order and the Confirmation Order.

## C.    *Restructuring Transactions*

On or before the Effective Date, as applicable, the Debtor or the Reorganized Debtor may take all actions consistent with the Plan and the Confirmation Order as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan, including with respect to the Committee Settlement and the Exit Facility.  The Confirmation Order shall and shall be deemed, pursuant to section 1123 and section 1141 of the Bankruptcy Code, to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions (including any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan).

## D.    *Sources of Consideration for Plan Distributions*

Distributions under the Plan shall be funded from the following sources:

1._____The DIP Claims against the Debtor shall be converted on the Effective Date to loans under the Exit Facility governed by the Exit Facility Documents;

2._____The Debtor shall fund distributions on account of and satisfy Allowed General Unsecured Claims exclusively from the GUC Cash Pool;

3._____The Debtor shall transfer the Compensation Trust Assets to the Compensation Trust on the Effective Date, or as soon as reasonably practicably thereafter, and the Compensation Trust shall make distributions on account of compensable Abuse Claims in accordance with the Compensation Trust Documents; and

4._____The Debtor shall fund distributions on account of and satisfy all other Allowed Claims with Cash on hand on or after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

**E.    *GUC Cash Pool***

On the Effective Date, the Reorganized Debtor shall deposit the GUC Cash Pool into a segregated account held by the Reorganized Debtor.  If any Cash remains in the GUC Cash Pool after all Allowed General Unsecured Claims have been satisfied in full, such remaining Cash shall irrevocably re-vest in the Reorganized Debtor.

**F.    *Corporate Existence***

The Debtor shall continue to exist on and after the Effective Date with all of its powers under applicable Law and pursuant to the formation documents in effect before the Effective Date, except to the extent such formation document are amended by the Plan, the Confirmation Order, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan or the Confirmation Order, and require no further action or approval (other than any requisite filings required under applicable Law).

**G.    *Directors and Officers***

The Reorganized Debtor's directors and officers holding such positions as of the Petition Date shall continue in such roles on and after the Effective Date for the Reorganized Debtor. Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in the Reorganized Debtor's directors and officers, the Debtor will identify any such changes in the Plan Supplement.

**H.    *Vesting of Assets in the Reorganized Debtor***

Except as otherwise provided in the Plan or the Confirmation Order, any agreement, instrument, or other document incorporated in the Plan, the Confirmation Order or the Plan Supplement, or pursuant to any other Final Order of the Bankruptcy Court, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan or the Confirmation Order, excluding the Compensation Trust Assets, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, rights, or other Encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan or the

Confirmation Order, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

## I.    *Due Authorization*

On the Effective Date, all actions contemplated by the Plan or the Confirmation Order shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:

1.     The execution and delivery of the Restructuring Documents and any related instruments, agreements, guarantees, filings, or other related documents;

2.     The creation of the Compensation Trust and transfer of the Compensation Trust Assets to the Compensation Trust;

3.     The implementation of the Restructuring Transactions; and

4.     All other actions contemplated by the Plan or the Confirmation Order (whether to occur before, on or after the Effective Date). On the Effective Date, any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan or the Confirmation Order, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor or the Reorganized Debtor.

On or before the Effective Date, as applicable, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized to issue, execute, and deliver the agreements, documents, not-for-profit membership interests, and instruments, as applicable, contemplated by the Plan or the Confirmation Order (or necessary or desirable to effect the transactions contemplated by the Plan or the Confirmation Order) in the name of and on behalf of the Reorganized Debtor, including, without limitation, the Restructuring Documents and any and all other agreements, documents, not-for-profit membership interests, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article V.I shall be effective notwithstanding any requirements under non-bankruptcy law.

Each officer, director, or member of the Debtor is (and each officer, director, or member of the Reorganized Debtor shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, not-for-profit membership interests, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtor, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorizations, consents, or any further actions required under applicable Law, regulation, Order, or rule (including, without limitation, any

action by the officers, directors, or members of the Debtor or the Reorganized Debtor) except for those expressly required pursuant to the Plan.

## J.    *Reinstatement of Interests*

As of the Effective Date, in accordance with Article III.B.5, the Not-Profit Membership Interests shall be Reinstated without further action by or order of the Bankruptcy Court.

## K.    *New Organizational Documents*

To the extent required under the Plan, the Confirmation Order, or applicable non-bankruptcy law, the Reorganized Debtor shall file the New Organizational Documents (if any) with the applicable authorities in accordance with applicable Law.

## L.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtor, and the officers thereof, shall be authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan with respect to the Confirmation Order (or the other Restructuring Documents), including the Restructuring Documents, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents, except those expressly required pursuant to the Plan or the Confirmation Order.

## M.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property pursuant hereto, including, without limitation, the Navy Yard Transaction and any mortgage or deed of trust executed by the Reorganized Debtor for the benefit or in favor of the DIP-to-Exit Lender and any transaction that is deemed or treated as equivalent to a transfer of property under applicable nonbankruptcy Law as a result of a change of ownership or control, shall not be subject to any tax under a law imposing a stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.   The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

## N.    *Insured Claims*

Notwithstanding anything to the contrary contained herein, to the extent that the Debtor has insurance with respect to any Allowed General Unsecured Claim, the Holder of such Allowed General Unsecured Claim shall (a) be paid any amount from the proceeds of insurance to the extent that such Claim is insured, and (b) solely for the portion of such Claim that is not paid by the applicable Insurance Policy, receive the treatment provided for Allowed General Unsecured Claims in the Plan; *provided* that in no case shall the aggregate value of all property

received or retained under the Plan on account of any Allowed General Unsecured Claim exceed 100 percent of the underlying Allowed amount of such Claim.

**O.      *Preservation of Causes of Action***

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IV hereof, the Reorganized Debtor shall retain and may (but is not required to) enforce all rights to commence and pursue, as appropriate, any and all Causes of Action not released pursuant to Article IX hereof **and the Madison/RU 9019 Order**, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Reorganized Debtor to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, including in Article IX hereof **and the Madison/RU 9019 Order**.

The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan, and the Madison/RU 9019 Order.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order **(including the Madison/RU 9019 Order)**, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

**P.      *Insurance Policies***

Each of the Debtor's Insurance Policies (other than the Abuse Insurance Policies, which shall be subject to the Insurance Assignment) and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. On the Effective Date, (a) the Debtor shall be deemed to have assumed all Insurance Policies (other than the Abuse Insurance Policies, which shall be subject to the Insurance Assignment) and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtor.

**Q.      *Director and Officer Liability Insurance***

The Debtor's D&O Liability Insurance Policy shall be Reinstated under the Plan to the fullest extent possible under applicable Law. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, effective as of the Effective Date, the Reorganized

Debtor shall be deemed to have assumed the D&O Liability Insurance Policy pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of the D&O Liability Insurance Policy. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policy, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan or the Confirmation Order, and no Proof of Claim, Administrative Claim, or objection to Cure Claim need be Filed with respect thereto. For the avoidance of doubt, the D&O Liability Insurance Policy will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policy.

**R.    *Termination of Forbearance Agreement; Waiver of Defaults; Assumption Ratification, Reaffirmation and Reinstatement of NMTC Documents and Waiver of Discharge and Discharge Injunction with Respect Thereto***

On the Effective Date, the Forbearance Agreement and the forbearance provisions set forth therein shall be of no further force; *provided* that the specified defaults (and interest accruing at the default rate) under the NMTC Documents as set forth in the Forbearance Agreement shall be deemed to have been permanently waived.

Effective as of the Effective Date, the NMTC Documents constituting Executory Contracts capable of assumption under section 365(a) of the Bankruptcy Code, shall be deemed to be assumed by the Reorganized Debtor pursuant to section 365(a) of the Bankruptcy Code and the entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of such documents. For the avoidance of doubt, the Pinkerton Clubhouse Lease is included among the NMTC Documents that are being assumed by the Debtor as of the Effective Date.

In addition to the assumption of those NMTC Documents as provided for herein, and notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, other than the waiver provided for in the first paragraph of this Article V.R, all of the NMTC Documents, together with the terms and conditions thereof and each and every of the Encumbrances and Liens granted pursuant thereto, shall be deemed ratified, confirmed, reaffirmed, reinstated and enforceable, along with all obligations thereunder, and in full force and effect, as if no bankruptcy had been filed by the Debtor, and any and all such Encumbrances and Liens shall continue to secure the payment and performance of the obligations due thereunder in accordance with their respective terms.

Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order:

1.    The discharge and the Discharge Injunction granted in the Plan do not apply to the NMTC Documents or any rights, Claims, interests or entitlements of the NMTC Transaction Lender/Equity Parties related thereto or arising thereunder, and Confirmation of the Plan shall not discharge, impair, or otherwise modify or amend any terms, conditions, agreements or

obligations arising out of or in any way related to the NMTC Documents (other than the waiver provided for in the first paragraph of this Article V.R); and

2. Neither the Debtor nor the Non-Debtor Affiliate maintain any Claim, Cause of Action, right of setoff, recoupment or subordination, or other legal or equitable defense with respect to the NMTC Documents, the NMTC Transaction or the NMTC Transaction Lender/Equity Parties and to the extent any such Claim, Cause of Action, right of setoff, recoupment or subordination, or other legal or equitable defense exists, they are hereby waived, released and discharged.

Neither the Pinkerton Clubhouse, the Pinkerton Clubhouse Lease, nor the Leverage Loan shall be made subject to any Lien or any Encumbrance of any kind or nature, including, without limitation, any Lien or Encumbrance related to or granted in connection with the Exit Financing, except as otherwise expressly permitted by the NMTC Documents.

On the Effective Date (or as soon as reasonably practicable thereafter), the Debtor shall pay all accrued and unpaid reasonable and documented fees and expenses of the NMTC Transaction Lender/Equity Parties required to be paid pursuant to the terms of the Forbearance Agreement and/or the DIP Order, and the NMTC Transaction Lender/Equity Parties shall use reasonable efforts to provide the Debtor with copies of said summary invoices at least two business days prior to the anticipated Effective Date.

**S.** *Employee Arrangements of the Reorganized Debtor*

Except as otherwise provided in the Plan, the Confirmation Order or the Plan Supplement, all written employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtor, retirement income plans and welfare benefit plans, or discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees, shall be assumed (as may have been amended prior to or on the Effective Date) by the Reorganized Debtor and shall remain in place after the Effective Date, as may be amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Debtor, on the other hand, as applicable, or, after the Effective Date, by agreement with the Reorganized Debtor. Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law.

**T.** *Notice of Effective Date*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtor shall File a notice of the occurrence of the Effective Date with the Bankruptcy Court.

U.      *Rockefeller Cooperation*

On or before the Effective Date of the Plan, the Debtor shall provide the Direct Abuse Claim Discovery to Rockefeller pursuant to the Confirmation Order, including the Rule 502(d) Finding.  All documents provided shall be authenticated as records kept in the ordinary course of business of the Debtor, to the extent that would be factually accurate.

At Rockefeller's sole expense, the Reorganized Debtor shall cooperate in good faith with Rockefeller, including by (a) providing the Direct Abuse Claim Discovery to Rockefeller in accordance with the preceding paragraph; (b) other than with respect to existing cooperation obligations under Abuse Insurance Policies, the Reorganized Debtor's compliance with existing contractual obligations and/or charter obligations owing with the BGCA, or as otherwise set forth herein, not assisting other third-parties (including the BGCA) or take any position or act in any manner adverse to Rockefeller in connection with any Abuse Claims against Rockefeller or litigation related to Abuse Claims against or involving Rockefeller; and (c) executing stipulations of discontinuance and consenting to requests for extensions as reasonably requested by Rockefeller for submission to the applicable court in actions involving Abuse Claims in which Rockefeller has a settlement agreement with the applicable Holder of such Abuse Claim or the applicable Holder of such Abuse Claim has otherwise agreed to a discontinuance of, or extension of time in, such action.  For the avoidance of doubt, nothing in this Article V.U shall require the Reorganized Debtor to provide or disclose anything subject to attorney-client privilege or any other privilege to Rockefeller.  After the Effective Date, (x) any reasonable costs, fees, and expenses (including attorneys' fees, costs, and expenses) of the Reorganized Debtor or its Representatives incurred in connection with the Debtor's obligations under this Article V.U shall be reimbursed by Rockefeller (such out-of-pocket expenses shall not include general overhead expenses of the Reorganized Debtor), and (y) if Rockefeller seeks additional discovery or document production from any Reorganized Debtor beyond the Direct Abuse Claim Discovery, Rockefeller shall reimburse the Reorganized Debtor for its reasonable and documented out-of-pocket expenses in connection therewith ((x) and (y) together, the "Rockefeller Reimbursement").  If Rockefeller fails to reimburse the Reorganized Debtor or its Representatives on account of the Rockefeller Reimbursement within thirty (30) days of when an invoice for reimbursement is delivered by the Reorganized Debtor to Rockefeller, the Reorganized Debtor shall have no obligation to cooperate pursuant to this Article V.U until such outstanding Rockefeller Reimbursement amounts are paid in full.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases*

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Claims, all Executory Contracts and Unexpired Leases to which the Debtor is a party, and which have not expired by their own terms on or prior to the Effective Date, shall be deemed assumed.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption of Executory Contracts and Unexpired Leases provided for in the Plan and/or the Confirmation Order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumption of Executory Contracts and Unexpired Leases pursuant to the Plan and the Confirmation Order is effective as of the Effective Date.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan, the Confirmation Order or by any other Order of the Bankruptcy Court, but not assigned to a third party before the Effective Date, shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan or the Confirmation Order restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" or cross-default provision, solely to the extent applicable to a default or alleged default that occurred on or prior to the Effective Date), then such provision shall be deemed modified and of no further effect, such that the transactions contemplated by the Plan or the Confirmation Order shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

**B.**     ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases***

The Debtor shall serve a Cure Notice on parties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan, detailing the applicable Cure Amounts for such parties in accordance with the Disclosure Statement Order.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, any Executory Contract and Unexpired Lease to which the Debtor is party shall be deemed assumed pursuant to the Plan and the Confirmation Order.  If any Executory Contract or Unexpired Lease to be assumed pursuant to the Plan is not listed in the Cure Notice, the Cure Amount for such Executory Contract and Unexpired Lease shall be deemed to be zero dollars ($0).

Any counterparty to any Executory Contract or Unexpired Lease shall have the time prescribed by the Disclosure Statement Order to object to the proposed assumption or related Cure Amount listed on the Cure Notice.  If no objection is timely received, the counterparties to such Executory Contracts and Unexpired Leases to be assumed shall be deemed to have consented to the assumption or Cure Amount of such Executory Contracts and Unexpired Leases and such counterparties to such Executory Contracts and Unexpired Leases shall be deemed to release and waive, subject to such counterparties' receipt of the relevant Cure Amounts, any and all rights arising under such Executory Contracts and Unexpired Leases related to any default, cross-default, termination, put right, or other similar provision related to any event, default, or potential default occurring on or prior to the Effective Date.

The Bankruptcy Court will determine any proper and timely Assumption Dispute Filed in writing with the Bankruptcy Court by entry of an Order; *provided* that the Debtor or the Reorganized Debtor, as applicable, may settle any Assumption Dispute without any further

action, Order, or approval of the Bankruptcy Court; *provided*, *further*, that where an Assumption Dispute relates solely to the applicable Cure Amount, the Debtor may assume and/or assume and assign the applicable Executory Contracts and Unexpired Leases prior to the resolution of such Assumption Dispute, subject to establishing an escrow with funds in an amount as agreed by the parties thereto or as determined by the Bankruptcy Court at the Confirmation Hearing.  Any objections to any proposed Cure Amounts or to the assumption of any Executory Contracts and Unexpired Leases will not be treated as objections to Confirmation of the Plan.

## C.      *Payments Related to Assumption of Executory Contracts and Unexpired Leases*

Any Cure Amounts shall be deemed fully satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of the Cure Amount, as reflected in the applicable Cure Notice, in Cash on the later of (i) the Effective Date and (ii) the date of resolution of an Assumption Dispute, or in each case as soon as reasonably practicable thereafter, subject to the limitations described in this Article VI.C of the Plan, or on such other terms as the parties to such Executory Contracts and Unexpired Leases and the Debtor may otherwise agree.  If no Cure Amount is reflected in the applicable Cure Notice, no Cure Amount shall be deemed to be owing, unless otherwise ordered by the Bankruptcy Court.

Assumption of any Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against the Debtor or defaults by the Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control, cross-default, ownership interest composition, the transfer or assignment of such contract or lease or other bankruptcy-related defaults, arising under any assumed Executory Contracts and Unexpired Leases at any time before the date that the Debtor assumes such Executory Contracts and Unexpired Leases, or on account of a transaction contemplated by the Plan.  Any Proofs of Claim Filed with respect to any Executory Contracts and Unexpired Leases that have been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, Order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such Executory Contracts and Unexpired Leases.

## D.      *Director and Officer Liability Insurance*

The Debtor's D&O Liability Insurance Policy shall be Reinstated under the Plan to the fullest extent possible under applicable law.  Notwithstanding anything in the Plan or the Confirmation Order to the contrary, effective as of the Effective Date, the Reorganized Debtor shall be deemed to have assumed the D&O Liability Insurance Policy pursuant to section 365(a) of the Bankruptcy Code.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of the D&O Liability Insurance Policy by the Reorganized Debtor. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policy, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan or the Confirmation Order, and no Proof of Claim, Administrative Claim, or Cure Claim need be Filed with respect thereto.  For the avoidance of doubt, the D&O Liability Insurance Policy will continue to apply with respect to

actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policy.

### E.    *Indemnification Obligations*

Except to the extent inconsistent with the Plan or the Confirmation Order, the obligation of the Debtor to indemnify any individual who is serving or has served as one of the Debtor's directors, officers, or employees on or after the Petition Date will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor pursuant to the Plan or the Confirmation Order as of the Effective Date on the terms provided in the applicable certificates of incorporation, bylaws or similar constituent documents, by statutory law, or by written agreement, policies, or procedures of or with the Debtor.  Accordingly, such indemnification obligations will survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date; *provided*, *however*, that no cure payments shall be required in connection with the aforementioned assumption.  Furthermore, the any rights or defenses the Debtor's board members may have under New York Not-for-Profit Corporation Law § 720-a, the Volunteer Protection Act of 1997, or any other similar state or federal Laws are fully preserved.

### F.    *Modifications, Amendments, Supplements, Restatements or Other Agreements*

Unless otherwise provided in the Plan, the Confirmation Order, or by separate order of the Bankruptcy Court, all Executory Contracts and Unexpired Leases that are assumed shall include all exhibits, schedules, modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts and Unexpired Leases, and affect Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of such Executory Contracts and Unexpired Leases or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Bankruptcy Court order to the contrary.

### G.    *Contracts and Leases Entered into after the Petition Date*

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or the Reorganized Debtor in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

### H.    *Reservation of Rights*

Neither the exclusion nor the inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to the Plan, the Confirmation Order or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such

contract or lease is not an Executory Contract or Unexpired Lease or that the Debtor or the Reorganized Debtor or its respective Affiliates has any liability thereunder.

Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtor or the Reorganized Debtor under any executory or non-executory contract or unexpired or expired lease.

Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Reorganized Debtor, as applicable, under any executory or non-executory contract or unexpired or expired lease.

I.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

None of the terms or provision of this <u>Article VII</u> shall apply to Abuse Claims, which shall be exclusively processed, liquidated, and paid by the Compensation Trust in accordance with the Compensation Trust Documents; *provided* that the provisions of this <u>Article VII</u> may apply at the election of the Compensation Trustee to (1) any Proof of Claim asserting a Direct Abuse Claim that is duplicative of a separately Filed Proof of Claim asserting the same Direct Abuse Claim, **and/or** (2) a Proof of Claim asserting a Direct Abuse Claims that has been amended and superseded by a subsequently Filed Proof of Claim, ~~and/or (3) a Proof of Claim asserting a Direct Abuse Claim that is beneficially held by Rockefeller~~.  At the Compensation Trustee's election, the Compensation Trust may pursue objections to Abuse Claims in the Bankruptcy Court that are subject to the proviso in the immediately preceding sentence.  For the avoidance of doubt, nothing in this paragraph alters or modified the Channeling Injunction or discharge provisions of the Plan.

A.    *Allowance of Claims*

Prior to the Effective Date, the Debtor shall be entitled to object to Claims.  After the Effective Date, solely the Reorganized Debtor shall have the right to object to Claims and shall retain any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date, including the Causes of Action retained pursuant to <u>Article V.O</u> of the Plan.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

**B.**    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the authority: (1) to File, withdraw, or litigate to judgment objections to Claims; (2) to settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (3) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**C.**    *Estimation of Claims*

Before or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

**D.**    *Adjustment to Claims Without Objection*

Upon and following the Effective Date, any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan or the Confirmation Order), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtor without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**E.**    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

**F.**    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor.  All Claims Filed on account of an indemnification

obligation to a director, manager, officer, or employee of the Debtor as of the Effective Date shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed by the Reorganized Debtor, or honored or reaffirmed, as the case may be pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

## G.    *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

## H.    *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim  unless required under applicable bankruptcy law; *provided* that with respect to General Unsecured Claims the distribution on account of Allowed General Unsecured Claims shall be made on the GUC Distribution Date.

## I.    *Single Satisfaction Rule*

In no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed amount of such Claim.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

None of the terms or provision of this Article VIII shall apply to Abuse Claims, which shall be exclusively processed, liquidated and paid by the Compensation Trust in accordance with the Compensation Trust Documents.

## A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class; *provided* that distribution on account of Allowed General Unsecured Claims shall be made on the GUC Distribution Date from the GUC Cash Pool to Holders of Allowed General Unsecured Claims.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be

completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

## B.    *Disbursing Agent*

The Reorganized Debtor shall be the Disbursing Agent; *provided* that the Reorganized Debtor may hire professionals or consultants to assist with making disbursements or to act as the Disbursing Agent.  After the Effective Date, distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

## C.    *Rights and Powers of Disbursing Agent*

### 1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 2.    Expenses Incurred on or After the Effective Date

Except as otherwise provided herein or ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

## D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

### 1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

### 2.    Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims on the Effective Date or the GUC Distribution Date, as applicable, at

the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

       3.     Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of less than $200 in value (whether Cash or otherwise), and each such Claim to which this limitation applies shall be discharged pursuant to Article IX of the Plan and its Holder is forever barred pursuant to Article IX of the Plan from asserting that Claims against the Debtor or the Reorganized Debtor, as applicable, or their respective property.

       4.     No Fractional Distributions

No payment of fractional cents shall be made pursuant to the Plan, including to Holders of Allowed General Unsecured Claims by the Disbursing Agent. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the distribution shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

       5.     Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

**E.**    ***Compliance with Tax Requirements***

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor or the Reorganized Debtor, as applicable, reserves the right to allocate all distributions made under

the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

**F.**     *No Postpetition Interest on Claims*

Unless otherwise specifically required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtor, and no Holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

**G.**     *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

**H.**     *Setoffs and Recoupment*

The Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtor or the Reorganized Debtor, as applicable, may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor, as applicable, of any such Claim it may have against the Holder of such Claim.  In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**I.**     *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor, the Reorganized Debtor, or the Disbursing Agent, as applicable.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor, the Reorganized Debtor, or the Disbursing Agent, as applicable on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to the Debtor, Reorganized Debtor, or the Disbursing Agent, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.       Claims Payable by Third Parties

The availability, if any, of Insurance Policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the Insurance Policies of the Debtor or the Reorganized Debtor, as applicable.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.       Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy subject to applicable Law.  Except as otherwise provided in the Plan or Confirmation Order, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers subject to applicable Law.

## J.      *Distributions after Effective Date*

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

**ARTICLE IX.**
**RELEASE, INJUNCTION AND RELATED PROVISIONS**

## A.      *Discharge of Claims*

1.       Discharge

Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims of any nature whatsoever against the Debtor or any of the Debtor's assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, the Debtor shall be deemed discharged and released, and each Holder of a Claim and any successor, assign, and affiliate of such Holder shall be deemed to have forever waived, discharged and released the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the Holder of a Claim based upon such debt is deemed

to have accepted the Plan; *provided*, *however*, for the avoidance of doubt, **except as provided in Article IV.G of the Plan,** such discharge shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, **the** BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

Notwithstanding the above, to preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, Class 4 Claimants specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the Compensation Trust Assets and the proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries; *provided*, that any Holder of an Abuse Claim seeking to pursue its Abuse Claim in a court of competent jurisdiction against the Debtor, the Reorganized Debtor, any other Covered Party and/or any other defendant in accordance with the terms of the Plan (which action to pursue such Abuse Claim may include the continuation of an action commenced by such Holder of such Abuse Claim against the Debtor and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to the extent no such action to pursue such Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date) that implicates coverage under any Non-Settling Insurance Company's Abuse Insurance Policies must transmit the Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed therein and such Holder of such Abuse Claim is enjoined by this Plan from pursuing such Abuse Claim until the expiration of a forty-five (45) day period after the transmittal of the Notice of Intent to Pursue Abuse Claims to the Abuse Insurance Companies.  The Class 4 Claims will not be released or enjoined as against the Debtor, the Reorganized Debtor, or any other Covered Party for any Abuse Claim that may be covered under any Non-Settling Insurance Company's Abuse Insurance Policies until such Claims are settled with the Debtor, the Reorganized Debtor, any other Covered Party and such Non-Settling Insurance Company or are fully adjudicated, resolved, and subject to Final Order, but recovery shall be limited as described above.

2.       Discharge Injunction

From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all Holders of Claims of any nature whatsoever against or in the Debtor or any of the Debtor's assets or property based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged as to the Debtor pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims: (a) commencing or continuing any action or other proceeding of any kind against the Debtor,

the Reorganized Debtor, the Compensation Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other order against the Debtor, the Reorganized Debtor, the Compensation Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtor, the Reorganized Debtor, the Compensation Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  The foregoing injunction shall extend to the successors and assigns of the Debtor (including the Reorganized Debtor) and its and their respective property and interests in property.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims and other debts and liabilities against or in the Debtor pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time to the extent such judgment relates to a discharged Claim; *provided*, *however*, for the avoidance of doubt, such injunction shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller,  **the** BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

**B.**     ***Channeling Injunction***

Notwithstanding Article IX.A of the Plan, **and subject to the Madison/RU 9019 Order,** to preserve coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, Class 4 Claimants specifically reserve, and do not release, any Claims they may have against the Debtor, the Reorganized Debtor, or any other Covered Party that implicate coverage under any Non-Settling Insurance Company's Abuse Insurance Policies, but recovery is limited to the Compensation Trust Assets and the proceeds of the Non-Settling Insurance Company's Abuse Insurance Policies and all other damages (including extra-contractual damages), awards, judgments over policy limits, penalties, punitive damages, and attorney's fees and costs that may be recoverable against any Non-Settling Insurance Company because of their conduct regarding Insurance Coverage for, or defense or settlement of, any Abuse Claim, and recoveries for any such judgments or awards will be against only the Non-Settling Insurance Company and Compensation Trust in accordance with the Plan and the Compensation Trust Documents and not at any time against any Covered Party or any property or interest in property of any Covered Party, beyond available Insurance Recoveries; *provided*, that any Holder of an Abuse Claim seeking to pursue its Abuse Claim in a court of competent jurisdiction against the Debtor, the Reorganized Debtor, any other Covered Party and/or any other defendant in accordance with the terms of the Plan (which action to pursue such Abuse Claim may include the continuation of an action commenced by such Holder of such Abuse Claim against the Debtor and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to the extent no such action to pursue such Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date) that implicates coverage under any Non-Settling Insurance Company's Abuse Insurance Policies must transmit the Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed therein and such Holder of such Abuse Claim is enjoined from pursuing such Abuse Claim until the expiration of a forty-five (45) day period after the transmittal of the Notice of Intent to Pursue Abuse Claims to the Abuse Insurance Companies.  The Class 4 Claims will not be

released or enjoined as against the Debtor, the Reorganized Debtor, or any other Covered Party for any Abuse Claim that may be covered under any Non-Settling Insurance Company's Abuse Insurance Policies until such Claims are settled with the Debtor, the Reorganized Debtor, any other Covered Party and such Non-Settling Insurance Company or are fully adjudicated, resolved, and subject to Final Order, but recovery is limited as described above.

Subject to any limitations in Article V.B.76, including the Trust Reimbursement, Holders of Abuse Claims, and, if necessary, the Compensation Trust, shall be permitted to name the Debtor or any other Covered Party (as parties) in any proceeding to resolve whether the Debtor or any other Covered Party has liability for Abuse Claims and the amount of any such liability, solely for the purpose of obtaining Insurance Coverage from Non-Settling Insurance Company. The discharge hereunder does not apply to, and shall not limit in any way the obligations of Non-Settling Insurance Company to defend and pay, the Debtor's or any other Covered Party's liability for Abuse Claims under Non-Settling Insurance Company's Abuse Insurance Policy, subject in all respects to any available Insurance Coverage Defenses.

On and after the Effective Date, all Persons that hold and have timely asserted by the Claims Bar Date any Abuse Claim (including, for the avoidance of doubt, Abuse Claims arising under the Child Victims Act, the Adult Survivors Act, and the Victims of Gender-Motivated Violence Protection Act) against any of the Covered Parties shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Covered Party with respect to any such Abuse Claim other than from the Compensation Trust pursuant to the Compensation Trust Documents, including:

1.      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Covered Party or any property or interest in property of any Covered Party;

2.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Covered Party or any property or interest in property of any Covered Party;

3.      creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Lien or Encumbrance of any kind against any Covered Party or any property or interest in property of any Covered Party;

4.      asserting, implementing, accomplishing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Covered Party or any property or interest in property of any Covered Party; or

5.      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Restructuring Documents or the Compensation Trust

Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Compensation Trust, except in conformity and compliance with the Compensation Trust Documents with respect to any such Abuse Claim.

~~Solely to the extent a Rockefeller Global Settlement is approved and consummated in accordance with the Trust Allocation Protocol, Rockefeller shall be deemed a Covered Party for purposes of this Article IX.B on and after the date on which such Rockefeller Global Settlement is fully consummated.~~

Solely to the extent a BGCA Global Settlement is approved and consummated in accordance with the Trust Allocation Protocol, **the** BGCA ~~shall~~**may seek, solely pursuant to a further order of the Bankruptcy Court,** be deemed a Covered Party for purposes of this Article IX.B on and after the date on which such BGCA Global Settlement is fully consummated~~.~~**; *provided that to the extent the Chapter 11 Case has been closed, the Compensation Trustee, the BGCA, or another interested party may seek to reopen the Chapter 11 Case or take other action as may be necessary to apply for an order of the Bankruptcy Court determining that the BGCA shall be deemed a Covered Party.***

Notwithstanding anything to the contrary in this Article IX.B, the Channeling Injunction shall not enjoin:

1.      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of Abuse Claims to assert such Abuse Claims in accordance with the Compensation Trust Documents;

2.      **except as provided in Article IV.G of the Plan,** the rights of Holders of Abuse Claims to assert such Abuse Claims against anyone other than a Covered Party, including, without limitation, against Rockefeller or **the** BGCA to the extent such party does not become a Covered Party in accordance with this Article IX.B and the Trust Allocation Protocol, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant, all rights and Claims of such Holders against Rockefeller or **the** BGCA (as applicable), or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant being expressly retained and reserved by such Holders and unaffected by this or any other provision of the Plan;

3.      the rights of any Person to assert any Claim, Cause of Action, debt, obligation, or liability for payment of Compensation Trust Expenses solely against the Compensation Trust in accordance with the Compensation Trust Documents;

4.      the Compensation Trust from enforcing its rights under the Plan and the Compensation Trust Documents;

5.      the rights of the Compensation Trust and the Reorganized Debtor (to the extent permitted or required under the Plan) to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies, subject to any Insurance Coverage Defenses;

6.      the rights of any survivor of Abuse to assert any Claim against a Non-Settling Insurance Company based on or arising from the Abuse Insurance Policies or the rights of any Non-Settling Insurance Company to assert each and every available defense (including any Insurance Coverage Defenses) under applicable Law or the applicable Abuse Insurance Policy relating to any Abuse Claim; *provided*, *further* that nothing in this <u>Article IX.B.6</u> shall impair the rights of any Non-Settling Insurance Company set forth in <u>Article X</u> of the Plan;

7.      the rights of any Abuse Insurance Company (including Non-Settling Insurance Companies) to assert any Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts against the Settling Insurance Companies and other Insurance Companies;

8.      the rights of any Settling Insurance Companies to enforce the terms of the Channeling Injunction as set forth herein and in the Insurance Settlement Agreements **to the extent such Settling Insurance Company becomes a Covered Party in accordance with Article IV.H of the Plan and the Trust Allocation Protocol**; or

9.      the rights of any Insurance Company to assert any Claims for contribution, subrogation, indemnification or other similar Cause of Action against the Compensation Trust for the Settling Insurance Companies' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim, or for any Cause of Action released in any Insurance Settlement Agreements.

C.      *Provisions Relating to Channeling Injunctions*

1.      <u>Modifications</u>. There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

2.      <u>Non-Limitation</u>. Nothing in the Plan or the Compensation Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the Compensation Trust's assumption of all liability with respect to Abuse Claims.

3.      <u>Bankruptcy Rule 3016 Compliance</u>. The Debtor's compliance with the requirements of Bankruptcy Rule 3016 shall not constitute or be deemed to constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

4.      <u>Enforcement</u>. Any Covered Party may enforce the Channeling Injunction as a defense to any Claim brought against such Covered Party that is enjoined under the Plan as to such Covered Party and may seek to enforce such injunction in a court of competent jurisdiction.

5.      <u>Contribution Claims</u>. If a Non-Settling Insurance Company asserts that it has rights, whether legal, equitable, contractual, or otherwise, of contribution, indemnity, reimbursement, subrogation or other similar Claims directly or indirectly arising out of or in any way relating to such Non-Settling Insurance Company's (a) payment of loss on behalf of the Debtor or (b) payment of defense expenses incurred in any action that should have been paid by or are otherwise attributable to a Settling Insurance Company, in the case of both (a) and

(b) related to any Direct Abuse Claim against the Debtor or other Covered Parties (collectively, "Contribution Claims"), (i) such Contribution Claims may be asserted as a defense or counterclaim against the Compensation Trust in any Insurance Action involving such Non-Settling Insurance Company, and the Compensation Trust may assert the legal or equitable rights (if any) of the Settling Insurance Company, and (ii) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such Non-Settling Insurance Company to the Compensation Trust shall be reduced by the amount of such Contribution Claims.

6.    No Duplicative Recovery. In no event shall any Holder of an Abuse Claim be entitled to receive any duplicative payment, reimbursement, or restitution from any Covered Party under any theory of liability for the same loss, damage, or other Claim that is reimbursed by the Compensation Trust or is otherwise based on the same events, facts, matters, or circumstances that gave rise to the applicable Abuse Claim.

**D.    _Release of Liens_**

Except (a) with respect to the Liens, if any, securing (i) the Exit Facility and (ii) to the extent elected by the Debtor with respect to an Allowed Other Secured Claim in accordance with Article III.B.1, or (b) as otherwise provided in the Plan or the Confirmation Order or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Reorganized Debtor to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtor or the Reorganized Debtor.

**E.    _Exculpation_**

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Claims or Causes of Action for any Claim related to any act or omission, including any misstatement, misleading statement, neglect, or breach of duty, occurring between the Petition Date and the Effective Date in connection with, relating to, or arising out of, directly or indirectly resulting from, in consequence of, or in any way attributable to, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Exit Facility Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement and other Restructuring Documents), the Compensation Trust, the Compensation Trust Documents, or any aspect of the Restructuring, including the Committee Settlement, the Insurance Settlement Agreement (if any), any related contract, instrument, release, or other agreement or document created or entered into during the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place from the

Petition Date through and including the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted ~~actual~~ fraud, willful misconduct, ~~or~~ gross negligence, ~~but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel~~ ~~with respect to their duties and responsibilities pursuant to the Plan~~**or claims for legal malpractice, release of which is prohibited by Rule 1.8(h) of the New York Rules of Professional Conduct (22 N.Y.C.R.R. § 1200)**; *provided*, *however*, that, for the avoidance of doubt, such exculpation shall not act or be construed to channel, release, enjoin, or otherwise affect **criminal enforcement actions or** any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

### F.    *Injunctions Related to Exculpation*

Except as otherwise expressly provided in the Plan, the Compensation Trust Documents, or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims that are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, and the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (iii) creating, perfecting, or enforcing any Lien or Encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such Claims; (iv) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released or settled pursuant to the Plan; *provided*, *however*, that, for the avoidance of doubt, **except as provided in Article IV.G of the Plan,** such injunction shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor was named as a defendant.

Upon entry of the Confirmation Order, all Holders of Claims and their respective Representatives shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan; *provided*, *however*, that, for the avoidance of doubt, such injunction shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan; *provided*, *however*, that, for the avoidance of doubt, **except as provided in Article IV.G of the**

**Plan,** such acceptance or eligibility for acceptance of distributions, shall not act or be construed to channel, release, enjoin, or otherwise affect any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

## G.   *Qualified Immunity*

Nothing in this Article IX is meant to limit, impair, or otherwise affect the qualified immunity granted to a director, officer, or trustee of the Debtor pursuant to New York Not-for-Profit Corporation Law § 720-a, the Volunteer Protection Act of 1997, and other similar applicable non-bankruptcy Law.

## H.   *Reservation of Rights*

Notwithstanding any other provision of the Plan to the contrary, no provision of this Article IX shall be deemed or construed to satisfy, discharge, release or enjoin Claims or Causes of Action (1) by the Compensation Trust, the Reorganized Debtor, or any other Person, as the case may be, against (a) the Compensation Trust for payment of Abuse Claims in accordance with the Compensation Trust Documents, (b) the Compensation Trust for the payment of Compensation Trust Expenses, or (c) any Insurance Company that has not performed under an Abuse Insurance Policy (to the extent such Abuse Insurance Policy is not the subject of an Insurance Settlement Agreement) or an Insurance Settlement Agreement and (2) **except as provided in Article IV.G of the Plan,** by any Holder of a Direct Abuse Claim against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

## I.   *Protection against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because Debtor has been the Debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case, but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

## J.   *Release of Preference Actions*

As of the Effective Date, the Debtor, on behalf of itself and its Estate, shall be deemed to waive and release all Avoidance Actions arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law; *provided* that, the Reorganized Debtor shall retain the right to assert any Claims assertible in any Avoidance Action (except an Avoidance Action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable nonbankruptcy law that are deemed waived and released in the Plan or the Confirmation Order) as defenses or counterclaims in any

Cause of Action brought against the Debtor or the Reorganized Debtor, as applicable, by any Entity.

## ARTICLE X.
## INSURANCE PROVISIONS

Except for the Insurance Assignment, or as otherwise provided in the Bankruptcy Code or other applicable Law, nothing in the Plan, the Restructuring Documents, or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, modifying, amending, supplementing, changing, expanding, decreasing, or modifying, or be interpreted as impairing, modifying, amending, supplementing, changing, expanding, decreasing, or modifying, the terms of any Abuse Insurance Policy issued by a Non-Settling Insurance Company or rights or obligations under such Abuse Insurance Policy to the extent such rights and obligations are otherwise available under applicable Law, and the rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of the Restructuring Documents, including the Plan, the Confirmation Order, or any provision thereof, shall solely be determined pursuant to the terms and provisions of the Abuse Insurance Policies and applicable Law.

Notwithstanding any provision in the Plan, the Restructuring Documents, or the Confirmation Order, nothing contained in any such documents or in this paragraph shall impose, or shall be deemed or construed to impose, any obligation on any Non-Settling Insurance Company to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim. Rather, a Non-Settling Insurance Company's obligations, if any, with respect to an Abuse Claim shall be determined solely by and in accordance with the applicable Abuse Insurance Policy(ies) issued by that Non-Settling Insurance Company subject to applicable Law. Nothing in the Plan, the Restructuring Documents, or the Confirmation Order shall diminish or impair, or be deemed to diminish or impair, the rights of any Non-Settling Insurance Company to assert any Claim, defense, right, or counterclaim in connection with any Abuse Claim or Abuse Insurance Policy in accordance with applicable Law.

Without limiting the generality of the foregoing provisions of this Article X, nothing in the Plan, the Restructuring Documents, or the Confirmation Order, shall, under any theory, (a) constitute a trial, a judgment, an adjudication on the merits, or evidence establishing the liability of any Non-Settling Insurance Company in subsequent litigation for any Claim, including, without limitation, any Abuse Claim, or under any Abuse Insurance Policy, (b) constitute, or be deemed to constitute, a determination of the reasonableness of the amount of any Claim, including any Abuse Claim, either individually or in the aggregate with other Claims, (c) be deemed to grant to any Person or Entity any right to sue any Non-Settling Insurance Company directly, in connection with a Claim, including any Abuse Claim, or any Insurance Policy, that such Person or Entity did not otherwise have under applicable Law, (d) constitute a finding or determination that the Debtor is a named insured, additional insured, or insured in any other way under any Abuse Insurance Policy, (e) constitute a finding or determination that any Non-Settling Insurance Company in fact issued any alleged Abuse Insurance Policy or that any alleged Abuse Insurance Policy has any particular terms or conditions, or (f) constitute a finding or determination that any Non-Settling Insurance Company has any defense or indemnity obligation with respect to any Claim or Abuse Claim. In addition, no payment made in

accordance with the Plan shall be, or be deemed to be, a waiver of any rights of any Non-Settling Insurance Company under any Abuse Insurance Policy.

Other than with respect to the effectiveness of the Insurance Assignment contemplated by the Plan and the findings necessary to confirm the Plan under section 1129 of the Bankruptcy Code, no Non-Settling Insurance Company shall be bound in any current or future litigation concerning an Abuse Claim or an Abuse Insurance Policy by any factual findings or conclusions of law issued in connection with Confirmation of the Plan, and no such findings of fact or conclusions of law shall have any res judicata or collateral estoppel effect on any Claim, defense, right, offset, or counterclaim that has been asserted or that may be asserted in any current or subsequent litigation concerning an Abuse Claim or an Abuse Insurance Policy.  Non-Settling Insurance Companies shall retain, and be permitted to assert, (i) all of their Insurance Coverage Defenses subject to applicable Law in connection with Abuse Claims notwithstanding any provision of the Plan, the Restructuring Documents, or the Confirmation Order, other than with respect to the Insurance Assignment, and (ii) all of the Debtor's defenses to liability, both legal and equitable, in connection with any asserted Abuse Claim, and the Non-Settling Insurance Companies' rights to assert all such underlying defenses and Insurance Coverage Defense in connection with Abuse Claims will not be impaired in any way by the Plan, the Restructuring Documents, or the Confirmation Order but subject to applicable Law.

No provision of the Plan, other than those provisions contained in the applicable injunctions set forth in Article IX of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company **that becomes a Covered Party in accordance with Article IV.H of the Plan and the Trust Allocation Protocol** by the Channeling Injunction.

~~No~~**Except as provided in Article IV.G of the Plan, no** provision of the Plan shall be interpreted to affect or limit any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant.

No provision of the Plan or Compensation Trust Documents shall be interpreted to affect, limit, or impair any rights, defenses or remedies that Rockefeller, the BGCA, or any non-Debtor co-defendant may have with respect to any Claims held by a survivor of Abuse in litigation, including with respect to any provision of applicable law as to judgment reduction, contribution protection, limitation of liability, or any other limitations, rights, defenses, or remedies.  For the avoidance of doubt, the foregoing shall include, without limitation, any rights, defenses and remedies that Rockefeller, the BGCA, or any non-Debtor co-defendant may assert under New York General Obligations Law § 15-108 and New York Civil Practice Law and Rules 1601.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

**A.     *Conditions Precedent to Confirmation of the Plan***

It shall be a condition to Confirmation of the Plan that the following conditions shall be satisfied (or waived pursuant to the provisions of <u>Article XI.C</u> of the Plan):

1.     The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to the Debtor.  These findings and determinations shall be effective, binding and enforceable, and shall, among other things, provide that:

> i.     the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan be proposed in good faith and that the Confirmation Order not be procured by fraud;

> ii.     the Channeling Injunction is to be implemented in connection with the Compensation Trust and shall be in full force and effect on the Effective Date;

> iii.     upon the Effective Date, the Compensation Trust shall assume the liabilities of the Covered Parties with respect to Abuse Claims and have authority as of the Effective Date to satisfy or defend such Abuse Claims, subject to the rights of Non-Settling Insurance Companies as set forth in this Plan, including Article IV.E hereof;

> iv.     the Compensation Trust will be funded with the Compensation Trust Assets;

> v.     the Compensation Trust will use the Compensation Trust Assets to resolve Abuse Claims;

> vi.     the terms of the Channeling Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement;

> vii.     the Plan complies with section 105(a) of the Bankruptcy Code to the extent applicable;

> viii.     the Channeling Injunction is essential to the Plan and the Debtor's reorganization efforts;

> ix.     (1) the Insurance Assignment is authorized and permissible pursuant to sections 541 and 1123(a)(5) of the Bankruptcy Code notwithstanding any terms of any policies or provisions of applicable Law that are argued to

prohibit the assignment or transfer of such rights and obligations; (2) the Compensation Trust is a proper defendant for Abuse Claims to assert the liability of the Covered Parties; and (3) the Compensation Trust's rights under any Abuse Insurance Policies issued by Non-Settling Insurance Companies, including the effect of any failure to satisfy conditions precedent or obligations under such policies (other than the terms of any policies or provisions of applicable Law that are argued to prohibit the assignment or transfer of such rights), shall be determined under the Law applicable to each such policy in subsequent litigation;

x.     If applicable, the Insurance Settlement Agreements are approved and the Abuse Insurance Policies shall be sold to the respective Settling Insurance Companies free and clear of all Liens, Claims, Encumbrances, interests and rights of any nature, whether at law or in equity, of any Person or Entity, and each Insurance Company that has contributed funds, proceeds or other consideration to or for the benefit of the Compensation Trust pursuant to an Insurance Settlement Agreement is designated as a Settling Insurance Company,  and such Insurance Settlement Agreements represent a sound exercise of the Debtor's business judgment, are in the best interest of the Debtor's Estate, comply with section 1123 of the Bankruptcy Code, and are approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019;

xi.    The Allowed amount of any Direct Abuse Claim shall be the amount therefor as determined under the Trust Allocation Protocol.  Such allowed amount shall be legally enforceable against the Compensation Trust.  For the avoidance of doubt, the amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Allocation Protocol or the Compensation Trust Agreement, as determined or as actually paid by the Compensation Trust, are not the equivalent of any Holder of a Direct Abuse Claim's Allowed amount of its channeled Direct Abuse Claim.  For the further avoidance of doubt, nothing herein determines whether or not any insurer is obligated to pay the amount determined under the Trust Allocation Protocol for an Allowed Direct Abuse Claim; and

xii.   ~~No~~**Except as provided in Article IV.G of the Plan, no** provision of the Plan shall be interpreted to affect or limit any Claim held by a survivor of Abuse against Rockefeller, the BGCA, or any co-defendant (who is not a Covered Party) in litigation in which the Debtor is a defendant or any defenses Rockefeller, the BGCA, or any co-defendant may have with respect to any such Claim.

2.     The proceeds of any sale of any Abuse Insurance Policies, including the full settlement amount, shall be contributed to the Compensation Trust "free and clear" of all Liens, Claims, Encumbrances, any other rights of any nature, whether at law or in equity, and other "interest," under sections 363 and 1141 of the Bankruptcy Code, of any additional insured or any

other Person or Entity in such Abuse Insurance Policies.  Notwithstanding anything to the contrary and for the avoidance of doubt, the Abuse Insurance Policies shall be sold by the Debtor to the applicable Settling Insurance Companies free and clear of all Liens, Claims, Encumbrances, interests or other rights on the Effective Date on the terms and as provided in the applicable Insurance Settlement Agreement.

**B.**     ***Conditions Precedent to the Effective Date***

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XI.C of the Plan):

1.     the Debtor shall have obtained all authorizations, consents, certifications, regulatory approvals, rulings, or other documents or actions that are necessary to implement and effectuate the Restructuring Transactions, including the Plan;

2.     all conditions precedent to the incurrence of the Exit Facility shall have been satisfied or waived pursuant to the terms of the Exit Facility Documents (which may occur substantially contemporaneously with the occurrence of the Effective Date);

3.     all documents and agreements necessary to implement the Plan shall have been (i) tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

4.     the Plan Supplement, including any amendments, modifications, or supplements to the documents, schedules, or exhibits included therein, shall have been Filed with the Bankruptcy Court;

5.     the Bankruptcy Court shall have entered the Disclosure Statement Order, and such Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered;

6.     the Compensation Trust Assets shall, simultaneously with the occurrence of the Effective Date or as otherwise provided herein, be transferred to, vested in, and assumed by the Compensation Trust in accordance with Article IV and Article V;

7.     the Bankruptcy Court shall have made the Rule 502(d) Finding;

8.     the Debtor shall have provided the Direct Abuse Claim Discovery to the Compensation Trust**, the Abuse Insurance Companies, and Rockefeller** pursuant to the Confirmation Order, including the Rule 502(d) Finding;

9.     the Professional Fee Escrow shall have been established and funded with Cash in accordance with Article II.B.1 of the Plan;

10.     the Restructuring Documents shall be effective pursuant to their terms; ~~and~~

11.    the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall approve and authorize the Insurance Assignment and the assignment of Insurance Actions, and determine that the Insurance Assignment and the assignment of Insurance Actions is valid and does not defeat or impair the Insurance Coverage **.; and**

**12.    the Bankruptcy Court shall have entered the Madison/RU 9019 Order, and the Madison/RU 9019 Order shall be a Final Order.**

**C.    *Waiver of Conditions***

Any condition precedent set forth in this <u>Article XI</u> hereof may be waived, in whole or in part, only if waived in writing by the Debtor, and as to <u>Article XI.B.5</u> through <u>9</u>, with the consent of the Committee, without notice, leave or Order of the Bankruptcy Court, or any formal action other than proceedings to confirm or consummate the Plan.

**D.    *Effect of Failure of a Condition***

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtor, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders, or any other Entity in any respect.

**ARTICLE XII.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.    *Modification and Amendments***

Except as otherwise specifically provided in the Plan, the Debtor reserves the right, in consultation with the Committee, to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtor expressly reserves its rights to revoke or withdraw, to alter, amend or modify the Plan with respect to the Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.    *Effect of Confirmation on Modifications***

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of The Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if Confirmation and Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain Claims or Classes of Claims), assumption of Executory Contracts and Unexpired Leases effected by the Plan, and execution of any document or agreement pursuant to the Plan shall be deemed null and void; (c) any votes in respect of the Plan shall be null, void and deemed withdrawn; and (d) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims, (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the Holders of Claims or Not-For-Profit Membership Interests and the Non-Debtor Affiliate, or (iii) constitute a representation, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity, including the Non-Debtor Affiliate.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of, or related to, the Chapter 11 Case, the Confirmation Order and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.     decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code, the Confirmation Order or the Plan;

3.     resolve any matters related to:  (i) the assumption and assignment of any Executory Contracts and Unexpired Leases to which the Debtor is a party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including Cure Claims; (ii) any dispute regarding whether a contract or lease is or was executory, expired, or terminated; or (iii) any other issue related to any Executory Contracts and Unexpired Leases;

4.     ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan or the Confirmation Order;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan or the Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents in connection with the Plan, the Confirmation Order or the Disclosure Statement;

8.      enter and enforce any Order for the sale of property pursuant to sections 1123, 1141, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan or the Confirmation Order or any Entity's obligations incurred in connection with the Plan or the Confirmation Order and the administration of the Estate;

10.     issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate in aid of execution, implementation, or Consummation of the Plan or to restrain interference by any Entity with Consummation or enforcement of the Plan or the Confirmation Order;

11.     resolve any matters related to the Exit Facility;

12.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the payment or non-payment of General Unsecured Claims by the Debtor or the Reorganized Debtor;

13.     enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or the Plan Supplement, including in connection with the interpretation, implementation, or enforcement thereof and any agreements, documents, or instruments executed in connection therewith;

15.     adjudicate any and all disputes arising from or relating to distributions under the Plan or the Confirmation Order, or any transactions contemplated herein or therein;

16.     consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court Order, including the Confirmation Order;

17.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.    enter an Order concluding or closing any or all of the Chapter 11 Case;

19.    hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article IX of the Plan, and enter such Orders as may be necessary or appropriate to implement such discharges, releases, injunctions, exculpations, and other provisions;

20.    hear and determine all questions and disputes regarding, and to enforce, the Committee Settlement, including in connection with the Negative Pledge Covenant and the Navy Yard Insurance Beneficiary;

21.    hear and determine all questions and disputes regarding, and to enforce, the Trust Reimbursement;

22.    hear and determine any Insurance Action, any Compensation Trust Cause of Action and any similar Claims, Causes of Action; *provided*, that (i) this Court's jurisdiction over any such Insurance Action, Compensation Trust Cause of Action, or similar Claims, Causes of Action shall be solely to the extent such actions involve bankruptcy issues or issues that are directly related to or arise out of the Plan or Confirmation Order, (ii) such retention of jurisdiction shall not constitute a waiver of any rights of a Non-Settling Insurance Company to seek to remove, seek abstention of, or seek to withdraw the reference of any Insurance Action filed after the Effective Date, and (iii) any matter involving a Settling Insurance Company shall be governed by the applicable Insurance Settlement Agreement;

23.    to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Compensation Trust, or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, to violate, or insufficient to satisfy any of the terms, conditions, or other duties associated with any Abuse Insurance Policies; *provided*, *however*, that (a) such orders shall not impair the Insurance Coverage Defenses or the rights, Claims, or defenses, if any, of any Insurance Company that are set forth or provided for in the Plan, the Confirmation Order, or any other Final Orders entered in the Chapter 11 Case, (b) this Article XIII does not, in and of itself, grant this Court jurisdiction to hear and decide disputes arising out of or relating to the Abuse Insurance Policies, and (c) all interested parties, including any Insurance Company, reserve the right to oppose or object to any such action before the Bankruptcy Court  seeking such relief;

**24.    hear and determine any request for a Settling Insurance Company or the BGCA to become a Covered Party in accordance with the Plan and the Trust Allocation Protocol, including entry of an order approving any such request;**

~~24~~**25**.    enforce all orders previously entered by the Bankruptcy Court; ~~and~~

**26.    adjudicate Post-Effective Date Abuse Claim Objections (as defined in the Confirmation Order); and**

2527.    hear any other matter not inconsistent with the Bankruptcy Code.

Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (a) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (b) any such jurisdiction is exclusive with respect to any Insurance Action, or (c) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s). Any court other than the Bankruptcy Court that has jurisdiction over an Insurance Action shall have the right to exercise such jurisdiction.

Unless otherwise specifically provided herein or in a prior Order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against the Debtor that arose prior to the Effective Date.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, any and all Holders of Claims or Not-For-Profit Membership Interests (regardless of whether such Claims or Not-For-Profit Membership Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan or the Confirmation Order, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.  All Claims and Not-For-Profit Membership Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan and the Confirmation Order, regardless of whether any such Holder of a Claim or Not-For-Profit Membership Interest has voted on the Plan.

### B.    *Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Confirmation Order.  The Debtor and all Holders of Allowed Claims or Not-for-Profit Membership Interests receiving distributions pursuant to the Plan and the Confirmation Order and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan and the Confirmation Order.

C.    *Reservation of Rights*

Except as expressly set forth in the Plan or the Confirmation Order, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.

With respect to any Cause of Action that the Reorganized Debtor expressly abandons, if any, the Reorganized Debtor reserves all rights to use defensively such abandoned Cause of Action as a basis to object to all or any part of a Claim against any of the Estate asserted by a creditor who obtains the benefit of such abandoned Cause of Action.

Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor or any other Entity with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims unless and until the Effective Date has occurred.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

E.      *Service of Documents*

To be effective, any pleading, notice, or other document required by the Plan or the Confirmation Order to be served on or delivered shall be served by first class or overnight mail:

If to the Debtor or the Reorganized Debtor:

Madison Square Boys & Girls Club, Inc.
250 Bradhurst Avenue
New York, New York 10039
Attention: Jeffrey Dold
Email: jdold@madisonsquare.org

With copies to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

| | |
|---|---|
| Attention: | Alan W. Kornberg |
| | John T. Weber |
| | Leslie E. Liberman |

| | |
|---|---|
| Email: | akornberg@paulweiss.com |
| | jweber@paulweiss.com |
| | lliberman@paulweiss.com |

If to the Committee:

Pachulski Stang Ziehl & Jones LLP
780 3rd Avenue
New York, New York 10017

| | |
|---|---|
| Attention: | James I. Stang |
| | John W. Lucas |
| | Malhar S. Pagay |
| | Gillian N. Brown |

| | |
|---|---|
| Email: | jstang@pszjlaw.com |
| | jlucas@pszjlaw.com |
| | mpagay@pszjlaw.com |
| | gbrown@pszjlaw.com |

After the Effective Date, the Reorganized Debtor may notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to

receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

## F.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any Order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## G.    *Entire Agreement*

Except as otherwise indicated, the Plan, the Confirmation Order, the Restructuring Documents, the Plan Supplement and documents related thereto supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan, the Confirmation Order, the Restructuring Documents, the Plan Supplement, and documents related thereto.

## H.    *Exhibits*

All exhibits and documents included in the Plan, the Confirmation Order, and the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website at https://dm.epiq11.com/madisonsquare or the Bankruptcy Court's website at https://www.nysb.uscourts.gov/.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the terms of such exhibit or document shall control as to the transactions contemplated thereby and the terms of the Plan shall control as to any provision of the Plan that may be required under such exhibit or document.

## I.    *Deemed Acts*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of the Plan and the Confirmation Order.

## J.    *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may

have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

**K.**    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, its Affiliates, and its and each of its Affiliates' Representatives will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, none of such parties or individuals or the Reorganized Debtor will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

**L.**    *No Waiver or Estoppel*

Upon the Effective Date, each Holder of a Claim shall be deemed to have waived any right to assert that its Claim should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtor and/or its counsel, the Committee and/or its counsel, or any other party, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

**M.**    *Dissolution of the Committee*

On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case, *provided* that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation by Professionals retained in the Chapter 11 Case pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (b) any appeals of the Confirmation Order or other appeals to which the Committee is a party; and (c) any adversary proceeding in which the Committee is a party (including by intervention), including any appeals thereof, in the case of clauses (b) and (c) if consistent with the Committee's duties under the Bankruptcy Code, including section 1103.  The Reorganized Debtor shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date, except for the fees and expenses incurred by the Committee's Professionals in connection with the matters identified in clauses (a), (b), and (c) of the foregoing sentence.

**N.**    *Closing of Chapter 11 Case*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable Order of the Bankruptcy Court to close the Chapter 11 Case.

*[Signature page follows]*

Respectfully submitted, as of ~~June 19~~**July 21**, 2023

Madison Square Boys & Girls Club, Inc.

*/s/ Jeffrey Dold*

Name: Jeffrey Dold
Title:   Chief Financial Officer

## Exhibit A

**Abuse Insurance Policies**

**EXHIBIT A**

| Insurer | Policy Number | Start Date | End Date | Limits |
|---|---|---|---|---|
| *General and Umbrella Liability* | | | | |
| Security Mutual | GLA923374 | 11/1/1967 | 11/1/1970 | $1,000,000 per occurrence first year<br><br>Limits change 11/1/1968 to $300,000 per occurrence |
| Insurance Company of North America | XBC41715 | 3/13/1968 | 3/13/1971 | $3,000,000 excess $1,000,000 per occurrence<br><br>Limits change 11/1/1968 to $3,000,000 excess $300,000 per occurrence |
| Insurance Company of North America | XBC43903 | 3/13/1971 | 3/13/1974 | $3,000,000 excess $300,000 per occurrence |
| Insurance Company of North America | XBC46830 | 3/13/1974 | 3/13/1977 | $3,000,000 excess $300,000 per occurrence |
| Federal Insurance Company | 77555487 | 11/1/1970 | 11/1/1971 | $300,000 per occurrence |
| Federal Insurance Company | Unknown | 11/1/1971 | 11/1/1972 | $300,000 per occurrence |
| Federal Insurance Company | Unknown | 11/1/1972 | 11/1/1973 | $300,000 per occurrence |
| Federal Insurance Company | (74) 77726350 | 11/1/1973 | 11/1/1974 | $300,000 per occurrence |
| Federal Insurance Company | (75) 77726350 | 11/1/1974 | 11/1/1975 | $300,000 per occurrence |
| Federal Insurance Company | (76) 77726350 | 11/1/1975 | 11/1/1976 | $300,000 per occurrence |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---------|---------------|------------|----------|--------|
| Federal Insurance Company | (77) 77726350 | 11/1/1976 | 11/1/1977 | $300,000 per occurrence |
| Federal Insurance Company | (78) 77726350 | 11/1/1977 | 11/1/1978 | $300,000 per occurrence |
| Federal Insurance Company | GLP (79) 77726350 | 11/1/1978 | 11/1/1979 | $300,000 per occurrence<br><br>$1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | Unknown | 3/13/1977 | 11/1/1977 | $200,000 excess $300,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1219431 | 3/13/1977 | 11/1/1977 | $3,000,000 excess $500,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1324440 | 11/1/1977 | 11/1/1978 | $3,000,000 excess $500,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1327011 | 11/1/1978 | 11/1/1979 | $3,000,000 excess $500,000 per occurrence<br><br>$4,000,000 excess $1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1328549 | 11/1/1979 | 11/1/1980 | $4,000,000 excess $1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1334315 | 11/1/1980 | 11/1/1981 | $4,000,000 excess $1,000,000 per occurrence |
| National Union Fire Insurance Company of Pittsburgh, Pa. | BE1318066 | 11/1/1983 | 11/1/1984 | $4,000,000 excess $1,000,000 per occurrence |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---------|---------------|------------|----------|--------|
| National Union Fire Insurance Company of Pittsburgh, Pa. | S9941479 | 3/5/1986 | 3/5/1987 | $1,000,000 aggregate |
| National Union Fire Insurance Company of Pittsburgh, Pa. | S1545015 | 3/5/87 | 3/5/88 | $1,000,000 aggregate |
| National Union Fire Insurance Company of Pittsburgh, Pa. | MLP5224874 | 3/5/88 | 8/1/88 | $1,000,000 per occurrence, $3,000,000 aggregate |
| Mount Vernon | Unknown | 11/1/1977 | 11/1/1978 | $200,000 excess $300,000 |
| Mount Vernon | Unknown | 11/1/1978 | 3/1/1979 | $200,000 excess $300,000 |
| Puritan Insurance Company | Unknown | 11/1/1979 | 11/1/1980 | $1,000,000 per occurrence |
| Puritan Insurance Company | Unknown | 11/1/1980 | 11/1/1981 | $1,000,000 per occurrence |
| Great Atlantic Insurance Company | GLA 07611 | 1/3/1984 | 3/24/1984 | $1,000,000 per occurrence |
| American Home Assurance Company | S1896065 | 3/24/1984 | 3/24/1985 | $1,000,000 per occurrence |
| Jefferson Insurance Company of New York | L530915 | 3/5/1985 | 3/5/1986 | $500,000 aggregate |
| North Star Reinsurance Corporation | NSU-46634 | 11/1/1984 | 3/24/1986 | $4,000,000 excess $1,000,000 per occurrence |
| The Monarch Insurance Company of Ohio | NSU-46634-A | 3/24/1986 | 3/5/1987 | $4,000,000 excess $1,000,000 aggregate |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---|---|---|---|---|
| General Star National Insurance Company | NSU-46634-B | 3/5/1987 | 3/5/1988 | $5,000,000 excess $1,000,000 per occurrence |
| General Star National Insurance Company | NMU-146634C | 3/5/1988 | 3/5/1989 | $5,000,000 excess $3,000,000 aggregate |
| General Star National Insurance Company | NMU-146634D | 3/5/1989 | 8/1/1989 | $5,000,000 excess $3,000,000 aggregate |
| General Star National Insurance Company | NMU-146634E | 8/1/1989 | 8/1/1990 | $5,000,000 excess $3,000,000 aggregate<br><br>Limits change 11/28/1989 to $10,000,000 excess $3,000,000 aggregate |
| MIC Property and Casualty Insurance Corporation | MPS 001726 | 8/1/1988 | 8/1/1989 | $1,000,000 per occurrence, $3,000,000 aggregate |
| MIC Property and Casualty Insurance Corporation | MPS 003125 | 8/1/1989 | 8/1/1990 | $1,000,000 per occurrence, $3,000,000 aggregate |
| *Management Liability (D&O, EPL, Fiduciary)* | | | | |
| Federal Insurance Company (D&O) | Unknown | 4/15/1986 | 4/15/1987 | $1,000,000 |
| Seaboard Surety Company (D&O) | Unknown | 6/1/1986 | 6/1/1987 | $1,000,000 |
| Certain Underwriters at Lloyd's, London (D&O) | NP08930A | 7/1/1989 | 7/1/1990 | $5,000,000 per loss and aggregate |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---------|---------------|------------|----------|--------|
| Royal Indemnity Company (D&O) | R EQ 100040 | 7/18/1989 | 7/1/1990 | $5,000,000 excess $5,000,000 aggregate |
| Certain Underwriters at Lloyd's, London and British Companies (D&O) | NP08930B NP58930B | 7/1/1990 | 8/1/1991 | $5,000,000 per loss and aggregate |
| Royal Indemnity Company (D&O) | R HS 600118 | 7/1/1990 | 8/1/1991 | $5,000,000 excess $5,000,000 aggregate |
| Certain Underwriters at Lloyd's, London (D&O) | NP013458 | 8/1/1991 | 8/1/1992 | $5,000,000 per loss and aggregate |
| Royal Indemnity Company (D&O) | R HS 600810 | 8/1/1991 | 8/1/1992 | $5,000,000 excess $5,000,000 aggregate |
| Chubb (D&O) | 8132-5536A | 8/1/1994 | 8/1/1995 | $10,000,000 aggregate |
| Chubb (D&O) | 8132-5536B | 8/1/1995 | 8/1/1996 | $10,000,000 aggregate |
| United States Liability Insurance Company (D&O and EPL) | NDO1551081 | 9/30/2011 | 9/30/2012 | $5,000,000 per claim and aggregate each coverage part |
| United States Liability Insurance Company (D&O and EPL) | NDO1551081A | 9/30/2012 | 9/30/2013 | $5,000,000 per claim and aggregate each coverage part |
| Mount Vernon Fire Insurance Company (D&O and EPL) | NDO2551892 | 9/30/2013 | 9/30/2014 | $5,000,000 per claim and aggregate each coverage part |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---------|---------------|------------|----------|--------|
| Mount Vernon Fire Insurance Company (D&O and EPL) | NDO2551892A | 9/30/2014 | 9/30/2015 | $5,000,000 per claim and aggregate each coverage part |
| Mount Vernon Fire Insurance Company (D&O and EPL) | NDO2551892B | 9/30/2015 | 9/30/2016 | $5,000,000 per claim and aggregate each coverage part |
| Atlantic Specialty Insurance Company (D&O and EPL) | MML-11278-18 | 10/30/2018 | 10/30/2019 | $5,000,000 aggregate all coverage parts |
| Great American Insurance Company (D&O and EPL) | APX4031785 | 10/30/2018 | 10/30/2019 | $5,000,000 excess $5,000,000 aggregate |
| Executive Risk Indemnity Inc. (Fiduciary) | 8221-5985 | 10/1/2018 | 10/1/2019 | $1,000,000 aggregate |
| Argonaut Insurance Company (D&O and EPL) | ML424429-0 | 11/30/2019 | 11/30/2020 | $2,500,000 aggregate all coverage parts |
| Hallmark Specialty Insurance Company (D&O and EPL) | 74NP000743-0 | 11/30/2019 | 11/30/2020 | $5,000,000 excess $15,000,000 aggregate |
| Argonaut Insurance Company (D&O and EPL) | ML424429-1 | 11/30/2020 | 11/30/2021 | $2,500,000 aggregate all coverage parts |

| Insurer | Policy Number | Start Date | End Date | Limits |
|---------|---------------|------------|----------|--------|
| Starstone Specialty Insurance Company (D&O and EPL) | B85841200ASP | 11/30/2020 | 11/30/2021 | $2,500,000 excess $2,500,000 aggregate |
| Landmark American Insurance Company (D&O and EPL) | LHS690819 | 11/30/2020 | 11/30/2021 | $5,000,000 excess $5,000,000 aggregate |
| Philadelphia Indemnity Insurance Company (D&O and EPL) | PHSD1593700 | 11/30/2020 | 11/30/2021 | $5,000,000 excess $10,000,000 aggregate |
| Hallmark Specialty Insurance Company (D&O and EPL) | 74NP000743-1 | 11/30/2020 | 11/30/2021 | $5,000,000 excess $15,000,000 aggregate |

## Exhibit B

**Trust Allocation Protocol**

## EXHIBIT B

**Trust Allocation Protocol**

**Compensation Trust Assets:**[1]  The Plan provides the Debtor will contribute the Compensation Trust Assets to the Compensation Trust on the Effective Date, or as soon as reasonably practicable thereafter, including, among other things, the:

- Cash Contribution

- Compensation Trust Note

- Exit Excess Cash

- Navy Yard Net Proceeds

- Madison Damages Claims ~~Assignment~~ **Proceeds (which shall be paid in accordance with the Madison/RU 9019 Order)**

The proceeds of the above listed Compensation Trust Assets are defined herein as the "**General Settlement Fund**".

Subject to a reserve or reserves established by the Compensation Trustee, the proceeds of the General Settlement Fund shall be distributed equally to all holders of Allowed Abuse Claims in Class 4 of the Plan (each, a "**Beneficiary**") (*i.e.*, total cash/proceeds net of Compensation Trust expenses divided by the number of Beneficiaries as of the Effective Date) (the "**Abuse Claim Equal Share Distribution**").  Except as provided herein, Holders of Indirect Abuse Claims will be entitled to the treatment set forth in Article IV.G of the Plan.  As cash is contributed to the General Settlement Fund from the Cash Contribution ~~or~~**,** Exit Excess Cash, **or Madison Damages Claims Proceeds,** paid on account of interest or principal due under the Compensation Trust Note, **or** realized from the Navy Yard Net Proceeds~~, or recovered pursuant to the Madison Damages Claims~~, the Compensation Trustee will make interim distributions in equal amounts to the Beneficiaries pursuant to the Plan and the Compensation Trust Documents, including, for the avoidance of doubt, any interim distributions to Beneficiaries that are Holders of Allowed Indirect Abuse Claims entitled to recovery pursuant to Article IV.G of the Plan, subject to the establishment of any further reserves.

For the avoidance of doubt and pursuant to Article IV.G of the Plan, if a Holder of a Direct Abuse Claim, pursuant to a judgment rendered by a court of competent jurisdiction, (a) actually receives payment from any third party co-defendant that is determined to co-liable on a joint and several basis under applicable law to the Holder of a Direct Abuse Claim with the Debtor, and (b) the judgment proceeds actually received by such Holder of a Direct Abuse Claim from such co-defendant are attributable to the Debtor's allocation of liability as determined by such

---

[1]    All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the *First Amended Chapter 11 Plan of Reorganization of the Madison Square Boys & Girls Club, Inc.*, dated as of ~~June 19~~**July 21**, 2023 (as it may be amended, modified, or supplemented, the "**Plan**").

judgment, then such Direct Abuse Claim, shall not be considered an "Allowed Direct Abuse Claim" for purposes of this Trust Allocation Protocol.

**A. <u>Insurance Allocation Proposal</u>:**

1. Pursuant to Article IX.B of the Plan, each holder of an Abuse Claim may elect to commence or continue to prosecute such Abuse Claim against the Debtor in an appropriate court of competent jurisdiction for the sole purpose of recovering from an Abuse Insurance Company (and from other third parties that are not Covered Parties).

2. If in the pursuit of a holder's Abuse Claim such claimant obtains an individual settlement/recovery from an Abuse Insurance Company, the Compensation Trust shall have no right to any portion of that recovery and such claimant retains 100% of such claimant's recovery from the Abuse Insurance Company (each an "**<u>Independent Insurance Recovery</u>**").

3. If an Abuse Insurance Company proposes a global settlement with the Compensation Trust ~~that causes such Abuse Insurance Company to be a Covered Party~~, 75% of holders of Abuse Claims allegedly covered by such ~~Settling~~**Abuse** Insurance Company's Abuse Insurance Policies must vote in favor of the proposed settlement in order for the Compensation Trustee to be authorized to enter into such settlement **and, accordingly, for such Abuse Insurance Company to become a Settling Insurance Company**. In connection with establishing whether the 75% threshold referenced in the preceding sentence is satisfied, the Compensation Trustee and the applicable Abuse Insurance Company shall mutually agree upon the number of Direct Abuse Claims allegedly covered by the Abuse Insurance Policy(ies) issued by such Abuse Insurance Company in the subject settlement agreement between the Compensation Trust and the Abuse Insurance Company.

4. If a global settlement with an Abuse Insurance Company is approved, the reasonable out-of-pocket litigation costs (not legal fees), if any, incurred by holders of the covered Abuse Claims may be reimbursed to the extent the Compensation Trustee reasonably concludes the incurring of such costs helped contribute to the global settlement with such Settling Insurance Company.

5. Two-thirds (2/3) of such Settling Insurance Company's settlement contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) shall be deposited into a settlement fund allocable to claims insured by such Settling Insurance Company (the "**<u>Insurer X Settlement Fund</u>**", where "X" is the name or other identifier of the relevant Settling Insurance Company) and one-third (1/3) of such Settling Insurance Company's contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) shall be deposited into a general settlement fund (the "**<u>Insurer X General Settlement Fund</u>**", where "X" is the name or other identifier of the relevant Settling Insurance Company).

6. An Abuse Claim covered by each Settling Insurance Company's Abuse Insurance Policies will be evaluated by the Compensation Trustee, or a neutral third party retained

by the Compensation Trustee, and share Pro Rata in the Insurer X Settlement Fund of the relevant Settling Insurance Company.

7. The proceeds of the Insurer X General Settlement Fund are allocated evenly among the holders of Abuse Claims that are not covered by the relevant Settling Insurance Company's Abuse Insurance Policies, or any other Abuse Insurance Company's Abuse Insurance Policies (*i.e.*, Abuse Claims against the Debtor that have no known insurance coverage). For the avoidance of doubt, holders of Abuse Claims that share in the Insurer X Settlement Fund (or any other settlement with a Settling Insurance Company) do not share in the Insurer X General Settlement Fund.

8. A holder of an Abuse Claim that receives an Independent Insurance Recovery shall not share in the Insurer X Settlement Fund or Insurer X General Settlement Fund.

9. The Compensation Trust shall establish settlement funds from any other Settling Insurance Companies in the same fashion as set forth above.

**B. BGCA Proposal**:

1. The Plan preserves the ability of the holders of Abuse Claims to pursue claims against the BGCA in a court of competent jurisdiction (the "**BGCA Claimants**").

2. If a BGCA Claimant obtains an individual settlement/recovery from the BGCA, such BGCA Claimant retains 100% of such BGCA Claimant's recovery from the BGCA (each, an "**Independent BGCA Recovery**").

3. If the BGCA proposes a global settlement ~~that causes the BGCA to be a Covered Party~~, 75% of the BGCA Claimants that have pending actions against the BGCA must vote in favor of the proposed settlement in order for the Compensation Trustee to be authorized to enter into such settlement.

4. If such global settlement is approved (such settlement, the "**BGCA Global Settlement**"), the reasonable out-of-pocket litigation costs (not legal fees) of the BGCA Claimants shall be reimbursed to the extent the Compensation Trustee reasonably concludes that the incurring of such costs helped contribute to the BGCA Global Settlement.

5. 75% of the BGCA's contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) to the Compensation Trust in connection with the BGCA Global Settlement shall be deposited into a settlement fund (the "**BGCA Settlement Fund**") and 25% of the BGCA's contribution (net of the reasonable out of pocket litigation costs and/or other expenses, if any) in connection with the BGCA Global Settlement to the Compensation Trust shall be deposited into a general settlement fund (the "**General BGCA Settlement Fund**").

6. A BGCA Claimant's Abuse Claim will be evaluated by the Compensation Trustee, or a neutral third party retained by the Compensation Trustee, and share Pro Rata in the BGCA Settlement Fund.

7. The proceeds of the BGCA General Settlement Fund shall be allocated Pro Rata among the holders of Abuse Claims that do not have actions pending against BGCA. For the avoidance of doubt, BGCA Claimants that have actions against BGCA and share in the BGCA Settlement Fund shall not share in the General BGCA Settlement Fund.

8. A BGCA Claimant that receives an Independent BGCA Recovery shall not share in the BGCA Settlement Fund or General BGCA Settlement Fund.

9. The Compensation Trustee, or same neutral third party retained by the Compensation Trustee, will evaluate all claims against BGCA that are eligible to participate in the separate settlement funds so a claimant would only have to be evaluated once, even if such claimant is eligible to participate in multiple funds.

**C. Rockefeller Proposal**:

1. The Plan preserves**, subject in all respects to Article IV.G thereof,** the ability of the holders of Abuse Claims to pursue their claims against Rockefeller in a court of competent jurisdiction (the "**Rockefeller Claimants**").

2. ~~If Rockefeller proposes to settle the Madison Damages Claims against Rockefeller, 100% of that recovery goes into the General Settlement Fund and is shared evenly among all holders of valid Abuse Claims in Class 4 of the Plan (the "~~**Debtor Rockefeller Recovery**~~").~~

~~3~~**2**. If a Rockefeller Claimant obtains an individual settlement/recovery from Rockefeller, such Rockefeller Claimant retains 100% of such Rockefeller Claimant's recovery from Rockefeller ~~(each, and "~~**Independent Rockefeller Recovery**~~").~~

4. ~~If Rockefeller proposes a global settlement that causes the Rockefeller to be a Covered Party, 75% of the Rockefeller Claimants that have pending actions against Rockefeller must vote in favor of the proposed settlement in order for the Compensation Trustee to be authorized to enter into such settlement.~~

5. ~~If a global settlement is approved (such settlement, the "~~**Rockefeller Global Settlement**~~"), the reasonable out-of-pocket litigation costs (not legal fees) of the Rockefeller Claimants shall be reimbursed to the extent the Compensation Trustee reasonably concludes that incurring such costs helped contribute to the Rockefeller Global Settlement.~~

6. ~~Rockefeller's contribution (net of the reasonable out-of-pocket litigation costs and/or other expenses, if any) to the Compensation Trust in connection with a Rockefeller Global Settlement shall be deposited into a settlement fund (the "~~**Rockefeller Settlement Fund**~~") and an Abuse Claim held by a Rockefeller Claimant with a pending action against Rockefeller shall be evaluated by the Compensation Trustee, or a neutral third party retained by the Compensation Trustee, and share in the Rockefeller Settlement Fund.~~

7. A claimant that either: (a) receives an Independent Rockefeller Recovery, (b) did not file an action against Rockefeller, or (c) previously settled with Rockefeller shall not share in the Rockefeller Settlement Fund.

8. The Compensation Trustee, or the same neutral third party retained by the Compensation Trustee, will evaluate all claims against Rockefeller that are eligible to participate in the separate settlement funds so that such claim would only have to be evaluated once, even if such claim is eligible to participate in multiple funds.

## **Exhibit C**

**Notice of Intent to Pursue Abuse Claims**

Alan W. Kornberg, Esq.
William A. Clareman, Esq.
John T. Weber, Esq.
Leslie E. Liberman, Esq.
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MADISON SQUARE BOYS & GIRLS CLUB, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10910 (SHL) |

<hr>

### NOTICE OF INTENT TO PURSUE ABUSE CLAIMS

<hr>

**PLEASE TAKE NOTICE THAT** on April 12, 2023, the above captioned debtor and debtor in possession (the "Debtor") filed the *Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.* [Docket No. 427] (as may be amended, modified, or supplemented from time to time, the "Plan").[2] On [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered the [*Findings of Fact, Conclusions of Law, and Order Confirming Chapter 11 Plan of Reorganization of Madison Square Boys & Girls Club, Inc.*] [Docket No. [●]] confirming the Plan. As set forth in that certain [*Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates*], the Plan became effective on [●], 2023.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article III.B.4 and Article IX of the Plan, any Holder of an Abuse Claim in Class 4 seeking to pursue its Claim in a court of competent jurisdiction against the Debtor, the Reorganized Debtor, any other Covered Party, or any other defendant (which action to pursue such Abuse Claim may include the continuation of an action commenced by such Holder of such Abuse Claim against the Debtor

<hr>

[1]    The last four digits of the Debtor's federal tax identification number are 6792. The Debtor's mailing address is 250 Bradhurst Avenue, New York, New York 10039.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

and other co-defendants, as applicable, prior to the Petition Date, or the commencement of a new action to the extent no such action to pursue such Abuse Claim was commenced by the Holder of such Abuse Claim prior to the Petition Date) that implicates coverage under any Non-Settling Insurance Company's Abuse Insurance Policies <u>must</u> transmit this notice (the "<u>Notice of Intent to Pursue Abuse Claims</u>") to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed on **Schedule 1** in order to pursue such Claim in accordance with the Plan.

**PLEASE TAKE FURTHER NOTICE** that any Holder of an Abuse Claim in Class 4 that transmits this Notice of Intent to Pursue Abuse Claims to the Debtor, the Compensation Trustee, and the Abuse Insurance Companies listed on **Schedule 1** is enjoined pursuant to Article IX.B of the Plan from pursuing such Abuse Claim in a court of competent jurisdiction until the expiration of a forty-five (45) day period after the transmittal of this Notice of Intent to Pursue Abuse Claims.

**PLEASE TAKE FURTHER NOTICE** that by completing, executing, and returning this Notice of Intent to Pursue Abuse Claims, the undersigned individual (the "<u>Claimant</u>") hereby provides notice to the Debtor, the Compensation Trustee, and the requisite Abuse Insurance Companies of its intent to pursue, after the Effective Date, one or more Abuse Claim(s) pending in the following action (the "<u>Action</u>") in accordance with Article III.B.4 and Article IX of the Plan:

    Name of Claimant: _____

    Name of Action & Case No.: _____

    Court in which Action is pending: _____

**PLEASE TAKE FURTHER NOTICE THAT** by completing, executing, and returning this Notice of Intent to Pursue Abuse Claims, the undersigned Claimant hereby certifies that it is a Holder of an Abuse Claim, as such term is defined in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the undersigned Claimant hereby acknowledges that all Abuse Claims are subject to the terms of the Plan, and that Claims against the Debtor or a Covered Party may be paid solely from the Compensation Trust Assets and the proceeds of an Abuse Insurance Policy issued by a Non-Settling Insurance Company. The Holders of Abuse Claims shall have no recovery whatsoever at any time against any Covered Party or any property or interest in property of any Covered Party beyond Insurance Recoveries.

**PLEASE TAKE FURTHER NOTICE THAT** in order for this Notice of Intent to Pursue Abuse Claims to be effective, it must be delivered by standard or overnight mail or personal delivery to the Debtor, the Compensation Trustee, and each of the Abuse Insurance Companies listed on **Schedule 1** hereto.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions concerning this Notice of Intent to Pursue Abuse Claims, you may contact the Debtor's claims and noticing agent at (866) 977-1161 (for U.S. and Canada-based parties) or +1 (503) 597-7709 (for

international parties) or via electronic mail to madisonsquareinfo@epiqglobal.com.  Additional copies of the Plan and Disclosure Statement are available upon request made to the Debtor's claims and noticing agent at the telephone numbers or email address set forth above.

*[Signature page follows]*

Respectfully submitted,

_____

Name of Claimant

Dated: _____, 2023

<u>**Schedule 1**</u>

**Notice Parties**

In order for the Notice of Intent to Pursue Abuse Claims to be effective, it must be delivered by standard or overnight mail or personal delivery to each of the following parties:

**The Debtor:**

Madison Square Boys & Girls Club, Inc.
250 Bradhurst Avenue
New York, New York 10039

Attention:    Jeffrey Dold

**Counsel to the Debtor:**

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attention:    Alan W. Kornberg
              John T. Weber
              Leslie E. Liberman

**The Compensation Trustee:**

Alan D. Halperin, Compensation Trustee
Halperin Battaglia Benzija, LLP
40 Wall Street, 37th Floor
New York, New York 10005
Tel: (212) 765-9100
Fax: (212) 765-0964
E-mail: ahalperin@halperinlaw.net

With a copy to

Halperin Battaglia Benzija, LLP
40 Wall Street, 37th Floor
New York, New York 10005
Attn: Donna H. Lieberman, Esq.
      Julie Dyas Goldberg, Esq.
Tel: (212) 765-9100
Fax: (212) 765-0964
E-mail: dlieberman@halperinlaw.net
        jgoldberg@halperinlaw.net

**The Abuse Insurance Companies:**

1. American International Group, Inc.
   28 Liberty Street, Floor 22
   New York, NY 10005

   Attention:          Kevin Larner
                       Kevin.larner@aig.com


2. Carlton Fields, P.A.
   405 Lexington Avenue, 36th Fl.
   New York, NY 10174

   Attention:          Robert DiUbaldo
                       rdiubaldo@carltonfields.com
                       Nora Valenza-Frost
                       Nvalenza-frost@carltonfields.com


3. Maxwell Branson
   Claims Executive, Vice President
   Gen Re
   120 Long Ridge Road
   Stamford, CT 06902
   (203) 328-6713
   Max.Branson@genre.com


4. Gary P. Seligman
   Wiley Rein LLP
   2050 M Street, NW
   Washington, DC  20036
   (202) 719-3587
   gseligman@wiley.law


5. James Biondolillo
   Casualty Technician, Coverage & Complex Claims
   Chubb Ltd.
   P.O. Box 4700
   Chesapeake, VA  23327
   (860) 830-9125
   biondolj@chubb.com

6. Lawrence Klein
   Robinson & Cole LLP
   Chrysler East Building
   666 Third Avenue, 20th floor
   New York, NY  10017
   (212) 451-2950
   lklein@rc.com